IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                          Case No. 3:06CR719

                Plaintiff

      v.                                 ORDER

Mohammad Zaki Amawi, et al.,

                Defendant

This is a criminal case in which three defendants are charged, *inter alia*, with conspiring to provide material support to terrorism. Pending are several pretrial motions. This order adjudicates those motions which presently are decisional.

### 1. *El-Hindi Motion to Suppress* [Doc. 571].

A confidential informant recorded many conversations with the defendants. The defendant El-Hindi claims that the government has destroyed the original recordings, and presently has available only what it purports to be duplicates. El-Hindi seeks to exclude the duplicate recordings, presumably on the basis of uncertainties about their accuracy.

The government's response represents that the challenged recordings were made with a device from which the recorded conversations were downloaded without alteration. The informant then used the device to record further conversations. As the government describes the process, the result was to create duplicate originals of the recordings. It intends to offer the duplicate originals at trial.

The government also represents that the defendants' audio expert has indicated that he is familiar with the recording device and how it works.

The defendant's reply simply asserts that this is not good enough, as there is no basis on which to test whether the duplicate originals really are verbatim duplicates of the original recordings.

The defendant's contentions, as presently before the court, are not persuasive. It is noteworthy that he has not submitted an affidavit or other evidence from his expert that disputes the government's representations. Absent some basis for doubting that the duplicate originals are just that, there is no basis for excluding them from the courtroom.

For now the defendant's motion shall be denied, without prejudice to challenge any recording or set of recordings on the basis that they are not accurate. I expect that any future motion will be accompanied by an evidentiary basis that raises at least a *prima facie* doubt as to the accuracy of the government's evidence.

If such motion is filed, the government's response shall likewise be based on evidence, rather than on the representations of counsel in a brief. For now, though, I will accept such representations as a sufficient basis, absent anything from the defendant other than speculation, on which to deny the defendant's motion.

### *2. Amawi Motion to Suppress Statements* **[Doc. 579]**

Following his arrest in Jordan, and while being transported to the United States, the defendant Amawi spoke with government agents. He claims that his statements were unlawfully obtained. He seeks an evidentiary hearing. He also seeks suppression, even if the statements were lawfully obtained, on the basis of the government's failure to have recorded the statements.

2

The government contends that the motion is untimely, and should be overruled on that basis. I decline to accept that invitation, and will proceed to adjudicate the motion on its merits.

I agree with the defendant that no decision can be made without an evidentiary hearing on this motion. The government's representations in its opposition to the motion to suppress about the circumstances in which it obtained the statements are not a substitute for an evidentiary record.

I agree with the government, however, that there is no lawful basis for suppressing the statements simply because the government did not record them. That's the way the government does business. While I have concerns about that practice, and believe adjudication of challenges such as the defendant's would often be easier if recordings were made, I cannot order the government to alter its investigatory practices to suit my own judicial preferences. That, though, is what this aspect of the defendant's motion seeks to have me do.

Like all other federal courts that have considered challenges to the government's failure to record face-to-face interrogations [despite its eager willingness to do so when a suspect is unaware that he is speaking with a government agent], I will overrule that part of the defendant's motion that seeks exclusion of the defendant's statements simply on the basis that they were not recorded. *See, e.g.*, *U.S. v. Tykarsky*, 446 F.3d 458, 477 (3d Cir. 2006); *U.S. v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005); *U.S. Cardenas*, 410 F.3d 287, 296 (5th Cir. 2005); *U.S. v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004); *see also U.S. v. Dobbins*, 165 F.3d 29 (Table), 1998 WL 598717, *4 (6th Cir.) (Unpublished disposition) ("[F]ederal law does not require that a state electronically record interrogations and confessions.").

Further argument or briefing and adjudication of the motion to suppress shall be held in abeyance pending an evidentiary hearing.

**3. *Amawi Motion to Dismiss Count Three* [Doc. 591].**

Count Three of the superseding indictment alleges that the defendant Amawi

knowingly distribute[d] to another person, that is the Trainer, information pertaining to, in whole or in part, the manufacture or use of an explosive or destructive device, with the intent that such information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence, in that [Amawi] accessed a secure mujahedeen web site and opened, viewed, and discussed with the Trainer certain instructional materials and videos, including a video entitled 'Martyrdom Operation Vest Preparation,' which depicted the step by step construction of a suicide bomb vest [and] displayed and translated [the suicide bomb vest video] for the Trainer, with the intent that the Trainer use said instructional materials for training individuals in the construction of such bomb vests to commit and further a Federal crime of violence.

The defendant seeks dismissal of this count on the basis that it fails to "'assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime.'" [Doc. 591 at 1 [citing *U.S. v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000) (quoting *U.S. v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir.1992))]].

The government correctly argues that, as a general rule, an indictment states an offense where

it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. . . . It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words themselves, fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.

*Hamling v. U.S.*, 418 U.S. at 117; *accord, e.g., U.S. v. Hudson*, 491 F.3d 590, 592-93 (6th Cir. 2007) (quoting *Hamling*, 418 U.S. at 117).

The indictment charges the defendant under 18 U.S.C. § 842(p)(2)(A), which makes it unlawful:

4

to teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to *distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device*, or weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence.

[Emphasis supplied].

The term "distribute," as used in § 842(p)(2)(A), is defined in § 841(n) as "sell, issue, *give*, transfer, or otherwise dispose of." [Emphasis supplied].

Thus, the statute on which the government bases Count III is to be read as making it unlawful to "[give] by any means information pertaining to, in whole or part, the manufacture .  .  . of an explosive."

The factual allegations in, or incorporated into Count 3 are that: 1) on or about January 10, 2005, Amawi "showed the Trainer[1] a video, which he accessed from a jihadist internet site, on the construction of a suicide bomb vest, entitled 'Martyrdom Operation Vest Preparation'"; 2) the "video demonstrated, step by step, how to assemble an explosive suicide vest and also displayed its destructive power"; 3) on or about January 30, 2005, Amawi and the Trainer "discussed downloading the 'Martyrdom Operation Vest Preparation' video onto a computer disk for the Trainer to use in the jihad training"; and 4) Amawi then "gave the Trainer a disk onto which the video had purportedly been copied."

The defendant contends that mere watching of a video on a publicly accessible [albeit password protected] website cannot constitute the giving "by any means" of information pertaining to the manufacture of an explosive. Absent delivery by the defendant of a copy of the video, or other

---

[1]The "Trainer" is the term the indictment uses to refer to its confidential informant.

5

impermissible transfer of the information in some tangible form, the defendant contends, no crime is committed under the statute.

I disagree: the statute is not so narrow as the defendant asserts. Giving of information "by any means" about making an explosive can occur as effectively from having someone watch a video as by having him read a manual or reciting for him the steps orally. The statute contains no requirement that the person receiving the information also get an electronic or paper copy. What matters is giving the proscribed information to someone else. That's what the indictment charges the defendant did.

The defendant argues that, because he did not make a copy of the video for the Trainer, the Trainer could not have used what he saw to make an explosive or make that information available to others. The actual making of an explosive is not, however, an element of the offense: the crime is complete on the conveying of the prohibited information – provided it was conveyed with the requisite intent – namely, that the information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence. The indictment alleges such intent. All else is a matter of proof.

The defendant's motion to dismiss Count 3 shall, accordingly, be denied.

### 4. *Amawi Notice re. Possible* **Bruton** *Issue* **[Doc. 603].**

The government has notified the defendants that it may use statements made by their codefendants at trial. This, as the Amawi's Notice suggests, may lead to problems under *Bruton v. U.S.*, 391 U.S. 123 (1968).

In response, the government states that it will either refrain from issuing that portion of any codefendant statement that contains a defendant's name; alternatively, it may redact the defendant's name.

In light of this representation, the defendant asks this court to order the government to give advance notice of intent to use a codefendant's statement so that *Bruton* issues can be addressed and resolved.

This is a sensible suggestion. The government shall be ordered to notify the defendants, at the latest, not later than two trial days prior to offering a codefendant's statement in either redacted or unredacted form.

**5. *Defendant Amawi's Expedited Motion for Reconsideration of Alternative Requests for Transfer, For Bond, and For Continuance of the Trial Date.* [Doc. 602].**

When the defendant's attorneys filed this motion, the defendant was housed at Milan Federal Detention Center in Milan, Michigan, about thirty miles from Toledo. His lead attorneys are Assistant Federal Public Defenders; their office is in Cleveland, about 120 miles from the Toledo courthouse.

Since the filing of this motion, the U.S. Marshals Service has worked out an arrangement with the Lucas County Sheriff to house the defendants El-Hindi and Amawi in the Lucas County Jail, which is adjacent to the federal courthouse in Toledo. The Sheriff has agreed to permit the defendants to have their legal papers, I-Pods and computers. This will greatly enhance their ability to assist counsel, especially with the translation of Arabic terms in recorded conversations. They will likewise be able to inform their attorneys more easily about transcription errors in transcripts. And,

in general, they and their attorneys will be able better to work with each other as they defend against the government's charges against them.[2]

Amawi's attorneys no doubt would still prefer to have additional time to prepare. Their office originally represented the defendant following his indictment in February, 2006. About eight months later it withdrew at his request, as he expressed doubts about the loyalty of government compensated counsel.

---

[2] The defendant's motion sought an order from me directing the Marshal's Service to house the defendant elsewhere than at Milan. That they have been able, after strenuous efforts, to make arrangements with the Lucas County Sheriff results from their initiative, not from any order that I have or could issue. This is so, despite the order in *U.S. v. Pouslon*, 2008 WL 161328 (S.D. Ohio), which resulted in transfer of a defendant from one place of detention to another.

In this case, following filing of the defendant's instant motion, the Marshals' Service has submitted an undated legal opinion from its Associate General Counsel, in which such Counsel notified the then-serving U.S. Marshal for the Northern District of Ohio that a "court is not generally authorized to interfere with the USMS' daily management of pretrial detainees in USMS custody, and should defer to the discretion and expertise of the USMS." [Doc. 608, Exh.].

The defendant argues that 18 U.S.C. § 3142(i), which authorizes release of a defendant pending trial when "necessary for preparation of [his] defense or another compelling reason," implicitly gives me authority, if I order a defendant to be detained, to facilitate his preparation for trial by determining the place of confinement.

I disagree with that analysis. The Marshals Service is solely responsible for ensuring the safekeeping of a detained defendant. It assesses what is needed to accomplish that objective. I have neither the experience, expertise nor authority to substitute my judgment for its.

For the circumstances to be otherwise would create an administrative hash. The Service in our District would be subject to the whims – on penalty of contempt – of more than a dozen District Judges and more than a half dozen Magistrate Judges. The impossibility of running the Marshals Service under such conditions needs no elaboration.

Finally, I note that there is no way that I can order a municipal or county jailer to accept a federal prisoner into his institution. While many local authorities house federal pretrial detainees, they cannot be compelled to accept any particular defendant. This is certainly so where the defendant has a history of disciplinary problems while confined elsewhere.

The present circumstances are not ideal; but, thanks to the dedicated and persistent efforts of the Marshals Service in Toledo and the remarkable willingness of Lucas County Sheriff James Telb, those circumstances are vastly superior to those confronting the defendant and his counsel when the instant motion was filed.

I granted the motion to withdraw  most reluctantly. I informed the defendant that any attorney appointed in the Defender's place would be paid by the United States government. Nonetheless, he insisted, and I acquiesced.

Next, I appointed two attorneys from one of Toledo's most highly regarded law firms. One of those attorneys has about forty years experience at the bar, and, in my view was one of the very best, if not the very best complex case criminal defense attorneys of my acquaintance.

The defendant, however, began expressing a desire for different counsel. After several efforts at keeping the relationship together – and, in the meantime, appointing an additional attorney [of Lebanese background from Detroit, with some ability to converse in Arabic] – I concluded in late 2007 that it would be necessary to appoint different counsel for the defendant. It was clear that, for whatever reason, communications between the second set of attorneys and the defendant had broken down irretrievably

The third attorney, despite his experience in cases of this sort, likewise proved unsatisfactory. Thus, on January 15, 2008, with the defendant's concurrence, attorneys from the Federal Public Defenders Office were again appointed to represent him. They are now doing so, and doing so most vigorously.

The trial date, after earlier postponement, had long been set for March 4, 2008. The defendant's newly appointed attorneys sought, but did not get, a continuance. They then moved for his release pending trial or, in the alternative, his confinement closer to Cleveland. After a hearing, I denied the request for a continuance, pretrial release and transfer to a different place of detention.[3]

---

[3]Among other reasons for my denial of the defendant's motion for pretrial release was that, while confined at Milan FDC he has received more than forty notices of disciplinary infractions. This manifested, in my view, an impulsiveness and reluctance to abide by lawful

Particularly in light of the recently made arrangements for the defendant to be housed in the Lucas County Jail, I confirm my decision not to continue the trial of this case.

The defendant's motion for reconsideration will be denied.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendant El-Hindi's motion to suppress [Doc. 571] be denied, without prejudice as provided herein;

2. Defendant Amawi's motion to suppress statements [Doc. 579] be overruled as to his challenge relating to the government's failure to record his statements; further ruling on said motion held in abeyance pending evidentiary hearing and further argument or briefing on the basis of the record;

3. Defendant Amawi's motion to dismiss Count 3 [Doc. 591] be denied;

4. The government shall notify the defendants of its intent to introduce a codefendant's statement not later than two trial days prior to such use; and

5. Defendant Amawi's Motion for Reconsideration, etc. [Doc. 602] be denied.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge

---

constraints that made him a bad risk for release. This was so, even though one of his codefendants and two other individuals who were joined in this case [but who since have been separately indicted] have been released on stringent conditions.

10