IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:06CR719

    Plaintiff

v.  ORDER

Mohammed Zaki Amawi, et al.,

    Defendant

This is a criminal case in which three defendants are charged, *inter alia*, with conspiring to provide material support to terrorism. The defendant Amawi seeks dismissal of the charges against him on the basis that his return to this country from Jordan, where he was taken into custody at the behest of American authorities following his indictment, was unlawful. [Doc. 630].

For the reasons that follow, the motion to dismiss shall be denied.

**Background**

Amawi is a native-born American with dual American and Jordanian citizenship. When the indictment was returned, he was in Jordan. Jordanian authorities asked him to come to a police station. He did so on February 18, 2008.

On his arrival at the police station, the Jordanian authorities took him into custody. On the following day, the Jordanians handed him over to American authorities. They, in turn, placed him on an airplane and returned him to the United States for appearance before this court.

Prior to these events, the United States had not requested that Amawi be extradited. He appeared before no court in Jordan. No process – other than the arrest warrant that customarily

issues on return of an indictment – underlay his arrest and delivery into the custody of American officials in Jordan.

Amawi's principal argument is that his "extradition" did not conform to the 1995 extradition treaty between the United States and Jordan. That treaty, according to Amawi, prescribes procedures whereby the American government can request extradition of a defendant from Jordan. Those procedures manifestly not having been followed, Amawi seeks dismissal of the charges against him.

In response, the government contends: 1) as an individual, Amawi lacks standing to assert or seek relief for a violation of the treaty, which is between contracting sovereign nations; 2) the Jordanian authorities implicitly waived any rights Amawi might have had under the treaty when they turned him over to the American authorities; 3) nothing in the treaty was contravened because transfer of custody to American authorities was not pursuant to the extradition treaty; and 4) any violation of Amawi's treaty or constitutional rights cannot result in dismissal of the charges under the "*Ker-Frisbie*" doctrine.

**Discussion**

**1. The Extradition Treaty**

As a general doctrine, individual citizens have no right to challenge or seek redress for violations of treaty obligations. "Ordinarily, claims for violation of an international obligation may be made only by the state to whom the obligation was owed." RESTATEMENT (3D) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 902, Comment a. Thus, "a state's claim for a violation that caused injury to rights or interests of private persons is a claim of the state and is under the state's control." *Id*. Comment. i.

Case law is to the same effect: "It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved." *Matta-Ballesteros v. Henman*, 896 F.2d 255, 256 (7th Cir. 1990).

This is so, because "[t]reaties are 'designed to protect the sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress.'" *Id*. (quoting *U.S. v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir.1988)); *U.S. v. Cordero*, 668 F.2d 32, 37–38 (1st Cir. 1981) (rights are enforceable by contracting state, not individual defendants); *U.S. ex rel. Lujan v. Gengler*, 510 F.2d 62, 67–68 (2d Cir. 1975) (abduction of defendant did not violate international law absent protest from offended state); *see also Demjanjuk v. Petrovsky*, 776 F.2d 571, 583–84 (6th Cir. 1985), *vacated on other grounds*, 10 F.3d 338 (6th Cir. 1993). ("there is a serious question" whether a defendant has standing to assert claim based an extradition treaty violation).

### 2. Jordan's Wavier of Rights Extended by the Treaty

Even where an individual has been found to have some sort of standing to assert a violation of an extradition treaty, the individual can make only objections "that the surrendering country might consider a breach of the extradition treaty." *U.S. v. Diwan*, 864 F.2d 715, 721 (11th Cir. 1989). This means, as a practical matter, that Jordan, by declining to register or assert any protest to what it was asked to do, waived any challenges that could have been made under the extradition treaty. Jordan alone had rights under the treaty. It chose not to exercise those rights, and its decision precludes any challenge by Amawi under the treaty.[1]

---

[1]

Jordan's disinclination to complain about how Amawi left its territory is further manifest in the fact that in the more than two years that this prosecution has been pending, Jordan has lodged no protest

### 3. The Treaty Played No Role
### in Amawi's Transfer

In any event, even if an extradition treaty provided rights to individuals that they could assert when such treaty was violated, Amawi's challenge to how he came before this court would fare no better. Neither signatory country having invoked the treaty, neither the treaty nor any violation of its provisions played any role in Amawi's departure from Jordan and transfer to the United States. Thus, the principles of "specialty" and "double criminality" on which Amawi bases his motion to dismiss simply are not applicable. *See U.S. v. Rauscher*, 119 U.S. 407, 430 (1886) (principle of specialty applies only when "a person . . . has been brought within the jurisdiction of the court by virtue of proceedings under an extradition treaty.").

### 4. The *Ker-Frisbie* Doctrine Precludes
### Amawi's Challenge

A court has jurisdiction and authority over a defendant no matter how he is brought before the court. *Ker v. Illinois*, 119 U.S. 436 (1886). Forcible abduction – even assuming *arguendo* that that is what happened here – "is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense, and presents no valid objection to his trial in such court." *Id*. at 444.

As the Supreme Court, reaffirming *Ker*, stated in *Frisbie v. Collins*, 342 U.S. 519, 522 (1952), "[t]here is nothing in the Constitution that requires a court to permit a guilty person . . . to escape justice because he was brought to trial against his will." Thus, "[t]he power of a court to try a person is not affected by the impropriety of the method used to bring the defendant under the

---

to the Amawi's prosecution. Here, as in *U.S. v. Kaufman*, 858 F.2d 994, 1009 (5th Cir. 1988), "there is absolutely no evidence that the [foreign] government objected to the trial of the [defendants] . . . . Indeed, [it was] apparently only too happy to have [the defendants] taken off [its] hands."

jurisdiction of the court. Once the defendant is before the court, the court will not inquire into the circumstances surrounding his presence there." *U.S. v. Marzano*, 537 F.2d 257, 271 (7th Cir. 1976) (citations omitted).

The Sixth Circuit "has consistently reaffirmed the *Ker-Frisbie* Doctrine by application of the rule that the body or person of a defendant is never suppressible as a fruit of an unlawful police arrest or detention." *U.S. v. Pelaez*, 930 F.2d 520, 525 (6th Cir. 1991) (internal quotation marks and citations omitted). What matters is that the defendant is before this court; regardless of how he comes to be here, he can be tried here.

## Conclusion

It is, therefore,

ORDERED THAT the defendant's motion to dismiss based on his "extradition" [Doc. 630] be, and the same hereby is denied.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge

5