IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,            Case No. 3:06CR719

       Plaintiff

v.            ORDER

Wassim Mazloum,

       Defendant

This is a criminal prosecution in which the government has charged the defendant, Wassim Mazloum, with conspiring with two other defendants to: 1) kill, maim, or injure United States servicemen in Iraq; and 2) provide material support to terrorists in Iraq. Among other contentions, the government argues that the defendants desired to participate in *jihad* by joining in the Iraqi insurgency.

The defendant's attorneys stated that they would be calling two witnesses who would testify that, about six weeks after the only meeting, on February 16, 2005, of all three defendants, Mazloum made statements pertinent on the issue of intent. According to his attorneys, Mazloum stated to the two witnesses whom they wanted to call that *jihad* in Iraq was not permissible under Islamic law because Iraq was not an Islamic nation and no appropriate authority had issued a *fatwah* authorizing *jihad* in Iraq.

On the basis of that representation and over the government's objection – but without extensive argument from counsel or *voir dire* of the witnesses – I initially interpreted Rule 803(3) of the Federal Rules of Evidence in favor of admitting this testimony (Doc. 788). I based that decision principally on *U.S. v. Bertram*, 477 F.2d 1329, 1330 (10th Cir. 1973) (holding that

defendant's testimony as to his religious beliefs, though not providing a defense to criminal conduct done knowingly, is admissible "evidence as to state of mind establishing that there was no criminal intent") and *Morejon v. State*, 394 So.2d 1100, 1101 (Fla. App. 1981) (stating that "[t]here was no error in admitting testimony concerning the defendant's 'religious' beliefs . . .; testimony of a witness to the effect that the defendant had stated that men should settle their differences 'in blood' was relevant as probative of the defendant's motive, intent or state of mind.").

The government promptly asked that I reconsider my ruling. I decided to *voir dire* the proposed witnesses outside the presence of the jury about the defendant's statements to them.

Mazloum's Aunt, Nailam Elkheche, testified that the defendant had stated to her in a conversation "that *jihad* is only the responsibility of the Muslim when there's a state that has a constitution that's based on the Islamic principles and rules and the leader of that Islamic state should be a real Muslim and true Muslim." (Tr. 46). According to her, Mazloum

> back [sic] it up with most scholars believe that there's no state right now in the world, even like in Arabic country, there's no state that exemplifies that point of view. That means we have a lot of Arabic countries but none of them – none of these countries' constitution is based on the Islamic rule and principles.
>
> \* \* \* \* \*
>
> [Y]oung scholars they come up with their own ideology and they try to spread it around the Muslim community and they try to base its [sic] on the Islamic viewpoint and he said you know I don't believe in those young scholars. He backed it up from a verse from the Qur'an.

(Tr. at 46, 48).

A friend of the defendant's since childhood, War Rabah, testified that Mazloum told him some people in Lebanon "don't have an understanding of *jihad*," which, according to Rabah, Mazloum described as "a call from, like, a leader . . . And it [sic] supposed to come from a nation. An Islamic nation. And since like we don't have an Islamic nation. So basically there's no

*jihad.*" (*Id.* at 52-53). According to Rabah, Mazloum cited scholars and the Koran as his source for these understandings. (*Id.* at 54-55).

Rabah also indicated that he understood Mazloum to be talking about Iraq and how in Iraq, under Islamic law, "it's the Iraqi people responsible for their country." (Tr. at 53). But when asked whether Mazloum mentioned any specific countries, Rabah replied "[n]o, not real [sic]." (Id. at 54). Elaborating, Rabah said Mazloum "just explain [sic] the idea of *jihad* and it didn't go like – he wasn't planning to perform any – to perform it any place." (Tr. at 54). Regarding Iraq, Mazloum "never mention that he cannot go there." (*Id.* at 55-56).

**Analysis**

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Under Rule 802 hearsay is not admissible; this is so principally because such testimony is presumptively unreliable. *See, e.g.*, *Foster v. Cal.*, 394 U.S. 440, 449 (1969) (explaining "that such evidence may be unreliable and cannot be put in proper perspective by cross-examination of the person repeating it in court"); *Bruton v. U.S.*, 391 U.S. 123, 136, n.12 (1968).

Among the numerous exceptions to the inadmissibility of hearsay is the "state of mind" exception codified in Rule 803(3). This rule permits admission of otherwise inadmissible hearsay, "even though the declarant is available as a witness," when it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." The rule, however, explicitly excludes "a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." *Id.*

3

At the time of my initial decision on this issue before *voir dire* of the witnesses, I understood the statements attributed to Mazloum as expressing his religious belief that *jihad* was not permissible in Iraq. As such, I considered the statements relevant to the issue of his intent, and thus admissible as indicative of his state of mind.

The admission of the evidence would not contravene the rule's exclusion of statements offered to prove "the fact . . . believed," because, in my view then, Mazloum was not offering them to prove that *jihad* in Iraq is impermissible under Islamic law. *See Daniels v. Lafler*, 192 Fed. Appx. 408, 424, 2006 WL 2220969, at *14-15 (6th Cir. 2006) (unpublished disposition) (noting that Rule 803(3) expressly excludes from the operation of the rule a statement of belief to prove the fact believed). The evidence would only support the argument that such a belief was Mazloum's "existing state of mind."

The actual proposed testimony, arguments of government counsel, and further reading of the applicable law convince me that the proffered testimony is not admissible.[1]

---

[1]

In addition to the ensuing discussion, I note three aspects of Mazloum's statements, as related by the witnesses, that take them outside Rule 803(3).

First, they are not temporally proximate to the February 16, 2005, meeting, at which, according to the government, the three defendants expressed a common intent to obtain training so that they could kill and maim United States personnel and provide material support to terrorists. *See, e.g.*, *Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1484 (11th Cir. 1997) ("temporal remoteness of [witness'] testimony, heavily weighed against the testimony's probative value and added to its possible prejudicial effect.").

Second, and more importantly and pertinently, Mazloum's statements do not express a then-extant intent not to commit the alleged crimes. He is not charged with wanting to wage *jihad* (i.e., to engage in violent acts endorsed by Islam). The gravamen of the government's indictment is that he conspired with the other defendants to go overseas and kill and maim United States persons and provide material support to terrorists. The government need not show that such activity constituted *jihad* under Islamic law; Mazloum's beliefs as to whether what he allegedly wanted and agreed to do conformed to Islamic law are not relevant on the issue of his intent to commit the alleged crimes.

The advisory committee note explains that exclusion of certain statements of belief under Rule 803(3) narrows the "state of mind" exception to "avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." As a result, the rule does not allow the admission of a statement explaining why the declarant has a state of mind. *Apanovitch v. Houk*, 466 F.3d 460, 487 (6th Cir. 2006) ("That is to say, a witness may testify that someone expressed to them fear of someone or something, but they may not testify as to that persons's explanations of *why* they were afraid"); *Donald v. Bobby*, 2008 WL 891981, at *4 (N.D. Ohio).

---

What matters is whether the government meets its burden of proof as to the elements of the offenses, not Mazloum's religious beliefs and underlying understanding of Islamic law.

Finally, even if Mazloum's statements about his interpretation of Islamic law were admissible to prove a lack of intent to commit the charged crimes, these particular statements are not sufficiently probative of such intent. As described by the witnesses, they are abstract comments about religious doctrine, not specific assertions by Mazloum, as he was uttering them, that he would not engage in the charged crimes. As Rabah testified, Mazloum did not state that he "cannot go there" (Tr. at 55-56).

Thus, the statements are, at best, ambiguous and equivocal, not declarative of a then existing intent to refrain from participating in the charged conspiracy. *See U.S. v. Lawrence*, 349 F.3d 109, 117 (3d Cir. 2003) (holding "response to [the photo] array lacked the 'circumstantial guarantees of trustworthiness' necessary to be equivalent to those categorized in the exceptions set forth in the hearsay exceptions specified in Rules 803 and 804 of the Federal Rules of Evidence"). *Intercontinental Bulktank Corp. v. M/S Shinto Maru*, 422 F. Supp. 982, 988, n.22 (D. Or. 1976).

Had Mazloum uttered those statements during the February 16, 2005, meeting with his codefendants, they might have manifested his then-extant state of mind as to his intent. In such a case (if the view set forth in the preceding paragraph is incorrect), the statements might, due to their temporal proximity and the conversational context, have been admissible on that issue. The circumstances of their utterance make it unlikely, however, that Mazloum was asserting that his religious faith kept him from going to Iraq to engage in the insurgency.

Thus, a declarant's statement that she was scared would be admissible, while the declarant's statement explaining that defendant raped her would not be admissible. *Daniels*, *supra*, 192 Fed. Appx. at 424, 2006 WL 2220969, at *14 (unpublished disposition). This is so because the second statement "went to the circumstances surrounding why she had a certain state of mind." *Id*.

The testimony in question does not contain statements of Mazloum's internal state of mind as to his intent. They simply show his understanding of religious doctrine as expressed and to be found in external sources. His statements, moreover, do not even express a commitment to obeying that doctrine, as he understood it. The proffered testimony, at most, would provide an explanation for a potential, but otherwise unexpressed state of mind.

To the extent that Mazloum offers the testimony as non-hearsay (i.e., simply to show that the statements were made and not for the truth of the matter asserted), they are not relevant. The mere act of expressing views about Islamic law is irrelevant to the charge of conspiracy.

As I have said in an earlier opinion in this case on another issue, "[j]ust as this case is not about "Terrorism" writ large, it is not about Islam or jihadist movements generally." *U.S. v. Amawi*, — F.Supp.2d —, — , 2008 WL2018442, at *4 (N.D. Ohio).

It is therefore,

ORDERED THAT the government's objection that the proffered testimony is not admissible under Fed. R. Evid. 803(3) be, and the same hereby is, sustained.

So ordered.

                                               s/James G. Carr
                                               James G. Carr
                                               Chief Judge