```
 1                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF OHIO
 2                     WESTERN DIVISION

 3   UNITED STATES OF AMERICA,      )  Docket No. 3:06-CR-719

 4            Plaintiffs,           )  Toledo, Ohio

 5                 v.               )  APRIL 3, 2008

 6   MOHAMMED AMAWI, ET AL.,        )

 7            Defendants.           )

 8   ------------------------------

 9        TRANSCRIPT OF PRETRIAL CONFERENCE, VOLUME 21
              BEFORE THE HONORABLE JAMES G. CARR
10                UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:    Gregg N. Sofer
                            David I. Miller
14                          Jerome J. Teresinski
                            U.S. Department of Justice
15                          10th & Constitution Avenue, NW
                            Washington, DC 20530
16                          (202) 353-3464

17                          Thomas E. Getz
                            Justin E. Herdman
18                          Office of the U.S. Attorney
                            801 Superior Avenue, W
19                          Cleveland, Ohio 44113
                            (216) 622-3840
20
     For the Defendant      Timothy Ivey
21   Amawi:                 Edward Bryan
                            Amy Cleary
22                          Jonathan Whitmer-Rich
                            Office of the Federal Public Defender
23                          750 Skylight Office Tower
                            1660 West Second Street
24                          Cleveland, Ohio 44113
                                      (216) 522-4856
25
```

```
 1                        Elias Muawad
                          Muawad & Muawad
 2                        Suite 209
                          36700 Woodward Avenue
 3                        Bloomfield Hills, Michigan 48304
                          (248) 594-4700
 4    For the Defendant
      El-Hindi:           Charles M. Boss
 5                        Boss & Vitou
                          111 West Dudley Street
 6                        Maumee, Ohio 43537
                          (419) 893-5555
 7
                          Stephen D. Hartman
 8                        Kerger & Kerger
                          Suite 201
 9                        33 South Michigan Street
                          Toledo, Ohio 43602
10                        (419) 255-5990

11                        Alek H. El-Kamhawy
                          Raslan, El-Kamhway & Pla
12                        Suite 3FE
                          1700 East 13 Street
13                        Cleveland, Ohio 44114
                          (216) 928-1500
14
      For the Defendant   David L. Doughten
15    Mazloum:            4403 St. Clair Avenue
                          Cleveland, Ohio 44103-1125
16                        (216) 361-1112

17                        Jeffrey J. Helmick
                          Helmick & Hoolahan
18                        2nd floor
                          1119 Adams Street
19                        Toledo, Ohio 43624-1508
                          (419) 243-3800
20

21                        Mohammed Abdrabboh
                          1620 Ford Avenue
22                        Wyandotte, MIchigan 48192
                          (734) 283-7000
23

24
      Court Reporter:     Angela D. Nixon, RPR, CRR
25                        1716 Spielbusch Avenue
                          Toledo, Ohio 43624
```

1              (419) 260-5259

2

3    Proceedings recorded by mechanical stenography, transcript

4    produced by notereading.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  Do you people have -- what form do

2    you have recordings, or format?

3              MR. BOSS:  I think -- I think that they mirror

4    what the government is doing, frankly.

5              THE COURT:  But I meant the government -- where

6    are they?

7              MR. HARTMAN:  They were originally produced to us

8    on CD that are in my office.

9              MR. BOSS:  We do have those.

10             THE COURT:  Yeah, yeah, but they're simply all of

11   them.  Do you have an index to this CD?

12             MR. HARTMAN:  I have them by the 1D number that

13   they provided.

14             THE COURT:  Can you skip to the particular

15   number?

16             MR. HARTMAN:  No, not within a recording, I

17   cannot skip to the parts that they want to play.  I can't

18   do that.

19             MR. BOSS:  They were provided to us in media

20   player format so it just starts and then runs.

21             MR. SOFER:  We have the same thing, Judge, the

22   problem with all of that is just not --

23             THE COURT:  Sure.  You've got a jumble --

24   everybody can sit down by the way.  You don't need to stand

25   up.

1          MR. SOFER:  We'd be very concerned about how the

2    presentation of that would go both for legal reasons and

3    the ability for everyone to hear it.

4          MR. BOSS:  Would you still like me to call the

5    tech people or put that on hold?

6          THE COURT:  Well, what we would probably need

7    would be two screens like that, one for the jury and one

8    for parties, and --

9          MR. SOFER:  Judge, again, those two screens --

10   all they're going to end up, unless we have the audio

11   system up.

12         THE COURT:  Of course.  Well, can't -- I mean,

13   can't we hear -- we could at least find out whether or

14   not --

15         MR. SOFER:  We could try it.

16         THE COURT:  Yeah, say to them this is what we

17   have.  Do you have a means of not just projecting but of

18   broadcasting this?

19         MR. BOSS:  Judge, pardon me, I'm sorry.

20         THE COURT:  Go ahead.

21         MR. BOSS:  Part of the problem that the improved

22   audio system cured was the --

23         THE COURT:  You have that in quotes, improved,

24   closed quotes?

25         MR. BOSS:  When it works, it's certainly --

1          THE COURT:  Quote, audio, closed quote, system,

2   closed quote.

3          MR. BOSS:  It cured the old acoustics in this

4   courtroom.  And when playing these audio tapes without the

5   advantage of having the head phones, they are not

6   discernible.

7          THE COURT:  Yeah, I notice.  Okay.  That's fine.

8   I've learned that.  I was a little slow putting the phones

9   on.

10         MR. BOSS:  It's in both of our interest to have

11  the head phones.

12         MR. SOFER:  They sound better, I have to tell you

13  in our office many times just a regular PC, counsel just

14  said the same thing.  The problem we've had over and over

15  again is actually not -- we can play them in our offices

16  and they sound great.  For whatever reason, the interface

17  with The Court system has always been problematic.  I think

18  the problem we've got to getting the sound okay were these

19  head phones.  The problem is we put those little tiny

20  speakers that we use to define, say, what was in this

21  courtroom it just doesn't work.

22         MR. HERDMAN:  The audio may --

23         THE COURT:  There's only one court reporter so.

24         MR. HERDMAN:  The audio actually may be working

25  if you can --

1           THE COURT:  I can't hear you.

2           MR. HERDMAN:  The audio may actually be working.

3    We're trying to figure out if it's working or not through

4    the headphones.

5           MS. FOLEY:  The audio should be working, Judge.

6           THE COURT:  Let me ask you this, are there

7    transcripts written, you know, that we can print if we take

8    an hour to print?

9           MR. SOFER:  Yes and no.  There are -- there are

10   written transcripts.  We have them here.  The issue with

11   that, Judge, is that the -- what we've done and made clear

12   to the jury and everybody else is we've taken the segments

13   out so that we don't have to play a three-hour-long

14   transcript to get to the part that matters.  If -- to take

15   out what we've done in order to highlight it is literally

16   put it in yellow, that's how it appears in the transcripts.

17          THE COURT:  Time out.  Until we get the new

18   improved audio system, that's what we would do with the old

19   school sets or whatever they call them, the body wires,

20   everybody would get a transcript and they would follow

21   along.

22          MR. SOFER:  Absolutely.

23          THE COURT:  And how long would it take to get at

24   least a half day's worth of transcripts printed and cut and

25   pasted and printed off for jurors, and why don't we do

1  that?

2      MR. SOFER:  What I was going to get to is if you

3  want -- we have to cut out the yellow, meaning there will

4  be no other part of the transcript available and that would

5  be --

6      THE COURT:  In the old day we didn't have yellow.

7  We didn't even have highlights.

8      MR. SOFER:  I don't know.  I can talk to my

9  colleagues, I don't think it would take that long.

10      THE COURT:  Why don't we do that.  Why don't we

11  at least head in that direction, get enough to at least get

12  under way.

13      MR. SOFER:  Actually, I just thought of something

14  else though, Judge.  Our first -- we are at the stage of

15  our presentation, again, obviously always looking to make

16  sure the government doesn't end up paying for the giant

17  problem here.

18      THE COURT:  Oh, it will.  Not you the government

19  but us the government.

20      MR. SOFER:  I understand.  But the problem today

21  as it happens is our very first audio tape that we plan to

22  play is the first one that is synced up with the videos

23  that we want to play for the jury and that are coming in

24  and it's going to prejudice our presentation and I would

25  want to play it again.  So I think it would, again -- I

1    think what the problem would be were we to go with the

2    transcript system we're going to miss our ability to

3    present our case the way we wanted to.

4            THE COURT:  Can't we skip that?  I realize it's

5    out of order, but -- just tell the jurors we have a major

6    technological problem that we're trying to address and

7    resolve and we'll keep them posted, please.

8            MR. SOFER:  From my perspective, Your Honor, the

9    government's perspective, I would much prefer that we

10   adjourn to fix the problem and not take that time that we

11   potentially were going to take tomorrow and put it into

12   today.  Again, I think the government -- we've looked again

13   at our presentation how long we anticipate it taking, and I

14   don't think -- I, obviously, Your Honor, will decide this,

15   but I think from our standpoint I'd like us to put our best

16   foot forward being an opportunity not to disassemble our

17   case because the -- because of technical problems here.  I

18   think I can give The Court some comfort in saying that our

19   case is moving rather quickly.

20           THE COURT:  Let's assume that we're done with

21   Mr. Griffin maybe two weeks from -- by the end of the third

22   week of trial, okay, figure by the time we get through this

23   cross examination and all that, what's your projection in

24   terms of the succeeding witnesses, assume that

25   Mr. Kohlmann, I haven't made my mind up so don't get your

```
1    hopes up at all and don't start crying over to my right.
2    I'm just saying, but assume Mr. Kohlmann were on for half a
3    day, what else, in terms of realizing they're going to take
4    as long to cross examine probably at least as you are to
5    present.  So what do you think, now we're three weeks?
6             MR. SOFER:  I don't think we have another witness
7    who comes within even a third or a quarter, frankly, of
8    Mr. Griffin's testimony in terms of length.  In other
9    words --
10            THE COURT:  How many more witnesses would you
11   have?
12            MR. SOFER:  I think we have approximately -- we
13   did this last night so I'll look at my colleagues, but I
14   think about ten more witnesses, ten to 15 at the most.
15            THE COURT:  So another four weeks probably?
16            MR. SOFER:  I think many of these witnesses we're
17   looking at one day of testimony, half a day of testimony
18   for some of them for the government.  Some of them are five
19   minutes, Judge, eight minutes.  It's possible with the
20   stipulations that, by the way, we still haven't gotten a
21   response from the defense that we might be able to make
22   that go faster.
23            THE COURT:  Let me say this, so then extremely
24   conservatively probably the government could be done by the
25   end of May.
```

```
 1              MR. SOFER:  I think extremely conservatively the

 2    government will be done by the end of May.  Of course the

 3    audio system and the video system if it does this on a

 4    regular basis --

 5              THE COURT:  Well, I'm inclined to simply adjourn

 6    for the day because who knows, sure it may come back five

 7    minutes after the jurors are headed home, but I want

 8    whoever is going to look at it to look at it.  And the

 9    other thing is I want a back-up system in the building set

10    to go.  I don't care what it costs, okay.  End of

11    discussion on that.  And everything short of myself is

12    starting to deal with the wires.  Okay.  If you start after

13    Memorial Day, what is your -- and if you want to take a few

14    minutes to talk amongst yourselves, again, what do you

15    think at the outside all your witnesses, all your -- all

16    your evidence, double it -- well, probably add a half

17    maximum for government's cross examination because there's

18    fewer of you.

19              MR. SOFER:  We'll try to be judicious.

20              THE COURT:  I understand.  I'm just trying to

21    roughly compute --

22              MR. HARTMAN:  A fair estimation would be two

23    weeks for us.

24              THE COURT:  Us meaning you and Mr. Boss and

25    Mr. El-Hindi or us meaning you from you to Ms. Cleary and
```

```
 1   all --
 2            MR. HARTMAN:  You, us here, I don't know about
 3   the federal defenders.  You can probably include these guys
 4   in our two weeks because --
 5            MR. HELMICK:  Judge, three days tops for us.
 6            THE COURT:  So that's three weeks.
 7            MR. HELMICK:  That's three weeks, I'm just
 8   adding.
 9            Yeah, I think that's a fairly safe estimate.
10            MR. HARTMAN:  And why we may not even do that.
11            THE COURT:  I understand.  I want you to assume
12   your client's going to testify, everything else you've got,
13   you know, you're going to be wall to wall everything
14   imaginable that you might put in how long it would take
15   basically.
16            MR. HARTMAN:  It would be a lot shorter if you
17   keep Kohlmann out.
18            THE COURT:  That is not a criteria.  What do you
19   think Mr --
20            MR. IVEY:  We think about two weeks, Your Honor,
21   for our case.
22            THE COURT:  So we're looking at five weeks, which
23   means we would still get in hopefully by early July to the
24   jury.  So okay.  I don't know how it would change what I'm
25   about to do.  None of that was --
```

1        MR. SOFER:  I don't think the today -- obviously

2    if this would continue to have problems, but I don't think

3    the one day is really going to knock us off our case, Your

4    Honor.

5        THE COURT:  I understand.  Well, unless there's

6    any objection, I think I'll cool the jury down, tell them

7    what the problem is and ask them to return tomorrow morning

8    at 8:30.  I hate to have them -- I don't know, I just hate

9    to have them sitting around.

10       MR. BOSS:  This might give us an opportunity to

11   try to work out some stipulations.

12       THE COURT:  Oh, it will.

13       MR. HARTMAN:  Judge, should we then plan on going

14   a full day tomorrow?

15       THE COURT:  Pardon?

16       MR. HARTMAN:  We'll go a full day tomorrow

17   instead of the half day?

18       THE COURT:  Yeah.

19       MR. SOFER:  And Judge, we do have some other

20   matters we can deal with this morning here in court.  It

21   won't take very long but it will take some of their --

22       THE COURT:  I'm told there's a baseball game down

23   the street tonight too so maybe we can all go there.

24       All right.  Let's do that.  I don't -- in terms

25   of fairness to the jury I hate to have them sitting around

```
 1   hour by hour.
 2                   (Jury brought in.)
 3              THE COURT:  Ladies and gentlemen, as I think Amy
 4   told you a few minutes ago, we have some serious technical
 5   difficulties, namely the system that was working yesterday
 6   is not working, and we have no idea.  We've been trying for
 7   more than half an hour, maybe 45 minutes or even longer to
 8   find out what the problem is.  The audio apparently works
 9   but the projection portion does not, and we're not in a
10   position to proceed until either that is fixed or some
11   alternative arrangement is made.  People who may be able to
12   fix it are on their way.  They won't be here for another
13   couple hours, and who knows how long it will take to fix
14   it.  So in consulting with the lawyers, I think the most
15   sensible thing to do, and I deeply regret this for lots and
16   lots of reasons, is simply to adjourn for the day.  I would
17   ask that perhaps late this afternoon you call by 5:00.  I
18   fully expect we're going to proceed tomorrow morning, and
19   I'd actually hoped to adjourn a little early but I think we
20   better plan on a full day.
21              I have, among other things, talked to the lawyers
22   about their projection for the time that the case will
23   take.  Obviously one day of testimony, one day off isn't
24   going to get us along very quickly, and they are quite
25   confident, and I am, that the time table that I projected
```

1    to you during the voir dire, namely getting the case to you

2    in early July looks like a very doable time table.  And

3    actually we had talked yesterday because there's still some

4    things that we have to tend to and work out that -- some

5    other matters that I have to resolve with the lawyers.  We

6    were actually planning on adjourning tomorrow early to tend

7    to those and give you a bit of a break.

8          So that's about all I can tell you.  It's like

9    the airplane pilot who after the airline's told you the

10    flight's been delayed a little bit and now it's been

11    canceled due to mechanical difficulties and you have to go

12    find yourselves a hotel, at least you don't have that

13    problem.  You can all go home, whatever, you can show up to

14    work if you want.  I'll leave that entirely up to your

15    judgment.  And I regret this, and this was totally

16    unexpected.

17          So do call late this afternoon, maybe before

18    4:00.  Why don't you call maybe 4:00, 4:30 so at least you

19    are sure to get through and find out.  And we will indicate

20    on the recording one way or another whether we will be

21    proceeding.  I fully expect to.  I mean, I made very clear

22    to the people responsible for this that if it means going

23    out and getting outside vendors to provide whatever it

24    takes, we will do that.

25          MR. SOFER:  Your Honor, may we approach just one

1    moment before you let the jury go, please?

2              THE COURT:  Sure.

3                   (A side bar conference was had on the

4                   record.)

5              MR. SOFER:  I just wanted to ask Your Honor to

6    please tell the jury this isn't the government's fault.  I

7    don't want them to think it's our fault.

8              THE COURT:  Whose fault is it?  Volunteers?

9              MR. HARTMAN:  I'll take it.

10             MR. SOFER:  Give it to Steve.

11                  (A side bar conference was had.)

12             THE COURT:  The one thing I did want to mention

13   too, nobody was monkeying with the equipment.  This is the

14   gremlins coming from outside somewhere.  It wasn't as

15   though any of the lawyers, or trust me, not me, was fussing

16   with the equipment.  It simply happened.  And short of

17   asking you if any of you brought a camera and screwdriver

18   that we can use on this stuff, I was going to say just

19   another steel tip to the boot maybe and go to work.  We'll

20   do the best we can and appreciate your patience and good

21   humor, and unfortunately the Mud Hens don't open until 7:00

22   tonight.

23             THE JUROR:  Can you get us tickets?

24             THE COURT:  I'm going to try to get myself a

25   ticket.  Thank you for your patience, and the low bidder,

1    what else can I tell you?  Thank you all very much.  And

2    especially for your understanding.  We'll see -- I hope to

3    see you tomorrow morning at 8:30 .

4                     (Jury left the courtroom.)

5              THE COURT:  What I would suggest is that perhaps

6    Mr. Boss and Mr. Sofer, somebody on your side who is able

7    to perhaps explain what sort of systems and requirements

8    technologically you would have, get on the phone with --

9    start with your supplier and I want simply -- I'm going to

10   go ahead and authorize you to order if they can put

11   something together that would work, what I'd like to have

12   them do, if that's possible, would be to get down here

13   today to set it up and try it.  I think what we need are at

14   least the screen for the parties to see and a screen for

15   the jury to see.  That's literally jury rigged but I don't

16   think we can do any better than that in terms of a back-up

17   system.  So if you can get to work on that, if the others

18   of you can be working on the whatever other issues need

19   addressed between you, I will be available.

20             Maybe let me know whenever you're ready to

21   proceed with -- whenever you know anything definitive about

22   that, and also about the stipulations or whatever.  I have

23   looked at the motions that are pending.  Maybe we can

24   address those sometime, and I'm perfectly willing to do

25   whatever we can do today and take as long or as little time

1   as we need.  And we'll go from there.  On the weapons,

2   those are the firearms in those photos are the ones that

3   were rented out of Clelands.

4          MR. SOFER:  They were rented out of Clelands or

5   provided by the government's cooperating witness for

6   shooting.

7          THE COURT:  Right, just so you know, my

8   inclination, and this is not to cut you off in regard -- I

9   don't see any reason to introduce the swords, but I do for

10  the firearms.

11         MR. SOFER:  We can argue the swords.

12         THE COURT:  You can argue it.  You're just going

13  to show the pictures and say that's what they were and

14  that's it.

15         MR. SOFER:  For the swords certainly.  The guns I

16  think we'll have in the courtroom, along with some of the

17  very small amount of the other physical evidence like

18  computers, some of the bigger -- we're not putting in

19  pieces of paper generally, but sort of physical items for

20  the most part we will bring in.  We certainly -- if The

21  Court has reservations about the swords, for instance, we

22  wouldn't need to bring the swords in.  We can put the

23  pictures of the swords.  Guns, yes, computers, yes, maybe a

24  phone here or there, those kinds of items we're likely to

25  bring.

```
 1              THE COURT:  Obviously firearms don't go back to
 2     the jury room.  I'd be frightened about that for a number
 3     of reasons.  We'll see.  Okay.  What else -- anything else
 4     we have to talk about.
 5              MR. SOFER:  We have two issues that came up
 6     yesterday, Judge.  We'd like to -- we -- it sort of
 7     happened quickly.  We haven't talked about this at all,
 8     counsel had asked us to move witnesses from the courtroom I
 9     guess yesterday or the day before, and we have two -- two
10     agents who we've essentially been working with throughout
11     the preparation of the case and Rob --
12              THE COURT:  Agent Coats and --
13              MR. SOFER:  And Agent Gubanich, you've seen both
14     of them testify.  Given the possible flexibility of the
15     case --
16              THE COURT:  Counsel, I have no problem with the
17     two case agents attending.  It's generally the other
18     witnesses.  These guys, if they're going to cheat, they're
19     going to cheat whether they sit here and pick up on it or
20     if they go back to the office.
21              MR. SOFER:  They're not going to cheat, Judge.
22              THE COURT:  I understand, but given that.
23              MR. BOSS:  Judge, it isn't that we would expect
24     them to cheat or not cheat.  The ability to listen to
25     another witness' testimony allows that opportunity.
```

```
 1              THE COURT:  Let me suggest this to you.  Why
 2    don't they be excluded when and if one of them is
 3    testifying.
 4              MR. SOFER:  That's fine, Judge.
 5              THE COURT:  I mean, the video is the video,
 6    and --
 7              MR. BOSS:  I certainly have no objection about
 8    them watching the videos.  They've certainly seen them a
 9    number of times.  My concern is that certain cross
10    examination, and I'm thinking about cross examination
11    primarily of Mr. Griffin, he may say certain responses that
12    would potentially taylor the testimony of the other
13    witnesses.
14              THE COURT:  Why don't you --
15              MR. SOFER:  That's always true, Judge.  That's
16    always true when you have a case agent sitting in court
17    along with the other witnesses.
18              MR. BOSS:  We have no objection to the one case
19    agent.  It's having more than one --
20              MR. SOFER:  And if this was a one-week trial --
21              THE COURT:  I understand.  I assume all of
22    counsel to join in that objection and I'm going to permit
23    them to attend.
24              MR. SOFER:  The other thing you asked for
25    yesterday -- I'm sorry, Judge.
```

1          THE COURT:  Good ahead.

2          MR. SOFER:  The other thing --

3          THE COURT:  Let me say counsel, I'll reconsider

4    if you think there's a particular point at which you would

5    make that request, okay.

6          MR. BOSS:  Thank you.

7          THE COURT:  And then you can come up and renew it

8    and I'll hear you out.  Okay.  But as a general rule, I

9    think it's a fair request.  Go ahead.

10         MR. SOFER:  The other thing Your Honor had asked

11   yesterday and defendant Amawi's counsel had asked for any

12   kind of written agreements.  And in fact, we searched and

13   did find something in the nature of an agreement.  I want

14   to accept it -- to The Court -- I'd like to give it to Your

15   Honor to take a look at it and make a determination about

16   whether The Court believes it's discoverable.

17         THE COURT:  Okay.

18         MR. SOFER:  That's, I think, from the government,

19   Judge.

20         THE COURT:  All right.  We'll go to work on the

21   other stuff.  And as, hey, if you guys -- if you can get a

22   hold of your -- get going on that.

23         MR. BOSS:  We will, Judge.  And what I discussed

24   with Mr. Sofer a moment ago was the possibility of the

25   defense teams meeting to try to work out agreed

1   stipulations and proposals, and later today we'll try to

2   meet with the government in bunk to hammer things out if we

3   can.

4            THE COURT:  There's a polycom speaker phone in

5   the conference room.

6            MR. BOSS:  I'd like to just have us all sit down

7   together if we can.

8            MR. SOFER:  We'll either sit with them or if we

9   can stand or sit in the same room, I mean that facetiously.

10           THE COURT:  You seem to be doing pretty well in

11  here.

12           MR. SOFER:  We're willing to sit with them, and I

13  don't know if they're willing to sit with us, but we're

14  certainly willing to do that.  We can do it sometime today.

15           THE COURT:  Okay.  But if it's convenient for any

16  purpose to use the conference room, go ahead.  Might find

17  it helpful just because of the speaker phone.  And Amy can

18  show you how to turn it on and dial whatever the number is

19  and you can all talk at the same time.

20           MR. EL-KAMHAWY:  Just a little bit of delay with

21  regards to the motion on the firearms.  It is our motion --

22  it is -- our primary concern is that our client never went

23  to Clelands, never touched it, never seen it, and how

24  prejudicial it will be to our client when it's published.

25           THE COURT:  Yeah, and on the other hand I think

1    that's always the case whenever there's more than one

2    defendant on trial.  It's always a risk spilled over, and I

3    will make very clear in the instruction, and the evidence

4    will show that.  It will be self evidence from the

5    evidence.  I can tell them quite simply whatever

6    consideration you give to that evidence cannot enter into

7    your deliberations with regard to Mr. El-Hindi.

8         MR. SOFER:  Well, the problem with that, Judge,

9    is that's I don't believe an accurate description of the

10   law, in a conspiracy case where one is liable --

11        THE COURT:  You're right.  I would make clear

12   that, ladies and gentlemen, there will be no evidence that

13   Mr. El-Hindi used any of these firearms himself, period,

14   end of discussion.  I think you're right.  It's an overt

15   act alleged in the indictment.

16        MR. SOFER:  It is, Your Honor.

17        MR. EL-KAMHAWY:  Your Honor, respectfully those

18   firearms are depicted in other pictures and videos that

19   will be played to the jury particularly, and I will go

20   along with Mr. Sofer's assumption as what the definition of

21   the conspiracy and when it's published it kind of rubs on

22   just sitting there even with the instruction, so --

23        THE COURT:  If I let -- if I let them in at all,

24   I'll give some sort of instruction if you want.  If you

25   want to propose one to me, I'll consider it.  Okay.

1  Anything else?

2          (A brief discussion was had off the record.)

3      THE COURT:  Thank you.

1                        C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript

4      from the record of proceedings in the above-entitled matter.

5

6      S:/ Angela D. Nixon

7      --------------------------              -----------

8      Angela D. Nixon, RPR, CRR                Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25