1                 UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF OHIO
2                     WESTERN DIVISION

3    UNITED STATES OF AMERICA,      )  Docket No. 3:06-CR-719

4            Plaintiffs,            )  Toledo, Ohio

5                v.                 )  April 21, 2008

6    MOHAMMED AMAWI, ET AL.,        )

7            Defendants.            )

8    ------------------------------

9            TRANSCRIPT OF JURY TRIAL, VOLUME 30
             BEFORE THE HONORABLE JAMES G. CARR
10              UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:    Gregg N. Sofer
                            David I. Miller
14                          Jerome J. Teresinski
                            U.S. Department of Justice
15                          10th & Constitution Avenue, NW
                            Washington, DC 20530
16                          (202) 353-3464

17                          Thomas E. Getz
                            Justin E. Herdman
18                          Office of the U.S. Attorney
                            801 Superior Avenue, W
19                          Cleveland, Ohio 44113
                            (216) 622-3840
20
     For the Defendant      Timothy Ivey
21   Amawi:                 Edward Bryan
                            Amy Cleary
22                          Jonathan Whitmer-Rich
                            Office of the Federal Public Defender
23                          750 Skylight Office Tower
                            1660 West Second Street
24                          Cleveland, Ohio 44113
                                      (216) 522-4856
25

```
 1                          Elias Muawad
                            Muawad & Muawad
 2                          Suite 209
                            36700 Woodward Avenue
 3                          Bloomfield Hills, Michigan 48304
                            (248) 594-4700
 4    For the Defendant
      El-Hindi:            Charles M. Boss
 5                         Boss & Vitou
                           111 West Dudley Street
 6                         Maumee, Ohio 43537
                           (419) 893-5555
 7
                           Stephen D. Hartman
 8                         Kerger & Kerger
                           Suite 201
 9                         33 South Michigan Street
                           Toledo, Ohio 43602
10                         (419) 255-5990

11                         Alek H. El-Kamhawy
                           Raslan, El-Kamhway & Pla
12                         Suite 3FE
                           1700 East 13 Street
13                         Cleveland, Ohio 44114
                           (216) 928-1500
14
      For the Defendant    David L. Doughten
15    Mazloum:             4403 St. Clair Avenue
                           Cleveland, Ohio 44103-1125
16                         (216) 361-1112

17                         Jeffrey J. Helmick
                           Helmick & Hoolahan
18                         2nd floor
                           1119 Adams Street
19                         Toledo, Ohio 43624-1508
                           (419) 243-3800
20

21                         Mohammed Abdrabboh
                           1620 Ford Avenue
22                         Wyandotte, MIchigan 48192
                           (734) 283-7000
23

24
      Court Reporter:      Angela D. Nixon, RPR, CRR
25                         1716 Spielbusch Avenue
                           Toledo, Ohio 43624
```

1                         (419) 260-5259

2

3    Proceedings recorded by mechanical stenography, transcript

4    produced by notereading.

```
 1              THE COURT:  I think Mr. Ivy's calling in on the
 2   bridge line in just a moment.  I'll be right back.
 3              Do you have a pending ex parte motion regarding a
 4   CJA motion or not?  Is it only an El-Hindi motion, or do
 5   you have one as well?
 6              MR. DOUGHTEN:  No.  It was only El-Hindi.
 7              THE COURT:  And I sent that in yesterday.
 8              MR. HARTMAN:  Saw that.  Thank you, Judge.
 9              THE COURT:  Why don't we go ahead and get started
10   with whatever the issues are, and we can pickup -- at least
11   tell me what the -- Amy, here the -- just some stuff.
12              I guess we probably should wait.
13              MR. SOFER:  Is the defendant's, Masloum's,
14   appearance being waived?
15              MR. DOUGHTEN:  Yes, it is, Your Honor.
16              THE COURT:  And you and Jeff are going to play
17   tag team this morning.  Is that right, David?
18              MR. DOUGHTEN:  Yes, it is.
19              THE COURT:  No problem, depending upon how long
20   the hearing lasts.  I'm just reading Mr. Getz E-mail.
21              Mr. Ivy, can you hear me okay?  You can hear me
22   okay, Mr. Ivy.
23              MR. IVEY:  Yes, I can, Your Honor.
24              THE COURT:  Okay.  If you can't hear other
25   people, let us know.  I just opened an E-mail from
```

1   Mr. Getz.  What's the problem?  Let's start -- where are

2   you with producing your version of transcripts?

3          MR. HARTMAN:  Your Honor, we have been producing

4   transcripts and excerpts separately.  I would say we have

5   produced probably 75 percent of the transcripts.  We're

6   ready to produce the rest, I think, today, I believe; and

7   we're --

8          THE COURT:  Today, by when?

9          MR. HARTMAN:  Noon.

10          MR. BOSS:  There are quite a number of them that

11   the staff are presently typing the excerpts that we've

12   already identified so it can be transmitted electronically

13   to the Government as well as the forensic evidence people.

14          THE COURT:  Well then, it looks as though we're

15   going to have to -- you want to do it all at once; is that

16   right?  And you haven't seen them, correct?

17          MR. SOFER:  What -- by all at once, do you mean

18   discussing this all at once?

19          THE COURT:  Yes, the issues relating to the

20   various transcripts.

21          MR. SOFER:  We're here, Judge; and if you have a

22   little time, I think we might as well begin.  But I do

23   think, in order for us to address them, obviously we have

24   to have them all.

25          THE COURT:  Why don't we talk about the hearsay

```
 1    and relevance issues.  It seems to me that you don't

 2    need -- if I understand correctly, you don't need all the

 3    transcripts.  Because obviously, based on what you've seen

 4    already, you have issues you want to raise.

 5              MR. SOFER:  We do, Judge.

 6              THE COURT:  Let me declare a time -- just a quick

 7    time out.  How are we doing with the stipulations?  Are

 8    they pretty much put to bed, what I call definitions?

 9              MR. HERDMAN:  Your Honor, this is Justin Herdman.

10    I finished the clean list.  I just need to index them as we

11    discussed last night, and I should have that done this

12    morning.

13              THE COURT:  Okay.  So far as you're aware,

14    Mr. Ivy, has Mr. Whitmer seen the -- is he doing the work

15    for your side on that?

16              MR. IVEY:  He is, Your Honor.  My understanding

17    is -- I spoke with him yesterday on the phone.

18              THE COURT:  I'm sorry.  If you're on a speaker

19    phone, probably get off, because --

20              MR. IVEY:  Okay.

21              THE COURT:  -- you were breaking up.

22              MR. IVEY:  Okay.  Is this better?

23              THE COURT:  That's somewhat better, because it

24    came out resembling Greek when you were speaking.

25              MR. IVEY:  All right.
```

1          THE COURT:  And I don't think you were -- I don't

2     think you were speaking Greek, but go ahead.

3          MR. IVEY:  No.  From my understanding is that

4     Mr. Whitmer-Rich -- the conversation --

5          THE COURT:  He spoke with the Government at 4:15

6     yesterday and didn't know about the conversation.

7          MR. HERDMAN:  Your Honor, I think we're down to

8     like one.

9          THE COURT:  Okay.  We'll fuss with that at some

10    point.  And in fact, if you and he are talking to each

11    other and want to speak to me sometime during the day, just

12    call my office; and they'll interrupt whatever I'm doing to

13    talk to you.  Okay?

14         MR. IVEY:  Okay.

15         THE COURT:  Okay.  Let's turn now to the issues

16    on hearsay -- first hearsay, and then -- and maybe if --

17    unfortunately, I didn't bring all those transcripts that

18    you gave me yesterday over the weekend, but perhaps we can

19    talk about some specific examples or if you want to outline

20    generally what your concerns are.

21         MR. SOFER:  I think a general outline, Judge,

22    will allow the Court to at least begin to decide the issue.

23    The major question here is whether or not the defense can

24    essentially put into evidence the defendants' statements

25    through Mr. Griffin and through cross-examination of

1  Mr. Griffin.  And the basic issue is like in any case

2  whether or not the defense can put in what I believe, in

3  their opinions, is -- well, the Government's opinion is

4  self-serving hearsay.  In other words, if the Government

5  played portions of tapes, the defense now wishes to.  And I

6  think that Mr. Ivy said yesterday that they do not -- they

7  are not interested in actually introducing the tapes,

8  themselves, into evidence through Mr. Griffin.

9        But to the extent that we have seen larger chunks

10  of transcripts from the El-Hindi team, we suspect that they

11  are going to attempt to put these chunks of transcript into

12  evidence through Darren Griffin.  And I don't believe that

13  they can do that, Judge, for a variety of reasons.  The

14  first one being that it is hearsay.

15        801(d)(2) allows a party to put in admissions of

16  the party opponent.  But that does not allow a defendant to

17  put in -- his own self-serving statements in through

18  another witness.  In fact, the rules are clear.  The case

19  law's very clear that that would undermine the entire

20  principle that's about hearsay essentially if a defendant

21  was able to do that.  And so all we're concerned about from

22  a general standpoint is that the defense not be permitted

23  to put in swaths of recordings through the Government's

24  witness.

25        If they want to do that, if they want to say --

1    if they want to be able to argue that certain things were

2    happening at that period of time, then they have to

3    testify.  I mean, there has to be a witness on the stand

4    who can testify about this.  And so if -- if somebody

5    wanted to cross-examine Mr. Griffin about statements, then

6    certainly they could ask the usual questions.  Perhaps if

7    they'd be interested in looking for prior inconsistent

8    statements, there may be some other reason to cross-examine

9    him.

10           But even if those statements -- for example, if

11   the exception to the hearsay rule was a prior inconsistent

12   statement, even then the Court would have to give an

13   appropriate instruction to the jury as to what these other

14   statements are.  In fact, they're not coming in for the

15   truth instead attempting to appease the witness.

16           And so again, from a general standpoint, a

17   defendant's own statements are hearsay, particularly if

18   they are self-serving; and we've seen swaths of transcripts

19   that look to be exactly that.

20           The rule of completeness does not apply to these

21   statements either.  The rule of completeness is a very

22   narrow -- narrowly tailored rule which talks about when the

23   wrong impression is made -- you know, clearly wrong

24   impression is made by playing only a portion of the tape or

25   introducing only a portion of the document; and it leaves

1  some factual misrepresentation essentially out for the

2  jury.  The rule of completeness would apply, but we don't

3  believe that that rule applies to anything here.

4        The defense may try to argue that this evidence

5  is coming in to show state of mind of the defendants; and

6  certainly, given the way that they've put this together,

7  the kinds of transcript we're getting, that would visciate

8  essentially the need for any defendant to testify in any

9  case if they could use -- if they could use this -- this

10  state of mind concept essentially to -- to allow vast

11  swaths of hearsay to come in.  And again out of court

12  statements of somebody and there's no -- there is no

13  particular, I believe, exception to the hearsay rule.  So

14  from a general standpoint that's our concern.

15        Certainly, the defense can use the tapes to

16  cross-examine the witness if the witness gives an answer to

17  questions that allow the tapes to be played.  And that

18  foundation also has to be laid.  Don't get to just play the

19  tapes for the witness and ask to confront the witness, for

20  instance, with a prior consistent statement.  They ask the

21  witness, Did you do this?  Did you say that?  And then --

22  even then only those portions of the tapes which are

23  Mr. Griffin's statements would be in play.  And so that's

24  our -- that is our general concern, and I don't think the

25  defense can or should be permitted to essentially

 1   circumvent the rules of evidence in this way.

 2          Again, we're guessing, of course, to some extent

 3   that this is what's going on; but Mr. Ivy's statements

 4   yesterday seem consistent with all of the rules and

 5   procedures and the law.  We have given what we've gotten

 6   from the El-Hindi team.  We have greater concern because of

 7   the context that this appears that they are looking to

 8   introduce these tapes.

 9          MR. HARTMAN:  Suffice it to say, we disagree,

10   first of all.  I disagree with the Government's --

11          THE COURT:  Hold on.  Can those of you on the

12   phone hear what's being said?  Because if not, I should

13   have said this for you, Mr. Sofer, too.  You're welcome to

14   remain seated if -- are there any problems with --

15          MR. IVEY:  Your Honor, this is Tim Ivy.  I could

16   hear Mr. Sofer fine.

17          THE COURT:  Okay.

18          MR. HARTMAN:  Can you hear me?

19          MR. IVEY:  I can hear you, Steve.  I like what

20   you're saying.

21          MR. DOUGHTEN:  This is David Doughten.  I can

22   hear Steve without the phone.

23          THE COURT:  Go ahead.  Why don't you stand up

24   just because it's -- and if you can't hear, say so.

25          MR. HARTMAN:  Suffice it to say, we disagree with

1    the Government on a number of fronts, the rule of

2    completeness.

3           Number two, I don't think it's appropriate to

4    talk about a blanket issue of hearsay.

5           THE COURT:  You know, I agree.  And I'm

6    reluctantly coming to the conclusion that we better adjourn

7    this segment until all the transcripts have been made

8    available.  Start tomorrow morning, we'll start the trial

9    on Wednesday.  There's nothing else we can do, because I

10   suspect that we're going to need the time to go through

11   these statement by statement, tape by tape, ruling by

12   ruling.  I don't know how else we can do it in an

13   organizable, sensible way.

14          My question to you is generally, though:  Are

15   you -- are you -- what are the purposes for which you are

16   offering various statements?

17          Let me ask you this predicate question:  Is the

18   representation correct that you -- and I assume it is, but

19   just for the record -- is the representation that Mr. Sofer

20   made correct that you have provided them with statements,

21   you have designated portions of recordings and the related

22   transcripts in anticipation of trying to use them during

23   cross-examination, which include conversations, A, that

24   were -- are portions of the conversation we've heard; in

25   other words, immediately proceeding or following and/or B

1    are separate and distinct, maybe part of the overall

2    discussion during a particular period of time, but are

3    separated, but as to which there was intervening discussion

4    or events or activity?

5           MR. HARTMAN:  Yes, Mr. Sofer is correct; and we

6    brought this issue up once before with -- with the Court.

7    I don't know that we've reached a resolution about that.

8           THE COURT:  They're both kinds of excerpts.  In

9    other words, the two people said A, B and C; and you now

10   want to show D and E -- two people said D and E.  And you

11   want to show X and Y.

12          MR. HARTMAN:  We do have both --

13          THE COURT:  Okay.

14          MR. HARTMAN:  -- in part because --

15          THE COURT:  And then what -- I mean, what

16   extent -- I mean, for what purpose are you offering them?

17   Are you offering them to show -- I would assume A, B, C,

18   now D and E will be for completeness.  And I mean, why are

19   you playing -- or anticipating one play the various

20   portions?  This is a general proposition.

21          MR. HARTMAN:  There are a whole host of reasons

22   that we intend to play other portions of the X and Y, as

23   you call it.  Very little of it has to do with the truth.

24   We -- we will obviously be able to explain that to you in

25   more detail as we do it, but it's -- it's really -- I mean,

1   very little of it has to do with the truth -- being offered

2   for the truth.

3          THE COURT:  Let me ask you this:  I mean,

4   obviously assuming that these are played or some portion,

5   is it to -- for example, let's say Mr. El-Hindi says, Here

6   I'm doing this.  Is it to prove that he was doing that, or

7   is it -- or this, whatever the this is?  And if so, it

8   would seem to me to say to Mr. Griffin, at some point

9   during that conversation, did this occur?  And he said,

10  Yes, it did.  Then, I don't think we need the recording.

11  If he says, No, it didn't, then I think we probably do need

12  the recording.  And one exception that comes to mind is the

13  presence sayings impression 8031, but I won't pretend to be

14  an expert on that particular rule.

15         MR. HARTMAN:  I -- I'm sorry.

16         THE COURT:  No.  Go ahead.

17         MR. HARTMAN:  I can tell the Judge specifically

18  that our expert, Dr. Shy, has identified a number of

19  different reasons to play these recordings to show the kind

20  of communication, A, that was happening, the kind of

21  miscommunication that was happening, which is not offered

22  for the truth of what was being said.  For an example, the

23  work training, the -- the -- the 18 to 20 different

24  contexts in which Mr. El-Hindi uses the word training

25  talking to Mr. Griffin where Mr. Griffin is trying to make

1    it sound another way entirely; and we're not trying to

2    offer for the truth of what the training was according to

3    Mr. El-Hindi, but the fact that the communication between

4    the two was so far off.

5         THE COURT:  Why is it appropriate to wait and

6    have you do that in your own case rather than

7    cross-examination?

8         MR. HARTMAN:  Well, part of it -- it can be --

9    and we didn't get that ruling from the Judge.  But part of

10   the reason not is because that's the impression that he

11   made on the stand during his direct.  And that's where the

12   C, D and E come in.  And if the Judge tells us to hold

13   on -- X and Y for our own case, that's fine.  We can do

14   that.

15        MR. SOFER:  Judge, if -- if even an inkling or a

16   piece of the reason to put this in relates to the testimony

17   of this Dr. Shy, I think we're headed down a very difficult

18   and long path.

19        THE COURT:  Well, I would agree that it seems to

20   me that as a general proposition that it's appropriate to

21   permit the defense to offer evidence that shows that

22   Mr. Griffin was undertaking to direct the conversation and

23   as it were a defendant was not rising to the bay or for

24   lack of the conversation as it were to speak for itself in

25   that regard and to let it at some point be played to the

1   jury, because I think that it's a fair approach to say,

2   Wait a minute.  El-Hindi was talking about doing X and Y

3   and Griffin kept trying to link that with A and B.

4        But to that extent, since we have a -- they'll

5   speak for themselves; and the inferences that can be drawn

6   from that.  Ladies and gentlemen, we played you 2, 4, 0,

7   24, however many excerpts; and every single time El-Hindi

8   would talk about X or Y or Z or U or W, Griffin turns

9   around and starts talking about A and B.  You heard the

10  recordings.

11       I don't think we need to -- Mr. Shy to tell us

12  that.  I have real reservations about his -- admissibility

13  of his opinions, because I think if the evidence is heard

14  by the jury, it will be able to understand that.  It may

15  take a long time for them to lay that out; and as I'm

16  indicating, I have a concern with that being done during

17  cross-examination.

18       MR. SOFER:  And that's all I'm saying, Judge --

19       THE COURT:  I'm not totally foreclosing that,

20  because I can also see in terms of simply impeaching

21  Mr. Griffin's credibility and highlighting his status,

22  although cast the searchlight rather than a flashlight.

23  His status, if I'm understanding the defense theory, is

24  simply out there fishing and trying to drag whomever and

25  whatever he can into a net, so he can continue to get

1   $5,500 a month.  I think it may well be a fair area of

2   cross-examination to say with some frequency and regularity

3   and deliberately you would interject the issue of, quote,

4   training into the conversations you've had with any -- with

5   Mr. Amawi, Mr. El-Hindi, Mr. Masloum.

6          And if he says, No, it didn't; they brought it

7   up, well then, it may be appropriate to permit some of the

8   excerpts -- excerpts to come in.  If he says, Yes, I did,

9   then fine, point is made; and we can make whatever use of

10  it you want either an argument or you can show that this

11  was, in fact, so.  And I think -- but I think that the --

12  it's an entirely -- you're talking about a conspiracy.

13         Conspiracy is both acts and speech.  And a lot --

14  the Government's offered what it believes proof of both

15  kinds.  And I think the defendants are entitled to say,

16  Wait a minute.  You know, yeah, it said that.  But let's

17  listen to the rest of the conversation, or let's listen to

18  what we talked about later down the road.  Hear me out.

19  This is what I kept trying to go to.  I kept raising the

20  issue of whatever -- the subject of whatever, the topic;

21  and every time I did, Griffin would come back.

22         But I -- to that extent, I think that's defense

23  case; and we would hear it then.  And candidly, I'm not

24  quite sure as to how we do that procedurally while

25  permitting the defendants if they so desire to elect not to

1  testify themselves.  That's another whole issue, and I

2  don't know the answer to that issue.  We don't have to

3  worry about that hopefully sooner than later, but right now

4  this morning --

5          MR. SOFER:  And I think, Your Honor, that the

6  Government does not object to this notion of

7  cross-examining Mr. Griffin on this subject.  I think the

8  defense should be permitted to cross-examine, and I'm sure

9  they'll have their own way of doing it in the exact manner

10 that Your Honor just suggested.

11         And that's all we're saying, is that we just have

12 to follow the rules here; and the rules are, you can't put

13 in hearsay, and -- but you can cross-examine.  And if the

14 witness does deny saying certain things and they want to

15 then put them into -- these statements in to impeach him,

16 then Mr. Griffin's statement certainly could be done that

17 way.  And I think you could even, to some extent, do this

18 with some of the statements that the defendants,

19 themselves, as long as it's interwoven into an appropriate

20 cross-examination.

21         What the Government objects to is this notion of

22 putting in -- the conversations, themselves, into evidence,

23 which, again, appears to be what the defense was trying to

24 do.  And if they want to do that, you know, we have yet to

25 resolve whether the defense in this case is going to be

1   entrapment.  I understand -- said the defense does not have

2   to tell the Government that at this juncture.  On the other

3   hand, that's an issue that I think is important in trying

4   to analyze this.

5            If the defense is going to go with entrapment,

6   then they have to -- the Government has certain burdens;

7   the defense has certain burdens.  This is not the first

8   time this has happened in a courtroom, and there are a lot

9   of cases to describe how this is properly done.  That's all

10  we're asking is that they have to follow the rules.  And I

11  think Your Honor put your finger on it.  That is the

12  appropriate way of going about doing this, and I do think

13  it would be helpful to do this with concrete examples.

14           And by the way, I should say with Mr. Ivy on the

15  phone, we've -- we've -- it doesn't take a rocket scientist

16  to figure out why the defense has chosen what they've

17  chosen, I don't think.  Of course, we may find out we're

18  wrong about things.  But we have similar concerns about

19  some of the things that the -- the reason we sent you an

20  E-mail last night is we got a chance to take a look at all

21  of the Amawi clips or segments, and we have similar

22  concerns about those as well.

23           THE COURT:  Excuse me.  Excuse me.  Mr. Ivy, may

24  I suggest that -- for two reasons:  One, he's not here; and

25  it's difficult with the phone connection to hear him

1    clearly for whatever reason, that perhaps that is something

2    we can address late this afternoon specifically, because:

3    A, the volume of transcripts is apparently a lot less.  And

4    that may be -- and he'll be here later this afternoon.  And

5    you can at least have a trial move on.

6              As I was going to say -- my inclination at the

7    very least -- I think what I'm going to have Amy do is have

8    the jurors contacted and indicate that they need not report

9    until noon tomorrow.  If we can get started at noon

10   tomorrow, terrific.  If we can't, we'll contact them in the

11   morning.  We will start Wednesday at 8:30 no matter what.

12   If it means no sleep between now and then, that's the way

13   it's going to be.

14             And I understand -- you know, I want to do this

15   in an orderly and fair fashion and reach some decisions so

16   that we're not having sidebar every excerpt that is

17   undertaken to play.  And I would like every extent humanly

18   possible, given the limited amount of time we do have, to

19   at least make rulings on the specific excerpts so that the

20   defendants know and counsel know when they stand up what's

21   coming in now and what may come in later.  And I think

22   that's in everybody's interest.

23             The record should show that Mr. Helmick, the tag

24   team member for Mr. Masloum is here.

25             Jeff, we're talking about the -- obviously the

1    transcript issue; and before you came in -- or as you came

2    in, I was saying that as a general proposition where the

3    parties said A, B and C and an excerpt of D and E that's

4    linked approximately to the conversation there, may be

5    separated by a few minutes.  But anyway, it's clearly part

6    of the A, B and C discussion; and defendants want to show D

7    and E.  That probably is appropriate on cross-examination.

8    But where the conversation was about X and Y, probably not.

9         And in any event, to the extent that a series of

10   excerpts -- G and H, M and N, P and Q -- are all undertaken

11   to show that Griffin was a broad -- to use a fishing

12   analogy maybe casting a net, maybe fly-fishing, and that he

13   would keep returning one -- a defendant would start talking

14   about something, for example, maybe watching a video.  I'm

15   just speculating.  Okay.  And there may be conversations.

16        We all know the videos were introduced, and I

17   don't know whether we produced all of the audio.  The

18   viewing video, I know we did not.  But anyway, I'm groping,

19   because I don't know what you have in mind.  I haven't seen

20   the transcripts, but my point simply is that seems to me to

21   be defense case appropriate to the extent where you will be

22   defending contentions about intent and agreement by saying,

23   Hey, wait a minute.  In the agreement, it's unilateral,

24   because sure, there was a lot of talk about training

25   involving Griffin.

```
1              We kept talking about this, that and the other

2    thing, and to the extent that the excerpts that the

3    Government has seen that it finds troublesome are of that

4    sort.  And I would anticipate agreeing with it, Wait a

5    minute.  That's fine.  I accept that theory in general.

6    I'm not ruling, but it makes sense to me.  Look, you know,

7    because conspiracy is part conduct, the agreement part and

8    part conversation.  And I would expect -- quite candidly,

9    my inclination is to give you guys a pretty free hand at

10   that; but certainly, not to do it, doesn't seem to me the

11   next couple of days is appropriate.

12             The other thing you probably picked up on, I

13   think what I would like to do and I think what I have to do

14   is sit down on an excerpt-by-excerpt basis and go through

15   and rule on them before we bring Mr. Griffin back.  So, at

16   the very least, because I still don't have all the

17   transcripts from El-Hindi's side, okay, that's where we

18   are.

19             MR. HELMICK:  Thank you, Judge.

20             THE COURT:  I don't think we've missed anything.

21             Steve, go ahead.

22             MR. HARTMAN:  If I may, part of the problem is we

23   are overestimating the excerpts that we're going to use on

24   purpose.

25             THE COURT:  That's fine.  That's -- I would
```

1    rather do that and spend the time before the jury's back in

2    the building than spending a lot of time at sidebar.

3              MR. IVEY:  Your Honor --

4              MR. HARTMAN:  Tim, hang on one second.  Just so

5    we're clear, is the Court saying that for the purposes of

6    cross-examination, we're to be limited to playing excerpts

7    from conversations that Griffin -- that the Government

8    covered during direct?

9              THE COURT:  No.  No.  I don't know what I'm going

10   to do, okay, because I haven't seen it.  I think it's

11   crucial.  I can't rule on this in the abstract.  I'm trying

12   to sketch it out for you, as I sit here this morning, not,

13   you know, having some sense of what you have in mind.  But

14   I don't think I can rule on this generally in the abstract

15   and say, You figure out which covers covered because that

16   leaves you too much decision; and nobody knows.

17             These -- you know, like any other evidentiary

18   rulings, I've got to do it, you know, objection by

19   objection and ruling by ruling.  That's the way we do

20   things, one question, one objection, one ruling and one

21   answer sometimes.

22             MR. BOSS:  Judge, I'd just like to make an

23   observation regarding --

24             THE COURT:  Mr. Ivy, we'll get to you in a

25   second.

1          MR. IVEY:  Sure.  I'm sorry.

2          THE COURT:  Now Chuck Boss is speaking.

3          MR. BOSS:  As I'm thinking about the Government's

4    proposal to have portions -- for instance, there was a

5    couple of years and quite a few months and conversations

6    that predated the indictment where Mr. Griffin was with

7    Mr. El-Hindi; and there were conversations, among other

8    things, for instance, about Zubair and Khaleel, the two

9    boys from Chicago, which we believe are material and

10   important to our defense.

11         Now, if we have to wait until our direct case,

12   put Mr. Griffin on at that time to go over these matters,

13   it seems to me that it's going to cause a great deal of

14   confusion for the jury when it would be more efficient for

15   the jury's perspective and understanding to simply go

16   through and march through this stuff chronologically one

17   time instead of having to go back when we go on to our

18   direct case and have them, once again, go back and say, Oh,

19   well, this is being used to impeach what Mr. Griffin said

20   in that cross-examination section.

21         THE COURT:  Well, impeachment is different from

22   defense.  And again, I'm going to have to look -- another

23   good reason to look at what you've actually designated and

24   try to rule on that and hear you out.  And sitting here, it

25   occurs to me that it may be entirely appropriate for you to

1  allude; in other words, be like the coming attractions at

2  the movies, for you to at least allude:

3          Mr. Griffin, you've had several conversations

4  with Mr. El-Hindi during the course of the period of time

5  you were seeing him that related to the Ahmeds; is that

6  correct?

7          Yes.

8          And those conversations generally involved M, N

9  and O; is that correct?

10         Yes.

11         And I may even -- I would think about simply

12  saying. Ladies and gentlemen, this testimony is offered at

13  the present time simply to -- in anticipation of evidence

14  that you may hear when and if the defense elects to put on

15  a case.  I remind you, it doesn't have to, dah, dah, dah;

16  but if you want to kind of note -- at least say to them,

17  Folks, you hear the bugles over the hill.  Well, the

18  Calvary is coming.  It isn't quite here yet; but if it

19  doesn't get lost -- that's all.  I think that's, again, a

20  concern maybe separated by a matter of months rather than a

21  matter of days and weeks.

22         MR. SOFER:  A couple things about that, Judge.

23         THE COURT:  And again, I can't really say until

24  we look at the conversations.

25         MR. SOFER:  I understand.  But it does bring up

1    another issue, which is this notion of putting in

2    conversations that predate either by -- some cases by a

3    year or so, maybe more; and that's another relevance issue,

4    whether or not the defense can bring in conversations that

5    predate the charge of conspiracy by six months, a year or

6    more whether they indeed are relevant in any way, shape or

7    form.

8            And I go back to -- and counsel just said, Well,

9    if we call Mr. Griffin in our case to put in those

10   conversations, we're back to the same concept.  They

11   can't -- while there may be reasons on -- for particular

12   conversations that one can cross-examine the witness and

13   maybe even in some limited instances be able to introduce

14   some of these converse -- some of these portions, the

15   statements of the defendant are hearsay unless and until

16   there's an appropriate exception to the hearsay rule or

17   they don't -- they're not hearsay themselves.

18           And again, go back to -- and I do think this is a

19   preview of what we'll get to when we actually see these

20   conversations; but the notion of calling Mr. Griffin in the

21   defense case in order to introduce essentially the out of

22   court testimony statements of the defendants is highly

23   inappropriate.  If they want to put those statements in,

24   they have to get on the stand.

25           THE COURT:  It depends upon the purpose for which

1   the statements are made.

2          MR. SOFER:  Indeed.

3          THE COURT:  And I can't rule on those until I see

4   the statements.  So, we will -- what I would like to do, if

5   we can, is to -- Mr. Ivy has been waiving his hand in the

6   air -- and -- but what I'd like to do is get together this

7   evening, if it seems opportune to do so, maybe around 4:00

8   or 4:30 and have everyone in -- effect a practice run by

9   looking at what they are -- what they have designated and

10  with him here in person.  In other words, perhaps -- and

11  obviously with the defendants here as well.  I'm not really

12  sure they're entitled to be here, but I think it's better

13  that they are.  And then go from there.

14         Mr. Ivy, you've kept getting cut off.  The open

15  mike is now yours.  And if you can speak very slowly and

16  very clearly, because it may be the volume here.  I'm not

17  sure.  But it's -- the modulation is -- it's difficult, but

18  go ahead.

19         MR. IVEY:  Well, the first -- I had two points.

20  The first one I'm going to reserve, because the Court has

21  indicated we're going to get together this evening; and I

22  think I'd be more effective if I was in the courtroom.  So

23  I will reserve my arguments about the procedure and what's

24  proper on cross-examination for that time.

25         My other issue that I do want to bring up now is

1   my request to begin Wednesday morning; and the reason I'm

2   making that request is that whenever it is determined what

3   we can and cannot play, I need time to meet with visual

4   evidence to go over the technicalities of this.  I'm very

5   technically challenged quite frankly.

6          THE COURT:  Mr. Ivy, motion granted.  We'll start

7   on Wednesday, so everybody knows what the deal is.  I note

8   the Government's objection but I think it's too much to try

9   to handle and it leaves everybody too uncertain.  And we'll

10  start on Wednesday morning.  As I say, we will start at

11  8:30 Wednesday morning.

12         MR. IVEY:  And I really think that if we go

13  first, our issues will be the same.

14         THE COURT:  I understand.  I accept that.  And I

15  think you're absolutely correct.  Everybody will know

16  what's to come.

17         And I certainly hope that I will be able this

18  evening -- I do want to get together this evening, because

19  I don't want to let the time go.  And I certainly hope that

20  these very crucial movements will be made as to everything

21  has been designated, so everybody -- Government and defense

22  and the defendants between themselves know what is going to

23  come in and what isn't and what won't ever.  And perhaps --

24  and although I may be doing some reserving of the rulings

25  in terms of what we set off to one side in the defendants'

1    case, I'd like to focus on what's going to be admitted or

2    not admitted during cross-examination.  So if you can be

3    available by perhaps 4:30.

4            Angela, can you or Tracy --

5            THE COURT REPORTER:  Yes.

6            THE COURT:  I'm sorry.

7            MR. SOFER:  Judge, if I may, I don't know if you

8    wanted to deal with these now or this evening; but I just

9    want to preview a couple issues so that we are prepared

10   this evening to deal with them.

11           There remains a number of logistical problems.

12   The two biggest ones are we've received PDFs, I think,

13   again, only from the El-Hindi team; and for us to do a

14   side-by-side comparison of documents, we need a Word or

15   WordPerfect document, so we can throw them in the computer

16   and not sit there and go line by line ourselves.  That's a

17   very tedious and long process.  The computer can do it --

18   that much faster and much better than we can.

19           THE COURT:  Excuse me.  Is there any reason that

20   Counsel cannot comply with that request?

21           MR. HELMICK:  For some of the transcripts, yes,

22   there is, because we get them in PDF.

23           MR. BOSS:  These are the Government transcripts

24   principally that we're returning to them.  They refused to

25   give them to us in Word or WordPerfect despite the number

1    of changes that are made.  We are returning to them in the

2    same format that we received them.  We haven't been able to

3    change them.

4          MR. SOFER:  To my knowledge, that's not accurate,

5    Judge; but we'll talk to Counsel.  The bottom line is, if

6    we -- we don't have them in a Word document, then we're

7    going to -- it's going to take much longer, that's all, for

8    us to examine them.

9          THE COURT:  Talk with them.  I don't -- you --

10   your reach has exceeded my grasp with the technology.

11         MR. SOFER:  The other technical issue is --

12         THE COURT:  Mr. Helmick seems to be the

13   technology guru, or it may be even if -- if I can try to

14   put you in touch with some of the court people to see if

15   they can help.  But all I can say is comply with that

16   request if possible -- technically possible.

17         MR. SOFER:  Second technical issue is we have

18   found what we believe to be errors in -- and again, I've

19   had an opportunity now with Amawi as opposed to the

20   El-Hindi ones; and we found a number of errors in the

21   defense version of transcripts.  They include sections, not

22   very many of them, in which the Government maintains that

23   something is inaudible; and the defense has filled in that

24   blank.  We've asked on a number of occasions now, some of

25   these audios were sent out for some kind of enhancement.

```
 1              THE COURT:  Okay.  And you have an enhanced
 2   version?  Does anybody on the defense stand?
 3              MR. HARTMAN:  We have enhanced versions, yes.
 4              THE COURT:  Can you make those available now to
 5   the Government?
 6              MR. HARTMAN:  Yes.
 7              THE COURT:  Okay.  Mr. Ivy, do you
 8   have enhanced -- you say we, Mr. Hartman.  Is that the
 9   whole crowd or just El-Hindi?
10              MR. HARTMAN:  I don't know if we gave those to
11   the Government or not.  I don't think you asked us for
12   them.
13              THE COURT:  My question is --
14              MR. HARTMAN:  I meant the federal defenders.
15              THE COURT:  Mr. Ivy, do you have enhanced
16   versions?  If so, they should be made available to the
17   Government.
18              MR. IVEY:  To my knowledge, they are not; but if
19   they are, then I'll make sure we get them to them.
20              THE COURT:  Today?
21              MR. IVEY:  Yes.  My instructions to the people
22   doing this for me was that to every extent possible, use
23   the Government transcript.  So, I don't think we're going
24   to have a big issue on whatever they claim to have changed
25   or isn't right.
```

1              THE COURT:  The other thing I would contemplate

2    trying to accomplish, then, is a determination whether

3    there'll be one, two or three versions.  A version that I

4    say this is what I hear and that's what the jury's going

5    to -- what will appear in the transcript or if I can't,

6    we'll do a connection audibility -- sometime tomorrow --

7              MR. SOFER:  That's essentially what I was trying

8    to preview.  There aren't that many of these, Judge.  I

9    think this can be done in less than an hour.

10             THE COURT:  What about with El-Hindi, though?

11             MR. SOFER:  I don't know.  It's impossible for me

12   to answer that question.

13             THE COURT:  What about Masloum?

14             MR. SOFER:  No problem with Masloum.  As I

15   understand it, they're using Government transcripts; and I

16   would note for the record that I have heard, as Your Honor,

17   I think, that is, we tried to err on the side of being

18   careful.

19             THE COURT:  There was some marked -- some

20   occasional passages marked inaudible, and I knew what was

21   being said.  And we'll just have to -- we'll have to stop,

22   look and listen when the time comes.

23             MR. SOFER:  And again, the jury has been --

24   continued to be instructed that it's the audio that they

25   hear, not the transcripts.  I would object to multiple

```
 1   versions of transcripts.  I think we can --
 2           THE COURT:  I do think that it is within my
 3   discretion if they somehow seem equally plausible to allow
 4   the different versions.  It's -- it's vastly preferable to
 5   have a single version, but we'll try to work on that as
 6   well to the extent that you folks can.  But by all means,
 7   get them -- those of you who have enhanced versions, I want
 8   those in the Government's hands by 9:00 this morning -- or
 9   noon -- as soon as you can get them.
10           MR. HARTMAN:  The --
11           MR. IVEY:  Your Honor, what time would you like
12   us in court this evening?
13           THE COURT:  I'd like -- if you can be in the
14   building around 4:00, I may not be able to get with you
15   until about 5:00.  It depends.  I have an extremely full
16   day.  I'm going to try to -- unless Amy quits on me -- try
17   to get the couple of things that are set this afternoon,
18   get people on the phone earlier.  I'm going to try to move
19   as briskly as I can; but as -- 4:00 as soon thereafter as
20   I'm available.
21           MR. IVEY:  Okay.
22           THE COURT:  And I'm going to plan to work on into
23   the evening until our stamina and patience are exhausted or
24   it's not worth while, because there are things that can be
25   more properly attended to by adjourning until tomorrow
```

```
 1    morning.

 2              MR. IVEY:  Okay.

 3              MR. SOFER:  Lastly, Judge, I'm hopeful that

 4    before cross-examination continues, we can have the

 5    conversation, I think, the Court wanted to have beyond

 6    these transcripts which is --

 7              THE COURT:  That's fine.

 8              MR. HARTMAN:  What are the appropriate areas?

 9              THE COURT:  That's fine.

10              MR. SOFER:  -- for cross-examination generally,

11    so we don't end up at sidebar every other --

12              THE COURT:  That's fine.  Okay.  Let me just --

13    anything other -- that you want to mention now for the

14    Government?

15              MR. SOFER:  No, Judge.

16              THE COURT:  Okay.  And Steve?

17              MR. HARTMAN:  No, Your Honor.

18              MR. IVEY:  We'll -- we'll be up there this

19    afternoon by 4:00.

20              THE COURT:  I hope you can get in to Judge Leroy

21    and thank her, please, for her consideration; and I'll see

22    you this afternoon.  Drive carefully.

23              MR. IVEY:  Thank you, Your Honor.

24              THE COURT:  Huh?

25              MR. IVEY:  I just said, Thanks, Your Honor.
```

1               THE COURT:  Since when did you learn Greek?

2               Okay.  Jeff, anything for you at all?

3               MR. HELMICK:  No, not at this time, Judge.

4    Thanks.

5               THE COURT:  See you guys sometime after 4:00.

6               MR. SOFER:  Judge, I'm going to make copies of a

7    few cases and have them sent over to you on this -- that we

8    anticipate hearsay in particular if that's acceptable.

```
1                    C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    s:/ Angela D. Nixon

7    --------------------------              -----------

8    Angela D. Nixon, RPR, CRR              Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```