1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
2                         WESTERN DIVISION

3    UNITED STATES OF AMERICA,    - Docket No. 3:06-CR-719
                                  -
4      Plaintiff,                 - Toledo, Ohio
                                  - April 21, 2008
5            v.                   - Trial
                                  -
6    MOHAMMAD ZAKI AMAWI, et al.,-
                                  -
7      Defendants.                -
     -------------------------------

8
                       VOLUME 31, TRANSCRIPT OF TRIAL
9               BEFORE THE HONORABLE JAMES G. CARR
                  UNITED STATES DISTRICT CHIEF JUDGE
10
     APPEARANCES:
11
     For the Plaintiffs:      United States Attorneys' Office
12                            By:   Thomas E. Getz
                                    Justin E. Herdman
13                            801 Superior Avenue, W
                              Cleveland, OH 44113
14                            (216) 622-3840

15                            U.S. Department of Justice
                              By:   Jerome J. Teresinski
16                                  David I. Miller
                              10th & Constitution Ave, NW
17                            Washington, DC 20530
                              (202) 353-3464
18
                              Office of the U.S. Attorney- Austin
19                            By:  Gregg N. Sofer
                              816 Congress Avenue
20                            Austin, TX 78701
                              (512) 916-5858
21

22

23

24

25

1   For the Defendant Amawi: Office of the Federal Public
                            Defender - Cleveland
2                           By:  Amy B. Cleary
                                 Jonathan P. Witmer-Rich
3                                Edward G. Bryan
                                 Timothy C. Ivey
4                           750 Skylight Office Tower
                            1660 West Second St.
5                           Cleveland, OH 44113
                            (216) 522-4856
6
                            Muawad & Muawad
7                           By:  Elias Muawad
                            36700 Woodward Avenue, Suite 209
8                           Bloomfield Hills, MI 48304
                            (248) 594-4700
9
     For the Defendant        Kerger & Kerger
10   El-Hindi:                By:  Stephen D. Hartman
                              Suite 201
11                            33 South Michigan Street
                              Toledo, OH 43602
12                            (419) 255-5990

13                            Boss & Vitou
                              By:  Charles M. Boss
14                            111 West Dudley Street
                              Maumee, OH 43537-2140
15                            (419) 893-5555

16                            Raslan, El-Kamhawy & Pla
                              By:  Alek H. El-Kamhawy
17                            Suite 3FE, 1700 East 13 Street
                              Cleveland, OH 44114
18                            (216) 928-1500

19   For the Defendant        David L. Doughten
     Mazloum:                 4403 St. Clair Avenue
20                            Cleveland, OH 44103-1125
                              (216) 361-1112
21
                              Helmick & Hoolahan
22                            By:  Jeffrey J. Helmick
                              2nd Floor
23                            1119 Adams Street
                              Toledo, OH 43624-1508
24                            (419) 243-3800

25

1 Mohammed Abdrabboh
  1620 Ford Avenue
2 Wyandotte, MI 48192
  (734) 283-8405

3

 Court Reporter:  Tracy L. Spore, RMR, CRR
4 1716 Spielbusch Avenue
  Toledo, Ohio 43624
5 (419) 243-3607

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
 Proceedings recorded by mechanical stenography, transcript
24 produced by notereading.
25

**1**     (The jury is not present.)

**2**          THE COURT:  What I would propose we do is look at

-16:-19:-55  **3**  the excerpts that have been designated by Mr. Mazloum.   Does

-16:-19:-55  **4**  somebody have a set I can be looking at up here, so I can be

-16:-19:-55  **5**  following along, as it were.

-16:-19:-55  **6**          MR. SOFER:  What the government has are -- we have

-16:-19:-55  **7**  sort of examples of the kinds of problems that we've seen.   If

-16:-19:-55  **8**  you want, we could try using -- I don't know if the Court's

-16:-19:-55  **9**  system is working or not, but we could put them on the ELMO,

-16:-19:-55  **10**  then everyone can see them.  We don't have a full set because

-16:-19:-55  **11**  some of these were still -- we're going to have to listen to

-16:-19:-55  **12**  some of these.  We're in the process of having to listen to some

-16:-19:-55  **13**  of them.

-16:-19:-55  **14**          Just so it's clear, first of all, I don't think the

-16:-19:-55  **15**  government has the burden -- although it is the government

-16:-19:-55  **16**  that's brought this, I guess, to the Court's attention, but it's

-16:-19:-55  **17**  certainly not the government's burden to establish the

-16:-19:-55  **18**  admissibility of all this.  But I'm going to tell the Court what

-16:-19:-55  **19**  we've done to try to analyze it.

-16:-19:-55  **20**          Where possible, we've used the computer to take the

-16:-19:-55  **21**  transcript and compare it to the government's transcript.  And

-16:-19:-55  **22**  so we do have with us, I believe, a new document which

-16:-19:-55  **23**  essentially is a marked-up version where you can tell the

-16:-19:-55  **24**  difference.   It's a comparison; it's a single document.   That

-16:-19:-55  **25**  way I think we have a full copy of what we've been able to get

-16:-19:-55 **1** to so far.   Then I've tried to pull out examples of the

-16:-19:-55 **2** problems.   We are also prepared, at least with respect to some

-16:-19:-55 **3** of what's been provided to us by Mohammad Amawi, to present Your

-16:-19:-55 **4** Honor with -- we were able to clip the audio with the

-16:-19:-55 **5** transcript, and we can demonstrate where we think these are

-16:-19:-55 **6** wrong in terms of audibility.   I think I told Your Honor this

-16:-19:-55 **7** morning, there's not that many of these.  We can get through

-16:-19:-55 **8** those rather quickly if you want to do that first so we're

-16:-19:-55 **9** making a jump forward.  It might be one way of proceeding.

-16:-19:-55 **10** We've put --

-16:-19:-55 **11**                 As I said, we put them into our pretrial

-16:-19:-55 **12** presentation software.  We can do it just like we've been doing

-16:-19:-55 **13** it in court.   I would propose that Your Honor look at these,

-16:-19:-55 **14** look at the transcripts, and assuming our audio here is in

-16:-19:-55 **15** decent shape, I think we may have -- did we bring our speakers?

-16:-19:-55 **16** I think we've said before, there are times it would be easier to

-16:-19:-55 **17** listen on a PC than using the Court system.   But we can try to

-16:-19:-55 **18** play them and see if Your Honor can go through them and

-16:-19:-55 **19** determine what's audible and inaudible, and what words are right

-16:-19:-55 **20** and wrong.   And then we have examples from the Amawi case, at

-16:-19:-55 **21** least, where we think that the hearsay problem is at least

-16:-19:-55 **22** highlighted, although I think the hearsay problem is throughout

-16:-19:-55 **23** many of the transcripts and the proposed cross-examination

-16:-19:-55 **24** materials.

-16:-19:-55 **25**                 And then we have a few, just a few, relevancy

-16:-19:-55 **1** examples, examples where either we can't figure out why they are

-16:-19:-55 **2** relevant, which of course would be maybe our own lack of

-16:-19:-55 **3** insight; or we think we may have figured it out, but it's still

-16:-19:-55 **4** not relevant in the government's opinion.

-16:-19:-55 **5** So we'll proceed however Your Honor wants us to

-16:-19:-55 **6** proceed.   I do think the best thing to do would be to go

-16:-19:-55 **7** through every one of them.   But I don't have every single one

-16:-19:-55 **8** of them in the defense form.   I think we have every single one

-16:-19:-55 **9** of them in a sort of newer, different form; that's what the

-16:-19:-55 **10** government has.

-16:-19:-55 **11** THE COURT:  Have you talked with Counsel about the

-16:-19:-55 **12** variant transcriptions?

-16:-19:-55 **13** MR. SOFER:  We have not.   That's partially because

-16:-19:-55 **14** we've been running around trying to catch up on the El-Hindi

-16:-19:-55 **15** stuff.  We could actually do that right now if you like.  And I

-16:-19:-55 **16** assume they're standing by their transcripts.   I don't know.

-16:-19:-55 **17** If there's something to talk about, we certainly will.

-16:-19:-55 **18** THE COURT:  Mr. Ivey, did you work off of an

-16:-19:-55 **19** enhanced copy, or your transcribers?

-16:-19:-55 **20** MR. WHITMER-RICH:  No, Your Honor.  We did know

-16:-19:-55 **21** what we provided to the government, as a first instance, if we

-16:-19:-55 **22** were providing them a clip from something they played, like a

-16:-19:-55 **23** smaller clip of something they played during the trial, we used

-16:-19:-55 **24** the government's transcript with maybe one or two exceptions,

-16:-19:-55 **25** and I assume there aren't any problems with those.

-16:-19:-55 **1**            As a second instance, we used the government's

-16:-19:-55 **2** preliminary transcript when they provided the whole transcripts

-16:-19:-55 **3** to us some time ago.  We used that section.   In a few instances

-16:-19:-55 **4** we changed very minor things, which I don't imagine there would

-16:-19:-55 **5** be objections to.   And then only in the last category of cases

-16:-19:-55 **6** where there were, we thought, a significant phrase or section

-16:-19:-55 **7** that were not being captured, were unintelligible, or the

-16:-19:-55 **8** translation was incorrect; those we provided our own versions of

-16:-19:-55 **9** the transcription; those were not made from enhanced audio.

-16:-19:-55 **10** They were simply based on the original audio files.

-16:-19:-55 **11**            THE COURT:  How long would it take to go through

-16:-19:-55 **12** everything that you have that you -- there's disagreement as to

-16:-19:-55 **13** either the translation or the transcription.

-16:-19:-55 **14**            MR. SOFER:  I don't think very long at all.

-16:-19:-55 **15**            Do you want us to do that in front of Your Honor or

-16:-19:-55 **16** are you suggesting we talk to Counsel first?

-16:-19:-55 **17**            THE COURT:  Why don't we do it now and I'll make my

-16:-19:-55 **18** mind up.

-16:-19:-55 **19**            MR. SOFER:  What I will say, Your Honor, is I've

-16:-19:-55 **20** picked the best examples.   We're going to need to make sure,

-16:-19:-55 **21** like with El-Hindi's Counsel, since these things came in sort of

-16:-19:-55 **22** multiple pieces that we've actually received and analyzed, and

-16:-19:-55 **23** so I just want to reserve the right in case there's something

-16:-19:-55 **24** else out there that we don't have to take a look and make sure

-16:-19:-55 **25** we can go back and challenge it.   I think -- is the Court

-16:-19:-55  **1**  system on?   Are we able --

00:01:40  **2**  1D17.  I think we have to tell the Court what it

-16:-19:-55  **3**  is -- it is all right with you guys if I give this to him.

-16:-19:-55  **4**  This is the portion there's a disagreement about.   And the --

-16:-19:-55  **5**  this one is essentially the question between the word leaving

00:03:03  **6**  and live in, "live in" versus "leaving".   So it's the second

-16:-19:-55  **7**  time Amawi speaks in this particular clip.

-16:-19:-55  **8**  (Audio played.)

-16:-19:-55  **9**  MR. SOFER:  We can play it multiple times.   This

-16:-19:-55  **10**  is what we go through multiple times every time you have to

-16:-19:-55  **11**  listen to it.

00:03:50  **12**  MR. BOSS:  What are we looking at, the government's

00:03:52  **13**  version?

00:03:53  **14**  MR. SOFER:  The government's transcript.

00:04:07  **15**  MR. IVEY:  We'll agree with "leaving".

00:04:11  **16**  MR. SOFER:  That was easiest thing we've done yet.

-16:-19:-55  **17**  It doesn't make sense "live in".

00:04:21  **18**  MR. WITMER-RICH:  If you want to send me and

-16:-19:-55  **19**  somebody else off in another room.

-16:-19:-55  **20**  MR. SOFER:  Maybe we could do that, Judge.

00:04:29  **21**  THE COURT:  Why don't we do that.

00:04:37  **22**  Are there still troops available to address the

-16:-19:-55  **23**  evidence issues?

-16:-19:-55  **24**  MR. SOFER:  Maybe we ought to pull this one before

00:04:50  **25**  we go out and try to resolve because I do think this actually

00:04:57 **1** highlights two points.   This is 1D52.   You guys called it

00:05:10 **2** 4-20-05 Clip 2.

00:05:18 **3**             THE COURT:  Would it be easier to display it?

00:05:22 **4**             MR. SOFER:  I can put this up.   It's got my notes.

00:05:33 **5**             We can't play our clip and use the ELMO at the same

00:05:37 **6** time.

00:05:40 **7**             THE COURT:  How would you rather show me what the

-16:-19:-55 **8** issue is?

00:05:43 **9**             MR. SOFER:  Assuming the defense doesn't have a

-16:-19:-55 **10** problem with this -- I want to show it to them.   It has my

-16:-19:-55 **11** notes on it.

00:06:11 **12**             MR. HARTMAN:  I don't care.

-16:-19:-55 **13**             THE COURT:  Do you have a copy yourself?

-16:-19:-55 **14**             MR. SOFER:  I don't, but I remember the issue.

-16:-19:-55 **15**             This one, Your Honor, if I can just describe what

-16:-19:-55 **16** the issue is.   There is a line of text that's been added by the

-16:-19:-55 **17** defense which I think is -- you can see it's in a different font

00:06:30 **18** or a different color -- which the government cannot hear when we

00:06:35 **19** listen to this.  No matter how we've listened to it, we've not

00:06:41 **20** heard that line in there.   And concurrently the defense has

00:06:45 **21** dropped out a rather large piece at the end, which we can

-16:-19:-55 **22** discuss.   But that's the change that we have.   So the

00:06:59 **23** audibility issue, this is one of those few instances where

-16:-19:-55 **24** actually the government's contention is this is inaudible.  We

-16:-19:-55 **25** don't hear what they've written on that piece of paper.

-16:-19:-55 **1**         THE COURT: Where is -- it is the set-off

-16:-19:-55 **2** paragraph?

00:07:15 **3**         MR. SOFER: You're going to focus on, if I may

-16:-19:-55 **4** approach, Your Honor, it's this line up here that says -- it's

00:07:28 **5** the line from -- it says, "Boss" here instead of who it actually

-16:-19:-55 **6** is. "Did you try to push them out there." Which, of course, I

-16:-19:-55 **7** think it's obvious what the government's concern is there. We

-16:-19:-55 **8** don't hear that on this tape.

00:07:47 **9**         THE COURT: Who is speaking to whom now?

-16:-19:-55 **10**         MR. SOFER: That's Darren Griffin speaking to -- I

-16:-19:-55 **11** believe it's Shannon Coats. So it's a conversation in which

00:08:03 **12** Darren Griffin is explaining what has happened in a particular

00:08:09 **13** interaction, and --

00:08:12 **14**         THE COURT: In other words, the issue is what is

00:08:16 **15** attributed to --

00:08:19 **16**         MR. SOFER: -- Agent Coats.

-16:-19:-55 **17**         THE COURT: After the word "Boss" is designating

-16:-19:-55 **18** him?

00:08:26 **19**         MR. SOFER: Yes, Judge.

-16:-19:-55 **20**         THE COURT: It's in the smaller type.

-16:-19:-55 **21**         MR. SOFER: Correct. That's how we did the

00:08:32 **22** comparisons. The program produces that smaller, darker type.

00:08:40 **23**         THE COURT: Where will you begin the clip?

00:08:42 **24**         MR. SOFER: We've tried to sort of frame it out a

-16:-19:-55 **25** little bit. You have it in front of you now, Judge; the line

-16:-19:-55  **1**  in question on what you have.

00:09:07  **2**  THE COURT:  I made a mistake and turned these

-16:-19:-55  **3**  things off.

00:09:33  **4**  MR. SOFER:  So, again, on the scrolling text before

00:09:36  **5**  you, Your Honor, on -- as opposed to the piece of paper, it's

-16:-19:-55  **6**  the third line that's up there.

00:09:43  **7**  (Audio played.)

00:09:48  **8**  (Video played.)

00:10:07  **9**  THE COURT:  Can you back up?  Can you get a little

00:10:10  **10**  before that, "Yes, sure did."

00:10:18  **11**  THE VIDEO OPERATOR:  I'll go back to the beginning.

00:10:21  **12**  THE COURT:  Please do.

00:10:30  **13**  (Video replayed.)

00:10:47  **14**  THE COURT:  Can you start --

00:10:56  **15**  MR. SOFER:  At the beginning, Judge?

00:10:59  **16**  THE COURT:  Yeah.

00:11:59  **17**  (Video replayed.)

00:11:59  **18**  THE COURT:  I do hear "Push them".  The rest, I

-16:-19:-55  **19**  don't hear that.  Maybe the thing would be to put Agent Coats

-16:-19:-55  **20**  on the stand and ask him if he recalls what he said.  It's his

00:12:17  **21**  voice.  He would be the person in the best position to identify

-16:-19:-55  **22**  what he was saying.  Is he here?

00:12:23  **23**  MR. SOFER:  He is here.  I'd like two minutes to

-16:-19:-55  **24**  talk to him before we throw him on the witness stand.  I don't

00:12:32  **25**  have a problem with that.

00:12:33 **1**                 THE COURT: He seems to be the best source. We

-16:-19:-55 **2** haven't discussed it very much.

00:12:54 **3**                 MR. WHITMER-RICH: Your Honor, the headphones do

-16:-19:-55 **4** provide a pretty good level of audibility. These transcripts

-16:-19:-55 **5** would have been made listening to this on an iPod, which does

00:13:04 **6** provide yet better -- even than what we have on these

00:13:08 **7** headphones, a better level of audibility. Again, it's not

00:13:12 **8** enhanced audio, but it was being listened to on an iPod.

00:13:42 **9**                 THE COURT: Perhaps do you have that iPod?

00:14:12 **10**                 MR. WHITMER-RICH: We can also listen to it with

-16:-19:-55 **11** earphones.

00:14:25 **12**             (Agent Coats is sworn by the Court.)

00:14:38 **13**                 THE COURT: It's your representation that one can

-16:-19:-55 **14** hear better through that device; is that correct?

00:14:49 **15**                 MR. HARTMAN: Yes.

00:14:51 **16**                 THE COURT: How do we then project that for the

00:14:54 **17** jury?

00:14:55 **18**                 MR. SOFER: That's been one of our problems

-16:-19:-55 **19** throughout, is the Court system, while much better with the

00:15:04 **20** headphones, is not as good as sometimes even just a PC with one

-16:-19:-55 **21** of these set of speakers put in. So I don't have an answer for

00:15:19 **22** that, Judge.

00:15:23 **23**                 THE COURT: I mean, can you play that thing, and

00:15:27 **24** we'll play this through a microphone? Will that work?

00:15:32 **25**                 MR. HARTMAN: Can we go get the enhancements we've

-16:-19:-55 **1** made, and we can put those over the earphones.   We made those

-16:-19:-55 **2** because of how bad the audio was in this room.  When we got the

00:15:42 **3** earphones we realized the sound was much better.  But it was

-16:-19:-55 **4** before this issue came up about the specific word here and

-16:-19:-55 **5** there.   We can try to use the enhanced audio over this Court

-16:-19:-55 **6** system and see if that works better.

00:15:59 **7**            THE COURT:  Where are they?

00:16:01 **8**            MR. HARTMAN:  They're in my office.   I can have

-16:-19:-55 **9** somebody bring them over.

00:16:06 **10**            THE COURT:  Why don't do you that.

00:16:10 **11**            My concern, it isn't -- even if I can hear it

-16:-19:-55 **12** because of some device that you have, if that's not somehow

00:16:21 **13** projectable into the Court system, how -- I don't care how it is

00:16:28 **14** presented to the jury, but I shouldn't be making a ruling on

-16:-19:-55 **15** something that is not what the jury will be exposed to.

-16:-19:-55 **16**            MR. HARTMAN:  Judge, if I may, when this issue came

-16:-19:-55 **17** up on a pretrial basis, as it did many, many times, the answer

-16:-19:-55 **18** that we got from the Court was, I'm going to tell the jury that

-16:-19:-55 **19** what they hear is the evidence, and what they see is not.  We

00:16:51 **20** think the government has a bunch of things wrong that we were

-16:-19:-55 **21** going to present transcripts and say:  This is what the

-16:-19:-55 **22** government said; this is what we said.   And what you hear --

00:17:02 **23** and you're going to have to decide what you hear is correct.

-16:-19:-55 **24** And now doing this, it seems to me that we're kind of going back

-16:-19:-55 **25** the other way, which is fine if that's what the Court wants to

-16:-19:-55 **1** do, but my recollection, and you can correct me if I'm wrong,

-16:-19:-55 **2** was that we were going to have the ability to put our transcript

-16:-19:-55 **3** up for what we thought it said, and the jury would be instructed

00:17:24 **4** accordingly.

00:17:27 **5**            MR. SOFER:  I think what the government has said

-16:-19:-55 **6** over and over again, that we don't think that's a proper and

-16:-19:-55 **7** fair way of proceeding.   That, and I think if you look at the

-16:-19:-55 **8** cases, that is not the way that most cases are presented to

-16:-19:-55 **9** juries in which there are tapes.   The audibility hearing in the

00:17:45 **10** Court is often in the situation where there are -- if there are

-16:-19:-55 **11** multiple versions of something -- we are down to the

00:17:53 **12** nitty-gritty here, it's not like we're talking about vast

-16:-19:-55 **13** sections of transcript, that the Court can make a determination

-16:-19:-55 **14** of what is audible and what is not and what words are on there

-16:-19:-55 **15** and what words are not, and otherwise what you end up doing, I

-16:-19:-55 **16** think, is a serious problem for the government because we carry

-16:-19:-55 **17** the burden.  It's basically saying to them, well, you know,

00:18:15 **18** here's the transcripts, here's some more transcripts, maybe it's

-16:-19:-55 **19** right, maybe it's not right.   And we don't want to be in that

-16:-19:-55 **20** position.   We're comfortable having Your Honor listen to this

-16:-19:-55 **21** and make a determination.   We think it's --

-16:-19:-55 **22**            THE COURT:  My problem is a preliminary one of how

00:18:36 **23** whatever it is that is there can best be heard by the jury.   I

-16:-19:-55 **24** heard the words "push" and "then", but the other words just go

-16:-19:-55 **25** so quickly, and there's a lot of static.   If you have a means

-16:-19:-55 **1** and a way of projecting something with greater fidelity and

00:19:05 **2** clarity, that's fine.   But I don't see how -- how you propose

-16:-19:-55 **3** to again rely upon the version that we're listening to right

00:19:22 **4** now, or is there some other version?

-16:-19:-55 **5**               MR. HARTMAN:  No, there's a version that has been

00:19:27 **6** enhanced that we didn't think we needed.

00:19:31 **7**               MR. WITMER-RICH:  I can play that in five minutes.

-16:-19:-55 **8**               THE COURT:  Can it be played somehow so the jury

-16:-19:-55 **9** can hear it?   Because that's what matters.

00:19:42 **10**               MR. HARTMAN:  Yes.   There is a way to do that.

00:19:44 **11**               THE COURT:  How soon can that be set up?  By 8:30

-16:-19:-55 **12** Wednesday morning?

00:19:50 **13**               MR. WITMER-RICH:  If we can hear the enhanced audio

00:19:55 **14** more clearly, we'd play it through the Court system.   It might

-16:-19:-55 **15** be the enhancement will allow us to do that.

00:20:04 **16**               THE COURT:   Mr. Hartman, can you call somebody in

-16:-19:-55 **17** your office?

00:20:08 **18**               MR. HARTMAN:  I will, Judge, right now.

-16:-19:-55 **19**               MR. SOFER:  On this issue, Judge, I'm just asking

-16:-19:-55 **20** for fairness here.   I don't know who enhanced these tapes, how

-16:-19:-55 **21** they enhanced these tapes, what they were told about enhancing

-16:-19:-55 **22** the tapes.   I think the government should have at least some

00:20:25 **23** opportunity to delve into that before we play things for the

00:20:28 **24** jury.

-16:-19:-55 **25**               I can only imagine if the government suddenly came

| | | |
|---|---|---|
| 00:20:32 | 1 | out with a bunch of enhanced tapes what Counsel would say if it |
| 00:20:36 | 2 | was done at this late stage of the game.   So -- maybe this will |
| 00:20:45 | 3 | -- one, if we listen to the enhanced version, the government |
| -16:-19:-55 | 4 | will agree.  I think we've said over and over again, we're not |
| -16:-19:-55 | 5 | trying to pull the wool over these people's eyes.  We want them |
| -16:-19:-55 | 6 | to hear the truth.  If that's what it says, let it play.   It's |
| 00:21:02 | 7 | just that we, given our system and our fidelity, we don't hear |
| -16:-19:-55 | 8 | it, and certainly not the way it's put down on paper there. |
| 00:21:09 | 9 | And so we're just looking for a fair way to resolve this. |
| -16:-19:-55 | 10 | THE COURT:  I agree.   It's at best borderline with |
| -16:-19:-55 | 11 | the version that we hear.   And certainly I don't propose that |
| 00:21:29 | 12 | we do before the jury as we did now for half an hour:  Replay, |
| -16:-19:-55 | 13 | replay, replay, replay, hoping that the ear may pick up enough |
| 00:21:40 | 14 | of the transmission to comprehend what it is.  But if there is a |
| -16:-19:-55 | 15 | version that is more clear because they bumped up the static or |
| 00:22:01 | 16 | whatever, that's fine. |
| 00:22:04 | 17 | MR. SOFER:  While we're waiting for that, Judge, I |
| 00:22:07 | 18 | think rather than have Agent Coats testify, I think we should |
| -16:-19:-55 | 19 | let that resolve itself, if that's acceptable to Your Honor. |
| -16:-19:-55 | 20 | THE COURT:  Agent Coats, you may step back down. |
| -16:-19:-55 | 21 | MR. SOFER:  Some of his finest testimony. |
| 00:22:21 | 22 | THE COURT:  Giving a new meaning to the term silent |
| -16:-19:-55 | 23 | witness. |
| -16:-19:-55 | 24 | MR. SOFER:   We'll send a representative back with |
| 00:22:28 | 25 | Amawi's Counsel to see if we can resolve these things, and maybe |

3012

-16:-19:-55  **1** we'll get from nine to two, and we'll resolve them however they

00:22:37  **2** get resolved.   Again, if we're comfortable with the way the

-16:-19:-55  **3** tapes were enhanced, and you can hear something on them, by all

-16:-19:-55  **4** means we're amenable to playing them for jury.   So can we --

00:22:49  **5**           THE COURT:  Now let me ask you, let's assume that

-16:-19:-55  **6** in this excerpt they are correct and we have somewhere an audio

-16:-19:-55  **7** version that with a sufficient degree of certainty we can all

00:23:06  **8** say, okay, the transcript can be displayed.  What about playing

00:23:12  **9** this excerpt at this stage of the case?

00:23:15  **10**           MR. SOFER:   Well, that's interesting since the

-16:-19:-55  **11** government already played this excerpt, I believe.   In fact, I

-16:-19:-55  **12** would say, Counsel will correct me, I can't speak for El-Hindi

00:23:26  **13** yet, I would say at least half, maybe more, of what the Amawi

00:23:34  **14** Counsel have proposed playing fall within segments that the

-16:-19:-55  **15** government has already played for the jury.   So the question

00:23:46  **16** here is whether or not playing this again is appropriate during

00:23:56  **17** cross-examination.   I would say that.

-16:-19:-55  **18**           I don't know what questions the defense plans on

-16:-19:-55  **19** asking Mr. Griffin, but he's already testified that he

00:24:13  **20** accidentally recorded this.   I don't think there's any dispute

00:24:16  **21** about the fact that this conversation took place, that

00:24:22  **22** conversation itself is already in evidence.

00:24:27  **23**           THE COURT:  Let me say, I know where you're headed.

-16:-19:-55  **24** It does seem to me this is more appropriately played during the

-16:-19:-55  **25** defense version because, I mean I -- I would suppose you could

-16:-19:-55 **1** ask Mr. Griffin, were you asked by Agent Coats -- I mean, I

-16:-19:-55 **2** suppose the issue is the extent to which Agent Coats was

00:25:05 **3** directing him to encourage him to do certain things.  What's

-16:-19:-55 **4** the --

00:25:15 **5**          MR. IVEY:  Well, Your Honor, in general I don't

00:25:17 **6** think we should be required to divulge ahead of time what our

00:25:21 **7** strategies are about something.   My point simply is that any

-16:-19:-55 **8** time the -- in any case, when the prosecution puts in a piece of

-16:-19:-55 **9** evidence in their case, to then say you can't ask questions

-16:-19:-55 **10** about it, you have to accept what was said on direct, is

00:25:40 **11** incredible.

-16:-19:-55 **12**          THE COURT:  That's not the issue.   The issue is

00:25:43 **13** whether whatever the questions are, will they provide a

-16:-19:-55 **14** predicate for playing -- replaying this conversation.

00:25:51 **15**          MR. IVEY:  Yes.  If I asked the witness a question

-16:-19:-55 **16** that didn't this occur, something you did, not what Mr. Amawi

-16:-19:-55 **17** said, but didn't you do this, didn't you say this and that, and

00:26:04 **18** then the witness then says, no, I did not, then if that

-16:-19:-55 **19** transcript shows that, in fact, that he's not being honest about

-16:-19:-55 **20** what happened --

-16:-19:-55 **21**          THE COURT:  It's not the transcript; it's the

00:26:15 **22** recording.

-16:-19:-55 **23**          MR. IVEY:  I'm sorry, the recording shows something

00:26:18 **24** different.  If I ask the witness, you interjected this, you

-16:-19:-55 **25** represented this to your boss when, in fact -- or to the handler

1   when, in fact, that's not what happened.   And he says, No, Mr.

2   Ivey, you're wrong.  I think we should be able to play it to

3   show which way it is.   That's just basic impeachment.

4              MR. SOFER:  I don't disagree with that, Judge.

5              THE COURT:  Neither do I.

6              MR. SOFER:  If the situation unfolded that way the

7   government is perfectly comfortable with it being done.

8   Although, again, it has to be done according to the rules.  The

9   witness has to be asked those particular questions; he has to be

10  given an opportunity to deny making the statement, or explain

11  his answer.   And only if and only we -- what's left over is

12  essentially an impeachment of the witness by playing the

13  intrinsic evidence would you be able to bring it in.  Even then,

14  Judge, there normally would be an instruction.   Here in this

15  particular case the transcripts -- the record's already in

16  evidence, so I don't really think there's much of an issue.

17  It's already in evidence.

18             But there are other recordings which are not in

19  evidence, and they don't go into evidence when they're being

20  used to impeach a witness.   And this goes to the whole

21  goose/gander analogy.   The government doesn't get to put in

22  out-of-court statements that way, nor does the defense.   And

23  there's an instruction usually given, a very common instruction

24  that this is being introduced with respect to whatever the

25  credibility of the witness is or to impeach the witness.   It's

-16:-19:-55 **1** not evidence.

00:28:00 **2**       MR. IVEY:  Your Honor, again, we are not confined

00:28:04 **3** to what the government decides we can cross-examine.   And if I

-16:-19:-55 **4** ask the witness something about --

-16:-19:-55 **5**       THE COURT:  I understand.   My concern, I'm

-16:-19:-55 **6** concerned now, I realize I'm circling back and forth, but I am

00:28:22 **7** concerned -- let's assume you ask an appropriate predicate

00:28:25 **8** question.  I'm not going to ask you to tell me what you believe

-16:-19:-55 **9** that might be.  Assuming that, then you want to play this

00:28:35 **10** excerpt, and display the translation that you have provided to

-16:-19:-55 **11** the government, I'm not sure that it's sufficiently audible, the

00:28:50 **12** version I've heard so far, that I can say, fine, it's okay to

-16:-19:-55 **13** display this version.

00:29:01 **14**       MR. IVEY:  I thought Mr. Sofer was making a more

00:29:05 **15** global argument.

-16:-19:-55 **16**       THE COURT:  He is.   Contrary to my expectation

-16:-19:-55 **17** that I'm going to be able to address those because you have an

-16:-19:-55 **18** understandable reluctance to lay your -- to show whether you're

00:29:17 **19** going to be playing diamonds, clubs, spades or hearts.   I

-16:-19:-55 **20** understand that.   That's the way the world works.   And I'm

00:29:26 **21** just trying to avoid constant interruption by side bar.

00:29:35 **22**       MR. IVEY:  Well, I guess I thought that that was

-16:-19:-55 **23** the purpose of this hearing.   If the Court determines that this

-16:-19:-55 **24** is inaudible to the point that it can't be shown, then obviously

-16:-19:-55 **25** I can't ask questions.   On the other hand, I think we should be

00:29:50  **1**  allowed to present the enhanced version to see if you hear it.

-16:-19:-55  **2**  The Court has indicated that at least in listening to -- over

-16:-19:-55  **3**  the Court system you heard the word "push", as I did too, and so

00:30:05  **4**  when the government -- I think it's just a natural tendency, I'm

-16:-19:-55  **5**  not ascribing insidious motive to anybody.   But we want to hear

-16:-19:-55  **6**  it; obviously, they don't want to hear it.   Naturally I think

-16:-19:-55  **7**  that affects it.   The government said:  We don't hear it at

-16:-19:-55  **8**  all.   The Court heard "push".   "Push" was used for some

00:30:26  **9**  reason.   And I think the logical reason that word was used is

-16:-19:-55  **10**  for what we're saying.   I'm just asking for an opportunity to

-16:-19:-55  **11**  provide that heightened version.   If you can hear that clearly,

-16:-19:-55  **12**  then we'll go to the issue of whether there's anything wrong

00:30:42  **13**  with the enhancement.  We know we have an audibility problem.

-16:-19:-55  **14**  And if we present an enhancement, the Court can hear it, then

-16:-19:-55  **15**  they could make their argument as to why the enhancement should

-16:-19:-55  **16**  be considered, then the Court can make a ruling.

00:30:56  **17**         MR. SOFER:  I have no problem with that.

00:30:59  **18**         MR. IVEY:  I will have to live with it.

00:31:04  **19**         MR. DOUGHTEN:  I don't mind telling you what we're

00:31:07  **20**  going to do because it is what it is.   I'm a little bit

-16:-19:-55  **21**  concerned with the government's objection.   First of all, we're

-16:-19:-55  **22**  not sure whether we're going second or third yet.   Being

00:31:19  **23**  concerned that perhaps we might be going second, we've had to go

-16:-19:-55  **24**  over the tapes to make sure there's anything that we want in

-16:-19:-55  **25**  that isn't already in.  We've done the major session, we just

3017

-16:-19:-55  1  have a little bit more to go.  But more importantly, Your Honor,

-16:-19:-55  2  I don't know how to effectively cross-examine.

-16:-19:-55  3          Here's our issue.  We have a section of tape where

00:31:42  4  Griffin is saying -- giving his views, and a defendant starts to

-16:-19:-55  5  interject his viewpoint, starts going in a different direction.

-16:-19:-55  6  Griffin cuts him off and brings it back to the area that he

-16:-19:-55  7  wants to talk about.  I don't know how we can ask a predicate

-16:-19:-55  8  question about:  Is it a fact that on February 16 at 19, 20

00:32:09  9  seconds…  It's impossible to do it.  I don't expect Griffin

-16:-19:-55  10  to remember those things.  What we had in mind is playing an

-16:-19:-55  11  exhibit that was already in evidence and kind of go over those

00:32:21  12  sections and saying:  Okay, at this point didn't you cut off Mr.

00:32:25  13  So-and-so?  Point that out and give Griffin an opportunity to

-16:-19:-55  14  say why he did it or what his intention was.  And didn't this

00:32:34  15  happen five times during this three-minute period?  That sort of

-16:-19:-55  16  thing.  I don't know of any other way to ask the predicate

00:32:41  17  question.  And at 2:10 in the evening of whatever day it is when

-16:-19:-55  18  you asked --

-16:-19:-55  19          THE COURT:  I think you can ask him:  During the

00:32:54  20  conversation, were there occasions where Mr. Mazloum and you

-16:-19:-55  21  were having a conversation, whatever the date is, but were there

-16:-19:-55  22  not occasions where you and he were conversing and he would

00:33:17  23  attempt to raise or discuss certain topics and you would

00:33:23  24  interrupt him and return to the topic of training or X or

-16:-19:-55  25  whatever?  And hear what he says.  If he says yes, that would

-16:-19:-55  **1** happen.  Fine.  Then I think you can -- you don't have an

-16:-19:-55  **2** inconsistent answer.   He's acknowledged what he says.

-16:-19:-55  **3**           MR. DOUGHTEN:  So if we say five times and he says

-16:-19:-55  **4** three, can we play the tape to show what he didn't remember?

-16:-19:-55  **5**           THE COURT:  I suppose you can say:  And how

00:33:56  **6** frequently did that occur?  I don't know.   Then let's play the

-16:-19:-55  **7** tape.   The issue here is how he conducted the conversations and

00:34:12  **8** whether he did so in a way that with some frequency he

-16:-19:-55  **9** understood to direct the conversation to particular topics, then

-16:-19:-55  **10** see what he says.   If he says yes, then you say:  Isn't that

-16:-19:-55  **11** something that you did fairly frequently; for example, on May 5,

00:34:38  **12** whatever date it is, would you dispute the statement that you

00:34:44  **13** did that five times -- if he says -- in a three-minute or

00:34:50  **14** five-minute or eight-minute conversation?   If he says, no, I

-16:-19:-55  **15** don't.   Then fine, he's acknowledging doing it.   At that point

00:35:02  **16** you want the defense case to show, ladies and gentlemen, this is

00:35:06  **17** what he did.   He admitted he did this, now let's hear, and so

-16:-19:-55  **18** we can understand…   At that point it's no longer

00:35:16  **19** cross-examination.   You have asked him simply and plainly to

-16:-19:-55  **20** admit a fact.  If he admits that fact, then when the case is

-16:-19:-55  **21** yours, you can elaborate on it.   But I don't think at that

-16:-19:-55  **22** point, fine, now we're going to hear Mr. Griffin interjecting

-16:-19:-55  **23** five times.   I think that's the defense side of the case.

00:35:40  **24**           If he denies it -- it really is more how carefully

-16:-19:-55  **25** you craft your examination.

00:35:45 **1**          MR. DOUGHTEN:  I understand.

00:35:46 **2**          THE COURT:  You say, Mr. Griffin, would you dispute

-16:-19:-55 **3** that on May 5, you -- do you recall on May 5 having a

-16:-19:-55 **4** conversation from about 8:00, 10:00 p.m.?  Yes, I do.   In fact

00:36:01 **5** you played -- part of that conversation was played.   It

-16:-19:-55 **6** involved X.

00:36:09 **7**          MR. DOUGHTEN:  We're fine with that, Your Honor.

-16:-19:-55 **8**          THE COURT:  And Mr. Griffin, do you recall at least

-16:-19:-55 **9** five times in that conversation you raised and interjected the

-16:-19:-55 **10** subject of X?  I don't recall.   Would it help if I were to

-16:-19:-55 **11** play for you that segment, those segments of the conversation?

-16:-19:-55 **12** I think at that point you can -- he said he doesn't recall.  If

-16:-19:-55 **13** he says, yes, counsel, you're right.

00:36:40 **14**          MR. SOFER:   I'm with --

-16:-19:-55 **15**          THE COURT:  I'm afraid we're not going to be able

00:36:45 **16** to tell until I heard what the question is.

00:36:48 **17**          MR. SOFER:  The only question I have -- I tend to

-16:-19:-55 **18** agree with Your Honor about all of that.   My next question,

-16:-19:-55 **19** though, would be under the I-don't-recall scenario, if we're

-16:-19:-55 **20** talking about a document, for instance, instead of a tape, the

00:37:02 **21** witness would be shown a copy of that document, the jury would

-16:-19:-55 **22** not.   He would be asked:  Does this reflect your recollection?

-16:-19:-55 **23** Then be given an opportunity to answer.   When you have a tape,

-16:-19:-55 **24** for instance, or in a different situation --

-16:-19:-55 **25**          THE COURT:  Let me ask you this:  Is it

00:37:19 **1** technologically possible for him and him alone, in other words,

-16:-19:-55 **2** to have it -- have him listen to it while the jury is still

00:37:28 **3** sitting here shuffling in and out?

-16:-19:-55 **4**     MR. SOFER:  I imagine what we would have to do is

00:37:35 **5** turn off --

00:37:36 **6**     THE COURT:  I understand we have kind of a closed

00:37:39 **7** transmission, or do you have a transcript of it?

00:37:44 **8**     MR. SOFER:  There are transcripts.

00:37:46 **9**     MR. DOUGHTEN:  We wouldn't have an objection if

00:37:49 **10** it's the transcript the government's supplied, we would not have

00:37:52 **11** an objection for him to use that to refresh his recollection.

00:37:56 **12**     THE COURT:  You could say:  Mr. Griffin, page 16 to

-16:-19:-55 **13** page 24, would you please read that.  Have you read it?  Yes.

00:38:03 **14**     MR. DOUGHTEN:  We're fine with that, Your Honor.

-16:-19:-55 **15**     THE COURT:  And did you approximately five times,

-16:-19:-55 **16** Mr. Mazloum started saying something, and you, in response would

-16:-19:-55 **17** say this or something like this; is that correct?  Yes, if he

-16:-19:-55 **18** says it's correct.  Fine.  Then if you want to play it in your

-16:-19:-55 **19** case, that's fine with me.  If he says no, he didn't, after he'd

-16:-19:-55 **20** been looking at the transcript, then you could say, Judge -- and

-16:-19:-55 **21** I think I ought to have these transcripts so I know what's going

-16:-19:-55 **22** on.  I'll visit up here.  Are they in all the boxes you gave

-16:-19:-55 **23** me?

00:38:44 **24**     MR. SOFER:  They are.  But you're going to have

00:38:47 **25** to -- you have to get from the defense, if we played a 20-minute

-16:-19:-55  **1**  long segment and they want to cross-examine him on a two-minute

00:38:56  **2**  long segment, you're going to have find that within --

00:38:59  **3**  THE COURT:  Are those all in chronological

00:39:01  **4**  sequence?

00:39:02  **5**  MR. SOFER:  I did not prepare the box.  I'd hate

-16:-19:-55  **6**  to guess that.  I certainly would hope so.

00:39:07  **7**  MR. WITMER-RICH:  Your Honor, you said, and then if

-16:-19:-55  **8**  you would want to play it in your case, that would be okay.

-16:-19:-55  **9**  That would then entail calling Mr. Griffin to the stand.

-16:-19:-55  **10**  THE COURT:  That is another issue.

-16:-19:-55  **11**  MR. WITMER-RICH:  It is indeed.

-16:-19:-55  **12**  THE COURT:  I think it probably would be.  I

-16:-19:-55  **13**  haven't -- I can see an issue and I don't know what the answer

00:39:24  **14**  is, when you have two parties to a conversation, and your client

-16:-19:-55  **15**  elects not to take the stand and testify, I suppose a way to do

00:39:35  **16**  that, and I don't know, is -- I mean, after all, it's a question

-16:-19:-55  **17**  of the admissibility of the tape.  The tape is the evidence.

-16:-19:-55  **18**  If they contend that the tape that you want to play -- I'm not

-16:-19:-55  **19**  sure, why would we need anybody, the tape's already in evidence,

00:39:52  **20**  why would we need have somebody --

00:39:57  **21**  MR. WITMER-RICH:  That's fine with me.

00:39:59  **22**  THE COURT:  If it's not evidence, it seems to me

00:40:02  **23**  that matters of admissibility, the general rule is, are heard

-16:-19:-55  **24**  outside the presence of the jury.  And if your client -- if

-16:-19:-55  **25**  there's a dispute -- first of all, I think we should probably

-16:-19:-55 **1** say to the government, do you agree this is a conversation on

-16:-19:-55 **2** May 16 between Mr. Amawi and Mr. Griffin at about this time?

-16:-19:-55 **3** I'm referring to the transcript, by the way.   And, Your Honor,

00:40:22 **4** there is no dispute that this is the conversation; here's our

00:40:26 **5** version of the transcript or whatever.   Ladies and gentlemen,

00:40:29 **6** we would like now to play for you what the parties agree.  I

-16:-19:-55 **7** don't think your client has to take the stand.   I'm not sure

00:40:36 **8** anybody has to take the stand.   There's no dispute about the

00:40:42 **9** two people who are speaking.

-16:-19:-55 **10**             MR. SOFER:  We're not going to dispute 90 percent

-16:-19:-55 **11** of it.

-16:-19:-55 **12**             THE COURT:  There may be a Fifth Amendment issue.

00:40:50 **13**             MR. WITMER-RICH:  That certainly takes me a long

00:40:53 **14** way.

00:40:54 **15**             MR. HARTMAN:  I have several major problems with

-16:-19:-55 **16** this.   It just goes to the fundamental fairness.   The

-16:-19:-55 **17** government played tapes to this jury where you could hear the

00:41:06 **18** voices.   Now, if we are confined when we get up to ask

-16:-19:-55 **19** questions, didn't this occur?  Didn't you do that?  The natural

00:41:17 **20** reaction of the jury is if you're saying he said this, then play

-16:-19:-55 **21** it.   It gets to the point -- almost to the point we're afraid

00:41:24 **22** of these tapes and we're somehow keeping it -- they're saying,

-16:-19:-55 **23** why don't you play it so we hear?

00:41:30 **24**             MR. IVEY:  I'm sorry.

00:41:33 **25**             THE COURT:  At that point I can say to the jury,

-16:-19:-55 **1** ladies and gentlemen, there will come a time when the case is

-16:-19:-55 **2** with the defense when it gets to the defense and if they elect

-16:-19:-55 **3** to do so, they may play various tapes to which they are alluding

-16:-19:-55 **4** now.   I think to the extent that they're thinking you're trying

-16:-19:-55 **5** to hide something, I can say, Oh, no, ladies and gentlemen.

00:41:56 **6** There will be a time and they're going to have an opportunity to

00:41:59 **7** play whatever they want.  This is solely for the purpose of

-16:-19:-55 **8** determining if Mr. Griffin -- part of the purpose of

-16:-19:-55 **9** cross-examination is to raise questions about Mr. Griffin's

-16:-19:-55 **10** credibility.

00:42:13 **11**            MR. HARTMAN:  We have specific instances on the

-16:-19:-55 **12** recordings that go to his credibility that may not have been

00:42:24 **13** played by the government, may or may not -- actually, we have

00:42:27 **14** both:  Some that were played by the government and some that

-16:-19:-55 **15** were part of the same recording but were not played by the

-16:-19:-55 **16** government.

-16:-19:-55 **17**            Now, it sounds to me like the government's saying

-16:-19:-55 **18** we can't ask about those other ones.

-16:-19:-55 **19**            MR. SOFER:  I have never -- all the government has

-16:-19:-55 **20** said from the beginning, ask him on, cross-examine him until

-16:-19:-55 **21** their hearts are filled with cross-examination, but the fact of

-16:-19:-55 **22** the matter, as I said, this is not the first time this has

-16:-19:-55 **23** happened in a courtroom.   There are certain procedures that

-16:-19:-55 **24** need to be followed, including the admission of hearsay,

00:43:04 **25** including the act of whether something extrinsic can come in

-16:-19:-55 1 during cross-examination. I think this is -- this is black

00:43:12 2 letter settled law. We're not saying that they can't

00:43:15 3 cross-examine him. And if he gives an answer which then opens

-16:-19:-55 4 the door for them to play certain tapes, we're not going to

00:43:23 5 object to that either. It's just a question -- when we look at

-16:-19:-55 6 what we've received, and the context in which a lot of this

-16:-19:-55 7 stuff --

-16:-19:-55 8 THE COURT: Part of the problem, each time I think

00:43:35 9 we're going to get to a point we're going to talk about this in

00:43:38 10 actual terms, we bump into the extraction. This morning we

-16:-19:-55 11 were talking about it, and before, because nobody knew what the

00:43:48 12 transcripts were, okay -- what the transcriptions were. Now as

-16:-19:-55 13 we look at particular designations they've indicated they may

-16:-19:-55 14 want to play during cross-examination or otherwise, you say,

-16:-19:-55 15 well, wait a minute, if they're going to come in and play this

00:44:17 16 in cross-examination, where's the cross-examination hook to let

-16:-19:-55 17 that get dragged in now? And we don't know because counsel

-16:-19:-55 18 said, we'll connect it up later, Judge. So we're going to have

-16:-19:-55 19 to wait until later to see. And that's why --

-16:-19:-55 20 MR. SOFER: Frankly, Judge, on that issue, as Mr.

-16:-19:-55 21 Doughten said, it sort of is what it is, that the tapes aren't

-16:-19:-55 22 changing; they're not living, breathing creatures. They are

00:44:52 23 what they are. I don't think that we've -- I don't think

00:44:56 24 there -- maybe I'm wrong, but I don't think there will be too

00:45:00 25 many surprises on how they're going to use the tapes that

-16:-19:-55 **1** they've provided us to cross-examine the witness.

-16:-19:-55 **2** The one Your Honor has in front of you, the

-16:-19:-55 **3** concrete example you have in front of you, it's pretty clear, I

-16:-19:-55 **4** think, what the import of that is and where a defense attorney

-16:-19:-55 **5** would argue in that particular clip. Likewise, Your Honor --

-16:-19:-55 **6** THE COURT: Well, I assume, in this instance at

00:45:26 **7** least, Mr. Griffin, you had frequent contact with Agent Coats

00:45:30 **8** and the agents; is that correct? Yes. You reported to them

00:45:33 **9** frequently, didn't you? Yes. Practically every week. Yes,

-16:-19:-55 **10** you did. You had a conversation. It so happens -- and during

00:45:41 **11** that conversation, do you recall what you did and what,

00:45:46 **12** according to you, the defendant did? Yes. And you would give

-16:-19:-55 **13** advice and direction from the agent? Yes. And, in fact -- and

-16:-19:-55 **14** you would act in accordance with that advice and direction?

-16:-19:-55 **15** Yes.

-16:-19:-55 **16** What then? Then you want to play the tape, right?

00:46:18 **17** MR. IVEY: Yes, okay.

-16:-19:-55 **18** THE COURT: Then you can't object because there's

-16:-19:-55 **19** nothing inconsistent.

00:46:24 **20** MR. SOFER: Nothing inconsistent. The witness who

00:46:26 **21** he really wants to come after is the next witness, which is

-16:-19:-55 **22** Agent Coats.

00:46:31 **23** MR. IVEY: Let me interject a different example,

-16:-19:-55 **24** which I think more fits this case.

00:46:39 **25** THE COURT: Where are the enhanced tapes?

3026

| | | |
|---|---|---|
| 00:46:48 | **1** | THE VIDEO OPERATOR:  It's in the computer. |
| 00:46:51 | **2** | MR. HARTMAN:  He's trying to find the right spot. |
| -16:-19:-55 | **3** | MR. SOFER:  He found it.   We have it cued up. |
| 00:46:57 | **4** | THE COURT:  Does somebody want to go off and talk |
| -16:-19:-55 | **5** | with him and see if you can't reach some agreement on the |
| 00:47:04 | **6** | disputed issues? |
| 00:47:06 | **7** | MR. SOFER:   We need to meet with the Amawi team. |
| -16:-19:-55 | **8** | One of our team can go back. |
| -16:-19:-55 | **9** | THE COURT:  Do you want to go back?  You can go |
| -16:-19:-55 | **10** | back in the conference room if that helps.   It's up to you. |
| -16:-19:-55 | **11** | MR. HARTMAN:  Would it help to listen to it? |
| 00:47:21 | **12** | THE COURT:  Mr. Ivey was in mid-flight.   The egg |
| -16:-19:-55 | **13** | to this chicken is getting the best audio, and then once we have |
| -16:-19:-55 | **14** | that, we can see what can be done with it. |
| 00:47:49 | **15** | MR. SOFER:  We'll give it a shot, Judge. |
| 00:47:54 | **16** | MR. IVEY:  Can I make a little different -- Let's |
| -16:-19:-55 | **17** | just assume in the case they had went out to a field |
| 00:48:03 | **18** | periodically and put watermelons on a post and practiced |
| -16:-19:-55 | **19** | sniping. |
| 00:48:10 | **20** | MR. HARTMAN:  Cantaloupe. |
| 00:48:16 | **21** | MR. IVEY:  But every time that occurred, Mr. |
| -16:-19:-55 | **22** | Griffin -- in fact, the representation to the jury is the |
| -16:-19:-55 | **23** | defendants didn't want to do this, but Mr. Griffin just kept |
| -16:-19:-55 | **24** | asking, let's go, I set it up, let's shoot, let's shoot.   They |
| 00:48:31 | **25** | finally go out and snipe. |

-16:-19:-55 **1**         So if I ask Mr. Griffin, isn't it a fact that you

00:48:39 **2** introduced this every time, none of the co-defendants?   And he

-16:-19:-55 **3** says, No; no, it wasn't my original idea; it was Mr. Amawi's

-16:-19:-55 **4** idea; it was Mr. El-Hindi's idea.   At that point I think in

-16:-19:-55 **5** fairness we should be able to play repeated examples of where

00:48:59 **6** he's doing this.

-16:-19:-55 **7**         THE COURT:  I would agree.   However you conduct

00:49:05 **8** the examination, we get to the point where he either

00:49:10 **9** acknowledges or repudiates the contention that you would raise

-16:-19:-55 **10** the issue of going shooting, and you would do this frequently.

-16:-19:-55 **11** And, in fact, on these days you did this.   And if he says,

00:49:29 **12** "Yes, I did," he acknowledges each and every time, then I don't

-16:-19:-55 **13** see the need to play the tapes.   If he says:  No, I didn't -- I

00:49:41 **14** can't -- I can't project how you're going to do your

00:49:45 **15** cross-examination.  You might do it entirely differently.   You

00:49:51 **16** know a lot more of it than I have.  I've sat up here and watched

-16:-19:-55 **17** it.

00:49:56 **18**         MR. IVEY:  The other point is this repeated concern

-16:-19:-55 **19** about hearsay.  A lot of it -- I'll speak to our tape, our

-16:-19:-55 **20** client is obviously speaking on them, but it would be hearsay.

-16:-19:-55 **21** The comments by the client have to assert a fact.   A lot of

00:50:10 **22** times he's asking a question or saying, uh-huh, uh-uh.   So

00:50:14 **23** that's not really hearsay if he's not -- if we want to play a

00:50:19 **24** clip where a client says, "The last thing in the world I ever

-16:-19:-55 **25** want to do is go into Iraq and kill soldiers," obviously that's

-16:-19:-55  **1**  hearsay.   But if our client is saying, you know:  Do you want

-16:-19:-55  **2**  something to drink?   That's not hearsay.   So I think I'm just

-16:-19:-55  **3**  kind of concerned about this global argument that these tapes

00:50:40  **4**  are hearsay unless we play them.   I think you have to look at

00:50:44  **5**  what is being said.

00:50:45  **6**          THE COURT:  I agree.  I was hoping you would be

-16:-19:-55  **7**  able to do that tonight and tomorrow and get that underway and

00:50:52  **8**  get things moving.

-16:-19:-55  **9**          MR. SOFER:  But, Judge, just to respond quickly,

-16:-19:-55  **10**  two things.  Again, the government has no problem with the

00:51:01  **11**  cross-examination; the government has no problem with

-16:-19:-55  **12**  confronting the witness the way you confront a witness with a

-16:-19:-55  **13**  document, giving him a chance to essentially impeach the witness

-16:-19:-55  **14**  with the document.   If he continues to deny something that is

-16:-19:-55  **15**  not in some way -- as long as it's material, then the jury can

00:51:23  **16**  hear it.   I don't dispute that either.   But it is true,

-16:-19:-55  **17**  defense may not like it, but it is true that their clients'

00:51:36  **18**  out-of-court statements on these tapes are hearsay.   Unless

-16:-19:-55  **19**  there is a particular either exception or reason why they're

00:51:46  **20**  not.

-16:-19:-55  **21**          THE COURT:  Or they're simply there and the

-16:-19:-55  **22**  evidence is that they were made.   They're not for the truth of

-16:-19:-55  **23**  the matter asserted, then they're not hearsay.

-16:-19:-55  **24**          MR. SOFER:  If there's no communicative value to

-16:-19:-55  **25**  them, then sure.   But that's not what we have here.   And I can

-16:-19:-55  **1**  tell you that there are gobs of substantive communications in

00:52:09  **2**  the proposed segments that the defense has put forward.   In

-16:-19:-55  **3**  fact, again, I have -- we have examples of this here in court --

00:52:19  **4**              THE COURT:  Okay, let's take a look at them.

00:52:22  **5**              MR. SOFER:  -- where I think it's fairly clear that

00:52:26  **6**  the -- here's an example.   I'll show it to Counsel first.  Very

00:52:41  **7**  short.   I'm picking it because it's short.

00:57:05  **8**              (Recess taken.)

-16:-19:-55  **9**              THE COURT:  We're back on the record.   That's

-16:-19:-55  **10**  fine.   But that's your case, not cross-examination.   You can

-16:-19:-55  **11**  bring out with Griffin that he employed certain techniques.

-16:-19:-55  **12**  And you have a road map to that, I suspect, in your expert's

00:57:30  **13**  report.   And raising subjects, returning subjects, ignoring

00:57:39  **14**  responses, taking your direction from your conversation with the

00:57:46  **15**  agents, and if he says, yes, he did, that's fine.   And I think

-16:-19:-55  **16**  that's an appropriate line of inquiry for him about his own

-16:-19:-55  **17**  conduct and how he acted.  If he acknowledges that's what he

-16:-19:-55  **18**  did, then fine, that's as far as I think you can go on

00:58:06  **19**  cross-examination.   And I think it's fair to inquire about his

-16:-19:-55  **20**  overall role and what he was trying to accomplish if that's

00:58:16  **21**  where you're going to go, because he's talked about gathering

-16:-19:-55  **22**  intelligence and so forth.

-16:-19:-55  **23**              The question is, as part of that, even assuming you

-16:-19:-55  **24**  get honest answers from him on cross-examination or

00:58:36  **25**  acknowledgment as to your description of what was going on,

-16:-19:-55 **1** either specific instances or overall, can you then turn around

-16:-19:-55 **2** and play a lot of tapes showing that is so?   And I don't think

00:58:47 **3** you can.   I think you can in your own case.   Ladies and

00:58:50 **4** gentlemen, you've heard Mr. Griffin acknowledge on

00:58:53 **5** cross-examination, but that's only part of the story.   Let's

-16:-19:-55 **6** listen to what you haven't heard so you get the full story, then

00:59:01 **7** you'll see how extensive and repeated this is.

00:59:04 **8**                    MR. HARTMAN:  Is the Court's opinion based on the

-16:-19:-55 **9** fact that that's just the limit of the cross-examination or the

00:59:09 **10** hearsay issue that the government's been talking about or some

-16:-19:-55 **11** combination of two?

00:59:15 **12**                    THE COURT:  I'm talking about subject matter

00:59:18 **13** without reference to hearsay contentions.   I just don't know.

-16:-19:-55 **14** This little snippet that was just shown, it seems to me that's

00:59:31 **15** hearsay if it's offered to show -- if it's offered to prove that

-16:-19:-55 **16** anybody could go and get these websites, clearly hearsay.

00:59:42 **17** Okay.  And it's also -- it verges on opinion evidence.  It's not

-16:-19:-55 **18** a qualified opinion, so it's not admissible on that basis

00:59:54 **19** either.

-16:-19:-55 **20**                    MR. HARTMAN:  I don't disagree.  Some of what we

-16:-19:-55 **21** will try to cross-examine on the government will argue is

-16:-19:-55 **22** hearsay and we will argue an exception applies and we'll have to

-16:-19:-55 **23** deal with that.   We're going to have to deal with that as we

-16:-19:-55 **24** go.

01:00:06 **25**                    MR. SOFER:  But I think the purpose of doing all of

-16:-19:-55  1  this, Judge, is to try to not have to deal with it in a million

-16:-19:-55  2  sidebars, that's all.

-16:-19:-55  3  THE COURT:  I agree.  We may not be able to get

-16:-19:-55  4  away with that.

-16:-19:-55  5  MR. IVEY:  Again, Mr. Sofer, I have a book here of

-16:-19:-55  6  largely all the excerpts I'm going to use.  None of these

01:00:25  7  examples he's putting up here are ones I'm going to use.

01:00:28  8  THE COURT:  Time out.

01:00:29  9  MR. IVEY:  So what I'm suggesting --

01:00:32  10  THE COURT:  Time out.

01:00:33  11  I'm in a good mood today.   Don't ask me why.

-16:-19:-55  12  Don't push it with the interruptions.   When I'm saying time

01:00:42  13  out -- maybe I should get a referee's whistle.

-16:-19:-55  14  I agree.   You guys are going to talk.   Tomorrow

01:00:52  15  morning or whatever we'll start off by saying where there's

-16:-19:-55  16  disagreement.   And so there may be less to worry about, Mr.

-16:-19:-55  17  Sofer, as Mr. Ivey is suggesting that there is.

01:01:10  18  Has anybody been listening to the enhanced tape?

01:01:13  19  MR. SOFER:  We have it keyed up, Your Honor.   All

-16:-19:-55  20  I can say about this, if I may respond to this, is, jeez, I wish

-16:-19:-55  21  we had known when we spent days and hours and took our people in

-16:-19:-55  22  on the weekend that these were not the segments that Counsel

-16:-19:-55  23  was -- I go back to, Judge, all the government's ever asked here

-16:-19:-55  24  is for fairness.   I hazard to say this, but had the government

-16:-19:-55  25  done some of these things, I think we would be in a much

01:01:39  **1**  different position, the yelling and screaming and concerns on

-16:-19:-55  **2**  their side would have been through the roof and I even fear that

01:01:46  **3**  the Court would treat us with a great deal more harshness than

-16:-19:-55  **4**  the kind of -- we're going to roll with these punches, we will

-16:-19:-55  **5**  continue with these punches.   All we're asking for is to play

-16:-19:-55  **6**  by the rules.   I don't think that's an unfair request.

01:02:04  **7**         MR. WITMER-RICH:  Your Honor, we worked very hard.

01:02:06  **8**         THE COURT:  Time out.   Everyone works very hard.

01:02:13  **9**  Let's see if there is an enhanced tape on that passage we

01:02:20  **10**  started out with an hour ago.

-16:-19:-55  **11**         MR. HARTMAN:  Yes, there is.

-16:-19:-55  **12**         THE COURT:  How are we going to be listening to it,

01:02:25  **13**  with earphones?

01:02:27  **14**         MR. SOFER:  My recommendation is to listen to it as

-16:-19:-55  **15**  the jury would, with using the headphones and the Court system.

01:02:35  **16**         THE COURT:  Can we start a little further before we

01:02:39  **17**  get to the passages?  It takes me a while to pick up the flow.

01:02:44  **18**         MR. WITMER-RICH:  So Your Honor knows, I haven't

01:02:47  **19**  listened to this section.   Sometimes the enhanced audio brings

-16:-19:-55  **20**  out more things.  Sometimes the enhancement simply causes more

-16:-19:-55  **21**  background noise.  So we make no representation about whether

01:02:57  **22**  this enhanced version will pick up this particular section, but

01:03:01  **23**  we'll give it a shot.

01:03:03  **24**         THE COURT:  But this is a different segment than we

-16:-19:-55  **25**  had before?

01:03:06 **1**       MR. HARTMAN:  No.

01:03:08 **2**       MR. WITMER-RICH:  The same segment that's been

01:03:11 **3** enhanced.

-16:-19-55 **4**       MR. HARTMAN:  It's longer.   There's more of it.

-16:-19-55 **5**       MR. SOFER:  You can see, Your Honor, the part

-16:-19-55 **6** that's in play here is the last statement of Agent Coats where

-16:-19-55 **7** it says, "Uh" and it's the unintelligible, the UI, rides out

01:03:26 **8** there.   The third line up from the bottom of the blue.   It

-16:-19-55 **9** says, Agent Coats:   "Uh"; then it's unintelligible.

01:03:35 **10**       THE COURT:  We're going to start with UI detail,

-16:-19-55 **11** tell me, tell me.

01:03:41 **12**       THE VIDEO OPERATOR:  Approximately, yes.

01:03:48 **13**       MR. BOSS:  That's static.

01:03:55 **14**       (Enhanced audio version played.)

01:04:24 **15**       THE COURT:  I hear less.

01:04:28 **16**       MR. WITMER-RICH:  That's worse.

01:04:30 **17**       THE COURT:   If that's enhanced --

-16:-19-55 **18**       MR. SOFER:  We have some knowledge of this also.

-16:-19-55 **19** We tried to enhance some of these tapes.   Depending on which

-16:-19-55 **20** sort of on the equalizer of different sounds that you pitch up

-16:-19-55 **21** and push down, it sometimes brings out certain things and

01:04:48 **22** sometimes it kills things.  This one sounds like it killed more

-16:-19-55 **23** than helped.

-16:-19-55 **24**       THE COURT:  Well, what can we do?

01:04:57 **25**       MR. SOFER:  Again, Judge, I think Your Honor can

-16:-19:-55 1  listen to the tapes that we have, and if you hear it, you hear

01:05:04 2  it.   If you don't, it should be labeled as inaudible.   Again,

01:05:10 3  that's what an audibility hearing is.   Unless the defense

-16:-19:-55 4  and/or the Court have another way of presenting this evidence to

-16:-19:-55 5  the jury, again, we don't hear what they've put on that piece of

01:05:21 6  paper.

01:05:22 7                THE COURT:  I certainly didn't hear it then.

01:05:24 8                MR. SOFER:  And maybe there's another word or two

-16:-19:-55 9  that could be added.   I don't know.  We are willing to have the

01:05:32 10  Court make this determination based on the evidence that is

-16:-19:-55 11  before it.

01:05:37 12                MR. WITMER-RICH:  The Court earlier, after

01:05:39 13  listening to the original version, thought you could make out

-16:-19:-55 14  the words "push them".   That's probably the phrase we're

-16:-19:-55 15  looking for.

01:05:49 16                THE COURT:  I could hear "push" and "there."   I

-16:-19:-55 17  didn't hear the rest of it, whatever that small print was.

01:06:19 18  We're looking at the smallest fraction, right?

-16:-19:-55 19                MR. SOFER:  In some ways it's a testament when

-16:-19:-55 20  we're on this much minutiae.   But the Court can listen.  We can

-16:-19:-55 21  play it again and again if you want.  We can put this one behind

01:06:43 22  us.   Alternatively, I mean, again, I'm willing to sit down with

01:06:48 23  Counsel, and they can help us hear something.   As Your Honor

-16:-19:-55 24  pointed out, I don't think either side is behooved by trying to

-16:-19:-55 25  either hear something that's not there or not hear something

-16:-19:-55 **1** that is there.   I just -- I think -- would hope we'd all be

01:07:08 **2** interested in getting truth out.

-16:-19:-55 **3** THE COURT:  Give me a minute, please.

01:08:42 **4** THE COURT:  Well, it's my understanding the

-16:-19:-55 **5** <u>Wilkinson</u> case, 53 F.3d 762, Sixth Circuit 1995, the Court held

01:09:05 **6** that where the parties disagree about the content of purported

-16:-19:-55 **7** conversations and desires to submit a transcript to assist the

01:09:12 **8** Court and jury, if the parties cannot agree the Court should

01:09:15 **9** compare the tape to the government's transcript and determine

-16:-19:-55 **10** whether it fairly and accurately reflects the content of the

-16:-19:-55 **11** recording.   If both parties submitted transcripts, the Court

-16:-19:-55 **12** should compare them with the recordings to determine the more

-16:-19:-55 **13** reliable version.   When it's done so -- this may not be Sixth

-16:-19:-55 **14** Circuit law, this part, where it's done so -- should make a

-16:-19:-55 **15** finding on the record about which transcript actually accurately

01:09:52 **16** reflects the contents of the recorded conversation.

01:10:11 **17** MR. WHITMER-RICH:  Would Your Honor like to listen

-16:-19:-55 **18** to it on the laptop computer with earphones?

-16:-19:-55 **19** THE COURT:  The only thing, I should listen to it

-16:-19:-55 **20** only in the transmission mode that the jury's going to hear.

-16:-19:-55 **21** It does me no good if I go to the electronic research facility

-16:-19:-55 **22** down in Quantico and the FBI has this all these tweeters and

-16:-19:-55 **23** woofers, and we can hear every pin drop, that's not what the

01:10:38 **24** jury's going to hear.   That's the problem.   If there is a way

-16:-19:-55 **25** to transmit it to the jury -- it doesn't have to be a scrolling

01:10:46  **1**  thing, if they have the transcript the old fashioned way and you

-16:-19:-55  **2**  play it and they read it, every juror has a copy in his or her

-16:-19:-55  **3**  hands, that's fine.  But it's got to be -- the recording that

-16:-19:-55  **4**  they hear has to be sufficiently audible.

01:11:10  **5**          MR. HARTMAN:  Your Honor, I think that makes sense

-16:-19:-55  **6**  for whatever hasn't been played already, but I think maybe we

-16:-19:-55  **7**  need to come up with another workable solution for the

01:11:22  **8**  transcripts the government's already shown to the jury because I

-16:-19:-55  **9**  mean the impression -- I don't think we have a ton of

-16:-19:-55  **10**  disagreements with those, but we did have some, and the

01:11:35  **11**  impression was that -- about the Court kept admonishing the

-16:-19:-55  **12**  jury, look, those aren't evidence.   The impression was we were

01:11:42  **13**  going to be able to put our transcripts in.   I don't want to

-16:-19:-55  **14**  make it harder to find a solution, but that's --

01:11:51  **15**          MR. SOFER:  I go back to, Judge, we have stood up

01:11:58  **16**  here for months saying if you've got problems with our

-16:-19:-55  **17**  transcripts, please bring them to our attention.  In fact, we'd

-16:-19:-55  **18**  be more than happy to fix them.  That bell never rang.  That

-16:-19:-55  **19**  does not -- again, I do not believe that that opens the door for

01:12:12  **20**  the jury to hear the transcript -- it depends, of course, but I

01:12:18  **21**  think largely that does not open some giant door, the fact that

-16:-19:-55  **22**  they sat back essentially, waited until we're in the midst of

-16:-19:-55  **23**  trial to voice an objection to the government's transcripts,

-16:-19:-55  **24**  does not then allow them also then to walk through that door and

-16:-19:-55  **25**  play for the jury some new transcript that essentially puts the

-16:-19:-55 **1** jury in the mindset of:  Well, what's going on here, how many

01:12:51 **2** transcripts are there going to be about this?   Again, maybe

-16:-19:-55 **3** there's not that much to dispute.

-16:-19:-55 **4**           THE COURT:  I think that's the first thing that has

-16:-19:-55 **5** to be found out.  And I do think, when you start with what Mr.

-16:-19:-55 **6** Amawi said, are you in a position with regard to the audibility

01:13:09 **7** questions to sit down with the government and determine whether

-16:-19:-55 **8** or not you can reach some agreement as to some of these disputed

01:13:19 **9** passages.

01:13:20 **10**           MR. WITMER-RICH:  Is this the only one with regard

01:13:22 **11** to the clips?

-16:-19:-55 **12**           MR. SOFER:  No, we have eight or nine examples.

-16:-19:-55 **13** The second I think -- I think it's nine examples where we -- by

-16:-19:-55 **14** the way, I should note, we've not had an opportunity to listen

-16:-19:-55 **15** to all of these, particularly if they're outside of what we've

-16:-19:-55 **16** already presented in court.   So it's possible there will be

01:13:41 **17** more of these in the next day or so, or two days.   The

-16:-19:-55 **18** government is moving as quickly as we can, given the fact we

-16:-19:-55 **19** just received these things, but we have examples here in court,

-16:-19:-55 **20** about eight or nine of them.   For the most part, Judge, when

-16:-19:-55 **21** they've said an A is a, the, or something where we deem it to be

01:14:00 **22** inconsequential.   I would dispute what Counsel said about

-16:-19:-55 **23** whether everything somebody says is inconsequential.   We've

-16:-19:-55 **24** just said, okay, fine, let them; if it's an/and, a/the, e/we  --

-16:-19:-55 **25** we don't care.  It's only the places we've seen a substantive

-16:-19:-55 **1** difference that we've pulled them aside. So I'm happy to sit

-16:-19:-55 **2** down; if we end up being able to agree on most of this, I don't

-16:-19:-55 **3** think it's going to be an issue.

-16:-19:-55 **4** I don't know whether we can agree on this last one.

-16:-19:-55 **5** Maybe you can hear a push and another word. I asked, again,

01:14:31 **6** our team. I would stand up any day in court and say these guys

-16:-19:-55 **7** are not playing a game here, Judge; they are honestly saying

01:14:40 **8** things; that is not what the government is saying. So maybe we

-16:-19:-55 **9** can reasonably work this out. I'm not concerned so much

-16:-19:-55 **10** about -- I thought we could do this quickly. Apparently not.

01:14:54 **11** I'm not so concerned about these actually. I think for the

01:14:57 **12** most part we will be able to work these out. To me it's

01:15:00 **13** obvious one of the reasons the government is so eager to have

-16:-19:-55 **14** Your Honor listen to this is I'm confident we're right with

-16:-19:-55 **15** respect to the ones that we've picked.

01:15:09 **16** THE COURT: Question. Do one of two things: One,

-16:-19:-55 **17** we can simply play them now. And maybe that's the thing to do.

-16:-19:-55 **18** At least with the Amawi tapes.

01:15:21 **19** MR. SOFER: We're prepared to do that right now.

-16:-19:-55 **20** MR. IVEY: I would propose, before we do that, if I

-16:-19:-55 **21** could take ten minutes. I'm concerned Mr. Sofer is concerned

-16:-19:-55 **22** about an excerpt I'm not going to use.

-16:-19:-55 **23** MR. SOFER: That's fair also. Again, I wish we

-16:-19:-55 **24** had known this before, but we're happy to pick them out.

-16:-19:-55 **25** THE COURT: Why don't you do that. And then I

3039

1  will make a credibility determination as to those excerpts that

2  are still in dispute as to the Amawi tapes.

3          What about with the Mazloum tapes, are there any

4  that you anticipate an audibility --

5          MR. DOUGHTEN:  We have no issues at all in the

6  tapes we intend to use.

7          THE COURT:  Okay.  And then what I would propose

8  doing is -- are all your tapes in the government's hands for

9  Mr. El-Hindi, the transcripts?

10          MR. HARTMAN:  The excerpts that we intend to play

11  are not all in the government's hands.  There are about four or

12  five recordings that still need to go to the government.

13          THE COURT:  When is it that you propose, at what

14  point in your cross-examination do you expect to get to them?

15          MR. HARTMAN:  It's late.

16          THE COURT:  So the question finesses that by saying

17  we can at least look at the initial stuff, right?

18          MR. HARTMAN:  Yes.

19          THE COURT:  So what I would propose doing is you

20  and Mr. Ivey talk with each other, see if you can cut away some

21  underbrush, and then we will -- I will do the audibility as to

22  those that remain in dispute, and at that point I'm not sure

23  there's much more we can do.   I've tried to outline in general

24  what I think is going to be permissible cross-examination, but

25  my uninformed anticipation based upon how I, if I were a defense

-16:-19:-55 **1** lawyer, might view something, is not a fair basis to start

01:17:29 **2** making rulings.  We'll have to deal with that one by one.   I

01:17:34 **3** tried give some general guidance.  We're going to have to wait

-16:-19:-55 **4** until Wednesday morning to start doing it.

-16:-19:-55 **5**            MR. SOFER:  Here's my only concern about that,

-16:-19:-55 **6** Judge.

01:17:46 **7**            THE COURT:  I don't want to, but I don't know how

01:17:48 **8** else to proceed.

-16:-19:-55 **9**            MR. SOFER:  The practicalities of this are we all

01:17:53 **10** know that when the government jumps up 36 times during the

01:17:58 **11** cross-examination of its main witness that that's not

-16:-19:-55 **12** necessarily tactically the best way of going about allowing for

01:18:08 **13** cross-examination.   I don't want -- again, my concern is always

01:18:11 **14** just to ensure that the government is not prejudiced here.

-16:-19:-55 **15** Without at least the contours of this being set out early, we're

-16:-19:-55 **16** going to be stuck in a position where, Your Honor -- and I mean

01:18:23 **17** nothing negative, Your Honor -- has occasionally objected to the

01:18:27 **18** government's questions for hearsay -- on hearsay grounds or

01:18:32 **19** other grounds.   I would ask the Court in the same vein to

-16:-19:-55 **20** consider our position at least then, at least liberally think

-16:-19:-55 **21** about the notion that I don't want to be jumping up out of the

-16:-19:-55 **22** seat 46 times a day.  I don't think that's a good move by the

-16:-19:-55 **23** government.

01:18:49 **24**            THE COURT:  Mr. Getz can jump up, Mr. Hartman.

01:18:54 **25**            MR. SOFER:  He might jump on me.   That's the

-16:-19:-55 **1** problem.  We don't want to be in that position.

-16:-19:-55 **2** THE COURT:  I understand.   Well, maybe some of

01:19:00 **3** this will get cleaned up once you see what excerpts will be

-16:-19:-55 **4** offered, too.

-16:-19:-55 **5** MR. HARTMAN:  Your Honor, we also made an offer to

-16:-19:-55 **6** meet with the government tomorrow to try to go over our excerpts

01:19:10 **7** to try to come up with whatever agreement we can.  We feel that

-16:-19:-55 **8** as --

-16:-19:-55 **9** THE COURT:  Can you, depending upon how far we go,

01:19:17 **10** still get together tonight?  Can you try to do some of that this

-16:-19:-55 **11** evening?

01:19:23 **12** MR. HARTMAN:  With the government or with you?

01:19:25 **13** THE COURT:  The government.   I'd like to show up

01:19:27 **14** sometime tomorrow with knowing really what is at issue, so we

-16:-19:-55 **15** don't spend an hour, two hours, five hours, eight hours fumbling

-16:-19:-55 **16** around because nobody, the government in particular, doesn't

01:19:41 **17** know what it is you really intend to offer.

-16:-19:-55 **18** MR. HARTMAN:  Yes, we can do some of that with the

-16:-19:-55 **19** government tonight.

01:19:48 **20** THE COURT:  At least get started on that so we can

01:19:50 **21** get through this week, up to this weekend, without every little

-16:-19:-55 **22** excerpt taking ten minutes of side bar.

01:20:03 **23** MR. HARTMAN:  We can definitely start that with the

-16:-19:-55 **24** government tonight when they get finished with whatever -- Mr.

01:20:10 **25** Sofer has my cell phone.   When they get done with Amawi.   One

3042

1 thing that might help us is if the Court is going to make a

2 blanket ruling on cross-examination of Mr. Griffin based on

3 incidents that are outside of the alleged time of the

4 conspiracy, if they have been mentioned.

5          THE COURT:  They are what?

6          MR. BOSS:  Your Honor, there are a number of

7 matters that concern Zubair and Khaleel Ahmed.   Those are the

8 young fellows from Chicago, who are shown to the jury on the

9 initial exhibit there as co-conspirators in this indictment,

10 actually separated out now.  Now, we have a lot of evidence

11 that's already come in through the government pertaining to

12 Mr. El-Hindi and Mr. Griffin talking about El-Hindi having gone

13 to Cairo and I saved those boys, I brought them back, and so

14 forth.

15          MR. HARTMAN:  And training them.

16          MR. BOSS:  And there's training issues that have

17 filtered into that.   Now, what the government didn't play since

18 it started on the date of the alleged conspiracy started was

19 another year or more of comments between Mr. Griffin and

20 Mr. El-Hindi pertaining to what Mr. El-Hindi thought about these

21 boys and wanted to do with them.   And we believe that that is

22 appropriate examination of Mr. Griffin because it demonstrates

23 an inconsistency between the segments that were played for the

24 jury.   It gives life to those when Mr. Griffin says we have to

25 train them, what he's not saying is what his understanding with

3043

1  Mr. El-Hindi is that they are training them for; that came from

2  these other tapes.   There are a wealth of different examples of

3  what they would be training them for.

4          THE COURT:  In other words, what you're saying is

5  the prior -- it's in a sense completeness.

6          MR. BOSS:  Yes.

7          THE COURT:  You are saying the prior conversation

8  needs to be inquired into and perhaps even played for the jury

9  depending on whether its content is admitted or acknowledged or

10  not.  Because if these people were on the same football team and

11  they had come to mean -- the phrase "in training" meant you

12  didn't smoke or drink during football season and now it's later,

13  are you in training or not, yes, we are, i.e., although it's two

14  years later and they're not playing football anymore, that was

15  code for them to say we aren't smoking or drinking.

16          MR. BOSS:  The prior conversations give context to

17  the later words that are used, and mental state.

18          MR. HARTMAN:  And what they mean.

19          MR. SOFER:  Two things here, Judge.  As far as the

20  government knows, the first time these two individuals were

21  mentioned at all by Darren Griffin was at or near the time we

22  put the evidence in.

23          Number 2, once again, if Counsel wants to put in

24  evidence of prior conversation, prior to the actual charges in

25  this case that are innocent, I don't think they get to do that.

01:23:55 **1** Even if we credit what I think is wrong.

-16:-19:-55 **2**       THE COURT:  I think that if that is a way that

-16:-19:-55 **3** their cross-examination goes, I can see that it's a -- it's fair

01:24:10 **4** to say, Mr. Griffin, you used the word training in talking to

-16:-19:-55 **5** Mr. El-Hindi during this time period; you had used that term

01:24:17 **6** previously with him, had you not?  He says, no.  Then you say:

-16:-19:-55 **7** Well, wait a minute, take a look at this transcript during this

-16:-19:-55 **8** period.  Yes, I had.  And, Mr. Griffin, was the context not --

-16:-19:-55 **9** which you were using that term at that time was different than

-16:-19:-55 **10** the context that you later used it with him, or was it the same?

01:24:43 **11**       It seems to me if two parties develop an

01:24:49 **12** understanding about a particular subject prior to the pertinent

01:24:57 **13** period, it's appropriate to almost kind of a 404(b) kind of

-16:-19:-55 **14** sense it to, it's a similar act.  They're going to show that --

-16:-19:-55 **15** they're going to at least ask him whether or not the usage

01:25:18 **16** somehow varied or remained the same, I suppose.

-16:-19:-55 **17**       MR. SOFER:  I don't necessarily disagree with that.

-16:-19:-55 **18** Maybe Counsel will show us, once again, what they're talking

-16:-19:-55 **19** about and maybe that will change the government's view.  I

-16:-19:-55 **20** don't think so.

01:25:32 **21**       THE COURT:  At least as they now project it, I

-16:-19:-55 **22** think at least on that subject it's appropriate, depending on

-16:-19:-55 **23** how the answers go.  If he says yeah, sure, we were talking

-16:-19:-55 **24** about training for football; I was talking about training for

-16:-19:-55 **25** guns.  At least they've laid a predicate then for he's admitted

-16:-19:-55 **1** that there were different usages, then when it's their case they

-16:-19:-55 **2** can either, through Mr. El-Hindi or otherwise, undertake to show

-16:-19:-55 **3** or just use a series of tapes and so forth: You're still

-16:-19:-55 **4** talking football, you're not talking, whatever? But again,

-16:-19:-55 **5** it's very hard for me -- I think, Mr. Boss and Mr. Hartman, I've

01:26:16 **6** answered your question: No, I'm going to at least let you head

-16:-19:-55 **7** in that direction. I'm not saying simply it's outside their

01:26:26 **8** time frame it necessarily is automatically -- let me, so I know

-16:-19:-55 **9** what we're talking about...

-16:-19:-55 **10** What is the commencement date of the conspiracy?

01:26:37 **11** MR. SOFER: June of 2004, either late May or early

01:26:45 **12** June of 2004.

01:26:46 **13** THE COURT: I feel a whole lot less embarrassed to

-16:-19:-55 **14** see you have a degree of uncertainty. I'm teasing. I'm sitting

01:27:02 **15** up here thinking: Gee, can I admit I don't know the date?

01:27:05 **16** MR. SOFER: It was shortly before the meeting

01:27:08 **17** between Zubair and Khaleel Ahmed and Marwan El-Hindi.

01:27:14 **18** THE COURT: The Cleveland trip?

01:27:16 **19** MR. SOFER: Correct.

-16:-19:-55 **20** THE COURT: That was early summer of '04?

01:27:20 **21** MR. SOFER: It was mid-summer, this meeting was.

01:27:22 **22** Of course, the indictment charges the conversations that

01:27:25 **23** preceded.

01:27:26 **24** THE COURT: When did El-Hindi and Griffin -- when

01:27:30 **25** did they first meet?

01:27:31   **1**         MR. HARTMAN:  They started speaking in late '01 or

-16:-19:-55  **2** '02.  Griffin started recording him in '02, early '03.

01:27:41   **3**         MR. SOFER:  I believe the testimony was because

01:27:47   **4** Marwan El-Hindi was in the company of other persons of interest,

-16:-19:-55  **5** I believe that was the person of Mr. Griffin.

01:28:01   **6**         MR. SOFER:  Mr. Getz asked the question, and it's

01:28:04   **7** one that, of course, the government has, too; I mean that I have

-16:-19:-55  **8** as well, Your Honor, which is the -- if Counsel is alleging

-16:-19:-55  **9** specific conversations prior to June of '04 related to Zubair

-16:-19:-55 **10** and Khaleel Ahmed, that would be different, I think, than just

-16:-19:-55 **11** general conversations between Marwan El-Hindi and the

-16:-19:-55 **12** government's cooperating witness, whether they talked about

01:28:32  **13** training.

-16:-19:-55 **14**         THE COURT:  I will only say that probably the way

-16:-19:-55 **15** to handle this, at least a possible way is:  Number one, you

-16:-19:-55 **16** give a head's up to the government the night before you intend

01:28:46  **17** to use this stuff so you can talk about it, so you at least have

-16:-19:-55 **18** some sense, at the break or whatever.  I mean, I'm going to --

-16:-19:-55 **19** I think I would be looking to you to say:  Judge, this is why

01:28:59  **20** it's outside the trial frame of the conspiracy of the case.  I

-16:-19:-55 **21** think it's proper cross-examination.  The kind of explanation

-16:-19:-55 **22** Mr. Boss just had.

-16:-19:-55 **23**         MR. HARTMAN:  We will tell the Court where we're

-16:-19:-55 **24** going, we'll give the government an indication of where we're

-16:-19:-55 **25** going, based on what I -- our defense asks.  The entire period

01:29:21 **1** based on Griffin's conduct is very important as to whether an

-16:-19:-55 **2** agreement was ever reached or intent was there in the

-16:-19:-55 **3** distribution, the entire period is important.

-16:-19:-55 **4**                 THE COURT:  But, again, there's a distinction

-16:-19:-55 **5** between cross-examination and your case.

01:29:34 **6**                 MR. HARTMAN:  There is.  I'll try not to forget

01:29:38 **7** that.

01:29:39 **8**                 MR. IVEY:  I have a question because I'm still

01:29:41 **9** unclear.  I just want to understand.  What, the extent of the

01:29:45 **10** parameters of cross-examination, if we use the government's

01:29:48 **11** transcript that the government introduced in direct, is that

01:29:54 **12** fair game to run up and ask questions of Mr. Griffin regarding

-16:-19:-55 **13** his conduct and his statements of the transcript the government

-16:-19:-55 **14** used?

-16:-19:-55 **15**                 THE COURT:  I would assume.  I can't imagine why

-16:-19:-55 **16** not.

01:30:07 **17**                 MR. IVEY:  I just wanted to make that clear.

-16:-19:-55 **18**                 THE COURT:  If you take the transcript away and

-16:-19:-55 **19** just say you had a cross-examination.   You testified on direct

-16:-19:-55 **20** you had a conversation May 1 with Mr. Smith about that.   Do you

-16:-19:-55 **21** recall that testimony?  Yes, I do.   And during the course of

-16:-19:-55 **22** that conversation, in addition to what you told the jury, didn't

-16:-19:-55 **23** you say X or Y?   I mean, the conversation is already in

-16:-19:-55 **24** evidence.

01:30:34 **25**                 MR. IVEY:  Okay.  All right.   I think I

01:30:37  **1**  understand.

01:30:40  **2**              THE COURT:  I'm having about as much fun with this

-16:-19:-55  **3**  as I did in evidence class.

01:30:46  **4**              Mr. Ivey, why don't you guys talk.   Tracy,

01:30:51  **5**  Josh, -- Mr. Doughten.

-16:-19:-55  **6**              MR. DOUGHTEN:  At some point are we going to know

01:30:57  **7**  what cross-examination is?

-16:-19:-55  **8**              THE COURT:  I think the three of you can agree.

-16:-19:-55  **9**  I'll have to meet with you and address that.

01:31:05  **10**              MR. HARTMAN:  I think what you said earlier it was

-16:-19:-55  **11**  one, two, three (motioning).

01:31:10  **12**              MR. DOUGHTEN:  I don't think he said that, Steve,

-16:-19:-55  **13**  but nice try.

-16:-19:-55  **14**              THE COURT:  I said that because of the delay in

-16:-19:-55  **15**  getting their stuff out.  Trying to avoid delay with the jury.

-16:-19:-55  **16**  If we could get them underway.   Tomorrow is Wednesday.

01:31:23  **17**  They're going to go all day tomorrow; you're going to -- in

-16:-19:-55  **18**  which case you'd get started on Thursday.   And I have to

01:31:30  **19**  adjourn at 1:30 on Friday.

01:31:38  **20**              MR. BOSS:  Tomorrow is Tuesday.   I believe today

-16:-19:-55  **21**  is Monday.

-16:-19:-55  **22**              THE COURT:  It's Monday.

-16:-19:-55  **23**              THE COURT:  Wednesday.   I'm talking court time,

-16:-19:-55  **24**  not real time.

01:31:49  **25**              MR. HARTMAN:  So we'll be Friday essentially?

01:31:53   **1**          THE COURT:  No, you'll be Thursday.

01:31:56   **2**          Mr. Ivey, are you going to get done -- do you think

01:32:02   **3**   you'll get done on Wednesday, carry into Thursday?

01:32:05   **4**          MR. IVEY:  If I begin Wednesday morning, my hope

-16:-19:-55 **5**   and drive is to be done by the close of day Wednesday.   If I

-16:-19:-55 **6**   bleed over maybe an hour…

01:32:15   **7**          THE COURT:  That's okay.  That's no problem.   I

-16:-19:-55 **8**   think your colleagues would like you to take up the rest of the

-16:-19:-55 **9**   week.

01:32:22   **10**         MR. IVEY:  I'll just try introduce a bunch of

01:32:25   **11**  transcripts.

01:32:26   **12**         MR. SOFER:  I told you, Your Honor.

01:32:32   **13**         THE COURT:  Somebody tell us when you're ready to

-16:-19:-55 **14**  go again, or that we can go home.   Whichever way.

01:32:39   **15**         MR. SOFER:  Understand, Judge.   Again, I hate to

01:32:44   **16**  keep saying this, but we've been given, I don't know now,

01:32:48   **17**  probably about 100 or so segments, to give the Court an idea of

-16:-19:-55 **18**  it took us months and months and months to just get the

-16:-19:-55 **19**  presentation that we've seen in court near a position where we

01:33:03   **20**  were confident and comfortable.   We're moving as quickly as we

-16:-19:-55 **21**  can, but I reserve the right, Your Honor, to come back to Your

01:33:24   **22**  Honor and say:  Look, it's taken us a week to get through some

-16:-19:-55 **23**  of this stuff and we'd like an opportunity to challenge further

01:33:31   **24**  cuts if this continues on.   I also don't think it's in the

-16:-19:-55 **25**  government's interest to have weeks of delay.  One of the things

01:33:39  **1**  I think has been forgotten is we're not in the middle, but sort

-16:-19:-55  **2**  of the beginning of the government's case.

-16:-19:-55  **3**  THE COURT:  I am as concerned about that as

01:33:47  **4**  anybody.

01:33:48  **5**  MR. SOFER:  Understood.

01:33:52  **6**  THE COURT:  Do what you do and let me know.

01:33:55  **7**  MR. BOSS:  Your Honor, may Mr. Hartman and I be

01:33:59  **8**  excused; do you need us here?

-16:-19:-55  **9**  THE COURT:  Well, can you get together with them

01:34:03  **10**  tonight?

01:34:04  **11**  MR. BOSS:  We're going to continue working on

01:34:07  **12**  transcripts right now.

01:34:08  **13**  MR. HARTMAN:  If they're willing; we're willing.

-16:-19:-55  **14**  If not, we can do it tomorrow.

-16:-19:-55  **15**  THE COURT:  Mr. Sofer, why don't you call them when

01:34:15  **16**  we're done here.

01:34:16  **17**  MR. SOFER:  As long as they don't mind talking to

-16:-19:-55  **18**  me when I'm at a restaurant, I have no problem.  I'm told by

01:34:28  **19**  Mr. Getz all of these, what we couch as inaccuracies, have been

-16:-19:-55  **20**  resolved already.  So all the audibility issues except, I guess,

-16:-19:-55  **21**  the one that's outstanding, which is the one Your Honor listened

01:34:38  **22**  to four or five times up there, we resolved with defense, so

-16:-19:-55  **23**  that issue is gone.  Now, if we can move that quickly through

01:34:48  **24**  the other ones…  again, our biggest problem, with the Amawi

-16:-19:-55  **25**  team I believe we're going to be able to work most of this out.

01:34:57 **1**          MR. IVEY:  Can we have that meeting now?

01:34:59 **2**          THE COURT:  Why don't we wait.   Talk with them.

01:35:05 **3**          (Recess taken).

02:03:29 **4**          MR. SOFER:  The envelope is almost empty, Judge,

02:03:33 **5** which I think is a good thing.  We essentially boiled down at

-16:-19:-55 **6** least what the government's been able to analyze thus far, which

02:03:41 **7** I think is most, if not all, of what we've been given, to

02:03:47 **8** approximately five issues, four of them fall into the hearsay

-16:-19:-55 **9** category still, but that's one that I think we're going to have

-16:-19:-55 **10** to, when it comes up…  although, again, I'd ask the Court to

02:04:00 **11** be cognizant of the fact the government does not want to be in a

02:04:05 **12** position of jumping up and down out of the chair.   In terms of

02:04:12 **13** audibility, we've resolved everything except for the one Your

-16:-19:-55 **14** Honor has heard.   I'd ask the Court to listen to it again.  If

-16:-19:-55 **15** necessary, we could play it 100 times, whatever it is that Your

02:04:23 **16** Honor wants and however Your Honor wants to listen to it,

02:04:26 **17** although I happen to agree with the best way to do it.

-16:-19:-55 **18**          THE COURT:  I'm only going to listen to what the

-16:-19:-55 **19** jury's going to hear.

-16:-19:-55 **20**          MR. SOFER:  I think that's the best way to do it,

-16:-19:-55 **21** Your Honor.   You'll hear what you hear and certainly the

-16:-19:-55 **22** government will live with that.   I'll tell you again that we

-16:-19:-55 **23** listened it to a number of times and we don't hear even what

02:04:46 **24** Your Honor has said that you said you hear, but again, we throw

02:04:52 **25** ourselves on the mercy of the Court.

-16:-19:-55   **1**        THE COURT:  It's hardly with the degree of clarity

-16:-19:-55   **2**   that is desirable.

02:05:04   **3**        MR. SOFER:  We'll play that.   Then we'd be done

-16:-19:-55   **4**   for the most part with the Amawi team.   The El-Hindi team,

-16:-19:-55   **5**   we'll try to work with over the next few days.

02:05:14   **6**        THE COURT:  Maybe even this evening.

02:05:16   **7**        MR. SOFER:  Well, I already spoke to Mr. Hartman.

-16:-19:-55   **8**   We've asked for a list because what we've been sent, it is no

-16:-19:-55   **9**   longer an understandable list.   They're working presumably now

-16:-19:-55   **10**  to get us a list, which then we'll be able to go down, at least

02:05:34   **11**  find out what we have and don't have.  We're not, according to

02:05:38   **12**  Mr. Hartman who's not here, we won't be getting everything until

-16:-19:-55   **13**  noon tomorrow.

02:05:45   **14**        THE COURT:  So what do we do tomorrow, anything?

02:05:48   **15**        MR. SOFER:  I'd like the opportunity to spend at

02:05:51   **16**  least the morning trying to go through whatever list we get

02:05:54   **17**  tonight, and see how much we can identify as problematic.   If,

02:06:00   **18**  in fact, Amawi goes first and Mazloum goes second, and they --

-16:-19:-55   **19**  and you anticipate having a half day on Friday, then my guess,

-16:-19:-55   **20**  Judge, is that it's certainly possible that we'll end up having

02:06:18   **21**  next weekend to deal with this.  Although again, once again,

-16:-19:-55   **22**  I'll just say for the record, this wasn't how we were planning

-16:-19:-55   **23**  on using our time in preparing the government's case, so I hope

02:06:32   **24**  that the Court will be cognizant again if we were to ask for a

-16:-19:-55   **25**  short delay to try to catch up on the things that we would have

-16:-19:-55  **1**  been doing these last few weeks, that Your Honor at least

-16:-19:-55  **2**  consider the situation that we've been in.

-16:-19:-55  **3**          THE COURT:  Let me listen to this thing and go

02:06:50  **4**  home.

02:06:57  **5**          MR. SOFER:  Your Honor, can I give a two-minute

02:07:06  **6**  lesson?  May I approach?

02:07:08  **7**          THE COURT:  Yes.

02:07:10  **8**          (Discussion had off the record.)

02:07:40  **9**          (Video replayed.)

-16:-19:-55  **10**          THE COURT:  I didn't even hear ride out there.

02:08:50  **11**          MR. SOFER:  You mean you think it's deteriorated

-16:-19:-55  **12**  since before?

02:08:54  **13**          THE COURT:  Yeah.   I did not hear -- I heard

02:08:57  **14**  nothing from Agent Coats.

02:08:59  **15**          MR. SOFER:  We'll see what we can do.  We'll try

-16:-19:-55  **16**  the volume up.  Sometimes we turn the volume up on here and you

-16:-19:-55  **17**  turn the volume down on the headphones, we'll see if we can get

02:09:12  **18**  it better.

02:09:38  **19**          THE COURT:  I didn't even hear ride out there.   I

-16:-19:-55  **20**  heard nothing.   I didn't hear anything Agent Coats says.

02:09:46  **21**          MR. SOFER:  When you were pushing the buttons, is

-16:-19:-55  **22**  there any chance you pushed -- there's one of these that's in

-16:-19:-55  **23**  and out, if you try pushing that -- try another setting.   That

02:09:58  **24**  may help also.

02:10:34  **25**          (Video replayed.)

3054

| | | |
|---|---|---|
| 02:10:34 | **1** | THE COURT:  It was worse the second way and I hear |
| 02:10:37 | **2** | nothing the first way.   I'm hearing less than I heard. |
| 02:10:41 | **3** | MR. SOFER:  Let's try switching ear phones.   I was |
| -16:-19:-55 | **4** | able to hear some of it. |
| 02:11:26 | **5** | (Video replayed.) |
| 02:11:26 | **6** | THE COURT:  I heard a ride out there.   If |
| -16:-19:-55 | **7** | anything, it's not as clear as I heard before.   I don't think |
| 02:11:37 | **8** | it's audible enough to propose that.   I really don't. |
| 02:11:40 | **9** | MR. WITMER-RICH:  Question purchase 18 sets of |
| 02:11:45 | **10** | these and have the jury listen to it from the laptop.   It won't |
| -16:-19:-55 | **11** | require purchase of additional equipment beyond 18 of these. |
| -16:-19:-55 | **12** | THE COURT:  How will that work? |
| 02:12:00 | **13** | MR. WITMER-RICH:  Simply A TV feeding into. |
| -16:-19:-55 | **14** | THE COURT:  At some point tomorrow, before that, |
| -16:-19:-55 | **15** | why don't we go through the same exercise. |
| 02:12:07 | **16** | MR. SOFER:  Could perhaps right now, I don't know |
| -16:-19:-55 | **17** | you're willing to -- we have no objection to you listening to |
| -16:-19:-55 | **18** | that.  We have listened to it. |
| 02:12:21 | **19** | (Judge listened with laptop and headphones). |
| 02:13:26 | **20** | THE COURT:  Whatever it is, I don't think it's |
| -16:-19:-55 | **21** | audible enough.   I really don't.   So you plead the record. |
| -16:-19:-55 | **22** | Keep it for review if necessary.   But I'm going to let it stand |
| -16:-19:-55 | **23** | as it is. |
| -16:-19:-55 | **24** | MR. BRYAN:  I mean no disrespect to the Court, but |
| 02:13:44 | **25** | there is a phenomenon in audiology that is as people age and |

-16:-19:-55  **1**  they get older, the bones in the ears cause them not to be able

-16:-19:-55  **2**  to hear certain frequency noises as well as others.   I had a

-16:-19:-55  **3**  personal experience with my own mother.  We have an Invisible

-16:-19:-55  **4**  Fence dog collar.  It makes a beeping noise before it shocks the

-16:-19:-55  **5**  dog.   My mother and my mother-in-law were unable to hear that

02:14:10  **6**  beeping noise, and they're a little bit older.

02:14:12  **7**       THE COURT:  I can't hear it, and I'm the one who

-16:-19:-55  **8**  has to make the decision.

-16:-19:-55  **9**       MR. SOFER:  I would note, Your Honor, that would

-16:-19:-55  **10**  mean the entire prosecution team is getting old at a frightening

-16:-19:-55  **11**  rate.

02:14:22  **12**       THE COURT:  Mr. Bryan, I appreciate that

-16:-19:-55  **13**  suggestion, but quite candidly, unless something has changed,

-16:-19:-55  **14**  I've always had really pretty acute hearing.   I've got terrible

02:14:35  **15**  eyesight, and sometimes there's some conjunction between the

-16:-19:-55  **16**  two.

02:14:41  **17**       MR. BRYAN:  It has nothing to do with the ability

-16:-19:-55  **18**  to hear generally, it's different frequency noises are not as

02:14:47  **19**  receptive to an older adult's ear because of the aging process,

-16:-19:-55  **20**  Your Honor.

02:14:52  **21**       THE COURT:  Well, the <u>Wilkinson</u> case makes quite

02:14:55  **22**  clear it's up to me to determine whether or not.   I don't think

-16:-19:-55  **23**  that whatever deficiency due to my age I may have, I still can't

02:15:05  **24**  hear enough with that degree of reliability to let the jury hear

-16:-19:-55  **25**  that because I really think it's more speculative.  It's

02:15:17 **1** considerably more speculative than it is well-founded.   I

02:15:22 **2** thought I heard it.   I listened very carefully.   I hear, "ride

-16:-19:-55 **3** out there," but I don't hear anything else.   If you want to ask

02:15:34 **4** Agent Coats if he's here if he has any recollection of that

-16:-19:-55 **5** conversation…

-16:-19:-55 **6**             MR. SOFER:  I'll proffer I've spoken to Agent Coats

-16:-19:-55 **7** and he does not have a recollection of saying what the defense

-16:-19:-55 **8** has argued that he said.

-16:-19:-55 **9**             THE COURT:  Does he have any recollection of saying

-16:-19:-55 **10** whatever it was he said?

02:15:50 **11**             Agent, why don't we at least make a record on this

-16:-19:-55 **12** while he's here.

02:16:10 **13**             THE COURT:  You've previously been sworn, you

-16:-19:-55 **14** remain under oath.   Have you had occasion to listen -- by the

-16:-19:-55 **15** way, you are Agent Shannon Coats, right?

02:16:20 **16**             THE WITNESS:  Yes, I am.

-16:-19:-55 **17**             THE COURT:  Have you had occasion to listen to this

02:16:23 **18** excerpt that we've been listening to this last hour and a half

-16:-19:-55 **19** or so?

-16:-19:-55 **20**             THE WITNESS:  Yes, I have.

-16:-19:-55 **21**             THE COURT:  Do you recognize your voice on that

02:16:31 **22** excerpt?

-16:-19:-55 **23**             THE WITNESS:  I do recognize my voice.

-16:-19:-55 **24**             THE COURT:  Are you able to discern anything beyond

-16:-19:-55 **25** what appears in the transcript or are you able to discern what

-16:-19:-55  **1**  it was you were saying or said and does listening to it help

02:16:45  **2**  your recollection in that regard at all?

-16:-19:-55  **3**      THE WITNESS:  I don't have any recollection what

02:16:50  **4**  exactly was said, so I'm afraid I'm in the same position as

02:16:53  **5**  everyone else just having listened it to.   I'm the individual

-16:-19:-55  **6**  that actually produced that transcript that Your Honor listened

-16:-19:-55  **7**  to a moment ago and reviewed.   I can make out, "ride out

-16:-19:-55  **8**  there."  What is prior to that is unintelligible to me, and I

-16:-19:-55  **9**  can make out an "Uh" prior to that.   But I don't have any

02:17:11  **10**  independent recollection of what I said.

02:17:13  **11**      THE COURT:  And listening to it doesn't refresh

-16:-19:-55  **12**  your recollection?

-16:-19:-55  **13**      THE WITNESS:  It does not.  I listened to it many,

02:17:18  **14**  many times.

-16:-19:-55  **15**      THE COURT:  Mr. Sofer, any questions?

02:17:20  **16**      MR. SOFER:  None.

-16:-19:-55  **17**      THE COURT:  Counsel?

02:17:24  **18**      MR. BRYAN:  No.

02:17:30  **19**      THE COURT:  There's a matter I need to talk with

02:17:33  **20**  them about five minutes on the record, then maybe something I

-16:-19:-55  **21**  want to talk to you about.

02:17:38  **22**      MR. SOFER:  Do you want us to step out a few

-16:-19:-55  **23**  minutes?

-16:-19:-55  **24**      THE COURT:  No, we'll just go back here.

02:17:45  **25**      MR. SOFER:  One of the things we didn't get to do

-16:-19:-55  1  today, which I again would like to try to do before this begins

02:17:51  2  under the same theory, is a discussion generally in connection

-16:-19:-55  3  with the government Giglio disclosures, what of that is

-16:-19:-55  4  properly -- we obviously can't do that without all defense

02:18:06  5  counsel, but I don't know Your Honor would be willing to spend

-16:-19:-55  6  an hour or two on this sometime even tomorrow or early Wednesday

02:18:14  7  morning.   Certainly the government will make itself available.

-16:-19:-55  8  THE COURT:  I would prefer to do it tomorrow rather

-16:-19:-55  9  than interfere with -- let me do this and you can let the other

-16:-19:-55  10  counsel know.  I will expect to be notified maybe about 10:00 by

02:18:29  11  somebody, by e-mail or phone call to my office.   When we should

02:18:38  12  get together.  I suggest we do that at the latest maybe around

02:18:42  13  2:00.  But earlier if necessary, because I really don't want to

02:18:46  14  spend time once we're back with the jury doing things that we

02:18:51  15  can do tomorrow.  I'm trying to give you all time to handle

02:18:54  16  things as they come along, but we've got to get back to

02:19:01  17  presenting evidence.

02:19:02  18  MR. SOFER:  Yes, Judge.

02:19:06  19  (6:36)

20  (Sealed discussion in chambers follows.)

21  - - -

22

23

24

25

1                    C E R T I F I C A T E

2

3      I certify that the foregoing is a correct transcript from the

4    record of proceedings in the above-entitled matter.

5

6    /s Tracy L. Spore_____              _____

7    Tracy L. Spore, RMR, CRR              Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25