```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                          WESTERN DIVISION

 3   UNITED STATES OF AMERICA,    - Docket No. 3:06-CR-719
                                  -
 4     Plaintiff,                 - Toledo, Ohio
                                  - April 23, 2008
 5          v.                    - Trial
                                  -
 6   MOHAMMAD ZAKI AMAWI, et al.,-
                                  -
 7     Defendants.               -
     -------------------------------

 8
                       VOLUME 33, TRANSCRIPT OF TRIAL
 9               BEFORE THE HONORABLE JAMES G. CARR
            UNITED STATES DISTRICT CHIEF JUDGE, AND A JURY
10
     APPEARANCES:
11
     For the Plaintiffs:      United States Attorneys' Office
12                            By:   Thomas E. Getz
                                    Justin E. Herdman
13                            801 Superior Avenue, W
                              Cleveland, OH 44113
14                            (216) 622-3840

15                            U.S. Department of Justice
                              By:  Jerome J. Teresinski
16                                 David I. Miller
                              10th & Constitution Ave, NW
17                            Washington, DC 20530
                              (202) 353-3464
18
                              Office of the U.S. Attorney- Austin
19                            By:  Gregg N. Sofer
                              816 Congress Avenue
20                            Austin, TX 78701
                              (512) 916-5858
21

22

23

24

25
```

```
 1   For the Defendant Amawi: Office of the Federal Public
                              Defender - Cleveland
 2                           By:  Amy B. Cleary
                                  Jonathan P. Witmer-Rich
 3                                Edward G. Bryan
                                  Timothy C. Ivey
 4                           750 Skylight Office Tower
                             1660 West Second St.
 5                           Cleveland, OH 44113
                             (216) 522-4856
 6
                             Muawad & Muawad
 7                           By:  Elias Muawad
                             36700 Woodward Avenue, Suite 209
 8                           Bloomfield Hills, MI 48304
                             (248) 594-4700
 9
     For the Defendant       Kerger & Kerger
10   El-Hindi:               By:  Stephen D. Hartman
                             Suite 201
11                           33 South Michigan Street
                             Toledo, OH 43602
12                           (419) 255-5990

13                           Boss & Vitou
                             By:  Charles M. Boss
14                           111 West Dudley Street
                             Maumee, OH 43537-2140
15                           (419) 893-5555

16                           Raslan, El-Kamhawy & Pla
                             By:  Alek H. El-Kamhawy
17                           Suite 3FE, 1700 East 13 Street
                             Cleveland, OH 44114
18                           (216) 928-1500

19   For the Defendant       David L. Doughten
     Mazloum:                4403 St. Clair Avenue
20                           Cleveland, OH 44103-1125
                             (216) 361-1112
21
                             Helmick & Hoolahan
22                           By:  Jeffrey J. Helmick
                             2nd Floor
23                           1119 Adams Street
                             Toledo, OH 43624-1508
24                           (419) 243-3800

25
```

1  Mohammed Abdrabboh
   1620 Ford Avenue
2  Wyandotte, MI 48192
   (734) 283-8405
3
   Court Reporter:     Tracy L. Spore, RMR, CRR
4  1716 Spielbusch Avenue
   Toledo, Ohio 43624
5  (419) 243-3607

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
   Proceedings recorded by mechanical stenography, transcript
24 produced by notereading.
25

**1**  (Commenced at 8:44 a.m.)

**2**  THE COURT:  With regard to the motion the

-08:-44:-04 **3**  government filed yesterday, there was a bit of research on the

-08:-44:-04 **4**  issue of the child support.  I found some cases on the issue of

00:00:35 **5**  cross-examination of government witness on unpaid child support,

-08:-44:-04 **6**  denial of such examination was not an abuse of discretion  U.S.

00:00:50 **7**  v. Geams, 427 F.3d 1333, 1339 Tenth Circuit, 2005;  U.S. v.

-08:-44:-04 **8**  Purnell, P-u-r-n-e-l-l, Westlaw 647032 F. 5, unpublished

-08:-44:-04 **9**  decision, Fourth Circuit, 1998; and U.S. v. Civella, 666 F.2d

-08:-44:-04 **10**  1122, Eighth Circuit, 1981.

-08:-44:-04 **11**  However, also I found the D.C. Circuit Case, which

-08:-44:-04 **12**  I think was on point and pertinent, U.S. v. Whitmore, 359 F.3d

00:01:42 **13**  609 at page 615, 360 U.S. App. D.C., 2004, D.C. Circuit, where

00:01:50 **14**  it held that the failure to permit cross-examination of a

00:01:56 **15**  government witness with regard to a license suspension that

00:02:02 **16**  resulted due to the witness's failure to pay child support, the

00:02:11 **17**  Court erred and it was reversible error to not allow the

00:02:18 **18**  cross-examination as to both subjects.  But for the failure to

-08:-44:-04 **19**  pay child support, the license wouldn't have been suspended.

00:02:27 **20**  I also found another Fourth Circuit case, U.S. vs.

-08:-44:-04 **21**  Powell, 42 Fed. Appx. 565, 569, 2002 Westlaw, 1733-819 at star 2

00:02:47 **22**  where the witness testified he loved the child, and testimony on

00:02:56 **23**  direct portrayed him as an involved father.  Cross-examination

00:03:00 **24**  would be proper to impeach his veracity and credibility as to

-08:-44:-04 **25**  the fact he did not pay child support.

-08:-44:-04 **1**        So as to that issue, I will permit some limited

00:03:10 **2** inquiry.   Not into great elaborate detail, but I think that the

-08:-44:-04 **3** arrearage and the period of arrearage and the extent to which

00:03:25 **4** it's increased or decreased is pertinent.

-08:-44:-04 **5**        And one of the cases I may not have picked up, I

00:03:51 **6** appear not to have copied the reference -- I think it was the

00:03:56 **7** <u>Whitmore</u> case, if memory serves, indicating that this kind of

-08:-44:-04 **8** inquiry into a witness's indifference to his legal obligations

-08:-44:-04 **9** and requirements is a proper subject of cross-examination.

00:04:18 **10** Again, that does not indicate -- that does not open the door to

00:04:24 **11** trial of the witness as to that topic.   But it is proper to

-08:-44:-04 **12** ask, see what he has to say and go from there.

00:04:45 **13**        With regard to the prior drug use, when did that

-08:-44:-04 **14** occur?   Did he acknowledge he was using on a couple occasions

00:04:57 **15** during the course of this investigation?   I just can't

00:05:00 **16** remember.

00:05:01 **17**        MR. SOFER:  I believe the testimony, Your Honor,

00:05:03 **18** was that the vast amount of the drug use was during --

-08:-44:-04 **19**        THE COURT:  Military service.

-08:-44:-04 **20**        MR. SOFER:  Not even his military service, during

-08:-44:-04 **21** the time he worked for the Drug Enforcement Administration.

-08:-44:-04 **22** Again, the government's already questioned the witness about --

-08:-44:-04 **23**        THE COURT:  I tend to agree.   If they want to

-08:-44:-04 **24** simply confirm that.  We're not going to go into that.   It's

00:05:26 **25** remote in time.   Obviously, if there were reason to believe it

-08:-44:-04 **1** occurred during the course of this investigation, it might have

00:05:33 **2** impaired his ability to observe, et cetera, et cetera, et

00:05:39 **3** cetera.

00:05:39 **4**          MR. SOFER:   And he did testify, Judge -- to be

-08:-44:-04 **5** clear, he did testify he had used marijuana at some point while

-08:-44:-04 **6** he was working for the FBI and, of course, the government

00:05:49 **7** concedes that that is a proper area of cross-examination as

-08:-44:-04 **8** well.

00:05:53 **9**          MR. BOSS:  Your Honor, the issue is not drug use.

00:05:57 **10** The issue is his failure to disclose it when asked specifically

-08:-44:-04 **11** on the forms for the DEA and for the FBI, and also for the

00:06:08 **12** military security clearance which he obtained.

-08:-44:-04 **13**          THE COURT:  I think that's been brought out.   You

-08:-44:-04 **14** can confirm that.   But again, I don't think --

00:06:17 **15**          MR. BOSS:  There's also, if I may, an indication in

-08:-44:-04 **16** the government's <u>Jencks</u> letter, which I'm trying to find, that

00:06:25 **17** he continued to use as recently as 2006, while he was still in

-08:-44:-04 **18** the employ and being paid by the government, so it would appear

00:06:40 **19** it's not distant in time, it's ongoing.   The drug use -- they

-08:-44:-04 **20** indicate there was marijuana use.

-08:-44:-04 **21**          THE COURT:  I'll let you touch upon that, but

00:06:59 **22** again, we're not going to have a trial as to --

00:07:01 **23**          MR. BOSS:  I don't intend to pry into the details.

-08:-44:-04 **24**          THE COURT:  The misdemeanor offense, I don't think

00:07:09 **25** that has anything to do with anything.   It's 1992, bad check.

-08:-44:-04  **1**  It would require some kind of -- although it's extrinsic, I'm

00:07:27  **2**  not going to let you go into that.

-08:-44:-04  **3**  The same with the military punishment.   That's

-08:-44:-04  **4**  been brought out.   I see no reason to go into that again.

00:07:35  **5**  That's not a criminal conviction.  If we start going into that,

-08:-44:-04  **6**  then we've got to waste time on something that really has no

00:07:46  **7**  probative value as far as I can tell.

00:07:48  **8**  MR. IVEY:  I'm sorry?

-08:-44:-04  **9**  THE COURT:  That has no probative value as far as I

-08:-44:-04  **10**  can tell.

-08:-44:-04  **11**  MR. IVEY:  The punishment --

00:07:58  **12**  THE COURT:  Military punishment.

00:08:00  **13**  The bench warrant, if you want to speak to that

-08:-44:-04  **14**  issue, please do.   Apparently he had a jet ski violation and

00:08:12  **15**  was served a summons and didn't show up; is that what happened?

-08:-44:-04  **16**  MR. HARTMAN:  I believe that's what the letter

-08:-44:-04  **17**  said, yeah.   He got a citation for a jet ski in 1992.

-08:-44:-04  **18**  THE COURT:  An actual summons, or he had to pay $25

00:08:27  **19**  or $125.  As far as I'm concerned, people with those things

-08:-44:-04  **20**  ought to pay $2,500 for taking them out.   As a lakeside

00:08:38  **21**  property owner whose slumber is sometimes disturbed by the

00:08:43  **22**  obnoxious sound.

-08:-44:-04  **23**  MR. SOFER:  I think the testimony was he was issued

00:08:47  **24**  -- the testimony was he was issued a summons of some sort, did

-08:-44:-04  **25**  not pay it originally.  There was some confusion on his part and

00:08:54 **1** ended up paying the money, and it was taken care of.

-08:-44:-04 **2** THE COURT: It's already been -- I just don't think

-08:-44:-04 **3** you should go into it. Again, I don't see any probative value.

00:09:03 **4** I do, though, think the child support issue --

00:09:12 **5** Let me take a quick look at the exhibit.

00:09:16 **6** MR. HERDMAN: I didn't actually send it. My plan

-08:-44:-04 **7** was to file it under seal this morning. I have a copy. It

00:09:26 **8** should only take a couple seconds to look this over, Your Honor.

00:10:56 **9** MR. BOSS: Actually, Your Honor, I had not seen

-08:-44:-04 **10** this until just now.

-08:-44:-04 **11** THE COURT: Take a moment. I'm looking at the

-08:-44:-04 **12** case.

00:11:04 **13** MR. BOSS: Sure. May I ask a question?

00:11:22 **14** (Discussion had off the record.)

00:11:44 **15** MR. BOSS: Your Honor, could we ask the Court to

00:11:47 **16** please reserve judgment on this, not do it now?

-08:-44:-04 **17** THE COURT: Okay. That's fine. Are we all set

00:11:54 **18** then? Are we all set?

00:12:01 **19** MR. SOFER: Judge, do you want the witness on the

-08:-44:-04 **20** stand now?

-08:-44:-04 **21** THE COURT: Please. Unless anybody has anything

-08:-44:-04 **22** else, we'll get the jury in the box.

00:12:49 **23** There is an excerpt of the case, <u>Toohey</u>,

00:12:55 **24** T-o-o-h-e-y, it's a Military Court of Appeals case, 60 M.J.,

00:12:59 **25** appears to permit cross-examination of that sort. But the

-08:-44:-04 **1** witness had testified affirmatively, apparently thought -- or

-08:-44:-04 **2** there had been character evidence, I'm just reading, about his

00:13:23 **3** character for peacefulness.  I don't think we have anything of

-08:-44:-04 **4** that sort here.

00:13:30 **5** MR. SOFER:  Again, Judge, the government elicited

-08:-44:-04 **6** this negative information from the witness.

00:14:30 **7** (The jury enters the courtroom.)

00:14:31 **8** THE COURT:  Ladies and gentlemen, for those of you

00:14:34 **9** who may not recall, I'm Judge Carr.  Let me explain why we took

**10** the recess that we did.  Principally to attend to a fair number

**11** of evidentiary issues that I decided to try to address to the

**12** extent that I could during that interlude, and also give Counsel

**13** the opportunity to prepare themselves for direct and then

00:15:02 **14** ultimately redirect -- or cross-examination, and ultimately

00:15:06 **15** redirect examination.  The government had indicated that and

-08:-44:-04 **16** represented, and it's quite accurate, that its examination of

00:15:18 **17** Mr. Griffin, its direct examination had been a good bit or

00:15:22 **18** somewhat shorter than all of us anticipated.  And I apologize

-08:-44:-04 **19** for any inconvenience, particularly having you called on Monday

-08:-44:-04 **20** to indicate not to come yesterday.

-08:-44:-04 **21** But we are back in business.  Mr. Griffin, you

-08:-44:-04 **22** remain under oath.  I believe Mr. Ivey will conduct

00:15:42 **23** cross-examination.  And I should indicate that there may be

00:15:45 **24** some issues -- there were some issues we couldn't resolve until

-08:-44:-04 **25** we were all actually here and questions were asked and

00:15:55 **1** objections were made.   So there may be some disruption and

-08:-44:-04 **2** sidebars more frequently than has occurred so far.   I apologize

00:16:10 **3** for that.   It's just the way things work.   So don't hold it

00:16:14 **4** against anybody if we wind up jumping up and down and going over

-08:-44:-04 **5** there from time to time.

00:16:24 **6**                 Okay.  Mr. Ivey, you may examine.

00:16:28 **7**                             - - -

00:16:28 **8**                 DARREN GRIFFIN, CROSS-EXAMINATION

-08:-44:-04 **9** BY MR. IVEY:

-08:-44:-04 **10**     Q.   Mr. Griffin, the government had provided you with a

00:16:31 **11** guide in case you wanted to reference it for dates and times.

-08:-44:-04 **12** That should be up there for you to look at should you decide to

-08:-44:-04 **13** refer to it.

00:16:40 **14**     A.   Thank you.

-08:-44:-04 **15**     Q.   When you began your work as an operative for the FBI in

-08:-44:-04 **16** this matter, you were given various instructions by the FBI; is

00:16:56 **17** that correct?

00:16:56 **18**     A.   As in information gathering, yes.

00:17:00 **19**     Q.   You were told by the FBI to focus on the Muslim

00:17:03 **20** community; is that correct?

00:17:06 **21**     A.   Yes.

00:17:08 **22**     Q.   So religion was a factor in the decision by the

-08:-44:-04 **23** government on who to target, correct?

00:17:16 **24**     A.   No, actually it was just the threats or the people of

00:17:22 **25** interest were in the Muslim community.

00:17:25 **1**    **Q.**   Well, your testimony on direct examination, and I think

-08-44:-04 **2** you just said just now, you were asked to focus on the Muslim

00:17:34 **3** community, correct?

-08-44:-04 **4**    **A.**   People in the Muslim community, yes.

-08-44:-04 **5**    **Q.**   So it wasn't people in the Jewish community?

00:17:40 **6**    **A.**   No, it was not.

-08-44:-04 **7**    **Q.**   It wasn't people in the Christian community?

-08-44:-04 **8**    **A.**   It was not.

-08-44:-04 **9**    **Q.**   It was people in the Muslim community, correct?

00:17:47 **10**    **A.**   For the most part, yes.

00:17:49 **11**    **Q.**   So one of factors was religion?

00:17:52 **12**    **A.**   Possibly.

00:17:54 **13**    **Q.**   The other thing -- one of the factors that caused you to

-08-44:-04 **14** look at Mr. Amawi was the fact that his appearance had changed.

-08-44:-04 **15** He had grown a long beard when he returned from Jordan; is that

-08-44:-04 **16** correct?

-08-44:-04 **17**    **A.**   That is incorrect.

00:18:10 **18**    **Q.**   The beard that Mr. Amawi grew was not a factor in your

00:18:16 **19** discussion and direct examination of how he had become more

00:18:20 **20** radical?

00:18:21 **21**    **A.**   No, I just stated about his appearance, that wasn't a

-08-44:-04 **22** factor.

-08-44:-04 **23**    **Q.**   The government went through with you photographs of Mr.

-08-44:-04 **24** Amawi about his appearance?

-08-44:-04 **25**    **A.**   Yes.

-08:-44:-04 **1**    **Q.**    And before his trip to Jordan, they showed you a series

-08:-44:-04 **2**  of photographs where Mr. Amawi had a shorter beard or no facial

-08:-44:-04 **3**  hair, correct?

-08:-44:-04 **4**    **A.**    Correct.

00:18:41 **5**    **Q.**    And then when he returned from Jordan they showed you a

-08:-44:-04 **6**  series of photographs where Mr. Amawi had grown a much longer

-08:-44:-04 **7**  beard; is that correct?

-08:-44:-04 **8**    **A.**    Correct.

-08:-44:-04 **9**    **Q.**    But you're telling the ladies and gentlemen of the jury

00:18:52 **10**  that the beard -- that appearance had no factor in targeting Mr.

-08:-44:-04 **11**  Amawi for investigation?

-08:-44:-04 **12**    **A.**    It was not.

-08:-44:-04 **13**    **Q.**    So the government's presentation of showing those

00:19:03 **14**  different photographs basically provided nothing with respect to

-08:-44:-04 **15**  your decision to target him as a person of interest, correct?

-08:-44:-04 **16**             MR. SOFER:  Objection, it was not in witness's

-08:-44:-04 **17**  decision.

00:19:18 **18**             THE COURT:  Why don't we -- go ahead.

00:19:22 **19**    **A.**    I don't know what the FBI's determination was, but the

-08:-44:-04 **20**  decision came from the comments Mr. Amawi made.

-08:-44:-04 **21**  BY MR. IVEY:

-08:-44:-04 **22**    **Q.**    Exactly.   So you would agree with me that a person's

-08:-44:-04 **23**  appearance, that shouldn't really have anything to do with

00:19:36 **24**  whether or not they're targeted for investigation, correct?

-08:-44:-04 **25**    **A.**    I would say so.

00:19:41 **1** **Q.** Because -- and their religion shouldn't have anything to

-08:-44:-04 **2** do with it either, should it?

00:19:49 **3** **A.** I would say so.

00:19:51 **4** **Q.** Because if you just focus on the Muslim community, if

-08:-44:-04 **5** you just focus on individuals with long beards, then the Timothy

-08:-44:-04 **6** McVeighs of the world and the Terry Nicholses of the world would

00:20:02 **7** escape this investigation?

-08:-44:-04 **8** MR. SOFER: Objection, Your Honor.

-08:-44:-04 **9** THE COURT: I would tend to agree. I think you're

00:20:07 **10** arguing with the witness. If the statement is appropriate, it

-08:-44:-04 **11** can be presented in closing argument. Go ahead.

00:20:17 **12** BY MR. IVEY:

00:20:17 **13** **Q.** The government gave you 20 persons of interest to look

00:20:20 **14** at or to gather information on when you began your work; is that

00:20:24 **15** correct?

00:20:24 **16** **A.** That is approximate.

00:20:27 **17** **Q.** But it is approximately 20?

-08:-44:-04 **18** **A.** Somewhere around there, yes.

00:20:32 **19** **Q.** That's the number you used in direct?

-08:-44:-04 **20** **A.** Correct.

-08:-44:-04 **21** **Q.** Of those 20, when you first got them, Mr. Amawi was not

-08:-44:-04 **22** one of those 20, was he?

-08:-44:-04 **23** **A.** Correct.

00:20:40 **24** **Q.** At the time you first looked at Mr. Amawi, he was not

00:20:45 **25** currently engaged in any type of criminal agreement or

00:20:50  **1**  enterprise with Mr. Mazloum, was he?

00:20:53  **2**      A.    Not that I know of.

00:20:55  **3**      Q.    And as far as you know, Mr. Amawi was not involved in

-08:-44:-04  **4**  any type of criminal agreement or enterprise with Mr. El-Hindi,

00:21:03  **5**  was he?

-08:-44:-04  **6**      A.    None that I know of.

-08:-44:-04  **7**      Q.    In fact, at the time in June of 2004, that's when you

00:21:10  **8**  first started looking at Mr. Amawi; is that correct?

00:21:15  **9**      A.    I believe during that time frame I reported to the FBI

00:21:21  **10**  the statements that he made of trying to get into Iraq.

-08:-44:-04  **11**      Q.    That was in June of 2000?

-08:-44:-04  **12**      A.    I believe so.

00:21:29  **13**      Q.    And at that time, the best of your knowledge, Mr. Amawi

-08:-44:-04  **14**  didn't even know Mr. El-Hindi, did he?

-08:-44:-04  **15**      A.    Not to my knowledge.

00:21:36  **16**      Q.    At that time in June, 2004 when Mr. Amawi made this

-08:-44:-04  **17**  statement that you're talking about, to your knowledge, Mr.

00:21:44  **18**  Amawi did not own a firearm, did he?

00:21:47  **19**      A.    Not to my knowledge.

00:21:48  **20**      Q.    To your knowledge Mr. Amawi did not have any type of

-08:-44:-04  **21**  materials or bomb making materials, did he?

00:21:57  **22**      A.    Not to my knowledge.

-08:-44:-04  **23**      Q.    To your knowledge, Mr. Amawi was not engaged in training

00:22:03  **24**  of tactics or firearms or any type of fighting with any other

-08:-44:-04  **25**  individual yourself, was he?

-08:-44:-04 **1**    **A.**    Not to my knowledge.

00:22:17 **2**    **Q.**    In fact to your knowledge Mr. Amawi was not currently

00:22:20 **3**    engaged in June of 2004 in any type of criminal activity that

-08:-44:-04 **4**    you were aware of?

00:22:27 **5**    **A.**    None that I was aware of.

00:22:29 **6**    **Q.**    Now, what made Mr. Amawi come into your free view or

00:22:36 **7**    interest was the statement that he made that you've mentioned

-08:-44:-04 **8**    here a few times, correct?

00:22:41 **9**    **A.**    Somewhat.   He was around people of interest also.

00:22:46 **10**    **Q.**    But those persons of interest, you're talking about the

-08:-44:-04 **11**    approximate 20?

-08:-44:-04 **12**    **A.**    Correct.

00:22:52 **13**    **Q.**    Of those persons of interest that he was around, neither

-08:-44:-04 **14**    of those two persons of interest were Mr. El-Hindi or Mr.

-08:-44:-04 **15**    Mazloum, were they?

-08:-44:-04 **16**    **A.**    No, they were not.

00:23:04 **17**    **Q.**    Now, this statement that Mr. Amawi made was to the

-08:-44:-04 **18**    effect you overheard him say that when he was in Jordan that he

00:23:13 **19**    attempted to go over into Iraq, correct?

00:23:16 **20**    **A.**    And perform Jihad.

-08:-44:-04 **21**    **Q.**    And perform Jihad, correct?

-08:-44:-04 **22**    **A.**    Correct.

-08:-44:-04 **23**    **Q.**    And his family stopped him from going, in effect,

-08:-44:-04 **24**    correct?

00:23:27 **25**    **A.**    That's the story he told me, yes.

| | | |
|---|---|---|
| 00:23:30 | **1** | **Q.**   Now, that statement alone caused you to begin to pursue |
| -08:-44:-04 | **2** | Mr. Amawi and to record him, correct? |
| 00:23:42 | **3** | **A.**   That is not correct.   The only thing I did was inform |
| -08:-44:-04 | **4** | the FBI.   Once again, I'm an information gatherer. |
| 00:23:50 | **5** | **Q.**   And that statement that you heard was in June of 2004, |
| -08:-44:-04 | **6** | correct? |
| 00:23:55 | **7** | **A.**   I believe so. |
| 00:23:56 | **8** | **Q.**   And then the first tape that you -- that was played for |
| -08:-44:-04 | **9** | the ladies and gentlemen of the jury was in June of 2004, |
| 00:24:03 | **10** | correct? |
| 00:24:04 | **11** | **A.**   I cannot recall. |
| -08:-44:-04 | **12** | **Q.**   Why don't you take a look at your guide? |
| 00:24:11 | **13** | **A.**   Even looking at.  This is only part of it, so I would |
| 00:24:16 | **14** | have to look at all of the -- or if you could show me something. |
| 00:24:23 | **15** | This does not necessarily reflect the first time they recorded |
| -08:-44:-04 | **16** | Mr. Amawi. |
| -08:-44:-04 | **17** | **Q.**   My question, Mr. Griffin, was the first tape that the |
| -08:-44:-04 | **18** | jury heard.   And I believe that that tape is reflected on the |
| -08:-44:-04 | **19** | reference guide that would be on the first page and would be the |
| 00:24:42 | **20** | fourth line down, 6432 at 2004. |
| -08:-44:-04 | **21** | **A.**   I stand corrected.   Yes. |
| -08:-44:-04 | **22** | **Q.**   So the first tape the jury heard was the same month as |
| -08:-44:-04 | **23** | which you overheard this statement Mr. Amawi made? |
| 00:25:02 | **24** | **A.**   Correct. |
| -08:-44:-04 | **25** | **Q.**   In that tape, that statement about his family stopping |

00:25:07 **1** him from going to do Jihad, you then began the process of taping

-08:-44:-04 **2** Mr. Amawi over the course of significant time, correct?

-08:-44:-04 **3**  **A.**  Correct.

00:25:17 **4**  **Q.**  You also took Mr. Amawi basically shooting on three

-08:-44:-04 **5** different occasions at Cleland's; is that correct?

00:25:26 **6**  **A.**  Correct.

00:25:29 **7**  **Q.**  And when you have the discussions with Mr. Amawi, and he

-08:-44:-04 **8** made radical and brazen statements when you would be taping him,

00:25:41 **9** correct?

-08:-44:-04 **10**  **A.**  Not all the time.

-08:-44:-04 **11**  **Q.**  But he did make them?

-08:-44:-04 **12**  **A.**  Say again.

-08:-44:-04 **13**  **Q.**  He did make them?

00:25:47 **14**  **A.**  He made statements, yes.

00:25:49 **15**  **Q.**  But not all the time?

-08:-44:-04 **16**  **A.**  Correct.

00:25:55 **17**  **Q.**  Over this period you began taping in June of 2004 up

00:26:00 **18** until the point that you went to Jordan with Mr. Amawi in around

-08:-44:-04 **19** August 22, of 2005, correct?

00:26:08 **20**  **A.**  Correct.

-08:-44:-04 **21**  **Q.**  Now, again, the real, would you agree, driving force

-08:-44:-04 **22** that brought Mr. Amawi, the beginning of this process, into this

-08:-44:-04 **23** was that statement that you referred to?

00:26:23 **24**  MR. SOFER: Objection.

00:26:24 **25**  THE COURT:  Overruled.

3163

| | | |
|---|---|---|
| 00:26:27 | **1** | **A.**  I can't tell you what the driving force is.   Once |
| 00:26:30 | **2** | again, I don't determine who I gather information on.   I just |
| 00:26:35 | **3** | gather information. |
| -08:-44:-04 | **4** | BY MR. IVEY: |
| -08:-44:-04 | **5** | **Q.**  Well, you gathered the information, the statement; you |
| 00:26:40 | **6** | reported it to the FBI? |
| 00:26:42 | **7** | **A.**  Yes. |
| -08:-44:-04 | **8** | **Q.**  In June of 2004, correct? |
| -08:-44:-04 | **9** | **A.**  Right. |
| 00:26:45 | **10** | **Q.**  Then in June of 2004 you're taping? |
| 00:26:47 | **11** | **A.**  Correct. |
| 00:26:48 | **12** | **Q.**  So shortly thereafter the statement, the taping began, |
| -08:-44:-04 | **13** | correct? |
| 00:26:53 | **14** | **A.**  Yes, they told me to tape these. |
| 00:26:56 | **15** | **Q.**  And that was in response to your reporting what the |
| 00:26:59 | **16** | statement was? |
| 00:27:00 | **17** | **A.**  I can't tell you if that's the only thing. |
| -08:-44:-04 | **18** | **Q.**  But you were the contact person with Mr. Amawi, correct? |
| 00:27:08 | **19** | **A.**  Yes. |
| 00:27:10 | **20** | **Q.**  There was no other operative taping Mr. Amawi but you, |
| 00:27:14 | **21** | correct? |
| -08:-44:-04 | **22** | MR. SOFER:  Objection Your Honor. |
| -08:-44:-04 | **23** | THE COURT:  He can answer to his knowledge. |
| 00:27:19 | **24** | BY MR. IVEY: |
| 00:27:19 | **25** | **Q.**  To your knowledge. |

-08:-44:-04 **1**    **A.**  I have no clue.   I have no way of knowing.

-08:-44:-04 **2**    **Q.**  And in that statement Mr. Amawi again indicated that it

-08:-44:-04 **3**  was his family that stopped him from going over to Iraq,

-08:-44:-04 **4**  correct?

00:27:31 **5**    **A.**  With the initial Imam, yes.

-08:-44:-04 **6**        THE COURT:  I'm going to ask Mr. Griffin, would you

00:27:41 **7**  just answer the question to the extent you can yes or no.   If

-08:-44:-04 **8**  you can't answer it yes or no.   Say I can't answer it yes or

-08:-44:-04 **9**  no.   Mr. Ivey will rephrase.   You'll have ample opportunity

-08:-44:-04 **10**  for elaboration.

00:27:53 **11**        THE WITNESS:  Yes, Your Honor.

-08:-44:-04 **12**        THE COURT:  Go ahead, Mr. Ivey.

00:27:56 **13**  BY MR. IVEY:

00:27:56 **14**    **Q.**  Eventually this led to almost a year and a half to two

-08:-44:-04 **15**  years later in an August 22 trip to Jordan, correct?

-08:-44:-04 **16**    **A.**  Correct.

-08:-44:-04 **17**    **Q.**  You went with Mr. Amawi on that trip to Jordan?

-08:-44:-04 **18**    **A.**  Yes.

-08:-44:-04 **19**    **Q.**  When you got to Jordan, you were not met at the airport

00:28:15 **20**  by a Syrian contact, were you?

00:28:19 **21**    **A.**  We were not.

-08:-44:-04 **22**    **Q.**  You were not met at the airport by anyone from the Iraqi

00:28:29 **23**  insurgency were you?

00:28:30 **24**    **A.**  Not that I know of.

-08:-44:-04 **25**    **Q.**  You were met at the airport by three of Mr. Amawi's

3165

-08:-44:-04 **1** family members, were you not?

00:28:36 **2**     **A.**   Correct.

-08:-44:-04 **3**     **Q.**   You were met by two of his brothers?

00:28:40 **4**     **A.**   Correct.

00:28:41 **5**     **Q.**   And you were met by his mother?

00:28:43 **6**     **A.**   Correct.

00:28:44 **7**     **Q.**   They picked you up in the family vehicle, the Jeep

00:28:48 **8** Cherokee, correct?

00:28:49 **9**     **A.**   Yes.

00:28:51 **10**     **Q.**   When you were taken from the airport, you did not go and

-08:-44:-04 **11** stay and live with any Syrian contact, did you?

00:29:02 **12**     **A.**   Excuse me, when I was taping?

-08:-44:-04 **13**     **Q.**   You did not live with a Syrian contact when you were in

00:29:07 **14** Jordan with Mr. Amawi, did you?

-08:-44:-04 **15**     **A.**   No.

-08:-44:-04 **16**     **Q.**   You did not cross over the border into Iraq and stay in

-08:-44:-04 **17** any insurgency camp or compound, did you?

-08:-44:-04 **18**     **A.**   No.

-08:-44:-04 **19**     **Q.**   You stayed at Mr. Amawi's family's house, didn't you?

-08:-44:-04 **20**     **A.**   Correct.

00:29:22 **21**     **Q.**   Mr. Amawi considered you a friend, did he not, in your

-08:-44:-04 **22** opinion?

00:29:29 **23**     **A.**   Yes.

00:29:31 **24**     **Q.**   You were picked up at the airport by Mr. Amawi's family

-08:-44:-04 **25** and stayed in Mr. Amawi's family's home, correct?

3166

| | | |
|---|---|---|
| 00:29:39 | **1** | **A.**  In the -- yes. |
| -08:-44:-04 | **2** | **Q.**  And that is the same family that talked Mr. Amawi out of |
| -08:-44:-04 | **3** | going to Iraq, correct? |
| 00:29:48 | **4** | **A.**  As far as I know, yes. |
| -08:-44:-04 | **5** | **Q.**  And also when you were in Jordan, Mr. Amawi discussed |
| 00:29:55 | **6** | and I believe he introduced you to an Imam, correct? |
| 00:30:00 | **7** | **A.**  Several. |
| 00:30:04 | **8** | **Q.**  Pardon me? |
| -08:-44:-04 | **9** | **A.**  Several. |
| -08:-44:-04 | **10** | **Q.**  And he specifically introduced you to an Imam that |
| -08:-44:-04 | **11** | assisted his family in talking him out of going to Iraq, |
| -08:-44:-04 | **12** | correct? |
| -08:-44:-04 | **13** | **A.**  Actually, that's incorrect.  That's incorrect.  I |
| -08:-44:-04 | **14** | never met that Imam. |
| 00:30:20 | **15** | **Q.**  Mr. Amawi discussed that, did he not? |
| -08:-44:-04 | **16** | **A.**  He did. |
| -08:-44:-04 | **17** | **Q.**  So when you go to Jordan after all this taping and after |
| -08:-44:-04 | **18** | all this training and after all this -- these comments, you end |
| 00:30:31 | **19** | up with Mr. Amawi in his family's circle, correct? |
| -08:-44:-04 | **20** | **A.**  Correct. |
| 00:30:39 | **21** | **Q.**  And you never meet or talk to any Syrian contact or any |
| 00:30:47 | **22** | Iraqi insurgency, do you? |
| -08:-44:-04 | **23** | **A.**  Not that I know of. |
| -08:-44:-04 | **24** | **Q.**  In fact the purpose of you going over there, as you |
| -08:-44:-04 | **25** | testified to, was not even to go into Iraq and do anything, was |

-08:-44:-04  **1**  it?

-08:-44:-04  **2**  **A.**  Correct.

-08:-44:-04  **3**  **Q.**  The purpose of going over there was not to go raise a

00:31:04  **4**  violent Jihad, you or Mr. Amawi, was it?

-08:-44:-04  **5**  **A.**  Correct.

-08:-44:-04  **6**  **Q.**  And you didn't do that, did you?

-08:-44:-04  **7**  **A.**  We did not.

-08:-44:-04  **8**  **Q.**  Your purpose was to go deliver laptop computers,

-08:-44:-04  **9**  correct?

-08:-44:-04  **10**  **A.**  Yes.

-08:-44:-04  **11**  **Q.**  To a Syrian contact, correct?

-08:-44:-04  **12**  **A.**  Correct.

-08:-44:-04  **13**  **Q.**  But you didn't do that either, did you?

-08:-44:-04  **14**  **A.**  We did not.

00:31:27  **15**  **Q.**  I'd like talk to about the association between the

-08:-44:-04  **16**  defendants in this case of Mr. Amawi.  Again, at the beginning

-08:-44:-04  **17**  when you first started or were instructed to look at Mr. Amawi,

00:31:42  **18**  begin taping him, Mr. Amawi did not know Mr. El-Hindi, did he,

-08:-44:-04  **19**  as far as you know?

-08:-44:-04  **20**  **A.**  As far as I knew.

-08:-44:-04  **21**  **Q.**  In fact, you didn't mention Mr. El-Hindi to Mr. Amawi

00:31:53  **22**  until about January the 10th or so of 2005, around that time

-08:-44:-04  **23**  period?

00:31:58  **24**  **A.**  I'd be guessing.

-08:-44:-04  **25**  THE COURT:  I couldn't hear you.

3168

00:32:03 **1**       THE DEFENDANT:  I'd be guessing.   I can't recall.

00:32:10 **2** BY MR. IVEY:

00:32:10 **3**    **Q.**   Let's see what you testified to on direct.

00:32:14 **4**       THE COURT:  If the record showed that was the

-08:-44:-04 **5** approximate date, would you have reason to dispute it?

00:32:22 **6**       THE WITNESS:  No.

00:32:23 **7** BY MR. IVEY:

00:32:23 **8**    **Q.**   You have no reason to dispute that?

00:32:25 **9**    **A.**   No, if that's what the record shows.

-08:-44:-04 **10**    **Q.**   And that was some six months after you began that -- the

00:32:31 **11** first tape the jury heard on Mr. Amawi in June of 2004, correct?

-08:-44:-04 **12**    **A.**   Correct.

00:32:37 **13**    **Q.**   Now, you learned of Zubair and Khaleel through

-08:-44:-04 **14** Mr. El-Hindi; did you not?

-08:-44:-04 **15**    **A.**   Correct.

-08:-44:-04 **16**    **Q.**   And you didn't hear anything about Zubair and Khaleel in

-08:-44:-04 **17** June of 2004, around that time frame, from Mr. Amawi, did you?

-08:-44:-04 **18**    **A.**   Not from Mr. Amawi.

00:32:55 **19**    **Q.**   You didn't hear about them from Mr. Mazloum either, did

-08:-44:-04 **20** you?

-08:-44:-04 **21**    **A.**   I did not.

-08:-44:-04 **22**    **Q.**   In fact, at that particular time you had not even met

-08:-44:-04 **23** Mr. Mazloum, correct?

-08:-44:-04 **24**    **A.**   Correct.

00:33:06 **25**    **Q.**   Now, you met Mr. Zubair and Mr. Khaleel at an Islamic

00:33:16 **1** conference in Cleveland, Ohio, around the Fourth of July, 2004,

-08:-44:-04 **2** correct?

-08:-44:-04 **3**     **A.**   Correct.

00:33:21 **4**     **Q.**   Mr. Amawi was not at that conference, was he?

-08:-44:-04 **5**     **A.**   He was not.

00:33:27 **6**     **Q.**   And Mr. Mazloum was not at that conference, was he?

00:33:30 **7**     **A.**   Not that I know of.

00:33:35 **8**     **Q.**   From that time to today, as far as your whole experience

-08:-44:-04 **9** in this, Mr. Amawi never stood in the same room with Mr. Zubair

00:33:45 **10** and Mr. Khaleel, did he?

-08:-44:-04 **11**     **A.**   Not to my knowledge.

00:33:48 **12**     **Q.**   So the only association Mr. Amawi has with Mr. Zubair

00:33:54 **13** and Mr. Khaleel is the fact that the government put their photos

-08:-44:-04 **14** on the same board; is that correct?

00:34:00 **15**     **A.**   Yes.

00:34:03 **16**     **Q.**   Zubair and Khaleel, you never saw them at Mr. Amawi's

00:34:07 **17** apartment, did you?

-08:-44:-04 **18**     **A.**   I did not.

-08:-44:-04 **19**     **Q.**   You never heard Mr. Amawi talking to them on the phone,

-08:-44:-04 **20** did you?

00:34:13 **21**     **A.**   No, I haven't.

-08:-44:-04 **22**     **Q.**   You never took Zubair and Khaleel shooting with Mr.

-08:-44:-04 **23** Amawi, did you?

-08:-44:-04 **24**     **A.**   I did not.

00:34:21 **25**     **Q.**   In around April 4, 2005, you went to see an accountant

3170

00:34:30 **1** with Mr. El-Hindi, a Jihad Dahabi in Michigan, correct?

00:34:37 **2**     **A.**   Correct.

-08:-44:-04 **3**     **Q.**   That video was played for the ladies and gentlemen of

-08:-44:-04 **4** the jury, correct?

00:34:43 **5**     **A.**   Yes.

-08:-44:-04 **6**     **Q.**   When you went up to Michigan to meet this accountant

-08:-44:-04 **7** with Mr. El-Hindi, the purpose of that was to develop a -- an

00:34:54 **8** organization, a corporation, correct, or to apply for a grant?

-08:-44:-04 **9**     **A.**   Yes, one of the reasons.

-08:-44:-04 **10**     **Q.**   When you went to Michigan with Mr. El-Hindi, Mr. Amawi

-08:-44:-04 **11** did not go, did he?

-08:-44:-04 **12**     **A.**   He did not.

-08:-44:-04 **13**     **Q.**   And Mr. Mazloum did not go, did he?

-08:-44:-04 **14**     **A.**   He did not.

00:35:14 **15**     **Q.**   Now, Mr. Mazloum, Mr. Amawi did know him, correct?

-08:-44:-04 **16**              THE COURT:  I couldn't hear you.

00:35:23 **17** BY MR. IVEY:

00:35:23 **18**     **Q.**   Mr. Amawi did know Mr. Mazloum, correct?

00:35:27 **19**     **A.**   As far as I knew.

-08:-44:-04 **20**     **Q.**   As far as you knew?

-08:-44:-04 **21**     **A.**   Yes.

-08:-44:-04 **22**     **Q.**   But initially when you first began looking at Mr. Amawi,

00:35:37 **23** as far as you knew, again, Mr. Mazloum and Mr. Amawi were not

-08:-44:-04 **24** involved together in any type of criminal activity?

00:35:44 **25**     **A.**   Not to my knowledge.

-08:-44:-04 **1**   **Q.**   And to your knowledge, they had not been being trained

-08:-44:-04 **2**   by anybody, correct?

-08:-44:-04 **3**   **A.**   Not to my knowledge.

-08:-44:-04 **4**   **Q.**   And to your knowledge, neither one of them had obtained

-08:-44:-04 **5**   or attempted to obtain any type of explosive material or guns

-08:-44:-04 **6**   together, did they?

-08:-44:-04 **7**   **A.**   Not to my knowledge.

00:36:03 **8**   **Q.**   Now, Mr. Mazloum did look at videos with you and Mr.

-08:-44:-04 **9**   Amawi and in Mr. Amawi's apartment in the middle of November of

-08:-44:-04 **10**   2004, correct?

00:36:21 **11**   **A.**   Correct.

00:36:23 **12**   **Q.**   But also in November of 2004, Mr. Amawi was being

00:36:29 **13**   evicted from his apartment, correct?

00:36:33 **14**   **A.**   If that's what the record shows or I testified to it,

-08:-44:-04 **15**   then yes.

00:36:37 **16**   **Q.**   You don't have any reason to dispute that?

00:36:40 **17**   **A.**   If it's in the record, no.

00:36:43 **18**   **Q.**   And you paid Mr. Amawi 800 or so dollars to help prevent

-08:-44:-04 **19**   him from being evicted, correct?

00:36:51 **20**   **A.**   Correct.

00:36:52 **21**   **Q.**   Mr. Mazloum did not pay that money, did he?

00:36:56 **22**   **A.**   No.

-08:-44:-04 **23**   **Q.**   And Mr. El-Hindi didn't pay that money, did he?

00:37:00 **24**   **A.**   No.

00:37:03 **25**   **Q.**   Now, Mr. Mazloum and Mr. Amawi shot guns under your

-08:-44:-04 **1** training at Cleland's on two occasions, correct?

-08:-44:-04 **2**    **A.**   Correct.

00:37:17 **3**    **Q.**   That would have been in the latter part of April, 2005?

00:37:22 **4**    **A.**   Correct.

00:37:24 **5**    **Q.**   Mr. Amawi shot also one time in January of 2005?

00:37:29 **6**    **A.**   Yes.

00:37:30 **7**    **Q.**   But when Mr. Amawi shot at Cleland's at that particular

00:37:35 **8** time, Mr. Mazloum was not present, was he?

-08:-44:-04 **9**    **A.**   Not that I know of.

-08:-44:-04 **10**    **Q.**   And, in fact, Mr. El-Hindi never shot with Mr. Amawi,

-08:-44:-04 **11** did he?

00:37:43 **12**    **A.**   Not while I was present.

00:37:48 **13**    **Q.**   Now, in fact, really the only time in this whole

00:37:58 **14** approximate two-year period you investigated these three

-08:-44:-04 **15** gentlemen, they were only all together on one occasion; is that

00:38:07 **16** correct, as far as you knew?

00:38:10 **17**    **A.**   In my presence.

00:38:11 **18**    **Q.**   "Yes"?

-08:-44:-04 **19**    **A.**   Yes.

-08:-44:-04 **20**    **Q.**   That would have been on February 16 of 2005?

00:38:17 **21**    **A.**   Correct.

00:38:18 **22**    **Q.**   Now, the government gave you a laptop computer to use in

-08:-44:-04 **23** your investigation in this case, correct?

00:38:26 **24**    **A.**   Correct.

00:38:27 **25**    **Q.**   And at the time that they gave it to you, you were not

3173

-08:-44:-04 **1** proficient in the use of a computer?

00:38:36 **2**    **A.**    Depends on your definition of proficient.

-08:-44:-04 **3**    **Q.**    I'll use yours.   You said you could carry it and you

-08:-44:-04 **4** could e-mail and do a Word document, but that was about it at

-08:-44:-04 **5** the time?

00:38:46 **6**    **A.**    Yes.   That would accurately reflect that.

00:38:49 **7**    **Q.**    Okay.  But you could e-mail?

00:38:51 **8**    **A.**    I could e-mail, yes.

-08:-44:-04 **9**    **Q.**    Now, Mr. Amawi, throughout this investigation, he

00:39:00 **10** definitely had a computer, didn't he?

-08:-44:-04 **11**    **A.**    Yes.

00:39:03 **12**    **Q.**    And Mr. Amawi was very proficient in the use of that

00:39:07 **13** computer, was he not?

00:39:09 **14**    **A.**    I would say so.

00:39:10 **15**    **Q.**    And Mr. Amawi, would you agree with me, that the

00:39:15 **16** computer is his primary form of communication; that's the

00:39:22 **17** primary vehicle he used?

00:39:25 **18**    **A.**    If you're asking me is he on the computer a lot, I would

-08:-44:-04 **19** say yes.

-08:-44:-04 **20**    **Q.**    He's on PalTalk a lot?

-08:-44:-04 **21**    **A.**    Correct.

00:39:34 **22**    **Q.**    He chairs chat rooms?

00:39:36 **23**    **A.**    Yes.

00:39:38 **24**    **Q.**    That's where he looked at the videos that the ladies and

00:39:42 **25** gentlemen of the jury were looking at?

| | | | |
|---|---|---|---|
| 00:39:43 | **1** | **A.** | While I was present, yes. |
| 00:39:47 | **2** | **Q.** | And he definitely has e-mail capability, correct? |
| -08:-44:-04 | **3** | **A.** | Yes. |
| -08:-44:-04 | **4** | **Q.** | Mr. El-Hindi had a computer as well, correct? |
| -08:-44:-04 | **5** | **A.** | Yes. |

**6**     **Q.**    And he -- I believe you testified to various things that
**7**   he did on the computer in your presence?

**8**     **A.**    Correct.

**9**     **Q.**    But I noticed that you did not, through your testimony,
**10** bring up or present any e-mails between Mr. Amawi, Mr. El-Hindi,
**11** or Mr. Mazloum.   Did you obtain, were you CCed on, included on
**12** any e-mail list of any e-mails between these three gentlemen in
**13** the two-year period?

**14**     **A.**    I only received very few, so...

**15**     **Q.**    Well, these individuals are, as you are aware, of
**16** course, accused of being in association with each other,
**17** correct?

**18**     **A.**    Yes.

**19**     **Q.**    But yet and still, you do not have any e-mails between
**20** these computer users where they're discussing doing violent
**21** Jihad, providing material support to any terrorist organization
**22** or any other nefarious conduct, do you?

**23**     **A.**    No.   May I explain?

**24**     **Q.**    When Mr. Sofer questions you, of course.

**25**        Now, when you went to Jordan in August of 2005 and

| | | |
|---|---|---|
| 00:41:34 | **1** | returned again in December of 2005, Mr. El-Hindi did not go with |
| 00:41:38 | **2** | you? |
| -08:-44:-04 | **3** | A.   He did not. |
| -08:-44:-04 | **4** | Q.   And Mr. Mazloum did not go with you? |
| -08:-44:-04 | **5** | A.   He did not. |
| 00:41:43 | **6** | Q.   And while you were in Jordan, of course, obviously, Mr. |
| -08:-44:-04 | **7** | Amawi's family resides in Jordan, correct? |
| -08:-44:-04 | **8** | A.   Correct. |
| -08:-44:-04 | **9** | Q.   And Mr. El-Hindi had a brother in Jordan, correct? |
| -08:-44:-04 | **10** | A.   Yes. |
| 00:42:03 | **11** | Q.   At this particular time, it is your belief that these |
| 00:42:11 | **12** | gentlemen at that point were in some form of collusion with each |
| -08:-44:-04 | **13** | other, correct? |
| 00:42:16 | **14** | A.   Mr. Amawi and Mr. El-Hindi? |
| 00:42:19 | **15** | Q.   Mr. El-Hindi and Mr. Mazloum. |
| 00:42:21 | **16** | A.   They were friends, yes. |
| 00:42:23 | **17** | Q.   Well? |
| -08:-44:-04 | **18** | MR. HARTMAN:  I didn't hear the answer. |
| -08:-44:-04 | **19** | BY MR. IVEY: |
| -08:-44:-04 | **20** | Q.   They were friends? |
| -08:-44:-04 | **21** | A.   I believe they were friends, yes. |
| -08:-44:-04 | **22** | Q.   But you do not believe they were in collusion of any |
| -08:-44:-04 | **23** | type to do anything illegal? |
| 00:42:35 | **24** | A.   Once again, I don't -- the definition, you know, I just |
| -08:-44:-04 | **25** | gather information.   They were doing things together at this |

-08:-44:-04 **1** point.  If that's what you are asking, then yes.

-08:-44:-04 **2**    **Q.**  Well, when you're over in Jordan, Mr. El-Hindi asked you

00:42:52 **3** to contact his brother, correct?

-08:-44:-04 **4**    **A.**  Correct.

00:42:55 **5**    **Q.**  He didn't ask Mr. Amawi to contact his brother, did he?

-08:-44:-04 **6**    **A.**  Correct.

00:43:00 **7**    **Q.**  He gave you the money to give to his brother, the $500,

-08:-44:-04 **8** correct?

-08:-44:-04 **9**    **A.**  He did.

-08:-44:-04 **10**    **Q.**  Mr. Amawi didn't give the brother the money, you gave

00:43:11 **11** the brother the money, correct?

-08:-44:-04 **12**    **A.**  Correct.

00:43:15 **13**    **Q.**  And I believe you testified you contacted Mr. El-Hindi's

-08:-44:-04 **14** brother and met up with him, correct?

-08:-44:-04 **15**    **A.**  Yes.

00:43:28 **16**    **Q.**  Now, the ladies and gentlemen of the jury saw a series

00:43:44 **17** of videos that you looked at with Mr. Amawi, correct?

-08:-44:-04 **18**    **A.**  Correct.

00:43:51 **19**    **Q.**  Now, you watched a series of videos on October 14 of

00:43:58 **20** 2004, correct?

00:44:01 **21**    **A.**  If that's what the record reflects, yes.

00:44:05 **22**    **Q.**  Well, why don't you refer to your guide.   I realize,

00:44:13 **23** Mr. Griffin, we haven't been in court for a week, but it seems

-08:-44:-04 **24** that when Mr. Sofer asked you these dates, you said correct.

-08:-44:-04 **25** When I ask you them you say you're not sure or, "if that's what

-08:-44:-04  **1**  the record reflects."

-08:-44:-04  **2**  MR. SOFER:  Objection.  That's not a question,

-08:-44:-04  **3**  Judge.

-08:-44:-04  **4**  THE COURT:  I tend to agree.  The jury will

-08:-44:-04  **5**  disregard that.  That's something you can call to their

00:44:34  **6**  attention if you wish during closing.

00:44:39  **7**  **A.**  You would be correct.

00:44:41  **8**  THE COURT:  Correct as to that particular date?

00:44:44  **9**  THE WITNESS:  Watching videos, yes, Your Honor.

00:44:48  **10**  BY MR. IVEY:

00:44:48  **11**  **Q.**  Now, on October 14, 2004, you watched a series of videos

-08:-44:-04  **12**  at Mr. Amawi's apartment, correct?

-08:-44:-04  **13**  **A.**  Correct.

00:45:00  **14**  **Q.**  You watched them in -- that's his home, right?

00:45:06  **15**  **A.**  Yes.  As far as I know.

-08:-44:-04  **16**  **Q.**  And you watched them in his bedroom?

-08:-44:-04  **17**  **A.**  Correct.

00:45:11  **18**  **Q.**  On his computer?

-08:-44:-04  **19**  **A.**  Correct.

00:45:15  **20**  **Q.**  And nobody else was present, were they?

-08:-44:-04  **21**  **A.**  Not that I know of.

00:45:21  **22**  **Q.**  When you watched the videos, nobody else was with you?

00:45:24  **23**  **A.**  No.

-08:-44:-04  **24**  **Q.**  Mr. Amawi had not invited over individuals from the

00:45:29  **25**  Mosque and asked them to watch these videos with me and Mr.

00:45:34 **1** Griffin, let's go do this, let's go kill American soldiers, did

-08:-44:-04 **2** he?

00:45:39 **3**     **A.**   None that I know of.

00:45:41 **4**     **Q.**   He just watched them with you?

00:45:43 **5**     **A.**   Correct.

00:45:45 **6**     **Q.**   And you presented yourself as someone who was

00:45:51 **7** disenchanted with the United States, correct?

00:45:54 **8**     **A.**   Islamic extremist, yes.

-08:-44:-04 **9**     **Q.**   That's how you define Islamic extremists, correct?

-08:-44:-04 **10**     **A.**   Part of it.

00:46:05 **11**     **Q.**   And you were a convert to Islam?

00:46:09 **12**     **A.**   Yes.

00:46:15 **13**     **Q.**   Someone who is disenchanted with the United States and

-08:-44:-04 **14** someone who is a convert to Islam may find these videos of

00:46:26 **15** interest?

00:46:29 **16**     **A.**   I can't say.   That was my cover, anyway.

-08:-44:-04 **17**     **Q.**   You certainly showed an interest in your cover showing

-08:-44:-04 **18** these videos, correct?

00:46:40 **19**     **A.**   Aspects of it, yes.

-08:-44:-04 **20**     **Q.**   I mean, you made comments that we heard over the course

-08:-44:-04 **21** of several weeks of enjoyment of these videos, agreement with

-08:-44:-04 **22** these videos?

-08:-44:-04 **23**     **A.**   Once again, that is the cover.

00:46:55 **24**     **Q.**   Well, I understand it's a cover, but Mr. Amawi didn't

-08:-44:-04 **25** know you were undercover, correct?

-08:-44:-04  **1**  **A.**  Correct.

-08:-44:-04  **2**  **Q.**  You didn't tell him that, did you?

-08:-44:-04  **3**  **A.**  No.

-08:-44:-04  **4**  **Q.**  So you posed as a person who may find these videos of

00:47:08  **5**  interest?

-08:-44:-04  **6**  **A.**  Correct.

-08:-44:-04  **7**  **Q.**  And again, you looked at them -- Mr. Amawi's looking at

00:47:13  **8**  them in the privacy of his home?

00:47:15  **9**  **A.**  Correct.

00:47:16  **10**  **Q.**  In his bedroom?

00:47:18  **11**  **A.**  Yes.

-08:-44:-04  **12**  **Q.**  On his computer, correct?

-08:-44:-04  **13**  **A.**  Correct.

00:47:23  **14**  **Q.**  All right.   Let's take a look at some of these videos,

-08:-44:-04  **15**  a few snippets of it the government played.   Let's do Exhibit

-08:-44:-04  **16**  14.

00:47:45  **17**        MR. WITMER-RICH:   For the record, all of these

00:47:49  **18**  videos are Government's Exhibits that were played during the

-08:-44:-04  **19**  direct.

00:47:54  **20**        THE COURT:  Okay.

00:47:56  **21**        MR. SOFER: Your Honor, if we could just have the

-08:-44:-04  **22**  exhibit number as we go through these.

00:48:02  **23**        MR. IVEY:  It's Government's Exhibit 14.

00:48:08  **24**        THE COURT:  Do we need the earphones?

00:48:11  **25**        MR. IVEY:  You may not.

00:48:21 **1**                    (Video is played.)

00:48:21 **2** BY MR. IVEY:

-08:-44:-04 **3**     **Q.**   Now on this video, the CNN exclusive is clear on the

-08:-44:-04 **4** video, isn't it?

00:49:01 **5**     **A.**   The words.

00:49:02 **6**     **Q.**   "Yes"?

00:49:03 **7**     **A.**   Yes.

-08:-44:-04 **8**     **Q.**   And from this video, you cannot learn tactics from this

-08:-44:-04 **9** video, can you?

00:49:13 **10**     **A.**   Actually, you can.

-08:-44:-04 **11**     **Q.**   Okay.  Well, does this video show you how to load a

-08:-44:-04 **12** firearm?

00:49:20 **13**     **A.**   It does not.

-08:-44:-04 **14**     **Q.**   Does this video show you how to aim a firearm?

00:49:26 **15**     **A.**   It does not.

-08:-44:-04 **16**     **Q.**   Does this video show you how to shoot a firearm?

00:49:32 **17**     **A.**   I believe it does not.

-08:-44:-04 **18**     **Q.**   Does this video show you how to take a firearm apart,

-08:-44:-04 **19** strip it, put it back together?

-08:-44:-04 **20**     **A.**   It does not.

-08:-44:-04 **21**     **Q.**   Does this video show you how to make a bomb?

00:49:47 **22**     **A.**   It does not.

-08:-44:-04 **23**     **Q.**   The video does instruct you on how to get out of a car

-08:-44:-04 **24** and walk, correct?

00:49:56 **25**     **A.**   Being escorted, yes.

| | | |
|---|---|---|
| 00:49:59 | **1** | **Q.**  Let's continue with the next portion? |
| 00:50:05 | **2** | THE COURT:  That would be Exhibit? |
| 00:50:10 | **3** | MR. IVEY:  I believe it's a continuation of 14. |
| 00:50:14 | **4** | MR. SOFER:  If we could indicate what portions. |
| -08:-44:-04 | **5** | There's a time on them, Your Honor. |
| -08:-44:-04 | **6** | THE COURT:  The first portion showed people |
| 00:50:21 | **7** | walking, a cluster of people. |
| 00:50:25 | **8** | MR. WITMER-RICH:  For the record, it started 2 |
| 00:50:28 | **9** | minutes, 38 seconds and ended at approximately 3 minutes. |
| -08:-44:-04 | **10** | THE COURT:  That's probably the better way. |
| 00:50:35 | **11** | MR. WITMER-RICH:  The second section is beginning |
| 00:50:37 | **12** | at approximately 4 minutes and 13 seconds. |
| -08:-44:-04 | **13** | MR. SOFER: I think there was previously testimony |
| -08:-44:-04 | **14** | about who these people were but we'll rest  for the record. |
| 00:50:54 | **15** | (Video is shown.) |
| 00:51:07 | **16** | BY MR. IVEY: |
| 00:51:07 | **17** | **Q.**  The gentleman in the middle is Osama Bin Laden? |
| -08:-44:-04 | **18** | **A.**  I believe so. |
| 00:51:12 | **19** | **Q.**  That's who it appears to be? |
| -08:-44:-04 | **20** | **A.**  Yes. |
| 00:51:14 | **21** | **Q.**  Now, that portion of the video does not train one how to |
| -08:-44:-04 | **22** | fight in combat, does it? |
| 00:51:19 | **23** | **A.**  It does not. |
| -08:-44:-04 | **24** | **Q.**  That video does not train one how to make an explosive |
| 00:51:26 | **25** | device, does it? |

-08:-44:-04 **1**     **A.**   No.

00:51:29 **2**     **Q.**   You looked at another video.   Let's look at Exhibit 15,

-08:-44:-04 **3**   Government's Exhibit 15.

00:51:47 **4**           (Video is shown.)

00:53:26 **5**   BY MR. IVEY:

00:53:26 **6**     **Q.**   Now, Mr. Griffin, again, that video does not teach one

-08:-44:-04 **7**   how to train and to use any weapon or make any type of explosive

00:53:37 **8**   device, does it?

00:53:38 **9**     **A.**   I can't make out all the Arabic, but I have to believe

-08:-44:-04 **10**   that.

00:53:43 **11**     **Q.**   You don't speak Arabic --

-08:-44:-04 **12**     **A.**   Not fluently.

-08:-44:-04 **13**     **Q.**   -- fluently?

00:53:47 **14**     **A.**   Correct.

-08:-44:-04 **15**     **Q.**   So as far as you're able to tell, that video does not

-08:-44:-04 **16**   have any value for training purpose, does it?

00:53:56 **17**     **A.**   No.

00:53:59 **18**     **Q.**   And your understanding in working as an operative, it's

-08:-44:-04 **19**   not against -- it's not illegal to look at these videos, it is?

00:54:10 **20**           MR. SOFER:   Objection as to relevance.

-08:-44:-04 **21**           THE COURT:   I would agree.   Not to relevance but

-08:-44:-04 **22**   in terms of his understanding of what may be illegal or not.

-08:-44:-04 **23**   BY MR. IVEY:

00:54:20 **24**     **Q.**   What you looked at with Mr. Amawi, you informed the FBI

-08:-44:-04 **25**   of what you were looking at, correct?

-08:-44:-04  **1**    **A.**  Correct.

-08:-44:-04  **2**    **Q.**  And, in fact, you gave them copies of it, correct?

00:54:30  **3**    **A.**  I didn't.

-08:-44:-04  **4**    **Q.**  Well, you would have it on disk and let them know what

-08:-44:-04  **5**  he was looking at, the nature of the videos?

00:54:39  **6**    **A.**  I handed the disk over.

00:54:41  **7**    **Q.**  No, I'm asking: Due to the general nature of these

00:54:44  **8**  videos, you informed the FBI of what you were looking at with

-08:-44:-04  **9**  Mr. Amawi?

-08:-44:-04  **10**   **A.**  Yes.

-08:-44:-04  **11**   **Q.**  And after you informed the FBI that Mr. Amawi had looked

00:54:53  **12**  at these videos with you in his home, in his bedroom, Mr. Amawi

-08:-44:-04  **13**  was not subsequently arrested, was he?

-08:-44:-04  **14**       MR. SOFER:  Objection as to relevance.

-08:-44:-04  **15**       THE COURT:  Didn't hear the question.

-08:-44:-04  **16**  BY MR. IVEY:

-08:-44:-04  **17**   **Q.**  Mr. Amawi was not arrested after you informed the FBI on

00:55:10  **18**  October 4 that you looked at these videos with Mr. Amawi, was

-08:-44:-04  **19**  he?

-08:-44:-04  **20**   **A.**  Not that I know of.

-08:-44:-04  **21**       THE COURT:  I'll let the answer stand.  Let me

-08:-44:-04  **22**  remind Mr. Griffin, when an objection has been interposed, take

00:55:26  **23**  a bit of a pause and wait for a ruling.

-08:-44:-04  **24**       THE WITNESS:  Sorry, Your Honor.

-08:-44:-04  **25**       THE COURT:  No problem.

00:55:34 **1**          MR. IVEY:  Let's look at Government's Exhibit 18.

00:55:39 **2**          (Video is shown.)

00:56:11 **3**          MR. WITMER-RICH:  For the record, we stopped the

00:56:13 **4** video at 30 seconds.

00:56:19 **5** BY MR. IVEY:

-08:-44:-04 **6**     **Q.**   Now, this video deals with the maker's suggestion of a

00:56:25 **7** possible government conspiracy behind the attack in New York on

00:56:30 **8** 9/11, correct?

00:56:31 **9**     **A.**   I believe so.

00:56:33 **10**     **Q.**   Now, the Iraqi war hadn't even begun at the time of

00:56:40 **11** 9/11, had it?

00:56:41 **12**     **A.**   No, it had not.

-08:-44:-04 **13**     **Q.**   And this video here doesn't train one how to fight, make

00:56:50 **14** weapons, explosive devices or shoot guns, does it?

-08:-44:-04 **15**     **A.**   I don't believe so.

00:56:58 **16**     **Q.**   Now, let's look at Government's Exhibit 19.

00:57:10 **17**          (Video is shown.)

00:57:35 **18** BY MR. IVEY:

00:57:36 **19**     **Q.**   Now, that video, again, doesn't teach one how to shoot a

-08:-44:-04 **20** gun, does it?

-08:-44:-04 **21**     **A.**   No, it does not.

-08:-44:-04 **22**     **Q.**   It doesn't teach one how to make explosives, does it?

-08:-44:-04 **23**     **A.**   It doesn't.

00:57:53 **24**     **Q.**   And it shows an Iraqi on the ground getting shot, while

-08:-44:-04 **25** he's on the ground, by an American soldier, correct?

00:58:08 **1**    **A.**  I don't know who he was shot by.

-08:-44:-04 **2**    **Q.**  You don't?

00:58:11 **3**    **A.**  No.

00:58:12 **4**    **Q.**  You didn't hear that part of the video when it was

00:58:16 **5**  indicated that the Iraqi person was shot by the American

-08:-44:-04 **6**  soldier?

00:58:21 **7**    **A.**  Yes, but it -- we're taking another person's word for

-08:-44:-04 **8**  it.

00:58:29 **9**    **Q.**  So you don't take the word for what's said in these

00:58:36 **10**  videos?

-08:-44:-04 **11**    **A.**  Not necessarily.

00:58:38 **12**    **Q.**  Well, if a person that is from the Middle East sees a

00:58:46 **13**  video like that in the privacy of their home, can you understand

-08:-44:-04 **14**  how that might anger?

00:58:57 **15**    **A.**  I can't testify to what somebody -- what would anger

00:59:02 **16**  somebody else.

00:59:03 **17**    **Q.**  Can you understand how that person in the privacy of

00:59:10 **18**  their home who sees this might make some pretty inflammatory

-08:-44:-04 **19**  comments about seeing something like that?

-08:-44:-04 **20**    **A.**  If I had to guess, possibly.

00:59:19 **21**    **Q.**  Okay.  Now, you looked at videos again at Mr. Amawi's

00:59:31 **22**  apartment on November 23 of 2004?

00:59:35 **23**    **A.**  Correct.

00:59:37 **24**    **Q.**  Okay.  Let's look at Government's Exhibit 23.   Let's

00:59:50 **25**  look at Government's Exhibit 23.

| | | |
|---|---|---|
| 00:59:52 | **1** | THE COURT:  Before turning it on, for the record, |
| -08:-44:-04 | **2** | what was the length of that last video? |
| 00:59:59 | **3** | MR. WITMER-RICH:  The previous video we played the |
| -08:-44:-04 | **4** | entire Exhibit 19. |
| 01:00:03 | **5** | THE COURT:  Okay. |
| 01:00:07 | **6** | (Video is shown.) |
| 01:00:33 | **7** | BY MR. IVEY: |
| -08:-44:-04 | **8** | Q.   Now, that video that we just looked at shows a depiction |
| -08:-44:-04 | **9** | of a car bomb going off when it runs into, I guess, a vehicle, |
| -08:-44:-04 | **10** | correct? |
| -08:-44:-04 | **11** | A.   Correct. |
| -08:-44:-04 | **12** | Q.   This video does not teach you how to make the car bomb, |
| -08:-44:-04 | **13** | does it? |
| -08:-44:-04 | **14** | A.   Not how to make it, no. |
| -08:-44:-04 | **15** | Q.   It doesn't teach you how to strap it to the vehicle, |
| 01:00:56 | **16** | does it? |
| 01:00:58 | **17** | A.   It does not. |
| 01:01:01 | **18** | Q.   Let's take a look at Government's Exhibit 24. |
| 01:01:08 | **19** | MR. WITMER-RICH:  For the record, on Exhibit 23 we |
| -08:-44:-04 | **20** | played the first few seconds then played from 40 seconds to |
| -08:-44:-04 | **21** | about 50 seconds. |
| 01:01:20 | **22** | (Video is shown.) |
| 01:02:22 | **23** | BY MR. IVEY: |
| 01:02:22 | **24** | Q.   Now again, Mr. Griffin, this video does not instruct one |
| 01:02:27 | **25** | how to make the explosive device that was -- that was detonated |

-08:-44:-04 **1** in this video, does it?

-08:-44:-04 **2**     **A.**   Actually, it does.

-08:-44:-04 **3**     **Q.**   It shows how to make it?

01:02:41 **4**     **A.**   The picture in the beginning with the det cord an d the

-08:-44:-04 **5** actual bomb there, it's a picture.

01:02:46 **6**     **Q.**   Oh, I see.

-08:-44:-04 **7**     **A.**   And to me it's instructing me.

01:02:51 **8**     **Q.**   Well, so that now -- can we run this back to the

01:02:58 **9** beginning?

-08:-44:-04 **10**     **A.**   I'm sorry, maybe I misunderstood you.

-08:-44:-04 **11**     **Q.**   Let's rerun it.   That's what you're talking about?

-08:-44:-04 **12**     **A.**   Yes, sir.

01:03:09 **13**     **Q.**   So this video was played during your direct testimony,

-08:-44:-04 **14** correct?

01:03:14 **15**     **A.**   Yes.

01:03:17 **16**     **Q.**   And I just played it, obviously, right?

-08:-44:-04 **17**     **A.**   Yes.

-08:-44:-04 **18**     **Q.**   And I've run it back to this portion that you're

01:03:24 **19** indicating is instructive, correct?

-08:-44:-04 **20**     **A.**   Yes.

-08:-44:-04 **21**     **Q.**   So the ladies and gentlemen of the jury have now seen

01:03:29 **22** this three times, correct?

01:03:32 **23**     **A.**   I believe so.

01:03:33 **24**     **Q.**   So do you think that seeing this three times now that

-08:-44:-04 **25** the jury is now capable of arming a bomb after looking at that?

-08:-44:-04 **1**　　**A.**　I -- no other prior understanding, but, once again --

01:03:50 **2**　　**Q.**　In your opinion this has instructive value on how to arm

01:03:53 **3**　a bomb by just looking at this photo?

-08:-44:-04 **4**　　**A.**　In my opinion, yes.

01:03:57 **5**　　**Q.**　Now, Mr. Amawi looks at lot of video, didn't he?

-08:-44:-04 **6**　　**A.**　In my presence, yes.

01:04:10 **7**　　**Q.**　And Mr. Amawi had -- he was motivated to present

01:04:23 **8**　information about what he felt was really going on about a lot

-08:-44:-04 **9**　of topics, didn't he?

-08:-44:-04 **10**　　　　　　MR. SOFER:  Objection, Your Honor.

-08:-44:-04 **11**　　　　　　THE COURT:  I would tend to agree in terms of the

01:04:35 **12**　word motivate.   He can testify as to what he observed.

-08:-44:-04 **13**　BY MR. IVEY:

-08:-44:-04 **14**　　**Q.**　He looked at a lot of video about political positions,

01:04:46 **15**　war positions, conspiracy theories, things of this nature,

-08:-44:-04 **16**　correct?

-08:-44:-04 **17**　　**A.**　I can only tell you what basically the three reasons why

-08:-44:-04 **18**　we looked at the videos.

-08:-44:-04 **19**　　**Q.**　Well, you looked at the -- we just saw the 9/11

-08:-44:-04 **20**　conspiracy, correct?

-08:-44:-04 **21**　　**A.**　Correct.

01:05:08 **22**　　**Q.**　So let's take a look at Government's Exhibit 32.

-08:-44:-04 **23**　Before we do that, I'm sorry, let me ask you this question.

01:05:24 **24**　　　　　　Mr. Amawi, when he was with you, did he use video

01:05:29 **25**　tape a lot to support his position and views to you?

| | | |
|---|---|---|
| 01:05:37 | **1** | **A.**   Yes. |
| 01:05:39 | **2** | **Q.**   Let's look at Government's Exhibit 32.   I'd ask you to |
| -08:-44:-04 | **3** | pay attention to the text because I'm going to ask you some |
| 01:05:57 | **4** | questions. |
| 01:06:16 | **5** | (Video is shown.) |
| 01:07:01 | **6** | BY MR. IVEY: |
| 01:07:01 | **7** | **Q.**   This tape talks about a resistance struggle that -- or |
| -08:-44:-04 | **8** | future resistance struggles in the history of man, does it not? |
| -08:-44:-04 | **9** | Isn't that what he said? |
| -08:-44:-04 | **10** | **A.**   Yes. |
| -08:-44:-04 | **11** | **Q.**   Let's continue. |
| 01:07:41 | **12** | (Video is shown.) |
| -08:-44:-04 | **13** | BY MR. IVEY: |
| -08:-44:-04 | **14** | **Q.**   It indicates that they're appealing, that they're not |
| 01:07:47 | **15** | responsible for the 9/11 attack, correct? |
| -08:-44:-04 | **16** | **A.**   That was the general statement, correct. |
| 01:07:52 | **17** | **Q.**   Continue. |
| -08:-44:-04 | **18** | (Video is shown.) |
| 01:08:36 | **19** | MR. IVEY:  Keep going. |
| -08:-44:-04 | **20** | (Video is shown.) |
| 01:08:44 | **21** | BY MR. IVEY: |
| 01:08:44 | **22** | **Q.**   They're indicating that we call on you again, we do not |
| 01:08:51 | **23** | require arms or fighters for we have plenty? |
| 01:08:55 | **24** | MR. SOFER:  Judge, I'm going to object.   The video |
| 01:08:58 | **25** | sort of says what it says.   Counsel doesn't have to keep |

-08:-44:-04  **1**  repeating it.

01:09:04  **2**  MR. IVEY:  Well, Your Honor, I asked him.

-08:-44:-04  **3**  THE COURT:  I will permit the question to stand.

-08:-44:-04  **4**  BY MR. IVEY:

-08:-44:-04  **5**  Q.  That's what it said, "We do not require arms or fighters

01:09:12  **6**  for we have plenty," correct?

-08:-44:-04  **7**  A.  Yes.

01:09:15  **8**  Q.  And Mr. Amawi, as you just indicated, would play videos

-08:-44:-04  **9**  in support of his positions, wouldn't he?

01:09:23  **10**  A.  Yes.

01:09:29  **11**  MR. IVEY:  Continue on.

01:09:36  **12**  (Video is shown.)

01:09:37  **13**  MR. IVEY:  Continue.

01:09:59  **14**  (Video is shown.)

01:10:01  **15**  BY MR. IVEY:

01:10:01  **16**  Q.  Now, Mr. Griffin, you would agree with me that this

01:10:06  **17**  video is not a training video in terms of the tactics that you

01:10:10  **18**  were able to teach?

01:10:13  **19**  A.  Once again, to me, in my opinion, looking at that video

-08:-44:-04  **20**  they showed tactics and how ambushes are done.

-08:-44:-04  **21**  Q.  You feel -- it's your opinion that anyone that looks at

-08:-44:-04  **22**  this video is going to know how to do an ambush in a military

01:10:31  **23**  combat situation?

-08:-44:-04  **24**  A.  They'd get a general idea, yes.

01:10:35  **25**  Q.  Would you agree with me that the basic point of this

01:10:42  **1**  video is to express a viewpoint about the war in Iraq?

01:10:49  **2**      **A.**   It's a viewpoint.

01:10:52  **3**      **Q.**   So, in other words, if you were -- are you saying to the

01:10:56  **4**  ladies and gentlemen of the jury that if you were amassing a

01:11:00  **5**  collection of training videos, you would include this video in

-08:-44:-04  **6**  that collection?

01:11:07  **7**      **A.**   Me personally?

-08:-44:-04  **8**      **Q.**   Yes.

01:11:10  **9**      **A.**   Possibly.

-08:-44:-04  **10**     **Q.**   You would?

-08:-44:-04  **11**     **A.**   Possibly.

01:11:13  **12**     **Q.**   Okay.

01:11:22  **13**            MR. IVEY:  Let's look at Government's Exhibit --

01:11:25  **14**            MR. WITMER-RICH:  We played Exhibit 32 from the

01:11:28  **15**  beginning through 2 minutes, 50 seconds.

01:11:35  **16**            MR. IVEY:  Let's look at Government's Exhibit 38.

01:11:41  **17**            (Video is shown.)

01:14:24  **18**  BY MR. IVEY:

-08:-44:-04  **19**     **Q.**   Now, would you agree with me, Mr. Griffin, that this is

-08:-44:-04  **20**  not a training video on tactics, how to fight?

01:14:32  **21**     **A.**   I would agree.

01:14:34  **22**     **Q.**   And you looked at this video with Mr. Amawi in his

-08:-44:-04  **23**  apartment with him, correct?

01:14:42  **24**     **A.**   Yes.

01:14:43  **25**     **Q.**   And Mr. El-Hindi was not present?   And if you want to

3192

-08:-44:-04  **1**  look at your guide, look up July 27 on your guide.

-08:-44:-04  **2**      **A.**   What day?

-08:-44:-04  **3**      **Q.**   July 27 -- I'm sorry, I'm wrong.   On January 10 of

01:15:01  **4**  2004.

01:15:03  **5**      **A.**   January 10 of 2005?

01:15:09  **6**             MR. IVEY:  '04.

01:15:13  **7**             MR. WITMER-RICH:  '05.

01:15:16  **8**      **A.**   No, it seems to be myself and Mr. El-Hindi -- excuse me,

01:15:20  **9**  Mr. Amawi.

01:15:21  **10**  BY MR. IVEY:

01:15:21  **11**      **Q.**   And you're in his home, correct?

-08:-44:-04  **12**      **A.**   Yes.

-08:-44:-04  **13**      **Q.**   Okay, looking at this in his bedroom on his computer,

01:15:30  **14**  correct?

-08:-44:-04  **15**      **A.**   Correct.

01:15:31  **16**      **Q.**   And you can see how, I would hope -- how a person of the

-08:-44:-04  **17**  Islamic or Muslim faith would take offense to a video like this?

-08:-44:-04  **18**             MR. SOFER:  Objection, Your Honor --

01:15:45  **19**             THE COURT:  I'll let him answer.

-08:-44:-04  **20**             MR. SOFER:  -- to the form of the question.

01:15:48  **21**             THE COURT:  I'll let him answer.

-08:-44:-04  **22**      **A.**   Once again, I can't testify to what somebody -- what

01:15:55  **23**  somebody does and doesn't get mad at.

01:15:57  **24**  BY MR. IVEY:

01:15:57  **25**      **Q.**   So when the religious leaders call Mohammad, the revered

01:16:07 **1** profit of Muslim, a terrorist, you cannot understand or

-08:-44:-04 **2** appreciate how a Muslim may take offense to that; is that what

-08:-44:-04 **3** you're saying?

01:16:16 **4**     A.    I'm saying if they said the same thing about Jesus

01:16:20 **5** Christ, are you asking me would I be the same way, would I be

01:16:27 **6** mad?

-08:-44:-04 **7**     Q.    I think you're trying to fight with me on something

01:16:30 **8** that's obvious, but I'll let you do it.   When they say --

-08:-44:-04 **9**     A.    I'm trying to answer your question.

-08:-44:-04 **10**    Q.    When they say on this tape, "they ought to take every

-08:-44:-04 **11** Muslim student and ship them back where they came from," you are

-08:-44:-04 **12** incapable of understanding and appreciating how a Muslim would

01:16:45 **13** not appreciate that; is that what you're saying?

-08:-44:-04 **14**            MR. SOFER:   Objection once again; form of the

-08:-44:-04 **15** question.

01:16:51 **16**            THE COURT:   I'm going to sustain because I think

-08:-44:-04 **17** you're arguing.  You may rephrase the question and continue.

01:16:57 **18** BY MR. IVEY:

01:16:57 **19**    Q.    If a Muslim took offense at Mohammad being called a

01:17:04 **20** terrorist and a pedophile, and if a Muslim took offense at

-08:-44:-04 **21** religious leaders in country saying they should pack up every

-08:-44:-04 **22** Muslim student and send them back where they came from, can you

-08:-44:-04 **23** appreciate a Muslim in their own home might make some pretty

01:17:24 **24** inflammatory and nasty comments?

01:17:26 **25**            MR. SOFER:   Same objection.

-08:-44:-04  **1**　　　　　　　THE COURT:  I'll let him answer.

-08:-44:-04  **2**　　**A.**　Being offended is a choice.

01:17:37  **3**　BY MR. IVEY:

01:17:37  **4**　　**Q.**　You got all of the defendants together on February 16 of

01:17:48  **5**　2004, correct?

01:17:51  **6**　　**A.**　2005.

-08:-44:-04  **7**　　**Q.**　2005, I'm sorry.　Correct?

01:17:55  **8**　　**A.**　Correct.

01:17:57  **9**　　**Q.**　And after that meeting, you looked at a series of videos

01:18:03  **10**　again with Mr. Amawi in his apartment on July 27 of 2005,

-08:-44:-04  **11**　correct?　And if you want to check your guide you can check it.

-08:-44:-04  **12**　　　　　　MR. SOFER:  Judge, I didn't understand the

-08:-44:-04  **13**　question.

01:18:18  **14**　　　　　　MR. IVEY:  I'm asking him did he view the videos

-08:-44:-04  **15**　with Mr. Amawi in Mr. Amawi's apartment on July 27, 2005.

01:18:38  **16**　　**A.**　Did you say July 27?

-08:-44:-04  **17**　BY MR. IVEY:

-08:-44:-04  **18**　　**Q.**　Yes.

01:18:40  **19**　　**A.**　That is correct.

01:18:44  **20**　　**Q.**　Let's play one of the videos that you looked at with Mr.

01:18:49  **21**　Amawi in his apartment at his computer.　Let's play -- and by

-08:-44:-04  **22**　the way, on July 27, when you looked at these videos with Mr.

-08:-44:-04  **23**　Amawi in his apartment, Mr. El-Hindi and Mr. Mazloum were not

-08:-44:-04  **24**　present with you, correct?

01:19:05  **25**　　**A.**　I don't believe so.

-08:-44:-04  **1**  **Q.**  Let's play Government's Exhibit 90.

-08:-44:-04  **2**  THE COURT:  Exhibit what?

01:19:15  **3**  MR. IVEY:  90, nine-zero.

01:19:49  **4**  (Video is shown.)

01:19:52  **5**  BY MR. IVEY:

01:19:52  **6**  **Q.**  Now, let me guess, Mr. Griffin, you think that's a

01:19:56  **7**  training video, don't you?

01:19:59  **8**  **A.**  It's an observation video.

-08:-44:-04  **9**  **Q.**  Observation, doesn't have training value in a meaningful

01:20:07  **10**  sense?

-08:-44:-04  **11**  **A.**  I wouldn't say so.

-08:-44:-04  **12**  **Q.**  Let look at Government's Exhibit 109.

01:20:27  **13**  (Video is shown.)

-08:-44:-04  **14**  BY MR. IVEY:

-08:-44:-04  **15**  **Q.**  Same question.  That has no real training value, does

01:20:34  **16**  it?

-08:-44:-04  **17**  **A.**  I would have to disagree with you, Counsel.

-08:-44:-04  **18**  **Q.**  You think it has meaningful training value?

-08:-44:-04  **19**  **A.**  Yes, it's an example of an IED, me seeing the video

-08:-44:-04  **20**  numerous times, I know what happens next.

-08:-44:-04  **21**  **Q.**  So do you think after seeing that clip that anyone who

01:20:54  **22**  sees it is then able to make an IED?

01:20:57  **23**  **A.**  Make an IED?

-08:-44:-04  **24**  **Q.**  Yes.

01:21:01  **25**  **A.**  No.

-08:-44:-04 **1**   **Q.**  It doesn't have training value in terms of making an

01:21:05 **2** IED?

-08:-44:-04 **3**   **A.**  As far as making an I ED, no.

-08:-44:-04 **4**   **Q.**  Let's look at Government's Exhibit 110.

01:21:16 **5**       (Video is shown.)

01:21:26 **6**       MR. WITMER-RICH:  Starting the clip at one minute.

01:21:26 **7**       (Video is shown.)

01:21:26 **8** BY MR. IVEY:

-08:-44:-04 **9**   **Q.**  Now, that video does not show how to shoot a sniper

01:21:48 **10** rifle, does it?

01:21:51 **11**   **A.**  The mechanics, no.

01:21:53 **12**   **Q.**  It doesn't show the mechanics of how to take apart a

-08:-44:-04 **13** sniper rifle, does it?

-08:-44:-04 **14**   **A.**  It does not.

01:22:01 **15**   **Q.**  In fact, we don't even know for certain if it was a

-08:-44:-04 **16** sniper rifle used, do we?

01:22:06 **17**   **A.**  No.

01:22:10 **18**       MR. IVEY:  Let's play Government's Exhibit 111.

-08:-44:-04 **19**       MR. SOFER:  Your Honor, one of the jurors is

-08:-44:-04 **20** raising his hand.

-08:-44:-04 **21**       THE JUROR:  Our screen, it looks like, doesn't have

-08:-44:-04 **22** as good of video as the other screen.   This one.

-08:-44:-04 **23**       THE JUROR:  He did not see the sniper shot on the

01:22:29 **24** video.  We didn't see nothing at all.

01:22:33 **25**       MR. IVEY:  Who all did not see it?

-08:-44:-04 **1**      THE COURT:  Has that been so for all the videos?

-08:-44:-04 **2**      THE JUROR:  No, just this one.

-08:-44:-04 **3**      MR. IVEY:  I think this is a pretty poor quality.

-08:-44:-04 **4**      THE COURT:  Were you able to see anything at all?

-08:-44:-04 **5**      THE JUROR:  No, just the blast.

-08:-44:-04 **6**      THE JUROR:  That's all it was.

01:22:52 **7**      MR. SOFER:  We brought this to the Court's

-08:-44:-04 **8** attention, on our screens and this screen back here, it's very

-08:-44:-04 **9** clear.   For some reason this particular video on the screens

-08:-44:-04 **10** the jury has, and the one I have --

01:23:07 **11**      THE COURT:  I can make out what it is, but it looks

01:23:10 **12** fuzzy.

01:23:11 **13**      MR. SOFER:  We would have to either ask Your

-08:-44:-04 **14** Honor -- we can deal with this at a side bar.

01:23:17 **15**      MR. IVEY:  I'll withdraw this exhibit.

01:23:21 **16**      THE COURT:  Why?  I'd like to have the person take

-08:-44:-04 **17** a look at it.   Why don't we take about a 15-minute recess.

01:42:26 **18**      (Recess taken.)

01:42:43 **19**      THE COURT:  What I propose to do is simply indicate

-08:-44:-04 **20** that video for whatever reason can't be displayed on those

-08:-44:-04 **21** monitors.   I'd simply say to the jury the video, which was

-08:-44:-04 **22** fairly fuzzy --

-08:-44:-04 **23**      MR. SOFER:  We think, Judge, we may have

01:43:01 **24** jerry-rigged something that would allow the jury to see it.

01:43:06 **25** And I just want to have a quick discussion about one of my

01:43:11 **1** objections outside the presence of the jury so we don't have to

01:43:14 **2** do a sidebar, if that's acceptable to Your Honor, during the

01:43:17 **3** break here, so however you want to handle that.   But I think,

-08:-44:-04 **4** again, if Defense Counsel doesn't object, we've been able to put

-08:-44:-04 **5** our monitor over there by the jury.  It's small, but I think

01:43:30 **6** it's much better than what they were seeing.

-08:-44:-04 **7** And with respect to my objection, Your Honor, what

-08:-44:-04 **8** I've objected to, maybe this will be the end of it, but rather

-08:-44:-04 **9** than waste time in front of the jury I think the government has

-08:-44:-04 **10** an objection to the questions.

-08:-44:-04 **11** (Whereupon the following discussion was had at the

-08:-44:-04 **12** bench outside the hearing of the jury:)

-08:-44:-04 **13** MR. SOFER:  The government's objection is a simple

-08:-44:-04 **14** one.   I object to the series of questions which Counsel was

-08:-44:-04 **15** asking whether somebody, the witness could understand whether

-08:-44:-04 **16** somebody would be offended by something, what somebody else

-08:-44:-04 **17** would be thinking.  It seems to me either these questions are

-08:-44:-04 **18** inappropriate because they're asking for an opinion about an --

-08:-44:-04 **19** he's actually asked for his opinion a number of times, opinion

-08:-44:-04 **20** about what Mr. Amawi -- or it's not even Mr. Amawi.   What

-08:-44:-04 **21** someone from the Middle East might be thinking.   Either these

-08:-44:-04 **22** questions are objectionable or on redirect it seems to me then

-08:-44:-04 **23** that the Court must and should allow the government to ask

-08:-44:-04 **24** similar questions about what else a person might be thinking,

-08:-44:-04 **25** and what else a person might be offended by and what else a

-08:-44:-04  **1**  person might do as a result of that.   I think that illustrates

-08:-44:-04  **2**  why it is that these are inappropriate questions.   But to the

-08:-44:-04  **3**  extent the Court's going to permit them, I'd ask for an

-08:-44:-04  **4**  opportunity to be able to follow up on those same issues.

-08:-44:-04  **5**  MR. IVEY:  The government has been able to produce

-08:-44:-04  **6**  videos and make their comments and ask their questions of Mr.

-08:-44:-04  **7**  Griffin of what the import is with regard to their case.   I had

-08:-44:-04  **8**  similar objections about the relevance as well.   So we should

-08:-44:-04  **9**  be able to cross-examine regarding our views about this as well.

-08:-44:-04  **10**  MR. SOFER:  These are two separate questions,

-08:-44:-04  **11**  Judge.   When I ask a question of the witness, about whether

-08:-44:-04  **12**  what Mr. Amawi thought or what his impression was, and Your

-08:-44:-04  **13**  Honor sustained those objections, I was unable to ask them.

-08:-44:-04  **14**  The same questions have now been asked by Counsel; not many, two

-08:-44:-04  **15**  or three, Your Honor's allowed the answers.   What I'm saying is

-08:-44:-04  **16**  either these are inappropriate questions --

-08:-44:-04  **17**  THE COURT:  I tend to agree.  And also I do think

-08:-44:-04  **18**  it would probably open the door to going further down that road,

-08:-44:-04  **19**  and containing all of that within reasonable limits would be

-08:-44:-04  **20**  very difficult.  So I think it's appropriate, if you wish to

-08:-44:-04  **21**  ask, while watching this video or that video, do you recall

-08:-44:-04  **22**  whether Mr. Amawi appeared to be offended or whatever.   Okay.

-08:-44:-04  **23**  But his recollection of what he observed, that's the most

-08:-44:-04  **24**  important thing.

-08:-44:-04  **25**  MR. IVEY:  Okay. I'm about done with that type of

3200

-08-44-04 **1** question anyway.

01:47:33 **2**                 (End of sidebar discussion.)

01:47:34 **3**                 THE COURT:  Two things before we resume.   Cindy

-08-44-04 **4** indicates some of the jurors may have been having difficulty

-08-44-04 **5** hearing.  So let's all try to remember to speak directly into

01:47:44 **6** the microphone.  If you don't hear something, raise your hand.

01:47:47 **7** Let us know.  That's not a problem.  It's very important.  And

01:47:53 **8** we tried to sort of Jerry-rig a fix with the monitor problem.

01:48:04 **9** You may recall the video was quite fuzzy, a man from the

-08-44-04 **10** shoulders up being shot.

01:48:14 **11**                 Do you recall that video?

01:48:17 **12**                 THE JUROR:  Yes.

01:48:21 **13**                 MR. SOFER:  Judge, can we then take down our

-08-44-04 **14** jerry-rigged system?

01:48:33 **15**                 THE JUROR:  We're done with Government's Exhibit

01:48:35 **16** 111.

01:48:40 **17**                 THE COURT:  Let me say the person standing up here

-08-44-04 **18** is the I.T. director.   That's why he's here, to solve problems

-08-44-04 **19** if we have them.   I hope he's like the Maytag Repairman.

01:49:00 **20**                 Okay, Mr. Ivey.   Let's all try to speak clearly,

01:49:06 **21** slowly and directly into the microphone.

01:49:09 **22**                 MR. IVEY:  They're going to try to outfit me with a

-08-44-04 **23** mike.   I'll go on and speak louder.

-08-44-04 **24** BY MR. IVEY:

01:49:21 **25**

01:49:21　**1**　　**Q.**　Okay, Mr. Griffin, I think we had sufficient testimony

-08:-44:-04　**2**　on that one video.

-08:-44:-04　**3**　　　　　Let's play video 111, Government's Exhibit 111.

01:49:41　**4**　　　　　(Video is shown.)

01:49:47　**5**　BY MR. IVEY:

01:49:48　**6**　　**Q.**　Mr. Griffin, do you agree that that video does not show

-08:-44:-04　**7**　you how to make an explosive device?

01:49:54　**8**　　**A.**　No, it does not.

01:49:57　**9**　　**Q.**　And that video does not instruct one how to strap an

01:50:03　**10**　explosive device or place it anywhere and then detonate?

01:50:13　**11**　　**A.**　You could say that.

-08:-44:-04　**12**　　**Q.**　It does not show you how to strap an explosive device to

-08:-44:-04　**13**　a vehicle?

-08:-44:-04　**14**　　**A.**　No, it does not.

-08:-44:-04　**15**　　**Q.**　It is your opinion to this jury that that video has

01:50:31　**16**　meaningful training value?

01:50:34　**17**　　**A.**　It is.

-08:-44:-04　**18**　　**Q.**　You testified on cross-examination before the break that

01:50:46　**19**　being offended is a choice?

01:50:48　**20**　　**A.**　Correct.

01:50:54　**21**　　**Q.**　I'd like to go back to another portion of Government's

01:51:01　**22**　Exhibit --

01:51:01　**23**　　　　　THE COURT:  What exhibit?

01:51:03　**24**　　　　　MR. IVEY:  Exhibit 38 is the American, Christian

01:51:08　**25**　religious leader.  I'd like to play another part of that.

3202

01:51:12  **1**          MR. WITMER-RICH:  We're going to start at 5

01:51:14  **2** minutes, 15 seconds.

01:51:33  **3**          MR. IVEY:  No audio.

01:51:54  **4**          (Video is shown.)

01:54:44  **5** BY MR. IVEY:

01:54:44  **6**     **Q.**    Now, Mr. Griffin, when you showed this video with Mr.

01:54:52  **7** Amawi in his apartment, let me ask you this, Mr. Amawi obviously

01:54:58  **8** ascribes to the Islamic faith?

-08:-44:-04  **9**     **A.**    Yes.

-08:-44:-04  **10**    **Q.**    And Mr. Amawi's family lives over in Jordan in the

01:55:06  **11** Middle East?

-08:-44:-04  **12**    **A.**    Yes.

-08:-44:-04  **13**    **Q.**    When Mr. Amawi viewed this video with you in the privacy

01:55:12  **14** of his home in his bedroom on his computer, was he offended by

-08:-44:-04  **15** this?

01:55:18  **16**    **A.**    You'd have to ask him.

-08:-44:-04  **17**    **Q.**    What was your impression of him when you were sitting

01:55:24  **18** next to him watching this video?

01:55:29  **19**    **A.**    I believe saddened.

01:55:32  **20**    **Q.**    And, in fact, a lot of the inflammatory comments Mr.

-08:-44:-04  **21** Amawi made on that date that you recorded he made in his home

01:55:46  **22** after looking at that video, didn't he?

01:55:55  **23**    **A.**    Do you know approximately what time this video was

01:55:59  **24** played?  I just know it was viewed that night.  I don't know

01:56:04  **25** if the -- any statements more or less were made before this

3203

| | |
|---|---|
| 01:56:14 | **1** video or after this video. |
| -08:-44:-04 | **2**     **Q.** My question to you is:  Was Mr. Amawi offended, in your |
| 01:56:21 | **3** impression, by looking at this video? |
| 01:56:23 | **4**          THE COURT:  He can't testify as to whether he was, |
| -08:-44:-04 | **5** quote, offended or not.   He can testify as to what he recalls |
| 01:56:30 | **6** observing or hearing. |
| -08:-44:-04 | **7** BY MR. IVEY: |
| -08:-44:-04 | **8**     **Q.** What did you observe Mr. Amawi's reaction to that video? |
| 01:56:37 | **9**     **A.** Sort of -- I took it as sadness.   Once again, I'm |
| -08:-44:-04 | **10** guessing but... |
| 01:56:47 | **11**          MR. IVEY:  Okay.  Let's go to the overhead. |
| 01:56:47 | **12** BY MR. IVEY: |
| -08:-44:-04 | **13**     **Q.** Mr. Griffin, I've put up here on the overhead |
| 01:57:21 | **14** Government's Exhibit 130.   Do you recall testifying about this |
| 01:57:29 | **15** exhibit in direct examination? |
| 01:57:31 | **16**     **A.** Yes, I do. |
| 01:57:34 | **17**     **Q.** This is the copy of the cover of a book, is it not? |
| 01:57:39 | **18**     **A.** Yes, it is. |
| 01:57:42 | **19**     **Q.** The individual on the front of the book is al-Zarqawi; |
| -08:-44:-04 | **20** is that correct? |
| -08:-44:-04 | **21**     **A.** I believe. |
| 01:57:52 | **22**     **Q.** Al-Zarqawi is -- was a high ranking, I'll use the |
| -08:-44:-04 | **23** term -- had a high position in Al-Qaeda, correct? |
| -08:-44:-04 | **24**     **A.** I believe he was the leader, yes. |
| -08:-44:-04 | **25**     **Q.** And this book, you testified that someone gave a copy of |

-08:-44:-04 **1** this book to Mr. Amawi when you and he were over in Jordan,

-08:-44:-04 **2** correct?

01:58:23 **3**  **A.**  Yes.

01:58:26 **4**  **Q.**  And after you observed Mr. Amawi get this book, you

01:58:32 **5** obtained a copy, correct?

-08:-44:-04 **6**  **A.**  I was taken by Mr. Amawi to the local book store.

-08:-44:-04 **7**  **Q.**  And you didn't get it from an individual that was part

-08:-44:-04 **8** of some terrorist cell, did you?

-08:-44:-04 **9**  **A.**  I couldn't tell you who it was.

-08:-44:-04 **10**  **Q.**  You didn't get it in Iraq?

01:58:56 **11**  **A.**  I did not.

-08:-44:-04 **12**  **Q.**  You didn't get it in Syria?

-08:-44:-04 **13**  **A.**  I did not.

-08:-44:-04 **14**  **Q.**  You got it at a local book store in Irbid, Jordan?

-08:-44:-04 **15**  **A.**  Yes.

01:59:11 **16**  **Q.**  It was readily available in the Middle East in Jordan in

-08:-44:-04 **17** book stores?

01:59:18 **18**  **A.**  I wouldn't call it readily available.

-08:-44:-04 **19**  **Q.**  Well, you bought more than one copy, didn't you?

01:59:24 **20**  **A.**  Correct.

-08:-44:-04 **21**  **Q.**  And you indicated you got it from a local book store?

-08:-44:-04 **22**  **A.**  Yes, I did.

01:59:39 **23**  **Q.**  Mr. Griffin, you testified -- let me just ask you.

01:59:47 **24**  You're proud of your accomplishments in the

-08:-44:-04 **25** military, are you not?

01:59:51  **1**    **A.**   Yes.

01:59:53  **2**    **Q.**   You entered the Army and you were selected for Special

-08:-44:-04  **3**  Forces training?

01:59:59  **4**    **A.**   Yes.

02:00:01  **5**    **Q.**   And you were one of 88 candidates selected out of a pool

-08:-44:-04  **6**  of 935 to receive that training?

02:00:09  **7**    **A.**   No, I was one of the 88 that graduated ultimately.

02:00:13  **8**    **Q.**   Even better.   You graduated?

-08:-44:-04  **9**    **A.**   Correct.

-08:-44:-04  **10**   **Q.**   One of the 88 that graduated out of the 935?

02:00:20  **11**   **A.**   Correct.

02:00:21  **12**           THE COURT:  Keep your voice up, Mr. Ivey.

02:00:28  **13**  BY MR. IVEY:

02:00:28  **14**   **Q.**   We had established that you were proud of your military

02:00:32  **15**  accomplishments, correct?

-08:-44:-04  **16**   **A.**   Correct.

-08:-44:-04  **17**   **Q.**   And we had established that you entered the military in

-08:-44:-04  **18**  the Army, and you were selected for Special Forces -- correct?

-08:-44:-04  **19**   **A.**   Not when I first --

-08:-44:-04  **20**   **Q.**   -- training?

-08:-44:-04  **21**   **A.**   Not when I first entered, but during.

-08:-44:-04  **22**   **Q.**   At some point in your military career you were selected

02:00:48  **23**  for Special Forces training, correct?

-08:-44:-04  **24**   **A.**   Correct.

02:00:50  **25**   **Q.**   Okay.  And you were one of 88 out of 935 candidates to

3206

| | | |
|---|---|---|
| 02:00:55 | **1** | graduate in Special Forces training, correct? |
| 02:00:57 | **2** | **A.**   Correct. |
| -08:-44:-04 | **3** | **Q.**   You had a few setbacks in the military? |
| 02:01:05 | **4** | **A.**   Your definition. |
| -08:-44:-04 | **5** | **Q.**   You tried acid? |
| 02:01:08 | **6** | **A.**   Yes. |
| 02:01:10 | **7** | **Q.**   You drank heavily? |
| 02:01:13 | **8** | **A.**   Average. |
| 02:01:17 | **9** | **Q.**   Average or heavy? |
| 02:01:20 | **10** | **A.**   I would say no more than the average person.   I never |
| 02:01:28 | **11** | had to go to counseling if that's what you're asking. |
| -08:-44:-04 | **12** | **Q.**   No, I'm not.   I'm asking if you drank heavy? |
| -08:-44:-04 | **13** | **A.**   Maybe, but I would say average. |
| 02:01:37 | **14** | **Q.**   Well, let's see what you said when Mr. Sofer asked you |
| -08:-44:-04 | **15** | that question? |
| 02:01:48 | **16** | **A.**   If you said I said it on direct, I'll -- I said heavy |
| -08:-44:-04 | **17** | then. |
| 02:01:53 | **18** | THE COURT:   There's no question pending. |
| 02:01:59 | **19** | BY MR. IVEY: |
| 02:01:59 | **20** | **Q.**   Are you conceding that you could have described it as |
| 02:02:02 | **21** | heavy? |
| -08:-44:-04 | **22** | **A.**   Yes, I may have said that. |
| 02:02:06 | **23** | **Q.**   Then, unfortunately, you had an injury? |
| 02:02:12 | **24** | **A.**   Yes. |
| 02:02:13 | **25** | **Q.**   Correct?   That was, I believe, one of your knees? |

-08:-44:-04 **1**     **A.**   Yes.

02:02:18 **2**     **Q.**   And that eventually got you classified, and I'm using

-08:-44:-04 **3** that term loosely, as a disabled veteran?

02:02:31 **4**     **A.**   When I left the military, yes.

-08:-44:-04 **5**     **Q.**   And the military at that particular time you considered

-08:-44:-04 **6** it to be your life?

02:02:40 **7**     **A.**   Correct.

-08:-44:-04 **8**     **Q.**   In fact, you were moved emotionally about testifying

-08:-44:-04 **9** about this on direct, correct?

-08:-44:-04 **10**     **A.**   Correct.

-08:-44:-04 **11**     **Q.**   When you left, what was your life at that particular

-08:-44:-04 **12** time, you felt lost?

02:02:57 **13**     **A.**   Yes.

02:02:58 **14**     **Q.**   And you had no real plans?

02:03:01 **15**     **A.**   No.

02:03:03 **16**     **Q.**   But then you got a second opportunity, correct?  You

02:03:08 **17** volunteered for the DEA to work with them?

02:03:12 **18**     **A.**   Before that knowing where I was going, but yes

02:03:21 **19** ultimately.

-08:-44:-04 **20**        THE COURT:  I couldn't hear what you said.

02:03:24 **21**        THE WITNESS:  I don't know -- he said I had a

02:03:26 **22** second opportunity.

02:03:27 **23** BY MR. IVEY:

02:03:27 **24**     **Q.**   In April of 2001 you volunteered to work for the DEA?

-08:-44:-04 **25**     **A.**   Correct.

-08:-44:-04 **1**    **Q.**  And they said yes, and you were able to do it?

02:03:34 **2**    **A.**  Correct.

02:03:40 **3**    **Q.**  You had some, again, unfortunate events that took place

02:03:46 **4**  when you worked for the DEA?

02:03:48 **5**    **A.**  Yes.

02:03:50 **6**    **Q.**  You, while working for the DEA, you began to use

-08:-44:-04 **7**  marijuana and cocaine every week?

02:03:59 **8**    **A.**  An average, yes.

02:04:02 **9**    **Q.**  And you also sold some pills that was without DEA

-08:-44:-04 **10**  approval?

02:04:11 **11**    **A.**  Correct.

02:04:13 **12**    **Q.**  This was prior to 9/11, correct?

02:04:18 **13**    **A.**  Correct.

-08:-44:-04 **14**    **Q.**  And prior to 9/11, again, you had developed a point

-08:-44:-04 **15**  where you were self-absorbed?

-08:-44:-04 **16**    **A.**  I believe so.

-08:-44:-04 **17**    **Q.**  And you had fell into what you feared, the negative

-08:-44:-04 **18**  things and you were part of the problem?

-08:-44:-04 **19**    **A.**  Correct.

02:04:36 **20**    **Q.**  But 9/11 gave you a new look on life?

02:04:43 **21**    **A.**  Somewhat.

02:04:46 **22**    **Q.**  And you got -- you were offered again another

02:04:52 **23**  opportunity, that was to work with the FBI?

02:04:59 **24**    **A.**  Yes.

02:05:02 **25**    **Q.**  And at some point during the FBI you slipped just a

-08:-44:-04 **1** little bit, you used some marijuana here and there, correct?

-08:-44:-04 **2**    **A.**  Correct.

02:05:11 **3**    **Q.**  But you were affected by 9/11 and you wanted to change,

-08:-44:-04 **4** you wanted to do good.   You wanted to be part of the solution

-08:-44:-04 **5** and not part of the problem, correct?

-08:-44:-04 **6**    **A.**  Correct.

02:05:28 **7**    **Q.**  You also had another opportunity to be paid to do this,

-08:-44:-04 **8** correct.   You were making -- you made about 56,000 a year?

-08:-44:-04 **9**    **A.**  Correct.

02:05:38 **10**    **Q.**  And so you wanted to -- you wanted this to work out, I

-08:-44:-04 **11** mean you wanted to do good, you wanted to help.   You wanted to

-08:-44:-04 **12** find threats against the United States and help stop them?

02:05:53 **13**    **A.**  Yes.

02:05:56 **14**    **Q.**  Now, the FBI asked you, and I think you've already

02:06:02 **15** acknowledged this, look at -- to look at some threats that may

02:06:07 **16** be in the Muslim community?

-08:-44:-04 **17**    **A.**  Correct.

-08:-44:-04 **18**    **Q.**  Yet you, yourself, were not a practicing Muslim?

-08:-44:-04 **19**    **A.**  I was not.

-08:-44:-04 **20**    **Q.**  You were a Christian, and I believe you said you had a

-08:-44:-04 **21** personal relationship with Jesus Christ?

02:06:22 **22**    **A.**  Yes, I began having.

02:06:27 **23**    **Q.**  Now, in -- despite not being a Muslim in actuality, when

02:06:34 **24** you came into the Muslim community you were -- that was a cover,

02:06:38 **25** correct?   That was part of your cover, that you were a recent

| | | |
|---|---|---|
| 02:06:45 | **1** | convert to Islam? |
| 02:06:46 | **2** | **A.**  No, the convert, when I converted to Islam, it was |
| 02:06:50 | **3** | during that period of time, not before. |
| 02:06:52 | **4** | **Q.**  Well, you were not at any point through this an actual |
| -08:-44:-04 | **5** | Muslim, correct? |
| -08:-44:-04 | **6** | **A.**  Correct. |
| 02:07:02 | **7** | **Q.**  Yet the FBI asked you to gather information in the |
| -08:-44:-04 | **8** | Muslim community? |
| 02:07:10 | **9** | **A.**  Correct. |
| 02:07:11 | **10** | **Q.**  Now, several Muslims, such as the defendants in this |
| -08:-44:-04 | **11** | case, speak fluent Arabic, correct? |
| 02:07:20 | **12** | **A.**  I believe they do. |
| 02:07:22 | **13** | **Q.**  You did not speak fluent Arabic at the time you took on |
| 02:07:27 | **14** | this task? |
| 02:07:28 | **15** | **A.**  I did not. |
| 02:07:29 | **16** | **Q.**  And you did not speak fluent Arabic now? |
| 02:07:33 | **17** | **A.**  I do not. |
| 02:07:34 | **18** | **Q.**  Now, the FBI asked you to gather information, I think |
| -08:-44:-04 | **19** | you've said that a few times already, correct? |
| -08:-44:-04 | **20** | **A.**  Correct. |
| -08:-44:-04 | **21** | **Q.**  The FBI did not tell you to create evidence, did they? |
| -08:-44:-04 | **22** | **A.**  Correct. |
| -08:-44:-04 | **23** | **Q.**  The FBI did not tell you to create and assemble a |
| 02:07:56 | **24** | terrorist cell, did they? |
| 02:08:01 | **25** | **A.**  I cannot recall. |

02:08:03 **1**    **Q.**    So you're saying it's possible then that the FBI told

-08:-44:-04 **2** you, Mr. Griffin, we want you to go out and we want you to

-08:-44:-04 **3** create a terrorist cell, that could have happened?

-08:-44:-04 **4**    **A.**    I believe, once again -- would you like me to guess

-08:-44:-04 **5** or...

02:08:22 **6**    **Q.**    You would have to guess to answer that question?

02:08:25 **7**    **A.**    For as far as the guidance given, yes.   It's been some

02:08:30 **8** years since the instructions were given.

-08:-44:-04 **9**    **Q.**    So the government then may have, it's very possible they

-08:-44:-04 **10** may have told you we want you to go into the Muslim community,

02:08:42 **11** and we want you to start talking to them, to Muslims, and we

-08:-44:-04 **12** want you to create, we want you to put people together, we want

-08:-44:-04 **13** you to create a terrorist cell in this country?   That's

-08:-44:-04 **14** possible that that happened?

-08:-44:-04 **15**    **A.**    I don't think -- no, basically that was -- I was a

-08:-44:-04 **16** Special Forces soldier, and cells is, you know -- that's what I

02:09:08 **17** understood.   That was just one of those thing, one of those

02:09:11 **18** covers that I did.

02:09:13 **19**    **Q.**    Well, I don't believe that's responsive to my question.

02:09:18 **20** My question is simply, did the government instruct you, sir, is

-08:-44:-04 **21** it possible they instructed you to find some individuals who are

02:09:29 **22** not otherwise connected, who are not otherwise in the process of

02:09:33 **23** engaging in any illegal activity and then to put them together

02:09:37 **24** and then to take them and cause the impression that they are

-08:-44:-04 **25** some terrorist alliance; did they do that?   Did the government

3212

-08:-44:-04    **1**    tell you to do that?

-08:-44:-04    **2**    　　　　MR. SOFER: Objection.

-08:-44:-04    **3**    　　　　THE COURT:  It's overruled.

-08:-44:-04    **4**    **A.**    And my answer is, I cannot recall.

02:09:53    **5**    BY MR. IVEY:

02:09:53    **6**    **Q.**    So that is something that if they did tell you to do

-08:-44:-04    **7**    that that you would have forgotten over the period of time?

-08:-44:-04    **8**    **A.**    No, I can't recall the specifics; you would have to ask

-08:-44:-04    **9**    the government.

02:10:07    **10**    **Q.**    Well, your understanding, I think you testified several

-08:-44:-04    **11**    times, was that you were to gather information?

-08:-44:-04    **12**    **A.**    Correct.

-08:-44:-04    **13**    **Q.**    The book that I put up of Mr. Zarqawi, you purchased

-08:-44:-04    **14**    that at a book store you said, correct?

02:10:25    **15**    **A.**    Correct.

-08:-44:-04    **16**    **Q.**    And you brought that book back to America, correct?

02:10:30    **17**    **A.**    A couple copies, yes.

-08:-44:-04    **18**    **Q.**    And you gave one of those copies to Mr. Mazloum?

-08:-44:-04    **19**    **A.**    Correct.

02:10:39    **20**    **Q.**    So you didn't find in your gathering of information that

-08:-44:-04    **21**    Mr. Mazloum was already in possession of that book, did you?

02:10:49    **22**    **A.**    No, I did not.

-08:-44:-04    **23**    **Q.**    You went and you gave him a copy of that book, didn't

-08:-44:-04    **24**    you?

-08:-44:-04    **25**    **A.**    Correct.

3213

| | | |
|---|---|---|
| -08:-44:-04 | **1** | **Q.**   As the representative or operative of the government, |
| 02:11:00 | **2** | you supplied one of the defendants in this case with a piece of |
| -08:-44:-04 | **3** | evidence that the government has introduced, correct? |
| 02:11:09 | **4** | **A.**   As part of my cover, yes. |
| 02:11:12 | **5** | **Q.**   So that is not gathering information, that is supplying |
| 02:11:17 | **6** | information to this case, isn't it? |
| 02:11:20 | **7** | **A.**   If that's your definition, yes. |
| 02:11:29 | **8** | **Q.**   When you went to shoot with the defendants, Mr. Mazloum |
| 02:11:38 | **9** | and Mr. Amawi, you took Mr. Amawi on -- Mr. Amawi met you for |
| -08:-44:-04 | **10** | the purpose of shooting on January -- late January of 2005, |
| 02:11:53 | **11** | correct? |
| -08:-44:-04 | **12** | **A.**   Correct. |
| 02:11:55 | **13** | **Q.**   And you, as the government agent, taught him or showed |
| 02:12:02 | **14** | him how to shoot a firearm, correct? |
| 02:12:04 | **15** | **A.**   On that 21st? |
| 02:12:07 | **16** | **Q.**   Yes. |
| 02:12:08 | **17** | **A.**   I didn't -- |
| -08:-44:-04 | **18** | **Q.**   He just shot? |
| -08:-44:-04 | **19** | **A.**   I was assessing him at that time. |
| -08:-44:-04 | **20** | **Q.**   You, as the government agent, were evaluating him in his |
| 02:12:15 | **21** | shooting ability? |
| 02:12:16 | **22** | **A.**   Correct. |
| -08:-44:-04 | **23** | **Q.**   And you are the one that suggested that you go to |
| 02:12:22 | **24** | Cleland's to shoot, correct? |
| 02:12:25 | **25** | **A.**   Best I can recall is I had been shooting out there at |

3214

| | | |
|---|---|---|
| 02:12:32 | **1** | Cleland's and informed him. |
| -08:-44:-04 | **2** | **Q.**   And invited him to come out and shoot? |
| -08:-44:-04 | **3** | **A.**   Yes. |
| 02:12:36 | **4** | **Q.**   So in your gathering of information, you did not learn |
| 02:12:40 | **5** | that Mr. Amawi had been going to Cleland's to shoot in the past |
| -08:-44:-04 | **6** | or that's where he normally shot and you showed up, correct? |
| 02:12:49 | **7** | **A.**   He had not been shooting there that year. |
| -08:-44:-04 | **8** | **Q.**   So as the government, in your gathering of information, |
| -08:-44:-04 | **9** | you're actually inviting him to shoot, correct? |
| -08:-44:-04 | **10** | **A.**   Yes. |
| -08:-44:-04 | **11** | **Q.**   Well, that's not gathering information, that is |
| 02:13:02 | **12** | supplying information or conduct, isn't it? |
| 02:13:07 | **13** | **A.**   That's assessing how much he knows. |
| 02:13:11 | **14** | **Q.**   When you went out to shoot at Cleland's with Mr. Mazloum |
| 02:13:20 | **15** | and Mr. Amawi in April, on April 20th, you paid for the use of |
| -08:-44:-04 | **16** | the range? |
| -08:-44:-04 | **17** | **A.**   Correct. |
| 02:13:37 | **18** | **Q.**   You paid for the targets? |
| 02:13:43 | **19** | **A.**   These are questions on statements, correct. |
| -08:-44:-04 | **20** | **Q.**   Pardon? |
| 02:13:49 | **21** | **A.**   These are statements, questions not statements, correct. |
| 02:13:52 | **22** | **Q.**   "Yes"? |
| -08:-44:-04 | **23** | **A.**   Yes. |
| 02:13:53 | **24** | **Q.**   You brought guns to shoot with? |
| -08:-44:-04 | **25** | **A.**   On the 20th. |

| | | | |
|---|---|---|---|
| 02:14:05 | **1** | **Q.** | At various points in this case you supplied the firearm? |
| 02:14:09 | **2** | **A.** | Only on two occasions did I supply firearms. |
| 02:14:21 | **3** | **Q.** | I'm going to show you what's been marked Government's |
| 02:14:27 | **4** | | Exhibit 84.   Do you recognize this gun? |
| -08:-44:-04 | **5** | **A.** | Yes, I do. |
| -08:-44:-04 | **6** | **Q.** | Is that your gun? |
| -08:-44:-04 | **7** | **A.** | It is not. |
| 02:14:40 | **8** | **Q.** | Did you rent that gun? |
| -08:-44:-04 | **9** | **A.** | Yes, at least on one occasion. |
| -08:-44:-04 | **10** | **Q.** | You rented that gun at Cleland's? |
| -08:-44:-04 | **11** | **A.** | Yes. |
| -08:-44:-04 | **12** | **Q.** | You paid for the rental? |
| -08:-44:-04 | **13** | **A.** | Yes. |
| -08:-44:-04 | **14** | **Q.** | Mr. Amawi didn't pay for the rental of that gun? |
| -08:-44:-04 | **15** | **A.** | Not on this occasion. |
| -08:-44:-04 | **16** | **Q.** | Mr. Mazloum didn't pay for the rental of that gun? |
| 02:14:59 | **17** | **A.** | He didn't. |
| 02:15:00 | **18** | **Q.** | So in your gathering of information, you did not report |
| 02:15:07 | **19** | | to the FBI that Mr. Amawi, Mr. Mazloum had rented a gun and |
| -08:-44:-04 | **20** | | invited you out to shoot?   It was quite the opposite, correct? |
| 02:15:18 | **21** | **A.** | I had reported to the FBI turning over the actual. |
| -08:-44:-04 | **22** | | THE COURT:  I'm sorry, you have to answer yes or no |
| 02:15:29 | **23** | | unless you cannot answer the question or it's compound. |
| -08:-44:-04 | **24** | | THE WITNESS:  Your Honor, it's a compounded |
| 02:15:34 | **25** | | question, I can't. |

3216

02:15:35  **1**          THE COURT:  Then why don't your rephrase the

-08:-44:-04  **2**  question.

02:15:37  **3**          THE WITNESS:  Could you please rephrase?

02:15:39  **4**  BY MR. IVEY:

02:15:39  **5**      **Q.**  I'll just ask another one.  I'll show you Government's

02:15:44  **6**  Exhibit 85.

-08:-44:-04  **7**          Do you recognize Government's Exhibit 85?

-08:-44:-04  **8**      **A.**  Yes, I do.

-08:-44:-04  **9**      **Q.**  That is your gun, isn't it?

02:15:52  **10**      **A.**  Yes, it is.

02:15:53  **11**      **Q.**  That's your Desert Eagle .357, correct?

-08:-44:-04  **12**      **A.**  Yes, it is.

02:15:58  **13**      **Q.**  So in your gathering of information, you did not find

02:16:06  **14**  that Mr. Amawi was in possession of this gun at the time you

-08:-44:-04  **15**  started investigating him, did you?

-08:-44:-04  **16**      **A.**  No.

02:16:13  **17**      **Q.**  That was your gun?

-08:-44:-04  **18**      **A.**  Correct.

02:16:16  **19**      **Q.**  So again, Mr. Griffin, you, as the government agent, the

02:16:23  **20**  government operative, you supplied evidence into this case,

-08:-44:-04  **21**  correct?

-08:-44:-04  **22**      **A.**  Correct.

02:16:34  **23**      **Q.**  I'm going to show you Government's Exhibit 86.

-08:-44:-04  **24**          Do you recognize this?

-08:-44:-04  **25**      **A.**  Yes, I do.

-08:-44:-04  **1**  **Q.**  What is that?

-08:-44:-04  **2**  **A.**  That is my Glock 19.

-08:-44:-04  **3**  **Q.**  That's your gun?

-08:-44:-04  **4**  **A.**  Yes.

02:16:45  **5**  **Q.**  That's a gun that you utilized or you gave Mr. Amawi

02:16:51  **6**  and/or Mr. Mazloum to either shoot or you demonstrated, correct?

-08:-44:-04  **7**  **A.**  Yes.

02:17:00  **8**  **Q.**  So you did not happen upon in your information gathering

02:17:05  **9**  Mr. Amawi or Mr. Mazloum or Mr. El-Hindi in possession of any of

-08:-44:-04  **10**  these guns, correct?

-08:-44:-04  **11**  **A.**  Correct.

02:17:13  **12**  **Q.**  You supplied them for whatever purposes they were to be

-08:-44:-04  **13**  used for?

02:17:18  **14**  **A.**  Correct.

02:17:39  **15**  **Q.**  Okay.  On February 16 of 2005, that is the one and only

-08:-44:-04  **16**  time that all three of the defendants in this case, Mr. Amawi,

-08:-44:-04  **17**  Mr. El-Hindi, and Mr. Mazloum, were together in your presence?

02:17:59  **18**  **A.**  Yes.

02:18:02  **19**  **Q.**  And at that meeting, you brought various periodicals,

-08:-44:-04  **20**  books, correct?

-08:-44:-04  **21**  **A.**  Correct.

02:18:15  **22**  **Q.**  I show you what's marked Government's Exhibit 66.  That

-08:-44:-04  **23**  is a --

-08:-44:-04  **24**  Well, do you recognize this, what's in the photo?

-08:-44:-04  **25**  **A.**  Yes, I do.

**1**     **Q.**   This is a manual, correct, a supplemental text,

**2**   insurgency and counter-insurgency, Special Forces, correct?

**3**     **A.**   Correct.

**4**     **Q.**   This is your book?

**5**     **A.**   Yes.

**6**     **Q.**   That you brought to the meeting, correct?

**7**     **A.**   Correct.

**8**     **Q.**   Now, in your information gathering, you were not able to

**9**   report to the FBI that I have discovered that these three

**10**   gentlemen are in possession of a supplemental text of insurgency

**11**   and counter-insurgency; that was not information you were able

**12**   to gather, was it?

**13**     **A.**   That they had that book?

**14**     **Q.**   Right.

**15**     **A.**   Correct.

**16**        THE COURT: I didn't hear you.

**17**        THE WITNESS: Correct. They didn't have that

**18**   book.

**19**   BY MR. IVEY:

**20**     **Q.**   So you as the government agent, you supplied this

**21**   information, this book to these individuals, correct?

**22**     **A.**   Yes.

**23**     **Q.**   For their review?

**24**     **A.**   For their review, yes.

**25**     **Q.**   And but for you, they wouldn't have had that book to

-08:-44:-04 **1** look at on that date, would they?

-08:-44:-04 **2**    **A.**  I -- I couldn't tell you.

02:19:42 **3**    **Q.**  I would like to show you what's marked Government's

02:19:47 **4** Exhibit 67.

02:19:50 **5**        Do you recognize that book?

-08:-44:-04 **6**        I'm going to put the cover photo up here.

-08:-44:-04 **7**    **A.**  Yes, I do.

-08:-44:-04 **8**    **Q.**  That is the Drager SCUBA diving tactical book that you

-08:-44:-04 **9** testified to in your direct examination, correct?

02:20:08 **10**    **A.**  Drager closed circuit, yes.

02:20:12 **11**    THE COURT:  I didn't hear you.

02:20:17 **12**    THE WITNESS:  Drager closed circuit.

02:20:17 **13** BY MR. IVEY:

02:20:21 **14**    **Q.**  This is another periodical that you made available for

02:20:25 **15** the defendants' review on February 16, 2005?

-08:-44:-04 **16**    **A.**  Yes.

02:20:33 **17**    **Q.**  And again, in your information gathering function, you

-08:-44:-04 **18** weren't able to report to the FBI that these three gentlemen

-08:-44:-04 **19** were in possession of this book when you arrived at the meeting,

02:20:47 **20** correct?

-08:-44:-04 **21**    **A.**  Correct.

-08:-44:-04 **22**    **Q.**  You -- to your knowledge, none of these gentlemen owned

-08:-44:-04 **23** such a book?

-08:-44:-04 **24**    **A.**  Not to my knowledge.

02:20:54 **25**    **Q.**  You, as the government agent, your information gathering

02:20:59  1  function, actually supplied this information to these three

02:21:04  2  gentlemen, didn't you?

-08:-44:-04  3      A.   To review, yes.

02:21:12  4      Q.   I'm going to show you what I've marked Government's

02:21:18  5  Exhibit 68.

-08:-44:-04  6            Do you recognize that book?

02:21:20  7      A.   Yes, I do.

-08:-44:-04  8      Q.   That is a survival training manual, I suppose?

02:21:27  9      A.   Correct.

02:21:28  10      Q.   That again is one of the books that you -- that's your

02:21:34  11  book, correct?

-08:-44:-04  12      A.   Yes.

-08:-44:-04  13      Q.   And, again, you supplied this as the government agent to

02:21:41  14  these three defendants to review at the February 16 meeting?

-08:-44:-04  15      A.   Yes.

02:21:46  16      Q.   You were not, in your information gathering capacity or

02:21:51  17  function, able to report to the FBI that I have discovered that

-08:-44:-04  18  any of these three gentlemen were in possession of this book

-08:-44:-04  19  when I got to the meeting?

-08:-44:-04  20      A.   Correct.

02:22:03  21      Q.   You, as the government agent and operative, in your

-08:-44:-04  22  information gathering function actually supplied this book for

-08:-44:-04  23  review?

02:22:12  24      A.   Correct.

02:22:22  25      Q.   Government's Exhibit 7.

-08:-44:-04 **1** That's a bodyguard protection guide to VIP --

02:22:36 **2** Practical Guide to VIP Protection, correct?

-08:-44:-04 **3** **A.** Yes.

-08:-44:-04 **4** **Q.** Again, that's your book?

-08:-44:-04 **5** **A.** Correct.

-08:-44:-04 **6** **Q.** You had -- by the way, you really had a security company

02:22:50 **7** didn't you or was that part of the cover?

02:22:52 **8** **A.** It's part of the cover but I was forming one, yes.

-08:-44:-04 **9** THE COURT: Didn't hear you.

-08:-44:-04 **10** THE WITNESS: I was forming it, yes. I don't know

02:22:59 **11** if that's your definition of having it.

-08:-44:-04 **12** BY MR. IVEY:

-08:-44:-04 **13** **Q.** Were you otherwise training other individuals in

02:23:07 **14** protection skills legitimately for a legitimate bodyguard

-08:-44:-04 **15** service?

-08:-44:-04 **16** **A.** No.

-08:-44:-04 **17** **Q.** Did you ever do that?

02:23:18 **18** **A.** In my life?

-08:-44:-04 **19** **Q.** During the course of this investigation or just prior it

02:23:26 **20** to?

02:23:26 **21** **A.** Prior to, possibly.

02:23:28 **22** **Q.** When you were at the Mosque, did you pass out your card

02:23:35 **23** to other parishioners (sic) of the Mosque that you were -- you

-08:-44:-04 **24** had a security company?

02:23:43 **25** **A.** Yes.

3222

-08:-44:-04   **1**   **Q.** And did you inform other members of the Mosque that you

02:23:48   **2**   were interested in recruiting individuals not for violent Jihad,

-08:-44:-04   **3**   but to be legitimate security personnel?

02:23:56   **4**   **A.** No.

02:23:58   **5**   **Q.** You never did that?

-08:-44:-04   **6**   **A.** Recruit them to be a bodyguard?

-08:-44:-04   **7**   **Q.** Yeah.

-08:-44:-04   **8**   **A.** No, I always told that -- what I could provide and what

02:24:11   **9**   I was doing.

02:24:12   **10**   **Q.** Did you always indicate that what you providing and what

-08:-44:-04   **11**   you were doing -- I'm not just talking about these defendants,

-08:-44:-04   **12**   but anybody -- did you always represent that you were only

02:24:24   **13**   training people for some violent terrorist act, Jihad?

02:24:30   **14**   **A.** Was I -- say that again, please.  I'm sorry.

02:24:36   **15**   THE COURT:  Why don't you rephrase.

02:24:39   **16**   BY MR. IVEY:

02:24:39   **17**   **Q.** When you would go to the Mosque and represent that you

-08:-44:-04   **18**   had a security company or were forming one -- or however you

-08:-44:-04   **19**   want to put it -- did you ever indicate to individuals that you

-08:-44:-04   **20**   were forming this for a legitimate security business?

02:24:55   **21**   **A.** Yes.

02:24:56   **22**   **Q.** Okay.  And did you invite individuals to join you or

-08:-44:-04   **23**   work under you or be trained by you for legitimate security

02:25:07   **24**   purposes?

-08:-44:-04   **25**   **A.** Yes.

3223

| 02:25:09 | **1** | **Q.** And you would do that at the Mosque sometimes? |

02:25:09  **1**  **Q.** And you would do that at the Mosque sometimes?

-08:-44:-04  **2**  **A.** Among other places, yes.

-08:-44:-04  **3**  **Q.** Among other places?

-08:-44:-04  **4**  **A.** Yes.

02:25:17  **5**  **Q.** Now, I'd like to show you -- well, again, I don't think

02:25:23  **6**  I asked you.  This bodyguard VIP protection book, it's your

-08:-44:-04  **7**  book?

-08:-44:-04  **8**  **A.** Yes.

-08:-44:-04  **9**  **Q.** And you brought it to the February 16 meeting?

-08:-44:-04  **10**  **A.** Yes.

02:25:34  **11**  **Q.** I'd like to show you Government's Exhibit 71, the

02:25:38  **12**  tactical pistol book.

02:25:42  **13**  Government's Exhibit 71 is a photograph of your

-08:-44:-04  **14**  book?

-08:-44:-04  **15**  **A.** Correct.

-08:-44:-04  **16**  **Q.** And you, as the government operative, in your capacity

02:25:52  **17**  or serving in your function of gathering information, you

02:25:56  **18**  supplied that book at that meeting?

02:25:58  **19**  **A.** Correct.

02:26:17  **20**  **Q.** Now, videos.  You watched -- I think you've already

02:26:27  **21**  testified to numerous videos with Mr. Amawi --

02:26:30  **22**  **A.** Correct.

02:26:31  **23**  **Q.** -- didn't you?

02:26:35  **24**  And you would ask Mr. Amawi for copies of the

-08:-44:-04  **25**  videos that you would see?

3224

| | | |
|---|---|---|
| 02:26:42 | **1** | **A.**   Yes. |
| 02:26:43 | **2** | **Q.**   And I think in several of the tapes you would say words |
| -08:-44:-04 | **3** | to the effect, "I got to have that, you got to give me that," |
| 02:26:55 | **4** | correct? |
| -08:-44:-04 | **5** | **A.**   Correct. |
| -08:-44:-04 | **6** | **Q.**   You would make a request for the information? |
| -08:-44:-04 | **7** | **A.**   Yes. |
| -08:-44:-04 | **8** | **Q.**   Mr. Amawi would not be on these tapes saying, I've |
| 02:27:03 | **9** | already prepared these discs, take it, without you first asking |
| 02:27:09 | **10** | for it? |
| -08:-44:-04 | **11** | **A.**   I don't believe that's the case.   At least once. |
| 02:27:14 | **12** | **Q.**   At least once? |
| -08:-44:-04 | **13** | **A.**   Yes. |
| 02:27:16 | **14** | **Q.**   So over almost two years of investigating and taping Mr. |
| -08:-44:-04 | **15** | Amawi, at least one time he volunteered a disk to you? |
| -08:-44:-04 | **16** | **A.**   Yes, that I can recall.   Yes. |
| -08:-44:-04 | **17** | **Q.**   You can only recall once in two years? |
| 02:27:31 | **18** | **A.**   Yes. |
| -08:-44:-04 | **19** | **Q.**   Okay.  And -- but Mr. Amawi did not download videos onto |
| -08:-44:-04 | **20** | discs and then go to the Mosque and then pass them out to |
| -08:-44:-04 | **21** | individuals, did he?   You didn't observe that? |
| -08:-44:-04 | **22** | **A.**   I never observed that, no. |
| -08:-44:-04 | **23** | **Q.**   When you would come to Mr. Amawi's apartment and look at |
| -08:-44:-04 | **24** | videos, Mr. Amawi would not have individuals, other Muslims from |
| 02:28:03 | **25** | the Mosque or other places at his home having viewing sessions |

3225

-08:-44:-04 **1**   with numerous people, did you?  You didn't see --

-08:-44:-04 **2**       A.    I only see -- I've only seen at least one occasion.

-08:-44:-04 **3**       Q.    In two years, one occasion?

-08:-44:-04 **4**       A.    Where I've physically seen it.

-08:-44:-04 **5**       Q.    And individuals were not out in the Muslim community

-08:-44:-04 **6**   saying, I've got this great bomb vest video or Bin Laden video

02:28:34 **7**   or Al-Qaeda video from Mr. Amawi, did they?

02:28:38 **8**       A.    Not that I gathered.

02:28:41 **9**       Q.    And people in the Muslim community were not saying, Mr.

02:28:46 **10**  Amawi gave me this bomb vest video or this explosive video or

02:28:51 **11**  Osama Bin Laden video and he's trying to get me to look at these

02:28:56 **12**  and go over to Iraq and martyr myself and blow myself up?   That

-08:-44:-04 **13**  didn't happen, did it?

02:29:03 **14**      A.    I was at least told on one occasion that, yes, that that

-08:-44:-04 **15**  was the case.

-08:-44:-04 **16**      Q.    That was when?

02:29:22 **17**      A.    I don't believe I'm allowed to answer that, Your Honor.

02:29:25 **18**            THE COURT:  Okay.

02:29:27 **19**      A.    I can't recall the specific date, but...

02:29:30 **20**      Q.    Well, you didn't testify to that on direct, did you?

-08:-44:-04 **21**      A.    That --

02:29:37 **22**            MR. HARTMAN:  Judge, can we sidebar, please?

02:33:27 **23**            (Whereupon the following discussion was had at the

-08:-44:-04 **24**  bench outside the hearing of the jury:)

-08:-44:-04 **25**            MR. SOFER:  I would note, Your Honor --

-08:-44:-04  **1**      THE COURT:  What's the purpose of the question?

-08:-44:-04  **2**  You're asking him whether he observed people out in the

-08:-44:-04  **3**  community saying that we've got these great videos, you ought to

-08:-44:-04  **4**  get these videos?

-08:-44:-04  **5**      MR. IVEY:  It goes to intent, the lack of intent.

-08:-44:-04  **6**      THE COURT:  But I think you can ask that kind of

-08:-44:-04  **7**  question:  Did you hear people talking about these videos?  You

-08:-44:-04  **8**  didn't see Mr. Amawi talking and peddling these videos?  So far

-08:-44:-04  **9**  as you know, he wasn't making copies for anybody else?

-08:-44:-04  **10**      MR. IVEY:  Okay.

-08:-44:-04  **11**      MR. SOFER:  The reason we're going to have a

-08:-44:-04  **12**  problem here is it calls for hearsay, it calls for out-of-court

-08:-44:-04  **13**  statements.   That's inappropriate.

-08:-44:-04  **14**      MR. IVEY:  I'll rephrase the question.

-08:-44:-04  **15**      MR. SOFER:  Once again, I say imagine if the

-08:-44:-04  **16**  government asked this question, you have heard people in the

-08:-44:-04  **17**  community saying you got videos from Mr. Amawi, then we would

-08:-44:-04  **18**  have a sustained objection on hearsay grounds.   It's the same

-08:-44:-04  **19**  question.   It's asked by the defense.

-08:-44:-04  **20**      MR. IVEY: I'll turn it around.  I won't ask it

-08:-44:-04  **21**  again.  We don't have to fight about it.

-08:-44:-04  **22**      THE COURT:  Did you see Mr. Amawi out in the

-08:-44:-04  **23**  community?

-08:-44:-04  **24**      MR. IVEY:  I agree.

-08:-44:-04  **25**      MR. HARTMAN:  I want to know who he observed Mr.

-08:-44:-04  **1**  Amawi recruited.

-08:-44:-04  **2**  THE COURT:  You'll get your turn.

-08:-44:-04  **3**  MR. SOFER:  Why does he -- I don't see how any of

-08:-44:-04  **4**  this is relevant.

-08:-44:-04  **5**  MR. IVEY:  I will abandon this, move on to -- We

-08:-44:-04  **6**  don't have to stand here.

-08:-44:-04  **7**  THE COURT:  I think it is relevant.   And I think

-08:-44:-04  **8**  that's a relevant question.  Whether -- whom he may have seen

-08:-44:-04  **9**  Mr. Amawi --

-08:-44:-04  **10**  MR. HARTMAN:  Unless the government can tell me --

-08:-44:-04  **11**  THE COURT:  You'll have your chance on

-08:-44:-04  **12**  cross-examination.

-08:-44:-04  **13**  MR. SOFER:  I think the problem here again, we're

-08:-44:-04  **14**  going to have it who ever asks the questions, when you ask for

-08:-44:-04  **15**  out-of-court statements and things happening out of court, that

-08:-44:-04  **16**  would be --

-08:-44:-04  **17**  THE COURT:  If Mr. Hartman wants to ask whether he

-08:-44:-04  **18**  observed, quote, recruiting, he can say yes.   Then Mr. Hartman

-08:-44:-04  **19**  can ask when, where, whom, what did you observe.   And whether

-08:-44:-04  **20**  Mr. Amawi was saying I heard -- I assume this isn't a direct

-08:-44:-04  **21**  quote, but I have no idea, but he said I heard Mr. Amawi

-08:-44:-04  **22**  speaking at the Mosque and saying let's all get trained and go

-08:-44:-04  **23**  to Iraq and blow up Americans.   That statement could be -- he

-08:-44:-04  **24**  could testify that he heard that statement.   It's not offered

-08:-44:-04  **25**  for truth of the matter asserted.   It's not hearsay.   I think

-08:-44:-04 **1** that's --

-08:-44:-04 **2** MR. HARTMAN:  My problem was it went to the

-08:-44:-04 **3** hearsay, but with him saying I don't believe I'm allowed -- at

-08:-44:-04 **4** liberty to answer the question.   I don't know what privilege

-08:-44:-04 **5** keeps him from answering the question.

-08:-44:-04 **6** MR. SOFER:  I don't think it's a privilege.   I

-08:-44:-04 **7** think, I think --  I could be wrong about.  This -- I don't know

-08:-44:-04 **8** what's running through the witness's mind but I think what he's

-08:-44:-04 **9** trying to get at is he heard from somebody -- the question was

-08:-44:-04 **10** asked in a way what the witness heard in the community.

-08:-44:-04 **11** MR. IVEY:  I think they can do this in their

-08:-44:-04 **12** examination.

-08:-44:-04 **13** THE COURT:  We're all set?

-08:-44:-04 **14** (End of side-bar discussion.)

02:33:37 **15** THE COURT:  You may continue.

02:33:42 **16** BY MR. IVEY:

02:33:43 **17** **Q.**   Did you ever see Mr. Amawi at the Mosque passing out

02:33:49 **18** discs of these videos?

02:33:51 **19** **A.**   I did not.

02:34:08 **20** **Q.**   Now, you did not see Mr. Amawi -- Mr. Amawi did not

-08:-44:-04 **21** carry guns around with him, did he?

-08:-44:-04 **22** **A.**   Not that I know of.

02:34:25 **23** **Q.**   And in the two years that you were with him, you did not

-08:-44:-04 **24** see him with a gun of his own?

02:34:35 **25** **A.**   No, I didn't.

-08:-44:-04  **1**   **Q.**   And in the two years that you were taping him, Mr.

-08:-44:-04  **2**   Amawi, you did not see him in possession of any explosive

02:34:48  **3**   device?

02:34:49  **4**   **A.**   No.

02:34:54  **5**   **Q.**   Now, in several of your conversations -- well,

02:35:06  **6**   throughout this two-year period, Mr. Amawi again did not have --

02:35:13  **7**   you weren't able to report to the FBI that Mr. Amawi had been in

-08:-44:-04  **8**   contact with Mr. Zubair and Mr. Khaleel, correct?   You didn't

-08:-44:-04  **9**   gather that information?

-08:-44:-04  **10**   **A.**   No.

02:35:26  **11**            MR. IVEY:   Your Honor, can we approach for a

02:35:29  **12**   moment?

-08:-44:-04  **13**            THE COURT:   Okay.

02:35:30  **14**            (Whereupon the following discussion was had at the

02:41:31  **15**   bench outside the hearing of the jury:)

02:41:31  **16**            MR. IVEY:   I am at a point where I would like to

-08:-44:-04  **17**   play one of my clips from the transcripts under the rule of

-08:-44:-04  **18**   completeness; it is the conversation between Mr. Griffin and Mr.

-08:-44:-04  **19**   Amawi.   The focus of my question is Mr. Griffin's statements

-08:-44:-04  **20**   where he invites Mr. Amawi to the conference where Zubair and

-08:-44:-04  **21**   Khaleel are.   I think I should be permitted to do that.

-08:-44:-04  **22**            MR. SOFER:   There's nothing Mr. Amawi says on it

-08:-44:-04  **23**   that is exculpatory or what he would testify to, none of his

-08:-44:-04  **24**   statements are offered for the truth.   We can't cross-examine

-08:-44:-04  **25**   this witness on his statement.

-08:-44:-04 **1**          Again, Judge, I thought we went through all this.

-08:-44:-04 **2** If he wants to ask him questions about this, the witness is

-08:-44:-04 **3** entitled to be asked; that is black letter evidentiary

-08:-44:-04 **4** principles.   If he wants to ask the question of him about

-08:-44:-04 **5** whether he did such-and-such, and the witness says something

-08:-44:-04 **6** which causes this to come in --

-08:-44:-04 **7**          THE COURT:  I would agree.   You can ask him, do

-08:-44:-04 **8** you recall recording a conversation with Mr. Amawi on day X.

-08:-44:-04 **9** If you have the transcript:  Do you recall on that day at that

-08:-44:-04 **10** time you made the following statements and he made following

-08:-44:-04 **11** statements?   If he says yes, he does, fine.

-08:-44:-04 **12**          MR. SOFER:  If he says he doesn't recall I thought

-08:-44:-04 **13** we agreed the transcript would be shown to him or they can play

-08:-44:-04 **14** the tape to him.  I'm confident -- I shouldn't say how I think

-08:-44:-04 **15** it will go, but I think that's the appropriate way of going

-08:-44:-04 **16** about it.

-08:-44:-04 **17**          MR. IVEY:  So far he hasn't remembered much of what

-08:-44:-04 **18** I've asked him.

-08:-44:-04 **19**          THE COURT:  In which case, you show him the

-08:-44:-04 **20** transcript.  I think that's the better way to do it rather than

-08:-44:-04 **21** displaying the video.

-08:-44:-04 **22**          MR. IVEY:  All right.   The other issue.

-08:-44:-04 **23**          THE COURT:  Or perhaps then you can show the video.

-08:-44:-04 **24**          MR. IVEY:  Following that, however it comes in, I

-08:-44:-04 **25** would like to play another clip of the same conversation but

3231

-08:-44:-04 **1** this one I think should be played under the rule of completeness

-08:-44:-04 **2** because it puts the conversation in context of one of the

-08:-44:-04 **3** government's transcripts.   It's what was said before the

-08:-44:-04 **4** government's, which I think is different.

-08:-44:-04 **5**              THE COURT:  Give them clip numbers or transcript

-08:-44:-04 **6** page numbers.

-08:-44:-04 **7**              MR. SOFER:  Exactly.  We need to see this.

-08:-44:-04 **8**              MR. IVEY:  At this point, this might be a good time

-08:-44:-04 **9** to break because I'd like to show them.   And if they have

-08:-44:-04 **10** objections I'd like to get it out of the way before I start

-08:-44:-04 **11** questioning the witness.

-08:-44:-04 **12**              THE COURT:  How long is it going to take?

-08:-44:-04 **13**              MR. IVEY:  To play the clip?

-08:-44:-04 **14**              THE COURT:  Show them and work this out.   Five

-08:-44:-04 **15** minutes?  Ten minutes?

-08:-44:-04 **16**              MR. IVEY:  Yeah, but it won't take long to show it

-08:-44:-04 **17** to them.   How long it takes them to make their objection…

-08:-44:-04 **18**              MR. SOFER:  Well, presumably we've seen it.   If we

-08:-44:-04 **19** can just put it in some sort of context.

-08:-44:-04 **20**              THE COURT:  Why don't you show it to them right

-08:-44:-04 **21** now.  Come on back up.  Just show them the transcript.

-08:-44:-04 **22**              MR. SOFER:  I don't want the jury to think that

-08:-44:-04 **23** we're slowing this down.

-08:-44:-04 **24**              THE COURT:  No, no.

-08:-44:-04 **25**              MR. SOFER:  I have to go back to my notes and

3232

-08:-44:-04 **1**   everything.

-08:-44:-04 **2**          MR. IVEY:  I don't know what your clip number is.

-08:-44:-04 **3**          MR. SOFER:  Our clip number is your clip number.

-08:-44:-04 **4**          MR. IVEY:  Do you want me to read it through?

-08:-44:-04 **5**          THE COURT:  Point it out to him so he can look at

-08:-44:-04 **6**   it so Mr. Sofer knows what you're talking about.

-08:-44:-04 **7**          MR. IVEY:  The government's transcript excerpt

-08:-44:-04 **8**   begins right here where Mr. Griffin is saying:  Well, you know,

-08:-44:-04 **9**   I was -- you know, with me, you know, being in the military and

-08:-44:-04 **10**  everything beforehand.   And then, you know, all my past

-08:-44:-04 **11**  discretions; however, you know, I was thinking of taking the way

-08:-44:-04 **12**  of the Shehada.   And the tape will not say "female martyr".

-08:-44:-04 **13**  It will say "Shehada".   Then this is what the government

-08:-44:-04 **14**  played.   What we'd like to play is the beginning leading up to

-08:-44:-04 **15**  that that shows the context of the conversation for which Mr.

-08:-44:-04 **16**  Griffin made that statement.

-08:-44:-04 **17**         MR. SOFER:  If the argument is the rule of

-08:-44:-04 **18**  completeness, then the question is whether or not there's

-08:-44:-04 **19**  something, I'd like to inquire of Counsel what it is about what

-08:-44:-04 **20**  the government played that takes it out of context.  If there's

-08:-44:-04 **21**  an argument about that, we're all ears.   I have yet to hear

-08:-44:-04 **22**  that.

-08:-44:-04 **23**         MR. IVEY:  Because they are clearly discussing

-08:-44:-04 **24**  something totally unrelated.  They're talking about the

-08:-44:-04 **25**  prospects of Mr. Griffin getting married to an Islamic woman and

3233

-08:-44:-04  1  the virtues of that.  Then he throws this statement in just like

-08:-44:-04  2  that.

-08:-44:-04  3  MR. SOFER:  Then again, I think you could ask the

-08:-44:-04  4  witness were there times when you changed the subject.

-08:-44:-04  5  MR. BRYAN:  He's mixing the rule of completeness.

-08:-44:-04  6  THE COURT:  I'm going to let him play it.

-08:-44:-04  7  MR. SOFER:  I'm not mixing the rule of

-08:-44:-04  8  completeness.

-08:-44:-04  9  (End of sidebar discussion.)

-08:-44:-04  10  THE COURT:  Ladies and gentlemen, there may be

-08:-44:-04  11  times like this where Counsel and I have to resolve some

-08:-44:-04  12  evidentiary questions.  We all know these are coming up from

-08:-44:-04  13  time to time.  These there are issues we tried to address during

-08:-44:-04  14  the adjournment, and among all of us we -- we realized that we

-08:-44:-04  15  can't.  They raise sometimes -- for me sometimes some

-08:-44:-04  16  challenging issues.  Please don't hold the interruption -- just

-08:-44:-04  17  bear with us; be patient.  It's simply the way I have to deal

-08:-44:-04  18  with some of these questions, and don't hold it against anybody,

-08:-44:-04  19  either in this instance Mr. Ivey, who's proffering evidence, or

-08:-44:-04  20  Mr. Sofer, who may be raising objections, or anybody else.  It's

-08:-44:-04  21  simply the way we have to operate.  I apologize and thank you

-08:-44:-04  22  for your patience.  And, obviously, don't speculate about what

-08:-44:-04  23  it is we're talking about over there.

-08:-44:-04  24  Go ahead, Mr. Ivey.

02:42:53  25  BY MR. IVEY:

02:42:54 **1**      **Q.**   Just to refresh where we were for the jury, Mr. Griffin,

-08:-44:-04 **2**   you had indicated that when you first began taping Mr. Amawi --

-08:-44:-04 **3**   or the first clip at the time of the first clip that the jury

-08:-44:-04 **4**   heard of your conversation with Mr. Amawi on June 30, that Mr.

02:43:17 **5**      Amawi at that time or at any time had not had -- did not know

02:43:22 **6**      Mr. Zubair or Mr. Khaleel, correct?

-08:-44:-04 **7**      **A.**   Correct.

02:43:26 **8**      **Q.**   Now, this was on June 30 when you taped Mr. Amawi that

-08:-44:-04 **9**   the jury heard it, correct?

-08:-44:-04 **10**     **A.**   Yes.

02:43:37 **11**     **Q.**   Just before June 30 -- you can refer to your guide if

02:43:42 **12**   you'd like -- you had a conversation with Mr. El-Hindi regarding

-08:-44:-04 **13**   Mr. Zubair and Mr. Khaleel, correct?

-08:-44:-04 **14**     **A.**   Correct.

02:43:52 **15**     **Q.**   And it is your contention that Mr. El-Hindi mentioned

02:43:59 **16**   that these two individuals, Zubair and Khaleel, wanted training

-08:-44:-04 **17**   for Jihad, correct?

02:44:09 **18**     **A.**   That was my understanding.

02:44:13 **19**     **Q.**   And you had, as part of your duties as the operative,

-08:-44:-04 **20**   you expressed a willingness to meet with Mr. Zubair and Mr.

02:44:22 **21**   Khaleel, correct?

02:44:23 **22**     **A.**   Correct.

02:44:24 **23**     **Q.**   And you had agreed to meet with them at the ICNA

02:44:33 **24**   conference in Cleveland, Ohio, around the 4th of July of 2004?

02:44:38 **25**     **A.**   Yes.

3235

02:44:40 **1**    **Q.**   And that would have been obviously just a few handful of

02:44:44 **2** days after the June 30 when you taped Mr. Amawi, correct?

02:44:51 **3**    **A.**   Correct.

02:44:52 **4**    **Q.**   And again, your function -- well, your purpose in

02:44:58 **5** meeting or going to that conference really wasn't for the

02:45:03 **6** Islamic portion of it because in reality you're not really

02:45:07 **7** Muslim, correct?

02:45:09 **8**    **A.**   Correct.

02:45:10 **9**    **Q.**   You went there -- you were intending to go there as part

-08:-44:-04 **10** of your duties in identifying and gathering information on

02:45:20 **11** threats against the United States, correct?

02:45:24 **12**    **A.**   Actually, the primary duty was --

02:45:28 **13**          THE COURT:  That's not right.  Answer the question.

-08:-44:-04 **14** Mr. Sofer will be able to have you elaborate.

02:45:39 **15**    **A.**   Would you say that again, please?  I'm sorry.

-08:-44:-04 **16** BY MR. IVEY:

-08:-44:-04 **17**    **Q.**   You wanted to go to the ICNA conference in Cleveland to

-08:-44:-04 **18** meet Zubair and Khaleel because Mr. El-Hindi informed you they

-08:-44:-04 **19** wanted training for Jihad, correct?

-08:-44:-04 **20**    **A.**   That is incorrect.  I was going there even before I

-08:-44:-04 **21** talked to Mr. El-Hindi.

02:45:55 **22**    **Q.**   But it was your intention when you were there as part of

02:45:59 **23** the reasons that you went was you could get information

02:46:03 **24** regarding Zubair and Khaleel because what Mr. El-Hindi had told

02:46:07 **25** you was -- fell within the purview of your duties as an

02:46:11 **1** operative top to find out if someone is prepared to carry out

-08:-44:-04 **2** some threat against the United States, either abroad or

02:46:19 **3** domestic, correct?

-08:-44:-04 **4**     **A.**   Correct.

02:46:22 **5**     **Q.**   And, in fact, that had to have been one of the reasons

-08:-44:-04 **6** you were there because you, in fact, audiotaped Mr. Zubair and

-08:-44:-04 **7** Mr. Khaleel at that conference, correct?

02:46:32 **8**     **A.**   Once again, it wasn't the primary reason, but...

-08:-44:-04 **9**     **Q.**   My question is not whether it's the reason, it's whether

-08:-44:-04 **10** you did it or not.

-08:-44:-04 **11**     **A.**   Yes.

-08:-44:-04 **12**     **Q.**   You did tape them at the conference?

02:46:43 **13**     **A.**   Yes.

-08:-44:-04 **14**     **Q.**   You taped them not for your own personal information,

-08:-44:-04 **15** you taped them for anybody to be able to see and hear what these

02:46:50 **16** individuals were saying?

02:46:51 **17**     **A.**   Correct.

-08:-44:-04 **18**     **Q.**   And you were taping them as part of your duties as an

02:46:55 **19** operative for the FBI, correct?

02:46:57 **20**     **A.**   Correct.

-08:-44:-04 **21**     **Q.**   And you didn't only just tape them, you videoed them,

-08:-44:-04 **22** correct?

-08:-44:-04 **23**     **A.**   Correct.

02:47:03 **24**         THE COURT:  You didn't just tape them?

02:47:05 **25**         MR. IVEY:  You videoed them, you took them on

-08:-44:-04  **1**  video.

02:47:08  **2**          THE COURT:  Fine.

02:47:09  **3**          THE WITNESS:  Yes, sir.

02:47:10  **4**  BY MR. IVEY:

02:47:10  **5**      **Q.**   Now, on June 30 -- scratch that.

02:47:16  **6**          Your duty again, as you have said repeatedly, was

02:47:20  **7**  information gathering, correct?

-08:-44:-04  **8**      **A.**   Correct.

02:47:23  **9**      **Q.**   But when you were at Mr. Amawi's on June 30 of 2004, you

02:47:30  **10**  invited Mr. Amawi to that ICNA conference in Cleveland, didn't

-08:-44:-04  **11**  you?

02:47:40  **12**      **A.**   I can't recall.

02:47:42  **13**      **Q.**   Okay.  You did tape Mr. Amawi on June 30, do you concede

-08:-44:-04  **14**  that?

02:47:51  **15**      **A.**   Yes.

02:48:04  **16**      **Q.**   Okay, I'm going to hand you a copy of the transcript of

-08:-44:-04  **17**  your recording, the excerpt of your recording of Mr. Amawi.

02:48:13  **18**          MR. SOFER:  Counsel, can we take a look at that,

02:48:17  **19**  please?

02:48:53  **20**  BY MR. IVEY:

02:48:53  **21**      **Q.**   I'm going to show you an excerpt.  This is the

02:48:58  **22**  conversation -- read it if you like, but this is the portion of

-08:-44:-04  **23**  your comments that I'm asking you --

02:49:05  **24**          THE COURT:  If you'll just read that to yourself

-08:-44:-04  **25**  then Mr. Ivey will question further.

02:49:43   **1**            MR. IVEY:  I'm asking about this part.

-08:-44:-04   **2**         MR. SOFER:  Judge, we can't hear.

-08:-44:-04   **3**         THE COURT:  He's pointing out the portion.

02:50:17   **4**   BY MR. IVEY:

02:50:17   **5**      **Q.**   So now my question is:  You invited Mr. Amawi to that

02:50:21   **6**   ICNA conference, didn't you?

-08:-44:-04   **7**      **A.**   If that represents the audio, that was -- if that comes

02:50:27   **8**   directly from the audio, then yes.  I will concede if you say

02:50:32   **9**   it.

02:50:36   **10**           THE COURT:  And that is a transcript of a portion

-08:-44:-04   **11**  of the conversation that the jury previously has seen, correct?

02:50:44   **12**           MR. IVEY:  Right.

02:50:45   **13**  BY MR. IVEY:

02:50:45   **14**     **Q.**   So now he is a person of interest at this point, and the

-08:-44:-04   **15**  reason you're taping him is the comment he made at the Mosque,

-08:-44:-04   **16**  correct?

02:50:56   **17**     **A.**   Because I was informed by the FBI.

-08:-44:-04   **18**     **Q.**   You were informed by the FBI.   And you already

02:51:02   **19**  testified that one of -- one of the reasons you were going to

-08:-44:-04   **20**  the ICNA conference was to tape and see and investigate what was

02:51:11   **21**  going on with Zubair and Khaleel, correct?

-08:-44:-04   **22**     **A.**   Yes, one of the reasons.

-08:-44:-04   **23**     **Q.**   In your information gathering function, isn't it true

-08:-44:-04   **24**  that you were actually trying to get Mr. Amawi to go to that

02:51:24   **25**  conference so that you could put him in the video with Mr.

3239

02:51:29 **1** Zubair and Mr. Khaleel and Mr. El-Hindi?

02:51:31 **2**   **A.**   Actually, that's incorrect.

02:51:33 **3**   **Q.**   You were with and taping a person of interest when you

-08:-44:-04 **4** were at Mr. Amawi's house, apartment, correct?

-08:-44:-04 **5**   **A.**   Correct.

-08:-44:-04 **6**   **Q.**   And you were going to this conference to tape possibly,

02:51:51 **7** video possibly, and investigate another person of interest,

02:51:56 **8** correct?

-08:-44:-04 **9**   **A.**   I was there to gather information, yes.

-08:-44:-04 **10**   **Q.**   And so -- in inviting Mr. Amawi, wasn't that an attempt

-08:-44:-04 **11** on your part to put Mr. Amawi in a video with Zubair and Khaleel

-08:-44:-04 **12** and Mr. El-Hindi to create the impression that somehow they are

02:52:17 **13** allied with each other?

-08:-44:-04 **14**       MR. SOFER:  Objection; asked and answered.

-08:-44:-04 **15**       THE COURT:  Also there's lots of parts to the

-08:-44:-04 **16** question.   You may break it down if you wish.   And you may

-08:-44:-04 **17** continue.

02:52:34 **18** BY MR. IVEY:

02:52:34 **19**   **Q.**   In the June 30, 2004 conversation that you taped with

-08:-44:-04 **20** Mr. Amawi, do you recall in that recording, the portion of it

-08:-44:-04 **21** that the government played where you indicated to Mr. Amawi that

-08:-44:-04 **22** you were thinking of or considering taking the way of the

02:52:58 **23** Shehada or martyr yourself --

02:53:01 **24**   **A.**   Yes.

-08:-44:-04 **25**   **Q.**   -- the government started out their transcript for the

3240

| 02:53:11 | 1 | ladies and gentlemen of the jury with your comment to Mr. Amawi |
| 02:53:16 | 2 | in that effect.   But I'd like to play a clip that the |
| 02:53:20 | 3 | government did not play of your conversation that led up to that |
| -08:-44:-04 | 4 | statement. |
| 02:53:24 | 5 | MR. SOFER:  We need the clip number, Counsel. |
| 02:53:32 | 6 | MR. IVEY:  It is 630, 04, Clip 3. |
| 02:53:37 | 7 | THE COURT:  Does that have an Exhibit Number? |
| 02:53:40 | 8 | MR. WITMER-RICH:  For the record it would be |
| 02:53:42 | 9 | Exhibit Number A1-37-3. |
| 02:53:55 | 10 | MR. SOFER:  May we approach, Your Honor? |
| 02:53:58 | 11 | (Whereupon the following discussion was had at the |
| 03:00:50 | 12 | bench outside the hearing of the jury:) |
| 03:00:50 | 13 | MR. SOFER:  What -- are you playing this whole -- |
| -08:-44:-04 | 14 | I'm trying to understand what Counsel is playing.   I have what |
| -08:-44:-04 | 15 | was sent to us which is a four-page clip beginning with and yet |
| -08:-44:-04 | 16 | it covers everything. |
| -08:-44:-04 | 17 | MR. IVEY:  I'm beginning with anything, anything is |
| -08:-44:-04 | 18 | fine. |
| -08:-44:-04 | 19 | MR. SOFER:  That's not what was sent.   I want to |
| -08:-44:-04 | 20 | make sure we're operating on the same page here, so to speak. |
| -08:-44:-04 | 21 | MR. SOFER:  The government was sent a four-page -- |
| -08:-44:-04 | 22 | first page and a half is not what you're planning on playing? |
| -08:-44:-04 | 23 | MR. WITMER-RICH:  It's simply -- the clip that we |
| -08:-44:-04 | 24 | intend to play is what the government has.  It is the three |
| -08:-44:-04 | 25 | pages leading up to the time when the government's clip began, |

-08:-44:-04 **1**  which is in yellow, and it simply demonstrates that they're

-08:-44:-04 **2**  talking about unrelated matters:  He's offering him juice,

-08:-44:-04 **3**  they're talking about marriage, talking about women, and then he

-08:-44:-04 **4**  starts, Griffin brings up taking the way of the Shehada.   It's

-08:-44:-04 **5**  not a five-minute clip.   It doesn't go on.

-08:-44:-04 **6**              THE COURT:  In terms of its admissibility, aside

-08:-44:-04 **7**  from whether or not they got it, I do think it's appropriate

-08:-44:-04 **8**  because I now understand the thrust of your cross-examination,

-08:-44:-04 **9**  to show how the approach was made and how he raised different

-08:-44:-04 **10**  things and proposed -- proposed and undertook different

-08:-44:-04 **11**  activities.  I will say I don't know how much of this now you

-08:-44:-04 **12**  want to show, but I do think it goes to his overall credibility

-08:-44:-04 **13**  and general conduct of the investigation.   So I'm going to let

-08:-44:-04 **14**  it in.

-08:-44:-04 **15**              But how many similar kinds of situations do you

-08:-44:-04 **16**  propose to do now?

-08:-44:-04 **17**              MR. IVEY:  I have one other one on this

-08:-44:-04 **18**  conversation that is shorter, that is again --

-08:-44:-04 **19**              THE COURT:  Total number of this kind of --

-08:-44:-04 **20**              MR. IVEY:  I have one other one that is somewhat

-08:-44:-04 **21**  substantive.   And I have about six that are like three lines

-08:-44:-04 **22**  long.

-08:-44:-04 **23**              MR. WITMER-RICH:  And those are serving a different

-08:-44:-04 **24**  purpose.   As to this type, we have a couple where we're showing

-08:-44:-04 **25**  the intro of the conversation.

3242

-08:-44:-04 **1**      THE COURT: I think it's appropriate for them to

-08:-44:-04 **2** show that Mr. Griffin interjected the subjects into

-08:-44:-04 **3** conversations that otherwise were not at that point involving

-08:-44:-04 **4** those subjects and that he raised them, just as they are showing

-08:-44:-04 **5** that he provided the guns and so forth, then people can argue

-08:-44:-04 **6** about the significance.

-08:-44:-04 **7**      MR. SOFER: I don't disagree with sort of basic

-08:-44:-04 **8** concept a little bit. What I'm concerned about, Judge, is I

-08:-44:-04 **9** mean we could put in literally hundreds of hours of what we've

-08:-44:-04 **10** described as innocent, relatively innocent conversations between

-08:-44:-04 **11** the defendants and Mr. Griffin, and I think if you just asked

-08:-44:-04 **12** him the question, did you bring up the subjects…

-08:-44:-04 **13**      THE COURT: I'm going to permit this because

-08:-44:-04 **14** there's a difference between when there's a linkage between

-08:-44:-04 **15** something that the jury has seen, and if there were -- if they

-08:-44:-04 **16** had not seen any portion of this conversation, or it had been an

-08:-44:-04 **17** hour long conversation, and jumping about…  But where there's

-08:-44:-04 **18** this linkage to flow into what they saw or picking up after what

-08:-44:-04 **19** they saw, I'm going to permit it.

-08:-44:-04 **20**      MR. SOFER: Again, Judge, just for the record I

-08:-44:-04 **21** think, while some of that would be permissible in the direct

-08:-44:-04 **22** case of the defense, I'm asking Your Honor -- again, I would be

-08:-44:-04 **23** perfectly willing to entertain some of this, the government

-08:-44:-04 **24** wouldn't object to some of this. I think if we do this six, ten

-08:-44:-04 **25** times, it doesn't behoove anybody. When you could ask the

3243

-08:-44:-04 **1** question on cross-examination and bring that out, it's

-08:-44:-04 **2** appropriate.

-08:-44:-04 **3**          THE COURT:   I'm going to permit this.

-08:-44:-04 **4**          MR. SOFER:  Also, Your Honor, I ask for an

-08:-44:-04 **5** instruction about -- in a very carefully tailored instruction

-08:-44:-04 **6** about what the purpose of the admission of this is.   That is

-08:-44:-04 **7** that it's being admitted to show the back and forth perhaps or

-08:-44:-04 **8** the interaction between the defendant and Mr. Griffin, but not

-08:-44:-04 **9** for the truth of these out-of-court statements by Mr. Amawi

-08:-44:-04 **10** which, concededly, they're not particularly substantive, but are

-08:-44:-04 **11** still not admitted for the truth.

-08:-44:-04 **12**          MR. WITMER-RICH:  Indeed.

-08:-44:-04 **13**          THE COURT:  Okay.  I will tell the jury that they

-08:-44:-04 **14** now are about to see -- may see other portions of recorded

-08:-44:-04 **15** conversations that were linked in time to portions they've

-08:-44:-04 **16** already seen and statements made by either Mr. Amawi or Mr.

-08:-44:-04 **17** Griffin are not offered for the truth but to simply show the

-08:-44:-04 **18** nature -- the conversation itself, who said what.

-08:-44:-04 **19**          (End of sidebar discussion.)

03:00:57 **20**          THE COURT:  Ladies and gentlemen, I anticipate that

03:01:01 **21** you are about to see, at least will have reference to recorded

-08:-44:-04 **22** conversations between Mr. Griffin and Mr. Amawi, perhaps between

-08:-44:-04 **23** him and others, I'm not sure, but at least with respect to Mr.

-08:-44:-04 **24** Griffin and Mr. Amawi, and what you will be seeing, I expect,

-08:-44:-04 **25** will be portions of a conversation, a part of which you've

-08:-44:-04 **1** already seen in the government's case.   And you should

-08:-44:-04 **2** understand that you'll be seeing more of the conversation that

03:01:43 **3** is being -- that it's being offered for that purpose, to show

-08:-44:-04 **4** what either preceded or followed what you've already seen and

-08:-44:-04 **5** heard, or heard, and that this, again, is an instance where the

03:01:59 **6** evidence you're about to see is offered simply to show what the

03:02:03 **7** conversation was, who said what.   It's not offered for the

-08:-44:-04 **8** truth of any of the statements that were being made.   But you

-08:-44:-04 **9** may consider it --

-08:-44:-04 **10**         MR. SOFER:  Judge just for the clarification there

-08:-44:-04 **11** are portions I think that are already in evidence.   So those

-08:-44:-04 **12** portions I believe are evidence and have been offered for the

03:02:24 **13** truth.

-08:-44:-04 **14**         THE COURT:  In other words, it's a somewhat tricky

03:02:29 **15** concept.  But when the government offered it, you can consider

03:02:32 **16** it as the statements made by Mr. Amawi for the truth of what was

-08:-44:-04 **17** being asserted.  When the defendant offers this, it's evidence

-08:-44:-04 **18** only of the statement being made.

03:02:48 **19**         Okay.  You may continue.

03:02:54 **20** BY MR. IVEY:

03:02:55 **21**     **Q.**   Just to bring the jury up to where we were, you had

03:02:58 **22** recalled on this date, this is where you on June 30, '04 had

03:03:03 **23** indicated to Mr. Amawi that you wanted to take the way of

03:03:07 **24** martyrdom of the Shehada?

-08:-44:-04 **25**     **A.**   I believe.

| | | |
|---|---|---|
| 03:03:10 | **1** | **Q.**    They've seen the clip of that.  I'd like to play the |
| -08:-44:-04 | **2** | portion preceding your comment that the government did not play. |
| 03:03:20 | **3** | THE COURT:  Do we need headphones? |
| 03:03:51 | **4** | (Audio played.) |
| 03:06:54 | **5** | MR. IVEY:  Stop. |
| 03:06:56 | **6** | BY MR. IVEY: |
| -08:-44:-04 | **7** | **Q.**    Now, Mr. Griffin, prior to you making that statement, |
| 03:07:01 | **8** | you and Mr. Amawi were talking about potentially going to see a |
| -08:-44:-04 | **9** | movie? |
| -08:-44:-04 | **10** | **A.**    Yes. |
| -08:-44:-04 | **11** | **Q.**    And prior to you making that statement, Mr. Amawi had |
| -08:-44:-04 | **12** | offered you something to drink? |
| -08:-44:-04 | **13** | **A.**    Yes. |
| -08:-44:-04 | **14** | **Q.**    And prior to you making that statement, Mr. Amawi was |
| 03:07:16 | **15** | talking about women and them being a temptation? |
| -08:-44:-04 | **16** | **A.**    Yes. |
| -08:-44:-04 | **17** | **Q.**    Mr. Amawi didn't say anything even remotely related to |
| -08:-44:-04 | **18** | going, as you interjected here, in talking about becoming a |
| 03:07:31 | **19** | martyr, did he?   You interjected that in that conversation, |
| -08:-44:-04 | **20** | didn't you? |
| -08:-44:-04 | **21** | **A.**    Because of the prior conversation, yes. |
| 03:07:39 | **22** | **Q.**    And Mr. Amawi didn't even pick up on this at first |
| -08:-44:-04 | **23** | because you're talking about women and he says -- |
| 03:07:49 | **24** | MR. IVEY:  Continue. |
| -08:-44:-04 | **25** | (Audio played.) |

03:08:06  **1**          MR. IVEY:  Stop.  Go back.  The line before.

03:08:14  **2**          (Audio played.)

03:08:18  **3**  BY MR. IVEY:

-08:-44:-04  **4**     Q.   Now, what Mr. Amawi says is:  Man, what you think about

-08:-44:-04  **5**  going to another country and getting married?   That fits the

-08:-44:-04  **6**  conversation that you were having with him about the possibility

-08:-44:-04  **7**  of getting married, two of you not being married, the virtues of

-08:-44:-04  **8**  a Muslim wife, correct?

-08:-44:-04  **9**     A.   They all fit together.

03:08:36  **10**     Q.   But Mr. Amawi, you will concede, does not say anything

-08:-44:-04  **11**  about becoming a martyr or blowing himself up or taking any type

-08:-44:-04  **12**  of violent Jihad in the lines that the jury just heard leading

-08:-44:-04  **13**  up to your comment?

-08:-44:-04  **14**     A.   Correct.

03:08:50  **15**     Q.   And after you make your comment, Mr. Amawi says, which

-08:-44:-04  **16**  is evident here:  Man, what you think about going to another

-08:-44:-04  **17**  country and getting married there?

-08:-44:-04  **18**     A.   Yeah, I was being proactive.

-08:-44:-04  **19**     Q.   You were being proactive.   You were not gathering

-08:-44:-04  **20**  information, you were being proactive in your duties as an

03:09:11  **21**  operative by interjecting something into the conversation

03:09:14  **22**  knowing that you're taping it, correct?

03:09:20  **23**     A.   I was proactive because I knew what the next question

-08:-44:-04  **24**  was coming up, which is exactly what happened, what do I think

-08:-44:-04  **25**  about getting...

3247

-08:-44:-04  **1**　　　　　　THE COURT:  Again, I'm sorry.   You'll have ample

03:09:31  **2** opportunity to -- you'll have ample opportunity to elaborate.

-08:-44:-04  **3** Answer the questions that are asked.   Okay.

-08:-44:-04  **4**　　　　　　MR. IVEY:  Okay, Your Honor, I have --

03:09:44  **5**　　　　　　THE COURT:  Did you want to return to that

-08:-44:-04  **6** question?

03:09:47  **7**　　　　　　MR. IVEY:  No.  I have one more potential clip.

03:09:51  **8** And I don't know, I'm assuming I'm going to have to make the

-08:-44:-04  **9** same presentation to the Court that I did on the previous one.

03:10:01  **10**　　　　　　THE COURT:  Let's do this.  Why don't we take the

03:10:04  **11** noon time recess, and I have an appointment shortly after noon

03:10:15  **12** out of the building, but I should be back by 1:00 so we will

03:10:19  **13** plan to resume at 1:00.   If for any reason it will be much

-08:-44:-04  **14** later, I'll notify my office and Cindy will let you know.   Keep

-08:-44:-04  **15** an open mind; we'll see you at 1:00 I hope.

03:31:59  **16**　　　　　　(Whereupon the following discussion was had at the

-08:-44:-04  **17** bench outside the hearing of the jury:)

-08:-44:-04  **18**　　　　　　MR. SOFER:  I want to go back to the first one.   I

-08:-44:-04  **19** think it illustrates what the problem is here.   The defense has

-08:-44:-04  **20** played the beginning part of this transcript.  I don't agree

-08:-44:-04  **21** with the way the Court's ruled on this, but I understand what

-08:-44:-04  **22** the concept is here.   What we can't do is then cut the

-08:-44:-04  **23** government's piece out.   This is the rule of completeness.

-08:-44:-04  **24**　　　　　　THE COURT:  I would agree.   I think you have to

-08:-44:-04  **25** play the government's piece.

3248

-08:-44:-04 **1**       MR. SOFER:  Judge, what they've done is stopped

-08:-44:-04 **2** this before and the witness tried to say it's what's coming.   I

-08:-44:-04 **3** would add, Your Honor, I think the witness, although I know -- I

-08:-44:-04 **4** just ask for fairness here.   If Your Honor is going to limit

-08:-44:-04 **5** the witness's answers, which I think is appropriate.  We're

-08:-44:-04 **6** going to be asking for the same thing if and when the defense

-08:-44:-04 **7** are being questioned.

-08:-44:-04 **8**       THE COURT:  I agree.  I'm very stringent.

-08:-44:-04 **9**       MR. SOFER:  Here's what the government played.

-08:-44:-04 **10** They link the transcript; it's a lengthy interaction.   They

-08:-44:-04 **11** can't at the same time complain that we're selecting --

-08:-44:-04 **12**       THE COURT:  I agree with you.

-08:-44:-04 **13**       MR. SOFER:  And, again, I don't think we have to

-08:-44:-04 **14** play the whole thing because some of these are very lengthy, but

-08:-44:-04 **15** at least you've got let it run to some fair point.

-08:-44:-04 **16**       THE COURT:  So they know what it's connected to.

-08:-44:-04 **17**       MR. SOFER:  Otherwise, you're manipulating.

-08:-44:-04 **18**       THE COURT:  Let me suggest this to you.   Why don't

-08:-44:-04 **19** you see if you can come to some agreement when we start back up

-08:-44:-04 **20** at noon.

-08:-44:-04 **21**       MR. WITMER-RICH:  We've cut these clips, we have to

-08:-44:-04 **22** re --

-08:-44:-04 **23**       MR. SOFER:  Play it.

-08:-44:-04 **24**       MR. IVEY:  We --

-08:-44:-04 **25**       THE COURT:  My point is the purpose of

3249

-08:-44:-04 **1** completeness, at least in a situation such as this where we've

-08:-44:-04 **2** had dozens of clips over -- we're now what, the third week of

-08:-44:-04 **3** Mr. Griffin's testimony, and after a week interlude, and for the

-08:-44:-04 **4** jury to even understand what you're talking about I think it's

-08:-44:-04 **5** necessary and appropriate that they hear the entire thing.

-08:-44:-04 **6** Now, I think the easier way to do that is to simply

-08:-44:-04 **7** have the exchange read by Mr. Griffin, if he can do so slowly

-08:-44:-04 **8** and clearly.  In order.  Also, you please read what you said and

-08:-44:-04 **9** what he said and then have them continue on into and maybe even

-08:-44:-04 **10** at that point the jury will recall that the following was

-08:-44:-04 **11** viewed.  I can say we're simply not technologically prepared to

-08:-44:-04 **12** do this, have you see the clips again.

-08:-44:-04 **13** MR. SOFER:  Well, that, Judge, could take -- to

-08:-44:-04 **14** have him -- first of all, I don't think he's probably the most

-08:-44:-04 **15** avid reader.   There are times you haven't been able to hear

-08:-44:-04 **16** him.   I found he has a fuzzy sort of voice.   We can move this

-08:-44:-04 **17** along much faster if you let us play the rest of this.   Again,

-08:-44:-04 **18** I'm not seeking anything in this particular one, the concept is

-08:-44:-04 **19** this thing goes on --

-08:-44:-04 **20** THE COURT:  I agree.   They shouldn't just get a

-08:-44:-04 **21** snippet that's detached from what it is you are contending must

-08:-44:-04 **22** be completed for the jury because they're really floating

-08:-44:-04 **23** without...

-08:-44:-04 **24** MR. BRYAN:  They're giving an advantage we didn't

-08:-44:-04 **25** have.

3250

-08:-44:-04 **1**        MR. IVEY:  We had to live with what they cut out.

-08:-44:-04 **2**        THE COURT:  I understand.   But I'm simply saying I

-08:-44:-04 **3** don't think they're getting an advantage and I can explain to

-08:-44:-04 **4** the jury that all that is being done is so that their ability to

-08:-44:-04 **5** comprehend what they are hearing at this point can be complete.

-08:-44:-04 **6** Whatever it is.   If this is going to come in for completeness,

-08:-44:-04 **7** then it's going to come in in a meaningful way so the jury knows

-08:-44:-04 **8** what's being completed.   That's all I'm saying.   Again, I

-08:-44:-04 **9** don't want to have six, seven, eight, ten minutes, but enough of

-08:-44:-04 **10** a linkage at some point then the jury can recall and both of you

-08:-44:-04 **11** can argue from that when the time comes.   Otherwise, the jury's

-08:-44:-04 **12** not going to have the foggiest idea what this is.   And I

-08:-44:-04 **13** misunderstood.   I thought that's what was going to happen.

-08:-44:-04 **14**        What I'm saying is, if you can do it

-08:-44:-04 **15** technologically so there can be a blending in the next hour of

-08:-44:-04 **16** one or more of these clips, try that.   If you can't, I will

-08:-44:-04 **17** simply say:  Ladies and gentlemen, the case is not with the

-08:-44:-04 **18** government, not with the government.  This is not being offered

-08:-44:-04 **19** as proof of anything by the government.   It's simply so you

-08:-44:-04 **20** understand how these segments flow one to the other, which is

-08:-44:-04 **21** what completeness is all about.

-08:-44:-04 **22**        MR. SOFER:  As long as they understand, I have no

-08:-44:-04 **23** problem with that.  Again, certain portions, I don't want them

-08:-44:-04 **24** to think that the part that's been played is not evidence

-08:-44:-04 **25** because that is the evidence in the case.

-08:-44:-04 **1**          THE COURT:  It's both evidence.  This is evidence,

-08:-44:-04 **2** too.

-08:-44:-04 **3**          MR. SOFER:  Understood, but it's not evidence for

-08:-44:-04 **4** its truth.

-08:-44:-04 **5**          THE COURT:  I understand.  I've already given that

-08:-44:-04 **6** instruction.

-08:-44:-04 **7**          MR. SOFER:  Yes, Judge.

-08:-44:-04 **8**          MR. IVEY:  Can I make a record?

-08:-44:-04 **9**          THE COURT:  Of course.

-08:-44:-04 **10**          MR. IVEY:  I think to permit the government to

-08:-44:-04 **11** essentially rebut to this jury what the defense is doing in the

-08:-44:-04 **12** middle of defense's cross-examination is patently prejudicial to

-08:-44:-04 **13** the defendants because we had to live -- my whole point was they

-08:-44:-04 **14** left out stuff that should have been played but we had to wait

-08:-44:-04 **15** until our time for cross-examination.  We could not get up in

-08:-44:-04 **16** the middle of their presentation then have additional

-08:-44:-04 **17** transcripts played.  I mean, we feel that they didn't put in

-08:-44:-04 **18** things that they should.  So every time we play a clip, they get

-08:-44:-04 **19** to put in --

-08:-44:-04 **20**          THE COURT:  Perhaps question it this way.  My

-08:-44:-04 **21** point is, this is not a day or two worth of testimony, which is

-08:-44:-04 **22** far more commonplace:  Do you recall you testified this, that or

-08:-44:-04 **23** the other thing two days ago?  Testified to this conversation?

-08:-44:-04 **24** Will you please look at the transcript and begin eight lines

-08:-44:-04 **25** before the portion that you testified.  Read to the jury what

-08:-44:-04 **1** you said.  Alternatively, if you want to say on that date the

-08:-44:-04 **2** government played a portion of the transcript in which this

-08:-44:-04 **3** subject was said and you said this, you said that, in summary

-08:-44:-04 **4** fashion.

-08:-44:-04 **5**         But my point simply is it's going to be under the

-08:-44:-04 **6** rule of completeness, there has to be a linkage, there has to be

-08:-44:-04 **7** a joinder.  I understand your concern.  And I'm not trying to

-08:-44:-04 **8** give them rebuttal or anything else.  I'm not saying we're

-08:-44:-04 **9** going to play the entire excerpt, okay.  But --

-08:-44:-04 **10**         MR. IVEY:  Am I to understand, Your Honor, whenever

-08:-44:-04 **11** we play a clip that we then have the risk that during our

-08:-44:-04 **12** cross-examination the government is going to be able to played a

-08:-44:-04 **13** distributional thing as opposed to playing what they want in

-08:-44:-04 **14** redirect?  That's at my peril.  They can Get up and say Mr.

-08:-44:-04 **15** Ivey didn't play the rest of this.  Now we're going to play it.

-08:-44:-04 **16** My issue is why does our cross-examination have to be

-08:-44:-04 **17** interrupted when they can do it on redirect?  We're doing this

-08:-44:-04 **18** after they're done with their presentation on cross.  That

-08:-44:-04 **19** signals to the jury --

-08:-44:-04 **20**         THE COURT:  But --

-08:-44:-04 **21**         MR. IVEY:  -- that somehow we're doing something.

-08:-44:-04 **22**         THE COURT:  At the very least I'll let you

-08:-44:-04 **23** elaborate.  I'm just trying so the jury understands what is

-08:-44:-04 **24** connected.

-08:-44:-04 **25**         MR. IVEY:  Our next clip I believe connects these.

-08:-44:-04 **1** And it again is -- it's about five or six lines before what the

-08:-44:-04 **2** government played.   So my question -- I want to know now before

-08:-44:-04 **3** I do this, tactically after I play this, is the government going

-08:-44:-04 **4** to get up and say now you've got to play some more stuff?

-08:-44:-04 **5** THE COURT:  I'm hearing what you're saying.   I

-08:-44:-04 **6** think -- I'm just trying to make it so the jury's going to

-08:-44:-04 **7** understand this.   It's got these random bits and pieces, dozens

-08:-44:-04 **8** of these.   I don't know how many, but there's lots and lots of

-08:-44:-04 **9** clips of all different kinds, all different times and dates and

-08:-44:-04 **10** different people.   At the very least I think you should say,

-08:-44:-04 **11** and then the conversation continued on the subject of X or Y, so

-08:-44:-04 **12** that the jury knows what you're talking about.

-08:-44:-04 **13** MR. IVEY:  I will do that.

-08:-44:-04 **14** MR. SOFER:  Judge, may I respond?  We're talking

-08:-44:-04 **15** about a rule in the rules of evidence.   The rule specifically

-08:-44:-04 **16** states -- specifically states that an objection under the rule

-08:-44:-04 **17** of completeness is, first of all, that a statement, if left by

-08:-44:-04 **18** itself would essentially be a misrepresentation or confuse the

-08:-44:-04 **19** jury.

-08:-44:-04 **20** MR. BRYAN:  It doesn't say misrepresentation.

-08:-44:-04 **21** MR. SOFER:  The case law.

-08:-44:-04 **22** THE COURT:  Don't interrupt.

-08:-44:-04 **23** Rule number?

-08:-44:-04 **24** MR. SOFER:  106.  What it says, it also talks about

-08:-44:-04 **25** timing.   It says when a writing or recorded statement or part

3254

-08:-44:-04 **1** thereof is introduced by a party, an adverse party may require

-08:-44:-04 **2** the introduction at that time of any other part or any other

-08:-44:-04 **3** writing or recorded statement which ought in fairness to be

-08:-44:-04 **4** considered contemporaneously with it.   That is the rule.

-08:-44:-04 **5**         Your Honor, the defense says they couldn't have

-08:-44:-04 **6** done this.   But actually, as the government's maintained

-08:-44:-04 **7** throughout, they could have done this.   The appropriate time to

-08:-44:-04 **8** be making this argument would have been during the government's

-08:-44:-04 **9** case and, frankly, I would have been more than happy to play

-08:-44:-04 **10** whatever additional portions to some extent anybody thought was

-08:-44:-04 **11** done in order to fairly place these conversations in some sort

-08:-44:-04 **12** of context.   That's what our objection essentially to this is,

-08:-44:-04 **13** the rule of completeness.   They want to complete something, you

-08:-44:-04 **14** have to show the jury what they're completing and I don't think

-08:-44:-04 **15** it's fair then, especially in light of the delay we've had and

-08:-44:-04 **16** the jury have and having lots of these conversations they're

-08:-44:-04 **17** going to be left with the notion that nothing followed this.   I

-08:-44:-04 **18** don't think that's fair to the government's case.

-08:-44:-04 **19**         Logistically, how we accomplish that --

-08:-44:-04 **20**         MR. WITMER-RICH:  About the rule of completeness

-08:-44:-04 **21** specifically, the rule is based on a common law principle, the

-08:-44:-04 **22** rule of completeness, which is much -- which does not only

-08:-44:-04 **23** concern the contemporaneous, that is an aspect of how the rule

-08:-44:-04 **24** of completeness can be achieved, but the idea is so the jury can

-08:-44:-04 **25** understand in fairness what one section of a writing, or here a

3255

-08:-44:-04 **1** recorded statement, means by considering another portion of that

-08:-44:-04 **2** recorded statement or any other recorded statement, for that

-08:-44:-04 **3** matter, is what the rule says.   And the case --

-08:-44:-04 **4**       We sent case law to Your Honor a couple days ago.

-08:-44:-04 **5** We haven't had a chance to brief this but the Beech Aircraft

-08:-44:-04 **6** case where Justice Brennan writes the majority opinion, and

-08:-44:-04 **7** other cases, the Court has the discretion to structure the way

-08:-44:-04 **8** that the jury will best understand and accomplish these

-08:-44:-04 **9** purposes.

-08:-44:-04 **10**       THE COURT:  What I'm saying, this timely permits

-08:-44:-04 **11** you to continue, but I'm going to require that you do so in a

-08:-44:-04 **12** way that the jury understands the linkage and has called to its

-08:-44:-04 **13** mind what it previously heard.   Otherwise, it's an incomplete

-08:-44:-04 **14** situation.

-08:-44:-04 **15**       MR. WITMER-RICH:  I think we understand that, Your

-08:-44:-04 **16** Honor.

-08:-44:-04 **17**       THE COURT:  I have no problem with your tactical

-08:-44:-04 **18** decision to wait.  Now I forgot that requirement of the rule.

-08:-44:-04 **19** But we are where we are.   And however you want to handle it,

-08:-44:-04 **20** but in a way that fairly enables the jury to understand what

-08:-44:-04 **21** came after this, okay.  And if you can agree that Mr. Ivey can

-08:-44:-04 **22** then read that, ladies and gentlemen, so that you recall,

-08:-44:-04 **23** read -- I hope you can agree on the number of lines or whatever,

-08:-44:-04 **24** you have a huge long excerpt, not the whole thing, but I'm not

-08:-44:-04 **25** going to let you simply get that little snippet and that's it

-08:-44:-04 **1** because, if nothing else, if this comes in, it's kind of upside

-08:-44:-04 **2** down.  We're arguing the rule of completeness.  I'm going to

-08:-44:-04 **3** then allow them to invoke the rule because that's what the rule

-08:-44:-04 **4** says.  Although technically I think I could probably sustain

-08:-44:-04 **5** their objection and say tough luck, guys, you should have done

-08:-44:-04 **6** this two weeks ago.  That's all.

-08:-44:-04 **7**          MR. IVEY:  I have a practical question.  For my

-08:-44:-04 **8** next clip I just want to play four or five lines before the

-08:-44:-04 **9** government's transcript again.  I'd like to know ahead of time

-08:-44:-04 **10** from the government what else they want played.

-08:-44:-04 **11**          THE COURT:  That's fine.  I have an appointment at

-08:-44:-04 **12** noon off campus.  And I don't -- I'm not going to sit here

-08:-44:-04 **13** while the two of you try to work that out.  I hope that you can

-08:-44:-04 **14** so that we don't keep the jury upstairs all afternoon fussing

-08:-44:-04 **15** about this.  Now, my question is, also, just a sense of how

-08:-44:-04 **16** much longer, this afternoon, I'm just curious.  I'm not

-08:-44:-04 **17** restraining you at all.  I'm curious.

-08:-44:-04 **18**          MR. IVEY:  I have some more clips that I want to

-08:-44:-04 **19** play.  I just want to say this, I'm sure there's going to be

-08:-44:-04 **20** debate over whether I can play them.  But aside from how long

-08:-44:-04 **21** that goes, I would have probably about two hours.

-08:-44:-04 **22**          THE COURT:  That's fine.  We may get done today.

-08:-44:-04 **23** But get as much of this tidied up in light of what I'm

-08:-44:-04 **24** instructing them.  I'm instructing them so I'm going to let you

-08:-44:-04 **25** play these clips.  I understand what you're doing.  I think

-08:-44:-04 **1** it's appropriate cross-examination.   However, I'm not going to

-08:-44:-04 **2** let them hang to out there without some communication to the

-08:-44:-04 **3** jury of what came either before or after, which side of it was.

-08:-44:-04 **4** That's all. I would hope that you can do this in a way that it

-08:-44:-04 **5** takes cognizance of the jury's need to understand but without

-08:-44:-04 **6** having replayed all of everything.

-08:-44:-04 **7**       I'll be back I hope by 1:00 or 1:15.   Please spend

-08:-44:-04 **8** the noon hour working away at this, laying out for them what

-08:-44:-04 **9** you're going to do and try to reach some agreement as to what's

-08:-44:-04 **10** going to be displayed, in whatever fashion it is.

03:32:06 **11**       (End of sidebar.)

**12**             - - -

**13**

**14**       C E R T I F I C A T E

**15**

**16**   I certify that the foregoing is a correct transcript from the

**17** record of proceedings in the above-entitled matter.

**18**

**19** /s Tracy L. Spore_____        _____

**20** Tracy L. Spore, RMR, CRR              Date

**21**

**22**

**23**

**24**

**25**

1          I N D E X

2

3

4  DARREN GRIFFIN, CROSS-EXAMINATION3155

5  BY MR. IVEY:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25