IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                      Case No. 3:06CR719

         Plaintiff

     v.                                                    ORDER

Mohammed Zaki Amawi,

         Defendant

In this criminal case, defendant was convicted of conspiring to commit various terrorism-related offenses. His attorneys presently are preparing a motion for a new trial. Pending is a motion for an order authorizing non-contact visits with counsel. [Doc. 842]. For the following reasons, the motion shall be denied.

Defendant is confined in the Special Housing Unit at Milan Federal Correctional Institution. There are no facilities within that unit for non-contact visits between defendant and his attorneys. Institutional regulations require that the defendant be strip searched whenever he returns to the unit from a contact visit.

Defendant is a Muslim. Viewing of the naked body by a stranger violates Islamic religious taboos. Defendant objects to being strip searched, and his attorneys believe that if they can meet with him in a non-contact setting, there will be no need or occasion for strip searching the defendant.

The government opposes the motion.[1] Non-contact visits would occur at the Milan Federal Detention Center.[2] The government represents that, because non-contact visits would take place outside the Special Housing Unit, strip searches will still occur on defendant's return to that high-security unit. This is so, according to the government, because institutional regulations require strip searches whenever an inmate enters the Special Housing Unit.

To the extent that the prison-related strip searches curtail an inmate's free exercise of his religion, such curtailment is permissible where justified by the institution's needs. As summarized in *Jean-Laurent v. Wilkerson,* 438 F. Supp.2d 318, 324 (S.D.N.Y. 2006):

> A regulation that impinges on a prisoner's freedom of religion must be rationally related to a legitimate penological interest to survive First Amendment scrutiny. *See Show v. Patterson*, 955 F. Supp. 182, 190 (S.D.N.Y.1997) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L. Ed. 2d 64 (1987)). Reasonable strip searches of prisoners, regardless of their religion, are generally acceptable under the First Amendment because they further the compelling governmental interest of penological safety. *See Hurley v. Ward*, 549 F. Supp. 174, 186 (S.D.N.Y.1982).

*Accord, e.g., Koubriti v. Rojo,* No. 05-CV-74343-DT, 2007 WL 2178331, at *4 (E.D. Mich.) ("full strip searches of Plaintiff when he re-entered the jail were reasonable.").

The courts in *Jean-Laurent,* 438 F. Supp.2d at 324, and *Koubritt*, 2007 WL 2178331, at *4, noted that further searches, not justified by a legitimate penological purpose, might not be constitutionally acceptable. Defendant here does not, however, contend that strip searching is repeated with inappropriate or unjustifiable frequency. Nor does he contend that communication

---

[1] The defendant's reply objects to the filing by government trial counsel of a brief in opposition to the pending motion. I perceive no basis for their objection.

[2] I take judicial notice that FCI Milan and FDC Milan are adjacent to each other.

with counsel is impaired by the post-visit strip search policy. [Indeed, it seems likely that the opportunity for contact visits enhances attorney-client communication.]

Defendant simply protests the practice of strip searching *in toto*, and seeks special treatment solely on the basis of that complaint. But it is not the business of courts to require special treatment where inmates are discomfited by institutional practices designed to enhance the security of all present on the premises – inmates, custodians, and visitors alike.

To be sure, a court may, and should, intervene where the institution's actions are excessive and unjustified by any palpably legitimate interest. *See, e.g., Jama v. Esmor Correctional Services Inc.*, 549 F. Supp.2d 602 (D.N.J. 2008). In that case, the plaintiff

> was a devout Muslim, as were many other detainees. She and others presented extensive evidence that her ability to practice her religion at the Elizabeth Facility was substantially burdened. Her attempts to pray in the way dictated by her religion were interfered with by the guards. With no justification or reason, the guards snatched her covering from her head as she prayed. When she was seated on the floor praying, guards grabbed her and threw her on her bed. Guards threw her Koran into the garbage and permitted dogs to sniff it during dorm searches. There were totally unnecessary naked strip searches and other occasions Jama's naked body was exposed to common view, a grievous offense to a Muslim woman. There was ample evidence that these practices were highly offensive to Muslim believers.
> The evidence showed that Muslim detainees had to eat pork, and a kitchen worker testified that, on occasion, there were no substitute foods for those who did not eat pork. The only cleric to whom Jama was given access was a priest who urged her to pray to Jesus. The offensive practices, about which numerous complaints were made to prison authorities, were long-lasting and widespread, . . . .

*Id* at 607.

Nothing of this barbarous sort is alleged here.[3] There is no basis on which a court should or could intervene to grant defendant's request that the institution be ordered to disregard its customary

---

[3] Were defendant to suffer indignities of the sort, or approaching the sort of indignities inflicted on the plaintiff in *Jama*, his recourse would be a § 1983 suit in the Eastern District of Michigan, which alone would have jurisdiction to remedy such conditions.

practices and procedures because he his offended by a universally-applied and sensible security measure.[4]

It is, therefore

ORDERED THAT defendant's motion for permission for non-contact visits with counsel [Doc. 842] be, and the same hereby is denied.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

---

[4] Defendant's reply brief notes difficulties in arranging telephonic consultation between counsel and defendant. Counsel notified the institution's Warden of these difficulties about two weeks ago. [Doc. 851, Exh. A]. While I hope that some accommodation can be made for periodic telephonic consultation on a regularly scheduled basis, doing more than expressing that hope would be premature and improperly intrusive. I note, however, that these difficulties touch on the right to counsel.

In support of his implicit request for some action by me to facilitate telephonic contact, defendant notes that while he was detained at FDC Milan the institution extended certain special privileges to him to facilitate his trial preparation. He and his case have reached a different stage, and he can no longer expect and need not receive special consideration of the sort extended to him while awaiting and preparing for trial.