```
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION

 3   UNITED STATES OF AMERICA,    - Docket No. 3:06-CR-719
                                  -
 4     Plaintiff,                 - Toledo, Ohio
                                  - May 28, 2008
 5          v.                    - Trial
                                  -
 6   MOHAMMAD ZAKI AMAWI, et al.,-
                                  -
 7     Defendants.               -
     ------------------------------

 8
                      VOLUME 58, TRANSCRIPT OF TRIAL
 9               BEFORE THE HONORABLE JAMES G. CARR
            UNITED STATES DISTRICT CHIEF JUDGE, AND A JURY
10
     APPEARANCES:
11
     For the Plaintiffs:     United States Attorneys' Office
12                           By:   Thomas E. Getz
                                   Justin E. Herdman
13                           801 Superior Avenue, W
                             Cleveland, OH 44113
14                           (216) 622-3840

15                           U.S. Department of Justice
                             By:  Jerome J. Teresinski
16                                David I. Miller
                             10th & Constitution Ave, NW
17                           Washington, DC 20530
                             (202) 353-3464
18
                             Office of the U.S. Attorney- Austin
19                           By:  Gregg N. Sofer
                             816 Congress Avenue
20                           Austin, TX 78701
                             (512) 916-5858
21

22

23

24

25
```

Case: 3:06-cr-00719-JGC  Doc #: 893  Filed: 09/02/08  2 of 80.  PageID #: 9823

6194

```
 1   For the Defendant Amawi: Office of the Federal Public
                             Defender - Cleveland
 2                           By:  Amy B. Cleary
                                  Jonathan P. Witmer-Rich
 3                                Edward G. Bryan
                                  Timothy C. Ivey
 4                           750 Skylight Office Tower
                             1660 West Second St.
 5                           Cleveland, OH 44113
                             (216) 522-4856
 6
                             Muawad & Muawad
 7                           By:  Elias Muawad
                             36700 Woodward Avenue, Suite 209
 8                           Bloomfield Hills, MI 48304
                             (248) 594-4700
 9
     For the Defendant        Kerger & Kerger
10   El-Hindi:                By:  Stephen D. Hartman
                             Suite 201
11                           33 South Michigan Street
                             Toledo, OH 43602
12                           (419) 255-5990

13                           Boss & Vitou
                             By:  Charles M. Boss
14                           111 West Dudley Street
                             Maumee, OH 43537-2140
15                           (419) 893-5555

16                           Raslan, El-Kamhawy & Pla
                             By:  Alek H. El-Kamhawy
17                           Suite 3FE, 1700 East 13 Street
                             Cleveland, OH 44114
18                           (216) 928-1500

19   For the Defendant        David L. Doughten
     Mazloum:                 4403 St. Clair Avenue
20                           Cleveland, OH 44103-1125
                             (216) 361-1112
21
                             Helmick & Hoolahan
22                           By:  Jeffrey J. Helmick
                             2nd Floor
23                           1119 Adams Street
                             Toledo, OH 43624-1508
24                           (419) 243-3800

25
```

1    Mohammed Abdrabboh
     1620 Ford Avenue
2    Wyandotte, MI 48192
     (734) 283-8405
3
     Court Reporter:        Tracy L. Spore, RMR, CRR
4    1716 Spielbusch Avenue
     Toledo, Ohio 43624
5    (419) 243-3607

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
     Proceedings recorded by mechanical stenography, transcript
24   produced by notereading.
25

6196

| | | |
|---|---|---|
| | **1** | (Reconvened at 8:42 a.m.) |
| 00:00:57 | **2** | THE COURT:  Are we ready to resume? |
| 00:00:59 | **3** | MR. SOFER:  The government is. |
| 00:01:00 | **4** | MS. CLEARY:  We are, Your Honor. |
| -08:-41:-34 | **5** | THE COURT:  Ms. Cleary, why don't you come to the |
| -08:-41:-34 | **6** | podium.  We'll get the interpreter and the jury. |
| 00:03:11 | **7** | You have been exchanging jury instructions? |
| -08:-41:-34 | **8** | MR. SOFER: We have been awaiting jury instructions |
| 00:03:19 | **9** | and waiting for so-called events. |
| 00:03:21 | **10** | THE COURT:  When do you think you'll get those? |
| -08:-41:-34 | **11** | MR. HARTMAN:  Soon. |
| 00:04:09 | **12** | (Jury in). |
| -08:-41:-34 | **13** | THE COURT:  We're ready to resume.  I remind the |
| 00:04:13 | **14** | interpreter you remain under oath. |
| 00:04:18 | **15** | Can you please remind Mr. Amawi likewise, he |
| 00:04:25 | **16** | remains under oath? |
| 00:04:43 | **17** | THE INTERPRETER:  Judge, I didn't get a chance to |
| -08:-41:-34 | **18** | tell him he's still under oath.   Should I tell him? |
| 00:04:48 | **19** | THE COURT:  Yes. |
| 00:04:48 | **20** | (The following witness testified through an |
| 00:04:48 | **21** | interpreter.) |
| 00:04:51 | **22** | - - - |
| 00:04:51 | **23** | ZAKI AMAWI, REDIRECT EXAMINATION |
| -08:-41:-34 | **24** | BY MS. CLEARY: |
| -08:-41:-34 | **25** | **Q.**  Good afternoon, Mr. Amawi. |

-08:-41:-34 **1**    **A.**    Good afternoon.

00:04:56 **2**    **Q.**    Just a few questions for you.

00:05:03 **3**    **A.**    Go ahead.

00:05:04 **4**    **Q.**    Mr. Amawi, yesterday you testified in 2001 you contacted

-08:-41:-34 **5** an immigration attorney.

00:05:16 **6**    **A.**    Yes.

00:05:17 **7**    **Q.**    And that was when you had returned to the United States?

00:05:23 **8**    **A.**    Yes.

-08:-41:-34 **9**    **Q.**    Can you please tell me why you contacted an immigration

-08:-41:-34 **10** attorney at that time?

00:05:39 **11**    **A.**    I called immigration attorney because I submitted

00:05:47 **12** documents to the immigration department and I did not -- the

-08:-41:-34 **13** answer was late.   They did not get back to me.   Especially

-08:-41:-34 **14** after September disaster.

00:06:10 **15**    **Q.**    And when you contacted that immigration attorney, did

-08:-41:-34 **16** you use that attorney to help you submit any forms?

00:06:31 **17**    **A.**    No, she did not.   The immigration attorney, she said

00:06:35 **18** follow up with the immigration department.

00:06:39 **19**    **Q.**    Okay.   Thank you, sir.   You spoke yesterday, sir, also

-08:-41:-34 **20** about your time that you spent in the United Arab Emirates.

-08:-41:-34 **21** Could you explain to the jury why you and others left the United

00:07:01 **22** Arab Emirates in 1999?

00:07:21 **23**    **A.**    It was not 1999, it was 1991.

-08:-41:-34 **24**    **Q.**    I'm sorry, sir.   Thank you for correcting me.

00:07:34 **25**    **A.**    Because of the Jordan position, because of the Jordan

6198

-08:-41:-34 **1** position of the Gulf War.   They deported all the Jordanians

00:07:58 **2** that are in United Arab Emirates.   Especially the armed forces.

00:08:12 **3**     **Q.**   Thank you, sir.   You also spoke yesterday about your

00:08:18 **4** observations regarding Mohammad watching military violence

00:08:22 **5** videos and beheading videos.   Where did you see Mohammad

-08:-41:-34 **6** watching those videos?

00:08:43 **7**     **A.**   At our house.

-08:-41:-34 **8**     **Q.**   In Jordan?

00:08:48 **9**     **A.**   In Jordan, in our house in Jordan.

00:09:01 **10**         THE WITNESS:  Many times.

-08:-41:-34 **11**     **A.**   Many times.   And this is normal over there because we

-08:-41:-34 **12** watch it in Al Jazeera, Jarash channel at that time, and

00:09:36 **13** Al-Rafadeen channel.   There's a lot of channels, and they

00:09:39 **14** broadcast news every day based on a daily basis.   And the

-08:-41:-34 **15** reason --

00:09:51 **16**         MR. SOFER:  Objection, Your Honor.

00:09:55 **17**         THE WITNESS:  Iraqis on the border of Jordan.

00:10:00 **18**         MR. SOFER:  Objection, Your Honor, as to the

-08:-41:-34 **19** reason.

00:10:03 **20**         THE COURT:  The jury will disregard the reference

00:10:06 **21** to the reason.

00:10:08 **22** BY MS. CLEARY:

00:10:08 **23**     **Q.**   Just to be clear, sir, what you're talking about are

-08:-41:-34 **24** television channels?

00:10:20 **25**     **A.**   Correct.

00:10:25 **1**      MS. CLEARY:  Thank you, sir.

-08:-41:-34 **2**      THE COURT:  Done?

00:10:29 **3**      MS. CLEARY:  Yes, sir.

-08:-41:-34 **4**      THE COURT:  No further questions.   Any recross?

00:10:34 **5**      MR. SOFER:  Just one question, Judge.

**6**                                 - - -

00:10:39 **7**           ZAKI AMAWI, RECROSS-EXAMINATION

-08:-41:-34 **8** BY MR. SOFER:

-08:-41:-34 **9**      **Q.**   Good afternoon, sir.   I just want to clarify the last

00:10:46 **10** thing that you said, that there are television channels which

00:10:49 **11** show various different kinds of violent acts, but didn't you two

00:10:55 **12** minutes ago say that you saw Mohammad Amawi watching these

00:11:00 **13** things on the internet?   Yes or no, please.

00:11:15 **14**      THE WITNESS:  Yes.

00:11:16 **15**  **A.**   Yes.

00:11:18 **16**      MR. SOFER:  Thank you.   Nothing further, Your

00:11:22 **17** Honor.

00:11:22 **18**      THE COURT:  Anything further?

-08:-41:-34 **19**      MS. CLEARY:  No, Your Honor.

-08:-41:-34 **20**      THE COURT:  Please tell Mr. Amawi that completes

00:11:27 **21** his testimony and thank you very much.

00:11:32 **22**  **A.**   Thank you.

00:11:37 **23**      THE WITNESS:  I just have a plea for His Honor, to

-08:-41:-34 **24** the Judge, please.

00:11:44 **25**      MS. CLEARY:  Mr. Amawi, this would not be the

-08:-41:-34  **1**  correct time for that.

-08:-41:-34  **2**      If you could send Ahmed Ibrahim to your seat, I

-08:-41:-34  **3**  would appreciate it.

00:12:07  **4**      THE COURT:  Ahmed Ibrahim.  Tell Mr. Ibrahim first

-08:-41:-34  **5**  he must be sworn.

00:13:03  **6**      MS. CLEARY:  We call Ahmed Ibrahim.

00:13:09  **7**      (The witness was sworn by the clerk.)

00:13:09  **8**      (The following witness testified through an

00:13:09  **9**  interpreter.)

00:13:40  **10**                    - - -

00:13:40  **11**      AHMAD KAMEL MOHAMMAD IBRAHIM, DIRECT EXAMINATION

00:13:43  **12**  BY MS. CLEARY:

00:13:43  **13**    **Q.**  Good afternoon, sir.   My name is Amy Cleary.   I am one

-08:-41:-34  **14**  of the attorneys representing Mohammad Amawi.

-08:-41:-34  **15**      Can you please tell the Court and the jury your

00:14:12  **16**  name and spell it?

00:14:20  **17**    **A.**  My name is Ahmed Kamel Mohammad Ibrahim.

-08:-41:-34  **18**    **Q.**  Can you please spell your first and last names?

00:14:31  **19**    **A.**  Ahmed.  First name is Ahmed.   Spelled A-H-M-E-D.

00:15:05  **20**      THE INTERPRETER:  He's not sure.

00:15:09  **21**      MS. CLEARY:  Would the Court like us to pursue

-08:-41:-34  **22**  that?

-08:-41:-34  **23**      THE COURT:  No, that's okay.

00:15:15  **24**  BY MS. CLEARY:

00:15:15  **25**    **Q.**  Mr. Ibrahim, can you please tell us where you live?

-08:-41:-34 **1**    **A.**   I live in the village of Qumaim in Irbid in Jordan.

00:15:39 **2**          THE COURT:  Can the interpreter please spell that?

00:15:44 **3**          THE INTERPRETER:  I'll try.   U-M-I-M (sic).

00:15:53 **4**  BY MS. CLEARY:

00:15:53 **5**    **Q.**   Sir, how long have you lived there?

00:16:04 **6**    **A.**   I am 20 years old, so I would say most of my life with

-08:-41:-34 **7**  the exception of five years that I lived in Saudi Arabia.

00:16:13 **8**    **Q.**   Mr. Ibrahim, are you currently married?

00:16:17 **9**    **A.**   Yes, I am.

00:16:18 **10**    **Q.**   Do have you any children?

00:16:24 **11**    **A.**   I have one child.   It's a boy.

00:16:29 **12**    **Q.**   And, Mr. Ibrahim, are you currently employed?

00:16:43 **13**    **A.**   I work as an Imam for a Mosque.  And I also am a

00:16:53 **14**  merchant, commerce.

00:16:58 **15**    **Q.**   Sir, what do you sell?

00:17:08 **16**    **A.**   I own a pastry shop.   And also I have a shop that sells

-08:-41:-34 **17**  construction materials.   And a small computer store.

00:17:30 **18**    **Q.**   Sir, can you tell the jury a little bit about what an

-08:-41:-34 **19**  Imam does?

00:17:51 **20**    **A.**   All Muslims, they have a place for worship in almost

-08:-41:-34 **21**  every village, and to organize these institutions, which are the

-08:-41:-34 **22**  places of worship, they usually have somebody to oversee these

00:18:20 **23**  places in terms of lectures and speeches.   That would be Imam.

-08:-41:-34 **24**  He's usually appointed.   An Imam's role is usually to help

-08:-41:-34 **25**  people, you know, guide them through and, you know, help them to

-08:-41:-34  **1**  prevent, you know; you know, like to promote virtue and to, you

-08:-41:-34  **2**  know, teach them, you know, the religion.   As well as he's in

-08:-41:-34  **3**  charge of running the daily affairs of the Mosque in terms of

00:19:09  **4**  prayer time, cleaning, and maintenance, maintaining the place as

00:19:15  **5**  a whole.   That's briefly what an Imam does.

-08:-41:-34  **6**       **Q.**    Did you have receive any college training or education

00:19:25  **7**  to be an Imam?

00:19:40  **8**       **A.**    Of course.  An Imam has to have a Bachelor's degree from

00:19:45  **9**  a university.

00:19:46  **10**      **Q.**    Sir, where did you receive your Bachelor's degree from?

00:19:54  **11**      **A.**    From a Jordanian -- the name is the Jordanian

00:20:02  **12**  University, and it's in Jordan.

00:20:11  **13**      **Q.**    Mr. Ibrahim, do you know Mohammad Amawi?

00:20:16  **14**      **A.**    Yes, I do.

-08:-41:-34  **15**      **Q.**    How do you know him?

00:20:29  **16**      **A.**    Mohammad's mom is from Amman.   When he was little, he

-08:-41:-34  **17**  used to come to our neighborhood and play.   And I'd say we have

-08:-41:-34  **18**  more of a just casual relationship.   And this relationship was

-08:-41:-34  **19**  cut short when he went to America.   When he came back in 2003,

-08:-41:-34  **20**  and he came to the Mosque, we met in the Mosque.  While I had

-08:-41:-34  **21**  not really remembered him when he came, he approached me and he

00:21:45  **22**  complimented me on my Qur'an recital.  And we established a

-08:-41:-34  **23**  relationship, still a casual relationship.

00:22:06  **24**              THE INTERPRETER:  If I might make a correction,

-08:-41:-34  **25**  Your Honor.  I think it was in 2003.

6203

00:22:24    **1**    BY MS. CLEARY:

00:22:24    **2**        **Q.**    Thank you, sir.   When you reacquainted yourself with

00:22:28    **3**    Mr. Amawi around 2003, what type of things would you two do

-08-41:-34  **4**    together?

00:22:53    **5**        **A.**    Normal things that friends do, we go out together; he

-08-41:-34  **6**    would come to my house, I would go to his house.   Just, you

-08-41:-34  **7**    know, normal relation.

00:23:04    **8**        **Q.**    Did Mr. Amawi leave for America in 2003?

00:23:20    **9**        **A.**    Yes, I think in 2003 he went back to America.

00:23:24    **10**        **Q.**    What was your understanding of why Mr. Amawi returned to

00:23:28    **11**    America?

00:23:36    **12**            MR. TERESINSKI:  Objection, relevance.

00:23:38    **13**            THE COURT:  I agree.   I don't think he can testify

-08-41:-34  **14**    to that unless there's some foundation in terms of the

00:23:47    **15**    conversation, statements that he made.

-08-41:-34  **16**            MS. CLEARY:  Thank you, Your Honor.   I'll move on.

00:23:52    **17**    BY MS. CLEARY:

-08-41:-34  **18**        **Q.**    Mr. Ibrahim, did you see Mr. Amawi again in 2005?

00:24:04    **19**        **A.**    Yes.

-08-41:-34  **20**        **Q.**    And do you remember around what month that was in 2005?

00:24:14    **21**        **A.**    No, I don't.   It's hard for me.

00:24:18    **22**        **Q.**    At that time when you saw Mohammad in 2005, did you meet

-08-41:-34  **23**    a man named Darren Griffin?

00:24:35    **24**        **A.**    Yes.

00:24:36    **25**        **Q.**    Did you know Darren Griffin by any other name?

6204

| | | |
|---|---|---|
| 00:24:48 | **1** | **A.**   The name is known as Bilal. |
| 00:24:51 | **2** | **Q.**   How did you meet Mr. Griffin? |
| 00:25:04 | **3** |          THE INTERPRETER:  He's asking how do you mean? |
| -08:-41:-34 | **4** | BY MS. CLEARY: |
| -08:-41:-34 | **5** | **Q.**   Where did you meet Mr. Griffin? |
| 00:25:16 | **6** | **A.**   The first time I met Mr. Griffin was in the Mosque.   He |
| 00:25:20 | **7** | came in with Mohammad. |
| 00:25:22 | **8** | **Q.**   Mr. Ibrahim, did you ever have an opportunity to travel |
| 00:25:26 | **9** | with Mr. Amawi and Mr. Griffin? |
| 00:25:42 | **10** | **A.**   Yes.   Yeah, if you would call it, yes, we took a trip |
| -08:-41:-34 | **11** | to Aqaba, which is an area in Jordan. |
| 00:25:52 | **12** | **Q.**   What was the purpose of going to Aqaba, sir? |
| 00:26:03 | **13** | **A.**   Oh, it was just like, pleasure, for fun. |
| 00:26:18 | **14** | **Q.**   Mr. Ibrahim, I'm going to ask that you look at Exhibit |
| 00:26:22 | **15** | A-33. |
| 00:26:24 | **16** |          MS. GRILL:  Amy, do you want know show it in the |
| 00:26:27 | **17** | camera so everybody knows we're looking at the same thing? |
| 00:26:30 | **18** |          MS. CLEARY:  I would appreciate it if you could |
| 00:26:34 | **19** | quickly show it to the camera. |
| 00:26:37 | **20** |          (Document shown.) |
| 00:26:39 | **21** |          MS. CLEARY:  Thank you. |
| 00:26:52 | **22** | BY MS. CLEARY: |
| 00:26:52 | **23** | **Q.**   Mr. Ibrahim, can you identify on this map where Aqaba |
| 00:27:01 | **24** | is? |
| 00:27:12 | **25** | **A.**   (Motioning).  There it is, right at the bottom. |

6205

-08:-41:-34 **1**     **Q.**   Thank you, sir.  What is the body next to Aqaba?

00:27:31 **2**     **A.**   The Red Sea.

00:27:33 **3**     **Q.**   It is fair to say, sir, Aqaba is a resort area?

00:27:44 **4**     **A.**   Yes, it is.

00:27:46 **5**        MS. CLEARY:  Your Honor, if I could publish this to

-08:-41:-34 **6** the jury by handing it to them?

00:27:52 **7**        THE COURT:  Any objection?

-08:-41:-34 **8**        MR. TERESINSKI:  I'm sorry, I couldn't hear.

00:27:57 **9**        MS. CLEARY:  I'll publish this to the jury.

00:28:00 **10**        MR. TERESINSKI:  That's fine.  No objection.

00:28:02 **11**        THE COURT:  Ms. Cleary, if you could keep your

-08:-41:-34 **12** voice up.

-08:-41:-34 **13**        MS. CLEARY:  I'm so sorry, Your Honor.

00:28:15 **14** BY MS. CLEARY:

00:28:15 **15**     **Q.**   Mr. Ibrahim, who planned the trip to Aqaba?

00:28:23 **16**     **A.**   I did.

00:28:24 **17**     **Q.**   And who originally went on the trip to Aqaba with you?

00:28:38 **18**     **A.**   It was myself, Mohammad Amawi, Darren Griffin, and

00:28:44 **19** another friend of mine whose name is Mustafa Ghazagha.

-08:-41:-34 **20**        THE INTERPRETER:  His name -- I'll take a crack.

-08:-41:-34 **21** I will say G-H-A-G-H -- G-H-A-Z-A-G-H-A, something like that.

00:29:11 **22** BY MS. CLEARY:

00:29:11 **23**     **Q.**   And these additional men who joined you on the trip,

-08:-41:-34 **24** where along the trip did they join you?

00:29:19 **25**        THE INTERPRETER:  What was the question?

6206

00:29:21  **1**  BY MS. CLEARY:

00:29:21  **2**      Q.    These additional men that joined you on the trip, where

-08:-41:-34  **3**  did the men join you?

00:29:45  **4**      A.    First we went to a city or a town called Madaba.

-08:-41:-34  **5**            THE INTERPRETER:  M-A-D-A-B-A, something like that.

-08:-41:-34  **6**      A.    We went to this town, and we met up with two other of my

-08:-41:-34  **7**  friends that invited us for dinner over there.

00:30:12  **8**            THE INTERPRETER:  And he mentioned their names,

-08:-41:-34  **9**  Your Honor.    Do you want their names?

00:30:15  **10**            THE COURT:  Please.

00:30:21  **11**      A.    First one is Adel Gandaba, A-D-E-L, G-A-N-D-A-B-A.

00:30:29  **12**            MR. SOFER:  Can you repeat that, please?

00:30:34  **13**            THE INTERPRETER:  G-A-N-D-A-B-A.  I don't know.

00:30:40  **14**  I'm just trying to…  the best of my knowledge.

-08:-41:-34  **15**            THE COURT:  Phonetic spelling is fine.    You can

00:30:48  **16**  continue.

00:30:53  **17**      A.    The second person's name was Issa, I-S-S-A, Bwarid,

00:31:00  **18**  B-W-A-R-I-D.

00:31:07  **19**  BY MS. CLEARY:

00:31:07  **20**      Q.    Were these friends that you had for a long time, sir?

00:31:15  **21**      A.    No, they were just college friends.

00:31:21  **22**      Q.    Sir, I'm going to ask you to look at what's been marked

-08:-41:-34  **23**  as Government's Exhibit 125AG.

00:31:52  **24**      A.    Yes.

00:31:53  **25**      Q.    Do you recognize this picture, sir?

00:31:58  **1**  **A.**  Yes, I do.

-08:-41:-34  **2**  **Q.**  Are you in this picture?

00:32:06  **3**  **A.**  Yes.

-08:-41:-34  **4**  **Q.**  Where are you in the picture?

00:32:12  **5**  **A.**  I am the guy standing in the middle.  I'm the taller

-08:-41:-34  **6**  guy next to Mohammad.

-08:-41:-34  **7**  **Q.**  On the top right?

00:32:25  **8**  **A.**  Yes.

00:32:27  **9**  MS. CLEARY:  Your Honor, if I may publish this to

-08:-41:-34  **10**  the jury as well.

00:32:32  **11**  THE COURT:  You may.

00:32:33  **12**  MR. TERESINSKI:  No objection, Your Honor.  We've

-08:-41:-34  **13**  already put it into evidence.

00:32:44  **14**  BY MS. CLEARY:

00:32:44  **15**  **Q.**  Mr. Ibrahim, where was that picture taken?

00:32:59  **16**  **A.**  This was taken in this Madaba in the valley of Almoouga,

-08:-41:-34  **17**  A-L-M-O-O-U-G-A.

00:33:16  **18**  **Q.**  That was taken in the course of the trip to Aqaba?

00:33:26  **19**  **A.**  Yes.

00:33:27  **20**  **Q.**  Sir, when you arrived at Aqaba, what did you and your

00:33:31  **21**  friends do?

00:33:43  **22**  **A.**  We arrived there kind of late.  So we ate and then we

-08:-41:-34  **23**  went looking for a place to stay.

00:33:54  **24**  **Q.**  And did you spend the night then that first night?

00:34:01  **25**  **A.**  Yes, we did.

-08:-41:-34 **1**    **Q.**   And what did you do the very next day?

00:34:11 **2**    **A.**   We went to the sea, and we swam in the sea.   And then

-08:-41:-34 **3**   we took a ride in a glass boat and we watched the fish.

00:34:25 **4**    **Q.**   Are you referring to -- I'm sorry?

00:34:31 **5**    **A.**   And then we went to the market.

00:34:46 **6**    **Q.**   Sir, how long did you stay there before returning home?

00:35:03 **7**    **A.**   I think the whole trip took three days, but I would say

-08:-41:-34 **8**   in Aqaba we stayed about a day and a half.

00:35:11 **9**    **Q.**   Sir, at any point on that trip did anyone mention

-08:-41:-34 **10**  anything to you about traveling to Iraq?

00:35:27 **11**   **A.**   No, nobody.

00:35:30 **12**   **Q.**   Sir, at any point on that trip did anyone mention

00:35:33 **13**  anything to you about traveling to Syria?

00:35:45 **14**   **A.**   No.

-08:-41:-34 **15**        MS. CLEARY:  Sir, I have no further questions for

00:35:50 **16**  you, but the government attorney may.   So if you could sit

00:36:04 **17**  there for just a minute.

00:36:17 **18**        MR. TERESINSKI:  Your Honor, the United States has

-08:-41:-34 **19**  no questions for the witness.

00:36:29 **20**        THE COURT:  Tell him that.   Tell him that

00:36:31 **21**  concludes his testimony, and thank you very much.

00:36:42 **22**        MS. CLEARY:  Ms. Grill, could you send in the next

-08:-41:-34 **23**  witness?

-08:-41:-34 **24**        THE JUROR:  Could I get the last name of the

00:36:59 **25**  gentleman that just talked.

| | | |
|---|---|---|
| 00:37:02 | **1** | MS. CLEARY:  I-B-R-A-H-I-M, as in Mary. |
| 00:37:15 | **2** | THE COURT:  Counsel, can you come up for a second? |
| 00:37:18 | **3** | MS. CLEARY:  We'll be with you in one minute, sir. |
| 00:39:50 | **4** | (Whereupon the following discussion was had at the |
| -08:-41:-34 | **5** | bench outside the hearing of the jury:) |
| -08:-41:-34 | **6** | THE COURT:  The other interpreter mentioned she's |
| -08:-41:-34 | **7** | distracted by your linguist talking while she's interpreting. |
| -08:-41:-34 | **8** | So if he could write out his notes. |
| -08:-41:-34 | **9** | MR. SOFER:  Our linguist has -- I remember hearing |
| -08:-41:-34 | **10** | that yesterday.  Our linguist said I would represent to the |
| -08:-41:-34 | **11** | Court no more than three or four words yesterday to us while |
| -08:-41:-34 | **12** | this is going on.   I do notice that this is something -- |
| -08:-41:-34 | **13** | occasionally some sort of muffled sound that comes out of the |
| -08:-41:-34 | **14** | video. |
| -08:-41:-34 | **15** | MR. WITMER-RICH:  I believe what's going on is when |
| -08:-41:-34 | **16** | there's a translation given over the audio, that translation |
| -08:-41:-34 | **17** | comes out of the telephone receiver that they're listening to |
| -08:-41:-34 | **18** | and then is rebroadcast back to us.   So there's a little bit of |
| -08:-41:-34 | **19** | a circular loop going on which is causing a little bit of a |
| -08:-41:-34 | **20** | problem. |
| -08:-41:-34 | **21** | THE INTERPRETER:  It's the interpreter behind of |
| -08:-41:-34 | **22** | me.  Every time I'm talking or interpreting anything he's trying |
| -08:-41:-34 | **23** | to correct me by talking back after me.   And writing something |
| -08:-41:-34 | **24** | down -- I heard him and I keep hearing him.   I don't have |
| -08:-41:-34 | **25** | anything on my ears; I can hear him behind of me. |

6210

-08:-41:-34 1     MR. TERESINSKI:  He's not correcting her, per se.

-08:-41:-34 2  If he thinks that there might be something that's incorrectly

-08:-41:-34 3  interpreted he might whisper it to myself or Mr. Sofer.

-08:-41:-34 4     THE COURT:  If he could write it out, that would be

-08:-41:-34 5  helpful.   Because she says she's distracted.

-08:-41:-34 6     MR. SOFER:  Again, certainly not -- no one's trying

-08:-41:-34 7  to influence the interpreter.  We caught some mistakes.

-08:-41:-34 8  Hopefully we'll continue to be --

-08:-41:-34 9     THE COURT:  No problem.

-08:-41:-34 10     Will you please ask the interpreter to tell the

00:40:06 11  next witness he has to be sworn to tell truth?

00:40:13 12     Will he raise his right hand?

00:40:34 13     (The witness was sworn by the clerk.)

00:40:34 14     (The following witness testified through an

00:40:34 15  interpreter.)

00:41:04 16     - - -

00:41:04 17     MOSUL SULTAN AL-RAWASHDEH, DIRECT EXAMINATION

-08:-41:-34 18  BY MS. CLEARY:

-08:-41:-34 19     **Q.**  Good afternoon, sir.

00:41:11 20     **A.**  Good afternoon.

00:41:12 21     **Q.**  My name is Amy Cleary.  I'm one of the attorneys who

-08:-41:-34 22  represents Mohammad Amawi.

00:41:25 23     **A.**  Hello.

-08:-41:-34 24     **Q.**  Sir, can you please tell us your name, and please spell

-08:-41:-34 25  it for us?

6211

| | | |
|---|---|---|
| 00:41:36 | **1** | THE WITNESS:  Okay.  Mosul Sultan Al-Rawashdeh. |
| 00:41:50 | **2** | M-O-H-A double M-A-D.   S-U-L-T-A-N. |
| -08:-41:-34 | **3** | A.    This is my father's name.   A-L-R-A-W-A-S-A-S-H-D-E-H. |
| -08:-41:-34 | **4** | This is the family name. |
| 00:42:33 | **5** | THE COURT:  I'm sorry, can you say it a little more |
| 00:42:37 | **6** | slowly, please?  A-L... |
| 00:42:40 | **7** | THE INTERPRETER:  A-L-R-A-W-A-S-H-D-E-H. |
| 00:42:50 | **8** | BY MS. CLEARY: |
| 00:42:50 | **9** | Q.    Thank you, Mr. Al-Rawashdeh.   Can you please tell us |
| -08:-41:-34 | **10** | where you live now? |
| 00:43:01 | **11** | A.    I am from Irbid, residence. |
| -08:-41:-34 | **12** | Q.    How long have you lived there? |
| 00:43:09 | **13** | A.    About a year ago. |
| 00:43:12 | **14** | Q.    And, I'm sorry, sir, you've only lived there a year? |
| 00:43:25 | **15** | A.    Originally from Qumaim village, but I am one of Irbid |
| 00:43:30 | **16** | residents. |
| 00:43:31 | **17** | Q.    And have you lived in Jordan then all your life? |
| 00:43:37 | **18** | A.    Yes. |
| -08:-41:-34 | **19** | Q.    Are you married, sir? |
| 00:43:41 | **20** | A.    Yes. |
| 00:43:42 | **21** | Q.    How long have you been married? |
| 00:43:45 | **22** | A.    Since 17, 8, 2007. |
| 00:43:54 | **23** | Q.    Congratulations, sir. |
| -08:-41:-34 | **24** | A.    Thank you. |
| 00:43:57 | **25** | Q.    Are you employed, sir? |

6212

| | | |
|---|---|---|
| -08:-41:-34 | **1** | **A.**   Yes. |
| -08:-41:-34 | **2** | **Q.**   And what do you do? |
| 00:44:08 | **3** | THE INTERPRETER:  Your Honor, can I ask him again |
| -08:-41:-34 | **4** | what he said? |
| 00:44:11 | **5** | THE COURT:  Yes, of course. |
| 00:44:16 | **6** | **A.**   I work in the computer field and specifically in the |
| 00:44:29 | **7** | laptops. |
| -08:-41:-34 | **8** | BY MS. CLEARY: |
| -08:-41:-34 | **9** | **Q.**   How are you working this deal?   Do you own any |
| -08:-41:-34 | **10** | businesses? |
| 00:44:41 | **11** | **A.**   Yes.   I do have a laptop shop in Irbid and I do have |
| -08:-41:-34 | **12** | another shop for desktop in the village of Koverkasub |
| 00:45:05 | **13** | (phonetically). |
| 00:45:05 | **14** | **Q.**   Do you have any other stores? |
| 00:45:08 | **15** | **A.**   No. |
| 00:45:09 | **16** | **Q.**   Okay. Sir, I'm going to ask you to look at Exhibit A-20. |
| 00:45:23 | **17** | Do you recognize this document, sir? |
| 00:45:30 | **18** | **A.**   Yes. |
| 00:45:32 | **19** | THE INTERPRETER:  Your Honor, I did not hear it. |
| -08:-41:-34 | **20** | Can I ask him again? |
| -08:-41:-34 | **21** | THE COURT:  Of course. |
| 00:45:39 | **22** | **A.**   This is my advertisement. |
| -08:-41:-34 | **23** | BY MS. CLEARY: |
| -08:-41:-34 | **24** | **Q.**   And for which store is this for, sir? |
| 00:45:48 | **25** | **A.**   This is for the laptop shop in Irbid. |

6213

| | | |
|---|---|---|
| 00:45:59 | **1** | MR. TERESINSKI:  Can I see it? |
| -08:-41:-34 | **2** | THE COURT:  Of course. |
| -08:-41:-34 | **3** | MR. TERESINSKI:  We had a copy.   No objection. |
| -08:-41:-34 | **4** | BY MS. CLEARY: |
| 00:46:15 | **5** | |
| 00:46:15 | **6** | Q.   Sir, I'm also going to ask you to look at Exhibit A-21, |
| -08:-41:-34 | **7** | and I'm going to ask you to turn to page 10, I believe. |
| -08:-41:-34 | **8** | Do you recognize what you see on page ten there, |
| 00:46:53 | **9** | sir? |
| 00:46:53 | **10** | A.   This is an offer, sales offer. |
| -08:-41:-34 | **11** | Q.   What is the sale offer for, sir? |
| 00:47:03 | **12** | A.   For the laptop shop in Irbid. |
| 00:47:07 | **13** | Q.   Thank you, sir. |
| 00:47:12 | **14** | MS. CLEARY:  Your Honor, may I publish this also? |
| 00:47:15 | **15** | THE COURT:  You may. |
| 00:47:24 | **16** | BY MS. CLEARY: |
| 00:47:24 | **17** | Q.   And, sir, I'm going to ask you to look at Exhibit A-31. |
| -08:-41:-34 | **18** | Do you recognize this document? |
| 00:47:42 | **19** | A.   What document? |
| 00:47:45 | **20** | Q.   Do you have Exhibit A-31? |
| 00:47:53 | **21** | A.   Yes. |
| -08:-41:-34 | **22** | Q.   Do you recognize what you're seeing on A-31? |
| 00:48:01 | **23** | A.   This is a business card. |
| -08:-41:-34 | **24** | Q.   For who? |
| 00:48:09 | **25** | A.   This is mine.   This is under my name.   This is for my |

6214

| | | |
|---|---|---|
| -08:-41:-34 | **1** | shop in Irbid, the laptop shop. |
| 00:48:16 | **2** | **Q.**  Thank you, sir. |
| 00:48:19 | **3** | MS. CLEARY:  Your Honor, may I publish this also? |
| 00:48:21 | **4** | THE COURT:  You may. |
| 00:48:22 | **5** | MR. TERESINSKI:  No objection, Your Honor. |
| 00:48:29 | **6** | BY MS. CLEARY: |
| -08:-41:-34 | **7** | **Q.**  Sir, how are your businesses doing? |
| -08:-41:-34 | **8** | MR. TERESINSKI:  Objection, relevance. |
| -08:-41:-34 | **9** | THE COURT:  He can answer. |
| 00:48:37 | **10** | **A.**  Good.  Thank God.  Excellent. |
| 00:48:42 | **11** | BY MS. CLEARY: |
| 00:48:42 | **12** | **Q.**  Sir, you have attended college? |
| 00:48:45 | **13** | **A.**  Yes. |
| -08:-41:-34 | **14** | **Q.**  Where did you go to school? |
| 00:48:54 | **15** | **A.**  I studied chemistry in Al Yarmuk University. |
| 00:49:00 | **16** | **Q.**  And did you receive your degree, sir? |
| 00:49:06 | **17** | **A.**  Yes.  Bachelor. |
| 00:49:10 | **18** | **Q.**  Sir, do you know Mohammad Amawi? |
| 00:49:15 | **19** | **A.**  Yes, of course I do. |
| -08:-41:-34 | **20** | **Q.**  When did you first meet him? |
| 00:49:28 | **21** | **A.**  The first time I met him, that was back in 2004. |
| 00:49:33 | **22** | **Q.**  And did you ever have a chance to meet him again? |
| 00:49:41 | **23** | **A.**  Yes, I seen him in 2005. |
| 00:49:44 | **24** | **Q.**  Where did you see him, sir? |
| 00:49:50 | **25** | **A.**  In my village, Qumaim. |

| | | |
|---|---|---|
| 00:49:54 | **1** | **Q.**   And what did you talk to Mr. Amawi about at that time? |
| 00:50:07 | **2** | **A.**   We spoke to each other.  We spoke to each other about a |
| -08:-41:-34 | **3** | business we were -- planned to do together. |
| -08:-41:-34 | **4** | **Q.**   What type of business? |
| 00:50:23 | **5** | **A.**   The computer field, the desktop first and then the |
| 00:50:27 | **6** | laptop, and then we were supposed to start in Qumaim and then |
| -08:-41:-34 | **7** | we'll spread out in Irbid. |
| 00:50:35 | **8** | **Q.**   And what was going to be your role in that computer |
| -08:-41:-34 | **9** | business? |
| 00:50:51 | **10** | **A.**   I will work with my experience, and Mohammad will |
| -08:-41:-34 | **11** | finance the project with money from United States and the |
| 00:50:59 | **12** | equipment -- he will finance the project and he will bring the |
| -08:-41:-34 | **13** | equipment from United States.   He promise me to bring a laptop. |
| -08:-41:-34 | **14** | MR. TERESINSKI:  Objection. |
| -08:-41:-34 | **15** | THE WITNESS:  From the United States. |
| -08:-41:-34 | **16** | THE INTERPRETER:  From the United States. |
| -08:-41:-34 | **17** | THE COURT:  Ladies and gentlemen, you can attribute |
| -08:-41:-34 | **18** | the statement from Mr. Al-Rawashdeh as a statement having been |
| -08:-41:-34 | **19** | made but not proof that he made such a promise. |
| 00:51:28 | **20** | MS. CLEARY:  Thank you, Your Honor. |
| -08:-41:-34 | **21** | BY MS. CLEARY: |
| -08:-41:-34 | **22** | **Q.**   Sir, do you have an understanding about the cost |
| 00:51:32 | **23** | difference between laptops in Jordan and laptops in America? |
| 00:51:45 | **24** | **A.**   Of course, I do.   This is my job. |
| 00:51:49 | **25** | **Q.**   And can you explain the cost difference to the jury? |

00:51:59 **1**    **A.**   There are prices difference when it comes to electronic

00:52:13 **2** between Jordan and United States. About 300 dollars because of

-08:-41:-34 **3** the taxes.

00:52:21 **4**    **Q.**   The 300 dollar difference, sir, is that 300 dollars

00:52:25 **5** cheaper in Jordan or 300 dollars cheaper in America?

00:52:39 **6**    **A.**   300 dollars -- the laptop is cheaper in United States

-08:-41:-34 **7** than Jordan. So 300 dollars more expensive in Jordan.

00:52:55 **8**    **Q.**   Sir, when you developed this plan for a store with

00:52:58 **9** Mohammad -- when you developed this plan for a store in Jordan,

00:53:12 **10** what was to be the purpose of the store?

00:53:15 **11**          MR. TERESINSKI: Objection if it calls for hearsay.

00:53:18 **12** Anticipating.

-08:-41:-34 **13**          THE COURT: I think he can describe what he

00:53:21 **14** understood to be their expectation. His expectation.

00:53:27 **15**          MS. CLEARY: I can clarify that.

00:53:29 **16**          THE COURT: Please.

00:53:30 **17** BY MS. CLEARY:

-08:-41:-34 **18**    **Q.**   When you developed a plan for a store in Jordan with

-08:-41:-34 **19** Mohammad, what did you expect the purpose of the store would be?

00:53:51 **20**    **A.**   Business, money, for both of us.

00:53:54 **21**    **Q.**   Was it for computer maintenance?

00:54:03 **22**    **A.**   All computer services. Selling and buying and

00:54:12 **23** maintenance.

00:54:13 **24**    **Q.**   Did you look for a place to have your business?

00:54:22 **25**    **A.**   Yes, I did.

6217

-08:-41:-34 **1**    **Q.**    And did you eventually find a place?

00:54:32 **2**    **A.**    Yes, we selected a shop that was existent in Qumaim, the

-08:-41:-34 **3** village.

00:54:40 **4**    **Q.**    Sir, I'm going to ask you to look at Exhibit A-25.

-08:-41:-34 **5**        Do you recognize that document, sir?

00:54:55 **6**    **A.**    Yes.

00:54:56 **7**    **Q.**    And can you please tell the jury what that document is?

00:55:05 **8**    **A.**    It's a rental agreement between me and Mohammad, so me

-08:-41:-34 **9** and Mohammad is one party, and the rentee is another party.

00:55:25 **10**    **Q.**    And this is for a property in Qumaim?

00:55:33 **11**    **A.**    Yes.  Yes.

-08:-41:-34 **12**    **Q.**    And can you please tell the jury when this was signed?

00:55:51 **13**    **A.**    2006.   The date, it's written down; it was late 2005,

00:56:09 **14** early 2006.

00:56:12 **15**    **Q.**    Thank you, sir.

-08:-41:-34 **16**        MS. CLEARY:  Your Honor, may I publish this?

00:56:16 **17**        THE COURT:  You may.   What language is it in?

00:56:20 **18**        MS. CLEARY:  Arabic.

00:56:22 **19**        MR. TERESINSKI:  Objection, Your Honor.  If we

00:56:24 **20** could see you at sidebar.

00:56:26 **21**        (Whereupon the following discussion was had at the

00:57:46 **22** bench outside the hearing of the jury:)

00:57:46 **23**        MR. TERESINSKI:  Your Honor, the main objection and

-08:-41:-34 **24** the basis for my objection is this is a completely -- a complete

-08:-41:-34 **25** document in complete Arabic.   I don't know how the jury is

-08:-41:-34 **1** supposed to understand this or understand what this is.

-08:-41:-34 **2**                    THE COURT:  Is this going to be translated?

-08:-41:-34 **3**                    MS. CLEARY:  No, I wanted him to identify it and

-08:-41:-34 **4** recognize it as a contract for the store and for the jury to see

-08:-41:-34 **5** it was a real tangible document.

-08:-41:-34 **6**                    THE COURT:  Okay.  I'll let it in.  It's a rental

-08:-41:-34 **7** contract; is that right?

-08:-41:-34 **8**                    MS. CLEARY:  Correct.   A lease agreement.

-08:-41:-34 **9**                    (End of side-bar discussion.)

00:57:53 **10** BY MS. CLEARY:

-08:-41:-34 **11**    **Q.**   Mr. Ibrahim (sic), I'm going to ask you now to look at

00:57:57 **12** Exhibit 24.  Do you recognize this document?

-08:-41:-34 **13**    **A.**   Yes.

00:58:15 **14**    **Q.**   What is this document?

00:58:22 **15**    **A.**   This is the advertisement for the laptop shop that was

00:58:27 **16** supposed to happen, me and Mohammad.

00:58:33 **17**                    THE INTERPRETER:  I'm sorry, Your Honor, can I ask

-08:-41:-34 **18** him again what he said?

00:58:42 **19**    **A.**   But unfortunately, he got arrested before the project

00:58:46 **20** was done.

00:58:48 **21**                    MS. CLEARY:  Your Honor, may I publish this flyer

-08:-41:-34 **22** to the jury?

00:58:51 **23**                    THE COURT:  You may.

00:58:59 **24** BY MS. CLEARY:

00:58:59 **25**    **Q.**   Sir, I'm going to ask you to now look at Exhibit 35.

6219

| | | |
|---|---|---|
| 00:59:11 | **1** | THE COURT:  Why don't we wait a minute while the |
| -08:-41:-34 | **2** | jury's looking at the materials so they can concentrate on the |
| -08:-41:-34 | **3** | testimony. |
| 00:59:21 | **4** | MS. CLEARY:  Just a moment, sir. |
| 00:59:27 | **5** | MR. TERESINSKI:  Objection, Your Honor.   Could I |
| -08:-41:-34 | **6** | see what exhibit she's referring to? |
| 00:59:32 | **7** | THE COURT:  Sure.   Of course. |
| 00:59:44 | **8** | (Document shown to government counsel). |
| 01:02:18 | **9** | BY MS. CLEARY: |
| 01:02:18 | **10** | Q.   Sir, the exhibit that you have, A-35, do you recognize |
| -08:-41:-34 | **11** | that? |
| 01:02:36 | **12** | A.   Yes, this is an advertisement for the computer shop that |
| -08:-41:-34 | **13** | we were supposed to work together, me and Mohammad with. |
| 01:02:42 | **14** | Q.   And where -- what city is this picture taken in? |
| 01:02:51 | **15** | A.   The entrance of Farasey Village (phonetically). |
| 01:02:59 | **16** | MS. CLEARY:  Your Honor, may I publish this? |
| 01:03:09 | **17** | THE COURT:  Did you see it, Mr. Teresinski? |
| -08:-41:-34 | **18** | MR. TERESINSKI:  I did today, Your Honor.   No |
| 01:03:14 | **19** | objection. |
| 01:03:16 | **20** | MS. CLEARY:  I'm going to give the jury a moment to |
| -08:-41:-34 | **21** | look at this picture.   I'll be right with you. |
| 01:03:22 | **22** | THE WITNESS:  Okay. |
| 01:03:23 | **23** | A.   Okay. |
| 01:05:34 | **24** | BY MS. CLEARY: |
| 01:05:34 | **25** | Q.   Sir, just a final question. |

6220

01:05:39 **1**    **A.**   Go ahead.

01:05:41 **2**    **Q.**   At any time during your discussion with Mohammad Amawi,

-08:-41:-34 **3** did you ever discuss going to Iraq?

01:05:55 **4**         MR. TERESINSKI: Objection as to what Mr. --

-08:-41:-34 **5** calling for hearsay.

-08:-41:-34 **6**         THE COURT: Pardon me?

-08:-41:-34 **7**         MR. TERESINSKI: Objection to the extent it calls

-08:-41:-34 **8** for hearsay.

-08:-41:-34 **9**         THE COURT: I disagree. We'll see what the answer

01:06:06 **10** is, then I'll rule. Go ahead. He may answer.

01:06:15 **11**    **A.**   Never. We were working together, so how it is that I go

-08:-41:-34 **12** to Iraq if we are working together?

-08:-41:-34 **13**         MS. CLEARY: Thank you. The government attorney

-08:-41:-34 **14** may have questions for you, so if you could sit there for just a

-08:-41:-34 **15** minute.

01:06:39 **16**         MR. TERESINSKI: May I proceed, Your Honor?

01:06:41 **17**         THE COURT: Of course.

01:06:42 **18**                 - - -

01:06:42 **19**     MOSUL SULTAN AL-RAWASHDEH, CROSS-EXAMINATION

-08:-41:-34 **20** BY MR. TERESINSKI:

-08:-41:-34 **21**    **Q.**   Good morning, sir -- actually, good afternoon where you

-08:-41:-34 **22** are. I only have a couple very brief questions, okay. My name

-08:-41:-34 **23** is Jerry Teresinski. I represent the United States of America.

01:07:06 **24**    **A.**   Hello.

-08:-41:-34 **25**    **Q.**   I'd like as much as possible if an answer calls for a

6221

01:07:10 **1** yes or no that you answer yes or no.   However, I really have

01:07:20 **2** some basic -- just a couple questions.

01:07:30 **3**                    You testified on direct examination -- strike that.

01:07:33 **4**                    You testified just a few moments ago that you saw

01:07:37 **5** and discussed with Mohammad Amawi opening up this computer store

01:07:43 **6** sometime in 2005 and 2006.   Can you give us a date, a more

-08:-41:-34 **7** precise date in 2005, 2006 when you discussed opening up this

-08:-41:-34 **8** computer store?

01:08:18 **9**                    THE INTERPRETER:  I'm sorry, can I ask him for the

01:08:21 **10** last part of the sentence?

01:08:22 **11**                    THE COURT:  You may.

01:08:34 **12**      **A.**   Preparation of -- for opening the shop took a long time

-08:-41:-34 **13** because we were waiting for his friend to get us the laptops

-08:-41:-34 **14** from the United States.   But it was late of 2005, early of

01:08:47 **15** 2006.

-08:-41:-34 **16** BY MR. TERESINSKI:

-08:-41:-34 **17**      **Q.**   So that's when you discussed opening up the store, in

-08:-41:-34 **18** late 2005.   Can you give us a month in 2005?   Was it October?

01:09:16 **19**      **A.**   It was a long period of time.   I do not recall

01:09:20 **20** specifically the date.

01:09:23 **21**      **Q.**   Was it -- give me a season.   Was it the fall or was it

-08:-41:-34 **22** the winter of 2005?

01:09:40 **23**      **A.**   Summertime.

01:09:41 **24**      **Q.**   Summertime.   So maybe August of 2005?

01:09:50 **25**      **A.**   I don't recall.

01:09:52 **1**   **Q.**  Maybe September of 2005?

01:09:55 **2**       MR. HARTMAN:  Objection.

01:09:56 **3**       THE COURT:  Sustained.   He doesn't recall.   He's

-08:-41:-34 **4** testified as to a season.

-08:-41:-34 **5** BY MR. TERESINSKI:

-08:-41:-34 **6**   **Q.**  So you don't know the exact date you first started

01:10:03 **7** talking about this.   Is that what you're telling me?

01:10:16 **8**   **A.**  I don't recall the date or the time because I was

01:10:19 **9** focusing specifically on the business itself.

-08:-41:-34 **10**   **Q.**  That was your focus, the business?

01:10:27 **11**   **A.**  Yes, me and Mohammad.

01:10:29 **12**   **Q.**  I didn't ask that, but that was your focus?

01:10:35 **13**   **A.**  Yes.

01:10:39 **14**       MR. TERESINSKI:  One moment, Your Honor.   No

-08:-41:-34 **15** further questions, Your Honor.

01:10:45 **16**       MS. CLEARY:  Nothing further, Your Honor.

-08:-41:-34 **17**       THE COURT:  Tell him there are no further

-08:-41:-34 **18** questions, thank you for his testimony, please.

01:10:58 **19**       THE INTERPRETER:  Thank you.

01:11:03 **20**       MR. WITMER-RICH:  May we approach, Your Honor?

01:11:05 **21**       THE COURT:  Sure.

-08:-41:-34 **22**       (Whereupon the following discussion was had at the

01:19:14 **23** bench outside the hearing of the jury:)

01:19:14 **24**       MR. WITMER-RICH:  At this point we have a couple

-08:-41:-34 **25** we'd like to play from the transcript which I think the

-08:-41:-34 **1** government has agreed they will simply allow us to play the clip

-08:-41:-34 **2** and identify the date that it's occurring for the jury.

-08:-41:-34 **3**      MR. SOFER:  I would just like to see the transcript

-08:-41:-34 **4** again, if you don't mind, before we --

-08:-41:-34 **5**      MR. WITMER-RICH:  Then additionally we've been

-08:-41:-34 **6** trying to finalize the creation of the CDs that we need to put

-08:-41:-34 **7** into evidence, the discs from both cross-examination and the few

-08:-41:-34 **8** things we played here.   And so it might be a good time to take

-08:-41:-34 **9** a break right now.   Our tech guy is downstairs; I think he's

-08:-41:-34 **10** done with it.

-08:-41:-34 **11**      THE COURT:  Do you have any further witnesses?

-08:-41:-34 **12**      MR. BRYAN:  We need to take a break to talk.

-08:-41:-34 **13**      THE COURT:  But do you have any further witnesses?

-08:-41:-34 **14**      MR. BRYAN:  We may.   Probably not.   But if we do

-08:-41:-34 **15** it's not a lengthy witness.   If we do, Your Honor, they're not

-08:-41:-34 **16** lengthy.

-08:-41:-34 **17**      THE COURT:  Fine.   But are we done with the

-08:-41:-34 **18** overseas witnesses?

-08:-41:-34 **19**      MR. BRYAN:  Yes.

-08:-41:-34 **20**      THE COURT:  Are you prepared to go with rebuttal?

-08:-41:-34 **21**      MR. SOFER:  We need to have a further discussion

-08:-41:-34 **22** with the Court and Counsel before we're prepared to do anything,

-08:-41:-34 **23** Judge, including a question about whether or not there's going

-08:-41:-34 **24** to be, among other things, a request for an entrapment charge.

-08:-41:-34 **25** So we -- I think we worked -- we worked until midnight last

-08:-41:-34 **1** night trying to put something together.

-08:-41:-34 **2**        THE COURT:  If you do have rebuttal, can we do it

-08:-41:-34 **3** today, I hope?

-08:-41:-34 **4**        MR. SOFER:  It depends on what the defense asks in

-08:-41:-34 **5** terms of an entrapment charge largely.

-08:-41:-34 **6**        THE COURT:  If your exhibits are not completely

-08:-41:-34 **7** ready to go, what I would suggest is that you simply rest

-08:-41:-34 **8** subject to the admission of exhibits.   And when we next get

-08:-41:-34 **9** back together with the jury, we can go into structure and so

-08:-41:-34 **10** forth.   It's no big deal.   I don't want to spend a lot of time

-08:-41:-34 **11** about worrying that it be right this instant.

-08:-41:-34 **12**        MR. SOFER:  We want to see the list to go through

-08:-41:-34 **13** them the way we did with Mr. Hartman.

-08:-41:-34 **14**        THE COURT:  Do you know what exhibits you are going

-08:-41:-34 **15** to be --

-08:-41:-34 **16**        MR. WITMER-RICH:  Yes.

-08:-41:-34 **17**        THE COURT:  Why don't you give them the list right

-08:-41:-34 **18** now.

-08:-41:-34 **19**        MR. WITMER-RICH:  Will do.

-08:-41:-34 **20**        THE COURT:  There's a matter I want to discuss with

-08:-41:-34 **21** Mr. Sofer just briefly, if I may, ex parte.   Okay.  If we can

-08:-41:-34 **22** do that now, that would be great.   I'll excuse you for a

-08:-41:-34 **23** half-hour.

-08:-41:-34 **24**        MR. WITMER-RICH:  That would be plenty, Your Honor.

-08:-41:-34 **25**        (End of side-bar discussion.)

-08:-41:-34 **1**   THE COURT:  Ladies and gentlemen, we're going to

-08:-41:-34 **2**   take a break right now.   There are some matters that have to be

-08:-41:-34 **3**   tended to.   We'll be at least 10, 15, maybe a bit later than

-08:-41:-34 **4**   that before we get underway.   If it's going to be much later

-08:-41:-34 **5**   than that, 10:30 or so, I'll let you know.   Thank you.

-08:-41:-34 **6**   MR. IVEY:  The request doesn't have to do with

-08:-41:-34 **7**   evidence in the trial.   It's out of the presence of the jury.

-08:-41:-34 **8**   In the event Mr. Amawi is convicted in this case, he may not see

-08:-41:-34 **9**   his father again, so we wanted to know, out of the presence, if

-08:-41:-34 **10**  he could use the closed circuit to let them say a few words to

-08:-41:-34 **11**  each other right now.

-08:-41:-34 **12**  MR. SOFER:  Assuming Mr. Amawi is not going to

-08:-41:-34 **13**  testify, even if he does, I don't have a problem.

-08:-41:-34 **14**  THE COURT:  That's fine.  I assume the marshals

-08:-41:-34 **15**  would like to be consulted at least about that.  I'll talk to

-08:-41:-34 **16**  Chris.   But the one thing that I think would be appropriate,

-08:-41:-34 **17**  though I realize the risk is very slight, but if an

-08:-41:-34 **18**  interpreter --

-08:-41:-34 **19**  MR. SOFER:  We could provide an interpreter for the

-08:-41:-34 **20**  marshals.

-08:-41:-34 **21**  THE COURT:  In the event there's a concern there

-08:-41:-34 **22**  may be something improper said.   I can't imagine that there

-08:-41:-34 **23**  would be.

-08:-41:-34 **24**  MR. SOFER:  To me that's a security question that I

-08:-41:-34 **25**  would want to defer to the marshals and the FBI on.   I'll ask

-08:-41:-34 **1** the FBI while they're here.

-08:-41:-34 **2**          THE COURT:  I'm just saying if they want an

-08:-41:-34 **3** interpreter standing by, that's fine.

-08:-41:-34 **4**          MR. SOFER:  We have our translator here.    Would

-08:-41:-34 **5** you object to that?

-08:-41:-34 **6**          MR. WITMER-RICH:  Having the interpreter present so

-08:-41:-34 **7** he can hear what's being said?

-08:-41:-34 **8**          THE COURT:  So there's no concern.

-08:-41:-34 **9**          MR. WITMER-RICH:  No objection, Your Honor.

-08:-41:-34 **10**          MR. SOFER:  I'll talk to the FBI.    See if they

-08:-41:-34 **11** want to do that.

-08:-41:-34 **12**          THE COURT:  Do you want the courtroom closed for

-08:-41:-34 **13** that?

-08:-41:-34 **14**          MR. IVEY:  I think that would be appropriate.

-08:-41:-34 **15** It's a personal thing.

-08:-41:-34 **16**          MR. SOFER:  We don't object to that.

-08:-41:-34 **17**          THE COURT:  When you're ready to go with that -- if

-08:-41:-34 **18** I can have your attention, please.    There's been a request that

-08:-41:-34 **19** Mr. Amawi and his father can say a few words to each other.    I

-08:-41:-34 **20** think it's appropriate that they do so in circumstances that

-08:-41:-34 **21** enable them to communicate, in a sense, privately; although

-08:-41:-34 **22** we'll have to have a marshal and interpreter here.    So when

-08:-41:-34 **23** that is ready to occur, anybody who's here as a spectator will

-08:-41:-34 **24** have to step outside the courtroom.    Okay.  And we'll be

-08:-41:-34 **25** shutting off the outside feed as well.

-08:-41:-34 **1**      When you're ready to go with that, just let Mr.

-08:-41:-34 **2** Bianco know or whoever can take care of that.   And when that

-08:-41:-34 **3** occurs, you'll be asked to step outside the courtroom.

-08:-41:-34 **4**      (Recess taken.)

01:48:49 **5**      (The following discussion was had at the bench:)

01:48:49 **6**      THE COURT:  So, what's the game plan?

-08:-41:-34 **7**      MR. WITMER-RICH:  We're going to play one clip that

-08:-41:-34 **8** we talked to the government about, and then we're going to --

-08:-41:-34 **9** subject to admission of our exhibits later, we're going to rest

-08:-41:-34 **10** at that point.

-08:-41:-34 **11**      THE COURT:  I should probably speak to them -- Mr.

-08:-41:-34 **12** Amawi is not going to testify?

-08:-41:-34 **13**      MR. WITMER-RICH:  Correct.

-08:-41:-34 **14**      THE COURT:  I should probably have a session with

-08:-41:-34 **15** him.  Is there a deputy marshal.   What I would propose doing is

-08:-41:-34 **16** doing that in chambers, and --

-08:-41:-34 **17**      (A U.S. Marshall is present for the remainder of

-08:-41:-34 **18** the conversation.)

-08:-41:-34 **19**      THE COURT:  I'd like to go back in chambers with

-08:-41:-34 **20** Mr. Amawi just briefly for about three minutes to confirm it's

-08:-41:-34 **21** his choice not to testify.   I'd like to do that right now

-08:-41:-34 **22** before the jury comes back.   Okay.

-08:-41:-34 **23**      You all can come.   I'd suggest it might be better

-08:-41:-34 **24** just to have his lawyers and one of you, if that's okay.

-08:-41:-34 **25**      MR. BOSS:  We need not be there, I think.

-08:-41:-34 **1**      MR. SOFER:  Can I just -- can Counsel -- I know

-08:-41:-34 **2** they've given it to us already -- can you give us a transcript

-08:-41:-34 **3** of that clip you want to play so we can look at it?  During this

-08:-41:-34 **4** ten minutes we'll try to multitask and get it done.

-08:-41:-34 **5**      THE COURT:  Why don't you set that up for them and

-08:-41:-34 **6** then come on back in.

-08:-41:-34 **7**      (The following discussion was had in chambers:)

-08:-41:-34 **8**      THE COURT:  Mr. Amawi, your attorneys have

-08:-41:-34 **9** indicated that they will be resting and that you will not be

-08:-41:-34 **10** testifying; is that correct?

-08:-41:-34 **11**      DEFENDANT AMAWI:  Yes.

-08:-41:-34 **12**      THE COURT:  You were here I think when I talked to

-08:-41:-34 **13** Mr. Mazloum and Mr. El-Hindi about the rights that they had to

-08:-41:-34 **14** testify and so forth, so you're aware that you do have the right

-08:-41:-34 **15** to testify?

-08:-41:-34 **16**      DEFENDANT AMAWI:  I understand.

-08:-41:-34 **17**      THE COURT:  Do you also understand that the

-08:-41:-34 **18** decision not to do so -- and I can imagine it was a very

-08:-41:-34 **19** difficult decision -- ultimately it's yours alone to make?   Do

-08:-41:-34 **20** you understand that?

-08:-41:-34 **21**      DEFENDANT AMAWI:  I understand.

-08:-41:-34 **22**      THE COURT:  And, obviously, you should never make a

-08:-41:-34 **23** decision of that sort or any other crucial decision without

-08:-41:-34 **24** talking to your attorneys, but it's ultimately up to you.  Okay.

-08:-41:-34 **25** And have you decided not to testify?

-08:-41:-34 **1**      DEFENDANT AMAWI:  Yes, I have.

-08:-41:-34 **2**      THE COURT:  Are you confident that you've had

-08:-41:-34 **3** enough opportunity to talk about that decision with your

-08:-41:-34 **4** lawyers?

-08:-41:-34 **5**      DEFENDANT AMAWI:  Yes, I have.

-08:-41:-34 **6**      THE COURT:  Are you --  Because you're welcome to

-08:-41:-34 **7** talk with them further if you want.

-08:-41:-34 **8**      DEFENDANT AMAWI:  I think they made the decision,

-08:-41:-34 **9** so we're good.

-08:-41:-34 **10**      THE COURT:  Pardon?

-08:-41:-34 **11**      THE WITNESS:  We're good.

-08:-41:-34 **12**      THE COURT:  You say they made the decision?  But as

-08:-41:-34 **13** I say, it's your decision to make.   You can take their advice

-08:-41:-34 **14** into consideration, obviously.

-08:-41:-34 **15**      DEFENDANT AMAWI:  I understand.

-08:-41:-34 **16**      THE COURT:  But you should not make that decision

-08:-41:-34 **17** only because that's what they tell you they think you should do.

-08:-41:-34 **18** You have to be persuaded in your own mind that given the

-08:-41:-34 **19** options, none of which may be very attractive, I understand,

-08:-41:-34 **20** that that is the better or best option.

-08:-41:-34 **21**      DEFENDANT AMAWI:  Can I have one minute with them?

-08:-41:-34 **22**      THE COURT:  Of course.

-08:-41:-34 **23**      (Discussion had off the record.)

-08:-41:-34 **24**      THE COURT:  You've had a chance to talk?

-08:-41:-34 **25**      DEFENDANT AMAWI:  Yes, we did.

6230

-08:-41:-34 **1**            MR. BRYAN:  What we discussed, what we've been

-08:-41:-34 **2** discussing --

-08:-41:-34 **3**            THE COURT:  I don't want any attorney/client.

-08:-41:-34 **4**            MR. BRYAN:  I appreciate that, Your Honor, but as

-08:-41:-34 **5** it relates to where we are right now in the case, based upon the

-08:-41:-34 **6** evidence that's been presented by the evidence, based upon the

-08:-41:-34 **7** other evidence that has come into the case, and what we

-08:-41:-34 **8** anticipate we would be able to accomplish with Mr. Amawi

-08:-41:-34 **9** testifying, we, as a team, came to the conclusion that it would

-08:-41:-34 **10** be in Mr. Amawi's best interest not to testify.   And I believe

-08:-41:-34 **11** he's prepared to agree with that conclusion.

-08:-41:-34 **12**            DEFENDANT AMAWI:  Yes, I do.

-08:-41:-34 **13**            THE COURT:  I assume, also, it's fair to point out

-08:-41:-34 **14** that -- I assume your decision ultimately is also or has also

-08:-41:-34 **15** taken into account some of my rulings which have not always been

-08:-41:-34 **16** favorable to your theory of defense and defense.   I think

-08:-41:-34 **17** that's an important consideration because in the event those

-08:-41:-34 **18** rulings are not correct, to the extent that they bore on your

-08:-41:-34 **19** decision, in the event of a conviction, then I think it's fair

-08:-41:-34 **20** that the record show that that was a consideration as well.

-08:-41:-34 **21**            DEFENDANT AMAWI:  It's because of where we stand

-08:-41:-34 **22** right now I made the decision not to take the stand.

-08:-41:-34 **23**            THE COURT:  But it is your decision?

-08:-41:-34 **24**            DEFENDANT AMAWI:  Yes, it is.

-08:-41:-34 **25**            THE COURT:  That's what matters most.   That's the

-08:-41:-34 **1** only thing that matters.

-08:-41:-34 **2** Now, would you like me to remind the jury that Mr.

-08:-41:-34 **3** Amawi is entitled to do that?  That's up to you.  If you want

-08:-41:-34 **4** to talk with him a few more minutes, let me know.  I will be

-08:-41:-34 **5** giving that instruction as part of the instructions.  It's up

-08:-41:-34 **6** to you.

-08:-41:-34 **7** MR. BRYAN:  If we could have a minute.

-08:-41:-34 **8** THE COURT:  Candidly, I mean what I say --  I

-08:-41:-34 **9** happen to think that when any defendant exercises a fundamental

-08:-41:-34 **10** Constitutional right, it's -- that is what makes the

-08:-41:-34 **11** Constitution work ultimately.  Okay.  That's why it's so

-08:-41:-34 **12** important that the jury not even think about that.  And I'm

-08:-41:-34 **13** glad to remind them.  If not, I will next week.  Good enough.

02:03:04 **14** (End of in-chambers discussion.)

02:03:20 **15** (Jury exits the courtroom.)

02:13:41 **16** THE COURT:  It's been my practice that working on

-08:-41:-34 **17** the charge involves only counsel.  So if anybody has a strong

02:13:47 **18** view on that, let me and the marshals know, particularly given

02:13:55 **19** some of the uncertainties of our timetable, that's what I would

-08:-41:-34 **20** propose doing.  That's the way I've always done it.

02:17:12 **21** (Jury enters the courtroom.)

02:17:14 **22** THE COURT:  Ladies and gentlemen, I didn't expect

02:17:16 **23** we'd take nearly as long as we did, but there were a number of

02:17:20 **24** things we were able to address.  So I hope you understand that

-08:-41:-34 **25** from time to time.  I do apologize for the delays.  Okay.

02:17:37 **1** Counsel?

02:17:38 **2**          MR. WITMER-RICH:  Thank you.   We have one audio

-08:-41:-34 **3** clip we'd like to play for the jury.   And the clip is from

02:17:46 **4** April 7, 2005.   It's a brief conversation between Mohammad

-08:-41:-34 **5** Amawi and Darren Griffin.   The 1D is 1D-43.   It's Exhibit

-08:-41:-34 **6** A-1-25-2.   If we want to get our headphones on.

02:18:21 **7**          THE COURT:  I'm sorry, can you give me that

02:18:24 **8** 1D-number?

02:18:25 **9**          MR. WITMER-RICH:  1D-43.

-08:-41:-34 **10**          THE COURT:  Is there a clip number?

02:18:31 **11**          MR. WITMER-RICH:  Clip 2.

-08:-41:-34 **12**          THE COURT:  And the date once again?

02:18:35 **13**          MR. WITMER-RICH:  April 7, 2005.

02:18:39 **14**          THE COURT:  Has this previously been heard by the

02:18:42 **15** jury?

02:18:43 **16**          MR. WITMER-RICH:  The beginning has previously been

-08:-41:-34 **17** heard by the jury, then there's some additional material that

-08:-41:-34 **18** has not been heard.

02:18:53 **19**          (Audio is played.)

02:23:36 **20**          THE COURT:  Okay.

02:23:38 **21**          MR. BRYAN:  Your Honor, at this time, subject to

02:23:40 **22** the admission of the Amawi exhibits, the Amawi team rests.

02:23:44 **23**          THE COURT:  Okay.  And Mr. Amawi won't be

-08:-41:-34 **24** testifying.   Any further witnesses?

-08:-41:-34 **25**          MR. BRYAN:  No further witnesses.

6233

02:23:55  **1**       THE COURT:  Ladies and gentlemen, as I previously

02:23:57  **2**  instructed you during voir dire and from time to time during the

-08:-41:-34  **3**  trial that the fact that an individual stands upon his

02:24:06  **4**  well-known Constitutional right to put the government to its

-08:-41:-34  **5**  proof and elects not to testify cannot be considered by you in

02:24:14  **6**  any way whatsoever.

-08:-41:-34  **7**       To the extent either you thought about whether a

02:24:23  **8**  defendant will testify or maybe even had hoped would be the

-08:-41:-34  **9**  case, maybe even mentioned, I wonder if so-and-so will testify,

02:24:35  **10**  any thoughts that you might have during the course of the trial

-08:-41:-34  **11**  or deliberations about the fact that a defendant is not going to

-08:-41:-34  **12**  testify, none of that can play any role in your deliberations.

02:24:49  **13**  It's not evidence and cannot be considered by you because it

-08:-41:-34  **14**  would diminish the protection that we all enjoy.   It's probably

-08:-41:-34  **15**  one of the most fundamental protections that we enjoy in this

-08:-41:-34  **16**  country under our Constitution against government authority and

02:25:04  **17**  power because if we were either compelled to testify or even if

-08:-41:-34  **18**  you could infer anything at all from the fact we elect not

-08:-41:-34  **19**  testify, then the protection afforded to us all by the Fifth

-08:-41:-34  **20**  Amendment, the privilege against self-incrimination, would be

02:25:26  **21**  diminished.   And the consequence would be the rights of all of

-08:-41:-34  **22**  us would be placed in jeopardy.

02:25:32  **23**       So the fact that none of the defendants has

02:25:35  **24**  testified simply can play no role whatsoever.   You can decide

-08:-41:-34  **25**  the case only on the basis of the evidence that you see and may

-08:-41:-34 **1** still see in the event that the government decides to offer some

02:25:47 **2** rebuttal, since all three defendants have now rested.   And now

-08:-41:-34 **3** the case is with the government if it wishes to offer rebuttal.

-08:-41:-34 **4** But once it's done, if it does, all the pieces that you have

-08:-41:-34 **5** seen or have been heard by you in terms of the evidence upon

-08:-41:-34 **6** which you must base your decision will be before you.    And once

-08:-41:-34 **7** that is done, do not start making your minds up, don't start

-08:-41:-34 **8** talking about the case because you still have not received my

-08:-41:-34 **9** final instructions that will guide your deliberations.

-08:-41:-34 **10**              Okay, Counsel?

02:26:37 **11**              Counsel for the government, do you wish to offer

-08:-41:-34 **12** some rebuttal?

-08:-41:-34 **13**              MR. SOFER:  Judge, we will offer a very short

-08:-41:-34 **14** rebuttal case, less than an hour.   Maybe 40 minutes at most.

02:26:48 **15**              THE COURT:  And are you prepared to do so or do you

-08:-41:-34 **16** need some time to get prepared for that?

-08:-41:-34 **17**              MR. SOFER:  We're prepared, but we very recently

02:26:56 **18** turned over -- we're just going to play clips, Your Honor.

-08:-41:-34 **19** And, Counsel, I think rightly so, have an opportunity take a

-08:-41:-34 **20** good look at them before we begin.

-08:-41:-34 **21**              THE COURT:  How long do you think they will take?

-08:-41:-34 **22** Is 15, 20 minutes, maybe take a break, then you go ahead and

-08:-41:-34 **23** have the government's evidence, then the jury can be excused,

02:27:20 **24** they can have their lunch?

02:27:22 **25**              MR. HARTMAN:  We need to just address it with the

02:27:24 **1** Court outside the presence of the jury, but I don't think it

02:27:28 **2** will take very long.

-08:-41:-34 **3**            THE COURT:  Why don't you do that.

02:27:31 **4**            Ladies and gentlemen, let me try to give you a

02:27:34 **5** sense of the timetable.   As I say, if we're able to do so, what

02:27:39 **6** I'd like to do is to go ahead and hear the government's rebuttal

-08:-41:-34 **7** which should take an hour's conversation with counsel before

-08:-41:-34 **8** getting to that point.   Then I would anticipate excusing you

-08:-41:-34 **9** until next Wednesday.   That's appropriate and I think really

-08:-41:-34 **10** quite desirable because of developing -- going through the

02:28:09 **11** evidence and developing closing argument, which, of course, is a

-08:-41:-34 **12** very crucial stage for any client and a lawyer in a case,

02:28:17 **13** particularly in a case like this which involves large quantities

-08:-41:-34 **14** of evidence and a lot of recorded evidence.   It's just going to

-08:-41:-34 **15** take a lot of time.

-08:-41:-34 **16**            Once again, it's one of those circumstances where

02:28:33 **17** if I didn't give counsel that kind of time to prepare, there

02:28:37 **18** would be two consequences:  They would probably take longer,

02:28:41 **19** perhaps even a lot longer in the presentation of closing

-08:-41:-34 **20** arguments which are likely to be quite lengthy in any event;

-08:-41:-34 **21** and also those arguments would not be as well-crafted and as

02:28:53 **22** well-developed and as well-presented as counsel and, ultimately,

-08:-41:-34 **23** you would like.

-08:-41:-34 **24**            So my present expectation, subject to some further

-08:-41:-34 **25** consultation with counsel, would be that we would resume on

| | | |
|---|---|---|
| 02:29:08 | **1** | Wednesday of next week.   I would start the session on Wednesday |
| 02:29:12 | **2** | by reading to you my final jury instructions.   It is my |
| -08:-41:-34 | **3** | practice to do so before you give closing argument.   I would |
| -08:-41:-34 | **4** | anticipate the government's argument would probably take the |
| 02:29:23 | **5** | balance of the day.   And, in fact, that may be a day as well as |
| 02:29:27 | **6** | Thursday where we may work somewhat later, just depending upon |
| -08:-41:-34 | **7** | how long the arguments take.   I don't set a timetable for |
| 02:29:37 | **8** | counsel to argue.   It's their case and it's their job to do |
| -08:-41:-34 | **9** | what they do the best they can to present you their arguments |
| -08:-41:-34 | **10** | and take the time that they think is necessary. |
| 02:29:50 | **11** | I would expect, or hope in any event, that if we're |
| -08:-41:-34 | **12** | able to work somewhat later, maybe 5:30, 6:00 even, or perhaps |
| -08:-41:-34 | **13** | even a little later -- it may be shorter than that -- but I |
| -08:-41:-34 | **14** | would like to have the government complete its argument on |
| 02:30:07 | **15** | Wednesday so as not to interrupt the evidence presented to you |
| 02:30:12 | **16** | in its entirety in a single day.   I think your understanding |
| 02:30:19 | **17** | would be enhanced and I think they would prefer to do that as |
| -08:-41:-34 | **18** | well.   Then on Thursday the defendants also present their |
| -08:-41:-34 | **19** | arguments.   I expect, I can't promise or guarantee, that they |
| -08:-41:-34 | **20** | probably could be presented within a day.   And the government |
| 02:30:36 | **21** | then will have the right to present some brief rebuttal |
| -08:-41:-34 | **22** | argument; if we can get that done on Thursday, so much the |
| 02:30:45 | **23** | better.  If we can't, it will occur on Friday. |
| -08:-41:-34 | **24** | So for your own expectation and understanding, I |
| 02:30:53 | **25** | presently anticipate that the case will be in your hands to |

-08:-41:-34 **1** start deliberating sometime a week from this Friday.   And then

-08:-41:-34 **2** the timetable will be entirely up to you.   Okay.  We will await

-08:-41:-34 **3** your decision and verdict.   I should mention that one thing you

-08:-41:-34 **4** might want to think about and perhaps talk about when you come

02:31:21 **5** back next week, is whether you want to proceed directly in

02:31:27 **6** deliberations, assuming the case is in your hands sometime

02:31:31 **7** Friday, or to adjourn and come back the following Monday.

-08:-41:-34 **8** That's the kind of thing that's entirely up to you.   Also, when

-08:-41:-34 **9** you decide to start your deliberations, that's entirely up to

-08:-41:-34 **10** you, too.   If you want to come at 10:00 rather than 8:30 or

-08:-41:-34 **11** whatever.   All of those timetable issues are yours.   Okay.

-08:-41:-34 **12**         So Counsel, why don't you come on up and let me

-08:-41:-34 **13** hear what you have to say.

02:32:02 **14**         THE JUROR:  Isn't that going to be into the June 6

02:32:04 **15** when you said we were off on that Friday?

02:32:07 **16**         THE COURT:  It could be.   I have to be in

02:32:10 **17** Cleveland.  I'm scheduled to be in Cleveland at 3:30 that

-08:-41:-34 **18** afternoon.  We have a newly admitted magistrate judge; he's

-08:-41:-34 **19** having a formal investiture ceremony which means I would have to

-08:-41:-34 **20** leave personally by about 1:30 that afternoon.   I would still

-08:-41:-34 **21** be available by telephone in the event you had any questions or

02:32:32 **22** anything came up that you needed to deal with.   Were you to

-08:-41:-34 **23** return a verdict, what I probably would do is have you come back

-08:-41:-34 **24** the following Monday and take your verdict then or,

-08:-41:-34 **25** alternatively -- you're right.

1             I have another -- other matters tentatively

2 scheduled for that Monday to be in Cleveland.   It's my present

3 expectation that if that's the way the timetable works, and

4 you're deliberating Friday, to be in the building until 1:30.

5 You're welcome to continue deliberating.   It's entirely up to

6 you.   Unfortunately, in my position as Chief Judge of the

7 district, which has nothing to do with merit or popularity, it's

8 seniority -- and I'm sure my colleagues will confirm it has

9 nothing to do with merit -- I really have to be there for that

10 investiture.   It would be an unfortunate awkward circumstance

11 if I weren't there.   At least that's my present expectation.

12 Thanks for mentioning that issue.

13             Counsel why don't you come on up.

14             (The following discussion was had at the bench

15 outside the hearing of the jury:)

16             THE COURT:  Do you guys know what clips they want

17 to play?

18             MR. WITMER-RICH:  They just handed it to me.

19             THE COURT:  Do you need time to go over it?

20             MR. WITMER-RICH:  We would.

21             MR. HARTMAN:  I don't need time to go over it.   I

22 just don't think they ought to be allowed to play it.

23             MR. WITMER-RICH:  I think we can go over it in 15

24 minutes probably.

25             THE COURT:  A real 15 minutes or court time?

-08:-41:-34 **1**      MR. WITMER-RICH:  I'll say we can really do it in

-08:-41:-34 **2** 30 minutes, just to be safe.

-08:-41:-34 **3**      MR. HELMICK:  Judge, we need about two minutes with

-08:-41:-34 **4** the government with one request.   And that's it.

-08:-41:-34 **5**      THE COURT:  What's the problem?

-08:-41:-34 **6**      MR. HARTMAN:  Judge, first of all, we didn't put on

-08:-41:-34 **7** any evidence in our case.   I mean, we put on -- put in exhibits

-08:-41:-34 **8** that we played during cross-examination, the proper time to

-08:-41:-34 **9** rebut that would have been on redirect examination.   Rebuttal.

-08:-41:-34 **10** The rebuttal case is after our direct case.  We had no direct

-08:-41:-34 **11** case.

-08:-41:-34 **12**      THE COURT:  Right.

-08:-41:-34 **13**      MR. HARTMAN:  We would object to them playing any

-08:-41:-34 **14** clip of Mr. El-Hindi.   It was never on the reference list to

-08:-41:-34 **15** begin with.   I don't think it's proper for them to be able to

-08:-41:-34 **16** do it.

-08:-41:-34 **17**      MR. GETZ:  This is a clip from a recording that's

-08:-41:-34 **18** already in evidence.   There are clips from this recording that

-08:-41:-34 **19** were already played for the jury.   This specific language is

-08:-41:-34 **20** very short.   It deals with the viewing by Mr. El-Hindi and Mr.

-08:-41:-34 **21** Griffin of the bomb vest video and basically an acknowledgment

-08:-41:-34 **22** of they viewed it together, how long it took to download it.  We

-08:-41:-34 **23** think, based on what the defense has indicated that their

-08:-41:-34 **24** case -- and they told this to the jury -- their case is based

-08:-41:-34 **25** upon our evidence, and they've asked questions of our witnesses

-08:-41:-34 **1**  and made references to and played clips of their own based on

-08:-41:-34 **2**  that evidence of the government.

-08:-41:-34 **3**         THE COURT:  Let me see it.

-08:-41:-34 **4**         MR. BOSS:  This clip was not played in your direct

-08:-41:-34 **5**  case?

-08:-41:-34 **6**         MR. SOFER:  It was not.

-08:-41:-34 **7**         MR. HARTMAN:  Nor was it listed on the reference

-08:-41:-34 **8**  sheet.

-08:-41:-34 **9**         MR. BOSS:  So it's new evidence?

-08:-41:-34 **10**        MR. SOFER:  It's not new evidence.   It's part of a

-08:-41:-34 **11** disc that was already entered into evidence.   It's part of a

-08:-41:-34 **12** 1D-, portions of which were already played in evidence.   So I

-08:-41:-34 **13** would disagree with the concept of -- it's not new evidence, but

-08:-41:-34 **14** it will be the first time the jury heard this, yes.

-08:-41:-34 **15**        MR. GETZ:  It's approximately one minute in length.

-08:-41:-34 **16**        THE COURT:  I think this should have been played on

-08:-41:-34 **17** direct.   I'm not going to let this be played in rebuttal.   I

-08:-41:-34 **18** accept Mr. Hartman's argument.   Next issue.

-08:-41:-34 **19**        MR. HARTMAN:  That's the only one.

-08:-41:-34 **20**        MR. HELMICK:  We have one thing to discuss with the

-08:-41:-34 **21** government.   That's it.

-08:-41:-34 **22**        THE COURT:  Where's --

-08:-41:-34 **23**        UNIDENTIFIED SPEAKER:  They're reviewing and

-08:-41:-34 **24** talking about the clips right now.

-08:-41:-34 **25**        MR. SOFER:  The vast majority of the clips, there

-08:-41:-34  **1**  was only one for El-Hindi, now there's none.   There was one for

-08:-41:-34  **2**  Mr. Mazloum only.  And the rest of them are all related to Mr.

-08:-41:-34  **3**  Amawi, so they do have a larger volume.

-08:-41:-34  **4**          THE COURT:  How are you coming with that?

-08:-41:-34  **5**          MR. IVEY:  We've got several clips.  We would need,

-08:-41:-34  **6**  I would think, about 15 minutes.

-08:-41:-34  **7**          MR. SOFER:  I think this will take, especially now,

-08:-41:-34  **8**  altogether I think we're down to less than a half-hour of

-08:-41:-34  **9**  playing tape.

-08:-41:-34  **10**          THE COURT:  I'm going to send the jury out.  We'll

-08:-41:-34  **11**  do it, let them go home.

02:39:02  **12**          Ladies and gentlemen, it's going to take a bit for

-08:-41:-34  **13**  defense counsel to review the proposed rebuttal evidence which,

02:39:13  **14**  for very understandable reasons, the government only now has

-08:-41:-34  **15**  been able to sort of define and designate because they couldn't

-08:-41:-34  **16**  do so -- they couldn't determine what they wanted to offer in

-08:-41:-34  **17**  the way of rebuttal until they knew what defendants had offered

02:39:29  **18**  in their cases.

02:39:31  **19**          Counsel indicates they may be about 15 minutes,

02:39:36  **20**  which probably means about 20 or so, or 30 if you're accustomed

-08:-41:-34  **21**  to my inability to tell time.   But the government also

02:39:47  **22**  indicates the actual playing of the rebuttal should be a

-08:-41:-34  **23**  half-hour, 45 minutes.   So I think what makes best sense,

-08:-41:-34  **24**  although it may be a tad inconvenient for you, is to send you

02:39:58  **25**  back upstairs.  I presently think we'll be done by 12:30.   If

-08:-41:-34  **1**  you order lunch -- of course, you're welcome to have lunch.

-08:-41:-34  **2**  And if you want to take it with you, that's fine.   But at that

02:40:10  **3**  point we will be in adjournment until next Wednesday morning at

02:40:14  **4**  8:30.   So go on upstairs.   Amy will let you know when we're

-08:-41:-34  **5**  ready to go in the final presentation of evidence.

-08:-41:-34  **6**      Don't talk about the case, keep an open mind.

02:41:03  **7**      (Jury out.)

02:41:06  **8**      (Recess taken.)

03:25:36  **9**      THE COURT:  Are we ready to resume?

03:25:38  **10**      MR. WITMER-RICH:  Yes, I believe so.   Starting

-08:-41:-34  **11**  with the clip the government gave us identified RD-5-69185-2, I

-08:-41:-34  **12**  think it's the clip from October 21, 2004.  The government can

-08:-41:-34  **13**  talk about why they think it's rebuttal.  We don't think it's

03:26:10  **14**  rebuttal to the evidence that we presented.

03:26:15  **15**      MR. SOFER:  Do you want us to go through these?

-08:-41:-34  **16**      THE COURT:  I guess so.

03:26:19  **17**      MR. WITMER-RICH:  There are only a couple that we

-08:-41:-34  **18**  have that we're --

03:26:36  **19**      MR. SOFER:  Judge, this particular clip was the

03:26:42  **20**  longest, I think, of all the clips.   As I indicated before, we

-08:-41:-34  **21**  have a total of approximately 11 minutes of tape-recorded

03:26:53  **22**  conversations.   It relates to Mohammad Amawi telling Darren

03:26:57  **23**  Griffin that he has family members who used to be in the Army,

-08:-41:-34  **24**  and that they had a plan and that one of his family members was

03:27:06  **25**  connected to some Mujahidin in Iraq.   He also tells the

-08:-41:-34  1  informant, Mr. Griffin, that Mohammad Amawi knew of a plan to

03:27:22  2  kill the King of Jordan that was something that Mohammad Amawi's

-08:-41:-34  3  family members were involved in.

03:27:32  4  The reason that this is rebuttal, Your Honor, is

03:27:35  5  that Zaki Amawi testified to some matters that relate to this as

03:27:49  6  well as the general defense argument through the witnesses,

03:27:52  7  particularly through Zaki Amawi, said that Mohammed Amawi knew

03:27:59  8  Darren Griffin was with the FBI.  And the notion that if one

03:28:04  9  knew that Darren Griffin was FBI and then continued to give him

-08:-41:-34  10  information which could result in the prosecution, jailing, or

-08:-41:-34  11  other legal action against his own family members is

-08:-41:-34  12  inconsistent, directly rebuts that argument.   The notion that

03:28:22  13  Mohammad Amawi is giving information to the FBI, essentially he

-08:-41:-34  14  believes Darren Griffin is the FBI, and he's implicating members

03:28:31  15  of his own family, I think clearly is rebuttal.

03:28:39  16  Ultimately this is in the nature of argument, what

-08:-41:-34  17  is rebuttal.   I think the government under the law is given

03:28:50  18  some latitude in essentially making an argument.

03:28:56  19  MR. WITMER-RICH:  This was not elicited by us in

-08:-41:-34  20  our direct testimony.  The material -- the information about Mr.

-08:-41:-34  21  Amawi -- them knowing that Darren Griffin was an FBI informant

-08:-41:-34  22  and the bit about -- something about the assassination of King

-08:-41:-34  23  Abdullah.

03:29:19  24  THE COURT:  I don't think the source of -- whether

03:29:23  25  it was direct or cross matters.   I've never heard of that.

03:29:27 **1**          MR. WITMER-RICH:  I guess it doesn't -- I mean, it

03:29:32 **2** doesn't rebut -- the specific testimony about the assassination,

-08:-41:-34 **3** he asked him if he had ever heard Mohammad Amawi threaten King

-08:-41:-34 **4** Abdullah.   He said no.  The clip about Mohammed Amawi telling

03:29:48 **5** Darren Griffin about some family member of his, about a cousin,

03:29:52 **6** a plan that didn't happen, I don't see how that's rebuttal of

-08:-41:-34 **7** the evidence.

03:29:57 **8**          THE COURT:  What's the evidence?

03:30:00 **9**          MR. WITMER-RICH:  I guess the point is if Mohammad

-08:-41:-34 **10** Amawi was saying things that are inculpatory, then any of that

-08:-41:-34 **11** would rebut the claim that when they were in Jordan, which is a

-08:-41:-34 **12** year after this tape happened, the testimony that when they were

-08:-41:-34 **13** in Jordan a year later Mohammad had told his family or that they

-08:-41:-34 **14** suspected that Darren Griffin was an informant.   Evidence that

-08:-41:-34 **15** a year earlier that he was saying something inculpatory --

03:30:28 **16**          THE COURT:  It does seem to be --

-08:-41:-34 **17**          MR. SOFER:   Again, the argument has been made that

03:30:34 **18** somehow at some time, and I assume this -- this argument was

-08:-41:-34 **19** made in opening statement.   I assume this argument will be

-08:-41:-34 **20** carried forth.   The tape that was just played here in which

03:30:47 **21** Mohammad Amawi is eliciting money from Darren Griffin, all of

-08:-41:-34 **22** this is connected to an argument by the defense which is Darren

03:30:59 **23** Griffin was known by Mohammad Amawi to be working for the FBI.

-08:-41:-34 **24** There's no date that's been set by the defense.   If they want

-08:-41:-34 **25** to stipulate that he knew that as of a particular date, that's

03:31:08  **1**  one thing.   The government certainly should be given an

-08:-41:-34  **2**  opportunity to rebut that argument.

-08:-41:-34  **3**              Again, I agree with Counsel, we probably could

03:31:19  **4**  have, I think, under the law we would be permitted to put in a

03:31:22  **5**  much larger volume of rebuttal clips.  We haven't done that.

03:31:28  **6**  We've tried to limit it as much as possible.   The fact that a

-08:-41:-34  **7**  witness testified that Mohammad Amawi knew at a particular time

-08:-41:-34  **8**  that Darren Griffin was with the FBI does not foreclose the

03:31:42  **9**  argument about when -- about him knowing it previously.   Again,

03:31:47  **10**  if the Amawi team wants to stipulate that was the first and only

03:31:51  **11**  time Mohammad Amawi knew that and that's all the evidence shows,

-08:-41:-34  **12**  then we wouldn't put in this clip.   But I'm confident that's

-08:-41:-34  **13**  not what they're going to argue to this jury.

03:32:00  **14**              THE COURT:  Let me ask:  Do you know as of what

-08:-41:-34  **15**  time frame you'll be contending?

03:32:08  **16**              MR. WITMER-RICH:  We'll need to go back through the

-08:-41:-34  **17**  entire record.   In our case we did not put in any evidence that

03:32:14  **18**  predates, certainly, the first of January of '05 that would

-08:-41:-34  **19**  support this contention.   There may be evidence of that from

-08:-41:-34  **20**  what happened in the government's case.   But in our case we

03:32:26  **21**  didn't introduce evidence from, as I recall, from this time

-08:-41:-34  **22**  period or before supporting that contention.

-08:-41:-34  **23**              THE COURT:  What's the date of this?

03:32:37  **24**              MR. WITMER-RICH:  October 21, 2004.

-08:-41:-34  **25**              THE COURT:  What was the apparent date of those

03:32:46 **1** pictures we saw yesterday, the ones in the convenience store?

03:32:50 **2**     MR. SOFER:  I think they were February of '05,

-08:-41:-34 **3** Judge.   But again, I wouldn't expect counsel to draw a bright

03:32:57 **4** line in the sand.   They want to make this argument.   The

-08:-41:-34 **5** government should be permitted to -- again, they opened on this;

03:33:04 **6** it's clear that throughout the course of the case they've

03:33:06 **7** developed this as part of their defense.   And I think the

-08:-41:-34 **8** government is entitled to show some evidence.   But again, we're

03:33:13 **9** not talking about 37 clips lasting hours and hours.

-08:-41:-34 **10**     THE COURT:  I'm not going to let it be played

-08:-41:-34 **11** because I don't think it is appropriate rebuttal, that it

03:33:24 **12** properly rebuts the proposition for which it's offered because

-08:-41:-34 **13** of its uncertainty and the distance between the time that was

03:33:32 **14** referenced in their case.

-08:-41:-34 **15**     MR. SOFER:  Well, then let me ask you this, Judge:

-08:-41:-34 **16** If the defense argues that -- in summation that Mohammad Amawi

03:33:40 **17** knew that Darren Griffin was working for the FBI, and he knew it

-08:-41:-34 **18** at particular dates, will you let us reopen our case then?

03:33:49 **19** That's what I'm looking to avoid.

-08:-41:-34 **20**     THE COURT:  I would imagine so.   My point is, if

-08:-41:-34 **21** you're going to argue at about this time there's evidence that

-08:-41:-34 **22** he was aware of government surveillance, then it's fine.   I'm

-08:-41:-34 **23** doing this because of the temporal distance between -- Mr. Ivey.

03:34:13 **24**     MR. IVEY:  I didn't want to interrupt you.   I just

-08:-41:-34 **25** want to stop this notion that the defense is developing this.

-08:-41:-34  **1**  If the Court will recall I didn't say in opening statement that

-08:-41:-34  **2**  Mr. -- that Mr. Amawi knew Mr. Griffin is FBI.   The government

-08:-41:-34  **3**  called in its case pro witnesses to bring -- we did not.

03:34:34  **4**  THE COURT:  It came out on cross-examination of Mr.

03:34:38  **5**  Amawi's father, that he had said to his father that Mr. Griffin

-08:-41:-34  **6**  was 90 percent FBI and ten percent Muslim.   But that was okay

-08:-41:-34  **7**  with him.   And I assume it was unexpected testimony that the

-08:-41:-34  **8**  government did not anticipate.   It wants to rebut that.   My

-08:-41:-34  **9**  point simply is, I don't think this particular evidence rebuts

03:35:03  **10**  that.

03:35:05  **11**  MR. IVEY:  I agree.

03:35:07  **12**  THE COURT:  Now, on the issue of the timetable as

-08:-41:-34  **13**  to when Mr. Amawi may have been aware, again, I'm not sure that

-08:-41:-34  **14**  that's not part of your case.   So I don't think -- even that I

-08:-41:-34  **15**  don't think it rebuts it.   I'm not so sure it would be

-08:-41:-34  **16**  appropriate to reopen the case.   The evidence is what it is.

-08:-41:-34  **17**  You didn't stand up and say as of the second time they met, Mr.

03:35:33  **18**  Amawi was of the view that Griffin was an FBI agent.   That

-08:-41:-34  **19**  would be entirely different.   But you didn't do that.   I'm not

-08:-41:-34  **20**  sure that you at all raised that.

03:35:48  **21**  MR. SOFER:  Judge, the time for them to raise that

-08:-41:-34  **22**  is in summation.   They'll argue in summation that the

-08:-41:-34  **23**  evidence -- for instance, we spent a lot of time with the Amawi

-08:-41:-34  **24**  team where Mr. Amawi's allegedly lying to Mr. Griffin while a

-08:-41:-34  **25**  conversation was going on and mistranslating a particular

| | | |
|---|---|---|
| 03:36:07 | **1** | portion.   The same concept -- and I beg to differ with Counsel. |
| -08:-41:-34 | **2** | They did open on this.   I distinctly remember Mr. Ivey |
| 03:36:14 | **3** | saying -- |
| 03:36:15 | **4** | THE COURT:   In any event, this should have been in |
| 03:36:17 | **5** | the direct case. |
| 03:36:20 | **6** | MR. IVEY:   I want to make something clear. |
| -08:-41:-34 | **7** | There's a difference between playing -- |
| -08:-41:-34 | **8** | THE COURT:   I'm ruling in your favor. |
| 03:36:28 | **9** | MR. IVEY:   All right.   I'll clear it up at the |
| -08:-41:-34 | **10** | right time.   But I didn't want the notion that the government |
| -08:-41:-34 | **11** | called two police officers to say Mr. Amawi was aware, thought |
| 03:36:36 | **12** | the government was following him.   There's a different argument |
| -08:-41:-34 | **13** | between he's playing Mr. Griffin for financial benefits |
| -08:-41:-34 | **14** | and knowing Mr. Griffin is an FBI agent.   And the former is, I |
| 03:36:46 | **15** | think, what I opened with. |
| 03:36:48 | **16** | MR. SOFER:   I agree. |
| 03:36:49 | **17** | THE COURT:   In any event, I've made my ruling.   I |
| 03:36:53 | **18** | agree with defense counsel on this. |
| 03:36:57 | **19** | MR. WITMER-RICH:   On the clip RB-4369185-2, am I |
| -08:-41:-34 | **20** | correct that this is a clip that fairly follows the clip that we |
| 03:37:11 | **21** | just played for the jury, follows it fairly soon after that? |
| 03:37:19 | **22** | MR. SOFER:   I believe it does, yes. |
| 03:37:22 | **23** | MR. WITMER-RICH:   I request that that be made clear |
| 03:37:24 | **24** | to jury. |
| -08:-41:-34 | **25** | THE COURT:   The same day, same conversation? |

| | | |
|---|---|---|
| 03:37:28 | **1** | MR. WITMER-RICH:  Like a minute later. |
| 03:37:30 | **2** | THE COURT:  That's fine.  That's fair.  Okay. |
| 03:37:36 | **3** | MR. WITMER-RICH:  The clip RB-18-69185-5.  This is |
| -08:-41:-34 | **4** | from a tape that we have not heard anything from yet, correct? |
| -08:-41:-34 | **5** | MR. SOFER:  Not correct. |
| 03:37:57 | **6** | MR. WITMER-RICH:  In any event, immediately or soon |
| -08:-41:-34 | **7** | after the end of this clip, within a minute or so, there's a |
| 03:38:09 | **8** | section in Arabic.  There's -- during this conversation they're |
| -08:-41:-34 | **9** | talking about Mohammad and Darren Griffin are sitting in front |
| -08:-41:-34 | **10** | of the computer and there are persons over the internet talking |
| -08:-41:-34 | **11** | in the background in Arabic.   And some of that, I think, may be |
| 03:38:25 | **12** | captioned on this.   I'm not sure.   Soon after the end of this |
| 03:38:29 | **13** | particular clip there's a section that's captured in Arabic that |
| -08:-41:-34 | **14** | on the government transcript is represented as unidentified male |
| 03:38:36 | **15** | talking the background.   But it's audible what the person is |
| -08:-41:-34 | **16** | saying.   They haven't translated it.   Again, it's not on this |
| 03:38:45 | **17** | particular clip.   On their transcript they haven't translated |
| -08:-41:-34 | **18** | that section.   What is said during that little section, the |
| -08:-41:-34 | **19** | person overseas saying to Sadaf -- I believe there's evidence |
| 03:39:08 | **20** | that Sadaf is the name that Mr. Amawi used for internet |
| 03:39:14 | **21** | conversations.   He says to Sadaf:  I don't care if there are |
| -08:-41:-34 | **22** | even one or two, or if it's one.   I don't care that there is |
| -08:-41:-34 | **23** | someone beside you recording.   I don't care whatsoever. |
| 03:39:29 | **24** | THE COURT:  I missed the last word. |
| 03:39:31 | **25** | MR. WITMER-RICH:  I don't care that there is |

-08:-41:-34 **1** someone beside you recording.   I don't care whatsoever.   Let

-08:-41:-34 **2** him record.   I am clarifying truth.   He says a little bit

-08:-41:-34 **3** more.   Then he says:  Anyone who wants to record, let him

-08:-41:-34 **4** record.

-08:-41:-34 **5** We had debated on trying to play this clip through

-08:-41:-34 **6** our translator.  We didn't do that.  We don't have her here to

-08:-41:-34 **7** put this into evidence.   But it very quickly follows this clip

-08:-41:-34 **8** where they're talking about finding explosives, downloading

-08:-41:-34 **9** explosives, and so forth.   Then there's this clip of the person

03:40:05 **10** overseas saying to Sadaf:  I don't care if the person next to

-08:-41:-34 **11** you is recording.

03:40:10 **12** So we would request that that section be included

-08:-41:-34 **13** in the clip the government wants to play.  We can provide our

-08:-41:-34 **14** translation to their translator if he wants to try to listen to

-08:-41:-34 **15** this, it's a short passage, and decide whether that's accurate.

03:40:24 **16** MR. SOFER:  Judge, let me make clear why it is

03:40:30 **17** we're putting this particular recording in.   Here we have --

03:40:34 **18** this is something that directly rebuts evidence that counsel

-08:-41:-34 **19** tried to elicit, I believe yesterday, in which Mohammad Amawi's

-08:-41:-34 **20** sitting at the computer, Darren Griffin is there, Mohammad Amawi

03:40:50 **21** is translating things that are going on.  This is an actual

03:40:54 **22** video, which is what's really important actually to the

-08:-41:-34 **23** government.

-08:-41:-34 **24** What happened yesterday was the translator for the

03:41:03 **25** Amawi team said, well, on the third time that he translated, he

-08:-41:-34  **1**  translated something incorrectly.   The government's

03:41:09  **2**  cross-examination, you may recall, is you couldn't see actually

-08:-41:-34  **3**  what Mohammad Amawi was doing.   The video that matters most to

-08:-41:-34  **4**  the government here, because it's clear in the clip, is Mohammad

-08:-41:-34  **5**  Amawi continues to do multiple things with his computer at the

-08:-41:-34  **6**  same time while the audio was just playing in the background.

-08:-41:-34  **7**  We think that's important for obvious reasons.   The fact that

-08:-41:-34  **8**  something else was said by this other unknown male voice later

-08:-41:-34  **9**  on, I don't think is -- doesn't go to the rule of completeness.

-08:-41:-34  **10**  It doesn't go to any other issue.   It's probably hearsay.

-08:-41:-34  **11**        The Sadaf question, I'd have to go back and look to

-08:-41:-34  **12**  see how clear it is, whether or not, in fact, this person's even

-08:-41:-34  **13**  talking to Mohammad Amawi or about Mohammad Amawi.   If defense

03:42:01  **14**  decided not to put it in and would now like us to put their

-08:-41:-34  **15**  evidence in for them, we are not inclined to do that.   There is

-08:-41:-34  **16**  no argument under the rule of completeness.   And what's

-08:-41:-34  **17**  important to the government is not only the substance of this

03:42:14  **18**  conversation as it is, what you can actually see on the video,

-08:-41:-34  **19**  which supports the government's position that, in fact, the

03:42:22  **20**  evidence elicited by the defense does not accurately describe

-08:-41:-34  **21**  what's going on on the computer.

03:42:28  **22**        MR. WITMER-RICH:  As to the rule of completeness, I

-08:-41:-34  **23**  mean, the section immediately -- we have the section where --

-08:-41:-34  **24**  that I just kind of approximated for you.  I was quoting the

-08:-41:-34  **25**  relevant parts.   Immediately following that the person says:

03:42:43 **1** What's he talking about, Jihad?   And there's a silence;

03:42:49 **2** Mohammad does not respond.   Then they go on to other

-08:-41:-34 **3** conversations.   So it both is relevant because of what the guy

03:42:56 **4** says and because of, once again --

03:43:01 **5**                THE COURT:  What's the date?

03:43:05 **6**                MR. SOFER:  January 27, '05.   This is the same 1D.

-08:-41:-34 **7** I would also --

03:43:12 **8**                THE COURT:  Tell me what's being said that you want

-08:-41:-34 **9** to have played in addition.   The only request is to let the

-08:-41:-34 **10** clip run a bit longer; is that correct?

03:43:24 **11**                MR. WITMER-RICH:  Correct.

-08:-41:-34 **12**                THE COURT:  Tell me again what that covers.

03:43:27 **13**                MR. WITMER-RICH:  It says -- I'm going to skip the

-08:-41:-34 **14** very beginning.   It's just talking about things.   Then he

-08:-41:-34 **15** says:  Oh, my brother, Sadaf; Sadaf, listen to me; may God

03:43:47 **16** reward you with goodness.   Then there's some timing.

03:43:52 **17** Patience, patience.   God bless you.   I don't care even if

-08:-41:-34 **18** there are two or it is one.   I don't care that there is someone

03:44:00 **19** beside you recording.   I don't care whatsoever.   Let him

03:44:04 **20** record.   I am clarifying truth.   And he talks a little bit

-08:-41:-34 **21** about --

03:44:10 **22**                THE COURT:  Who's saying this?

03:44:13 **23**                MR. WITMER-RICH:  It's an unidentified male.

03:44:17 **24**                THE COURT:  What's the probative value there?

-08:-41:-34 **25**                MR. WITMER-RICH:  It --

03:44:23 **1**          MR. BRYAN:  Your Honor, first of all, I think it

-08:-41:-34 **2** must be clear what the government's clip is talking about.

-08:-41:-34 **3** It's talking about bombs and different types of munitions and

03:44:33 **4** things like that.   So then you hear also what is relevant, and

03:44:37 **5** I agree with Mr. Sofer it is relevant because Mohammad Amawi is

03:44:40 **6** constantly typing on the computer at the same time.   They can

-08:-41:-34 **7** see that with the video, Mohammad Amawi typing on the computer

03:44:47 **8** at the same time people are discussing bombs and explosives and

-08:-41:-34 **9** things like that.   So in response to that -- and correct me if

-08:-41:-34 **10** I'm wrong -- in response to that is this clip where this

03:44:59 **11** gentleman is apparently responding to Mohammad Amawi because --

03:45:03 **12**          THE COURT:  That's the whole problem.   We don't

03:45:05 **13** know what has caused him to make that statement.   So --

03:45:09 **14**          MR. BRYAN:  Your Honor, I apologize.   This is

-08:-41:-34 **15** something that is -- has been a concern of mine for a very long

-08:-41:-34 **16** time and that is that I've known that there has been extremely

03:45:23 **17** exculpatory evidence on behalf of Mohammad Amawi that we,

03:45:27 **18** because of coming into the case late, because of literally

03:45:30 **19** having problems with our transcriptions up until -- we didn't

-08:-41:-34 **20** get our transcriptions all in until the government's case was

-08:-41:-34 **21** well in advance and things of that nature.   Then the person who

-08:-41:-34 **22** translated this for us became unavailable as a witness because

-08:-41:-34 **23** of some immigration concerns and problems and things of that

03:45:46 **24** nature.   So scrambling we tried to get our other translator to

-08:-41:-34 **25** be able to listen to this excerpt but because of, again, time

03:45:53 **1** limitations and stuff, we weren't able to locate this excerpt

03:45:57 **2** for her.   But if the government's going to be permitted --

03:46:01 **3**            And January 27 is a very pivotal date in this case

-08:-41:-34 **4** as it relates to what's going on.   The government has played

-08:-41:-34 **5** evidence from January 27, we played evidence from January 27.

-08:-41:-34 **6** And if the government's permitted to play this clip, the

-08:-41:-34 **7** extension of this clip, someone responding to all those things

03:46:19 **8** that were just said, and he addresses Mohammad Amawi as Sadaf --

-08:-41:-34 **9** Agent Coats, or I think it was Darren Griffin actually that

03:46:27 **10** testified Mr. Amawi's PalTalk name is Sadaf.   And the FBI 302

03:46:34 **11** say Mohammad Amawi's PalTalk name is Sadaf.   So, again, we're

03:46:39 **12** not offering it for the truth of matter asserted.  We're

-08:-41:-34 **13** offering it under the rule of completeness because it completes

03:46:46 **14** that clip the government wants to play.

-08:-41:-34 **15**            In addition to that, we would submit that it's not

-08:-41:-34 **16** hearsay because we're not offering it to prove the truth of the

-08:-41:-34 **17** matter asserted -- that is someone is taping him -- but that

-08:-41:-34 **18** that gentleman said that apparently is something in response to

-08:-41:-34 **19** something that Mohammad Amawi typed.

-08:-41:-34 **20**            THE COURT:  That's the whole problem.  We don't

-08:-41:-34 **21** know what it was that person was talking about.   And I think

-08:-41:-34 **22** that the inferential chain is too attenuated to permit that

03:47:14 **23** segment to be played.   If there were some portion of that clip

03:47:24 **24** in which -- and this was -- this is audio, correct me if I'm

-08:-41:-34 **25** wrong, and it may very well be technological incompetence, but

-08:-41:-34  **1**  was it possible for Mr. Amawi to be conversing with this person?

03:47:46  **2**            MR. BRYAN:  Yes, he was.

03:47:48  **3**            MR. WITMER-RICH:  The government's theory, the

-08:-41:-34  **4**  earlier clip we played --

-08:-41:-34  **5**            THE COURT:  I'm sorry.  But if there's nothing in

-08:-41:-34  **6**  that exchange that has Mr. Amawi saying, be careful what you

-08:-41:-34  **7**  want to say or this may be being recorded, or you never know

-08:-41:-34  **8**  what recording's occurring or whatever, but if in the course of

-08:-41:-34  **9**  exchange that evidence isn't there for whatever reason, the

03:48:22  **10**  inferential string that you are trying to attach to this

03:48:28  **11**  evidence, in other words that the speaker was aware because of

03:48:34  **12**  something Mr. Amawi had told him, that recording might be

03:48:41  **13**  occurring, and that Mr. Amawi told him that because he believed

-08:-41:-34  **14**  that Mr. Griffin was an undercover agent engaging in recording,

-08:-41:-34  **15**  the attenuation is Mr. Griffin.

-08:-41:-34  **16**            MR. BRYAN:  I would submit, if we're going to talk

03:49:02  **17**  about January 27, we could play the whole tape of January 27.

-08:-41:-34  **18**  And if you did that you would determine that this is a PalTalk

03:49:09  **19**  conversation that Mr. Amawi is intimately involved in.   And, in

-08:-41:-34  **20**  fact, if you go even further, there's another reference to

03:49:16  **21**  Sadaf:  Oh, poor Sadaf --

03:49:19  **22**            THE COURT:  That may be so.   But even so, even if

-08:-41:-34  **23**  that person -- that person may simply himself apprehend that

03:49:31  **24**  recording is occurring and not caring.   Okay.  I'm sorry, but

-08:-41:-34  **25**  the point I'm making is the chain of inferences that connects

-08:-41:-34 **1** this to what it is you want to establish is simply too

03:49:47 **2** attenuated.   And you've made your proffer, and that's my

-08:-41:-34 **3** ruling.

03:49:51 **4**         MR. WITMER-RICH:  Very briefly, Your Honor.   It's

03:49:53 **5** the same inference that the government is going to ask the jury

-08:-41:-34 **6** to draw in the clip which was played yesterday which is we're

-08:-41:-34 **7** saying what you hear, you know, is being mistranslated.   And

-08:-41:-34 **8** the government is going to claim there's some instant message

-08:-41:-34 **9** conversation going on simultaneously of which we do not have

03:50:10 **10** evidence; the government has no evidence of it and we have no

-08:-41:-34 **11** evidence of it.

03:50:13 **12**         MR. SOFER:  Actually, we do have evidence, Judge.

03:50:16 **13** We have the testimony of a witness that was there.   That's the

-08:-41:-34 **14** evidence.  That's the critical difference, is we had a witness

-08:-41:-34 **15** testify that's what was happening.

03:50:25 **16**         MR. WITMER-RICH:  There is no evidence of the

03:50:27 **17** substance of the conversation that would support the

03:50:29 **18** government's contention of the instant message conversation

03:50:32 **19** supporting the government's contention that he is translating an

-08:-41:-34 **20** instant message conversation, translating what he is hearing

03:50:39 **21** over the audio.   So the government is asking the jury -- is

-08:-41:-34 **22** going to ask the jury to draw that inference, that the substance

-08:-41:-34 **23** of that instant message conversation of which there is no

-08:-41:-34 **24** evidence, is actually what was going on.

-08:-41:-34 **25**         It's the same inference now that we are doing the

03:50:54 **1** opposite of, which is, as Your Honor explained, there is instant

03:50:58 **2** messaging going on, and it was through that medium that Mr.

03:51:01 **3** Amawi notified this individual that he was being recorded.

-08:-41:-34 **4** There is no evidence of that.   The government doesn't have it

03:51:06 **5** and we don't have it.   And the tables essentially are turned

-08:-41:-34 **6** here.  We are now saying that -- that's the same evidentiary

03:51:15 **7** link that is missing, I think, as was in --

03:51:18 **8**            MR. SOFER:  Judge, this is two cases of wanting to

-08:-41:-34 **9** have your cake and eat it too.   They put a witness on who

-08:-41:-34 **10** basically says no, that's not what's happening.   What's really

-08:-41:-34 **11** happening is whatever you can hear is essentially all that's

03:51:32 **12** going on in the computer.   That's what their witness wanted to

03:51:35 **13** testify to.  We now want to rebut that by put anything in

-08:-41:-34 **14** testimony.   They now say no, you have to put in this other

-08:-41:-34 **15** evidence which shows that, in fact, there was something else

03:51:44 **16** going on in the background; which is Mohammad Amawi being able

-08:-41:-34 **17** to instant message or type into the computer instead of talking

-08:-41:-34 **18** into the computer.

03:51:52 **19**            Secondly, the substance of this is --

03:51:56 **20**            THE COURT:  The fact he is typing is clear.

03:52:01 **21**            MR. SOFER:  Yes.

03:52:03 **22**            THE COURT:  So you can make that argument without

-08:-41:-34 **23** having to have this bit on there.   And I remain of the view,

03:52:11 **24** the inferential chain is -- connecting this portion of the clip

-08:-41:-34 **25** to the point you want to make is too long and too attenuated.

03:52:24 **1**            MR. BRYAN: Your Honor, if I may, for the record.

-08:-41:-34 **2** I understand Your Honor's ruling. But just as I may for the

03:52:30 **3** record, part of the problem that we had developing this area and

03:52:33 **4** being in a position to be able to explain it more thoroughly to

-08:-41:-34 **5** Your Honor is the fact that the government's transcript -- and I

-08:-41:-34 **6** would submit it to Your Honor based upon --

-08:-41:-34 **7**            THE COURT: Well, let me simply remind you that

03:52:46 **8** it's my understanding that your client is himself bilingual and

-08:-41:-34 **9** fluent and you had him available to review the various

03:52:58 **10** translations. And I made that point early on in the case.

03:53:04 **11** And that doesn't require your client to testify or in any way

-08:-41:-34 **12** for you to even disclose attorney/client communication because

-08:-41:-34 **13** to the extent there may have been an error or mistake in the

-08:-41:-34 **14** translation that was offered by the government, or even no

03:53:25 **15** translation at all, seems to me that the means are available to

-08:-41:-34 **16** the defense to say -- believe this conversation, this excerpt,

-08:-41:-34 **17** this statement means X.

03:53:38 **18**            MR. BRYAN: Understood, Your Honor. As I told

-08:-41:-34 **19** Your Honor before, the best resource that I have in helping Mr.

03:53:44 **20** Amawi defend himself was Mr. Amawi himself. I would submit for

-08:-41:-34 **21** the record that that never occurred in this case after Mr.

-08:-41:-34 **22** Terez's absence from the case. By the time Mr. Terez left the

-08:-41:-34 **23** case, there weren't any government transcripts yet. And I'm

-08:-41:-34 **24** not -- and the record will become clear at some point in time.

-08:-41:-34 **25** Mr. Amawi's attorneys, the Federal Defender's Office getting

6259

-08:-41:-34    **1**   involved in this case, in fact, refused to go over these tapes

-08:-41:-34    **2**   with Mr. Amawi.   It was only when we got this case very late in

-08:-41:-34    **3**   the game that this process started to occur.  We had a

03:54:20    **4**   tremendous amount of stuff to go over in a short period of time.

03:54:23    **5**   This is something Mr. Amawi shared with me.

-08:-41:-34    **6**        THE COURT:  I don't want to hear anything that

-08:-41:-34    **7**   would disclose attorney/client communication.

03:54:30    **8**        MR. BRYAN:  I understand.   This is something

03:54:32    **9**   defense has been aware of for more than just today, Your Honor.

-08:-41:-34   **10**   It's something that we've had problems with because of the fact

-08:-41:-34   **11**   that -- because of the problems with the translator not being

-08:-41:-34   **12**   able to -- et cetera.   The problem -- or the reason I'm stating

-08:-41:-34   **13**   this for the record is the government provided many, many, many

03:54:54   **14**   Arabic translations of things that were easily heard including

-08:-41:-34   **15**   PalTalk conversations.   I just find it kind of interesting that

-08:-41:-34   **16**   where there is a PalTalk conversation -- audibility is not even

-08:-41:-34   **17**   in question with this, Your Honor.   Where there is a PalTalk

03:55:09   **18**   conversation on a critical date in the case that clearly

-08:-41:-34   **19**   identifies somebody saying to Mr. Amawi, or referring to Sadaf,

03:55:17   **20**   that the government knows is Mr. Amawi's screen name, referring

03:55:21   **21**   to Sadaf, that they -- and it's clearly audible, that somehow

03:55:26   **22**   that the translation was never made.

03:55:28   **23**        I'm submitting for the record, Your Honor, that I

-08:-41:-34   **24**   believe that the government knew that that was there, that

03:55:33   **25**   translation was there.   They knew that it was damaging to their

-08:-41:-34  **1**  case.  What they turned over to the defense was something that,

-08:-41:-34  **2**  in essence, hid exculpatory evidence, that we were able to

-08:-41:-34  **3**  determine.

-08:-41:-34  **4**          THE COURT:  I disagree.  I'm sorry, I think the

03:55:47  **5**  record has been made.

03:55:49  **6**          MR. BRYAN:  Just finally, Your Honor, this is

03:55:52  **7**  critical, I believe, to the theory of our case to show that Mr.

03:55:55  **8**  Amawi was suspicious of Mr. Griffin at an earlier date than when

-08:-41:-34  **9**  his father has introduced this issue of being suspicious.

03:56:03  **10**         THE COURT:  If that's so, then we get back to the

-08:-41:-34  **11**  issue of the other clip, and I excluded that because of the

-08:-41:-34  **12**  temporal disconnect.

-08:-41:-34  **13**         But in any event, that clip is in the record,

-08:-41:-34  **14**  correct?

03:56:16  **15**         MR. SOFER:  All of these clips, Judge, are in the

-08:-41:-34  **16**  evidence that's already been admitted.

-08:-41:-34  **17**         THE COURT:  So they're there for the parties to

-08:-41:-34  **18**  point to and argue.

03:56:27  **19**         The next problem, if any?

03:56:31  **20**         MR. WITMER-RICH:  Nothing, Your Honor.

03:56:33  **21**         THE COURT:  Okay.

03:56:35  **22**         MR. SOFER:  So for the Amawi clips then, I want to

03:56:39  **23**  be clear, it's RB-54-69185-1, RB-43 -- this is from April 7.

03:56:49  **24**  I'm sorry, RB-54-69185-1 was from April 25, RB-43-69185-2 is

-08:-41:-34  **25**  from April 7.  RB-18-69185-5, January 27, '05.  RB-57-69185-4

03:57:17 **1** from April 29, '05, is the Mazloum-related clip.   64-69185-1

-08:-41:-34 **2** from May 6, '05, relates to Mr. Amawi.   And finally, Judge,

03:57:33 **3** 64-69185-3 from May 6, '05, also relates to Mr. Amawi.   That

-08:-41:-34 **4** would be the full extent of the government's rebuttal.

-08:-41:-34 **5**             I would -- once again, it is clear to me, Judge,

03:57:47 **6** that these lawyers are going to argue that at a time prior to

-08:-41:-34 **7** August of 2005, Mohammad Amawi believed Darren Griffin to be

-08:-41:-34 **8** working for the FBI.

03:58:01 **9**             THE COURT:  Is that so?   And if so --

03:58:05 **10**             MR. IVEY:  Your Honor, I'm going to say this again.

03:58:09 **11** Suspicious and potentially making an argument like I did in

-08:-41:-34 **12** opening statement that he saw a financial gain by telling Mr.

03:58:20 **13** Griffin what he wants, I think, is fair game.  We did not

03:58:25 **14** interject that Mr. Amawi knew he was with the FBI.   That is

03:58:29 **15** evidence they brought out, and they called the police officers

-08:-41:-34 **16** to say that.   That's not what I'm saying.  So no, the answer is

-08:-41:-34 **17** no.

03:58:38 **18**             THE COURT:  Also presumptively whatever Mr. Amawi,

03:58:43 **19** Sr., said were based upon a conversation he had while

03:58:48 **20** visiting -- during that visit to Jordan.   Okay.  Let's go to

03:58:53 **21** work.

-08:-41:-34 **22**             MR. DOUGHTEN:  For the record, we want to renew our

03:58:57 **23** 29.  I think we have to do that before the rebuttal.

-08:-41:-34 **24**             THE COURT:  I think you're correct.   I deem all

03:59:03 **25** previous Rule 29 motions made to be renewed.   Thank you.   I

-08:-41:-34 **1** thought about that during one of the breaks.   It will be the

03:59:10 **2** same ruling.

03:59:12 **3**                    MR. BOSS:  Thank you, Judge.

03:59:13 **4**                    THE COURT:  Amy, let's get the jurors.

04:01:27 **5**                    (Jury enters the courtroom.)

04:01:28 **6**                    THE COURT:  Ladies and gentlemen, I apologize.

04:01:31 **7** It's my understanding the government's rebuttal of playing a set

-08:-41:-34 **8** of clips also will take about ten minutes, then we'll adjourn.

04:01:40 **9**                    MR. SOFER:  We've taken some time and we've saved

04:01:44 **10** some time.   If I may go to the podium, Judge.

04:01:49 **11**                    THE COURT:  Uh-huh.

04:01:53 **12**                    MR. SOFER:  Your Honor, at this time the

-08:-41:-34 **13** government's going to play a series of very short clips.   And

-08:-41:-34 **14** then we will rest our rebuttal, please.   The first clip is from

-08:-41:-34 **15** April 25 of 2005 and has been designated RB, which stands for

-08:-41:-34 **16** rebuttal.

04:02:13 **17**                    April 25, 2005 has been designated RB-54-69185-1.

04:02:26 **18** It's probably about 40 seconds long.

04:03:52 **19**                    (Audio is played.)

-08:-41:-34 **20**                    MR. SOFER:  The second clip is from April 7, 2005.

04:03:57 **21** RB-4369185-2.

04:04:20 **22**                    (Audio is played.)

04:06:01 **23**                    MR. SOFER:  I think, am I right, Counsel, that this

-08:-41:-34 **24** was the one that was part of the segment that you also played,

04:06:11 **25** that it's connected?

| | | |
|---|---|---|
| 04:06:13 | 1 | MR. WITMER-RICH:  Yes, I believe so. |
| 04:06:16 | 2 | MR. SOFER:  The next one is from January 27 of |
| 04:06:21 | 3 | 2005.   It's been designated RB-18-69185-5.   It's a video and |
| -08:-41:-34 | 4 | audio recording. |
| 04:06:33 | 5 | (Video is played.) |
| 04:08:07 | 6 | MR. SOFER:  The next clip is April 29, 2005.   It's |
| -08:-41:-34 | 7 | designated 57-69185-4 -- it's actually RB-57-69185-4 is what it |
| -08:-41:-34 | 8 | will be. |
| 04:08:41 | 9 | (Video is played.) |
| 04:08:54 | 10 | MR. SOFER:  The next clip is from May 6, 2005. |
| -08:-41:-34 | 11 | Although it doesn't appear yet on the screen it will be |
| 04:09:02 | 12 | designated RB-64-69185-1. |
| 04:09:17 | 13 | (Audio is played.) |
| 04:10:14 | 14 | MR. SOFER:  The next clip is also from May 6, 2005. |
| -08:-41:-34 | 15 | It's designated 64, it will be RB-64-69185-2. |
| 04:11:35 | 16 | (Audio is played.) |
| 04:11:38 | 17 | MR. SOFER:  The last clip is doing to be designated |
| 04:11:41 | 18 | RB-64-69185-3.   It's also from May 6, '05. |
| -08:-41:-34 | 19 | (Audio is played.) |
| 04:12:47 | 20 | MR. SOFER:  And that, Your Honor, completes the |
| 04:12:49 | 21 | United States Government's rebuttal case.   And we rest. |
| -08:-41:-34 | 22 | THE COURT:  Okay.  And, ladies and gentlemen, that |
| 04:12:58 | 23 | completes the presentation of evidence in the case.   And as I |
| 04:13:02 | 24 | previously indicated, you will resume next Wednesday morning at |
| -08:-41:-34 | 25 | 8:30 with the jury instruction and the government's closing |

04:13:11  **1**  argument.

-08:-41:-34  **2**  In the meantime, I remind you to avoid any exposure

-08:-41:-34  **3**  to any media reports about the case.   Keep an open mind.

04:13:26  **4**  You've heard all the evidence, but you still haven't heard two

-08:-41:-34  **5**  very crucial components that are necessary for you to begin

04:13:34  **6**  deliberations; that is, of course, my jury instructions and the

04:13:39  **7**  parties' closing arguments.   So don't talk about the case,

-08:-41:-34  **8**  don't think about the case, just put it to one side.   Come back

04:13:47  **9**  refreshed and hopefully briefly it will be in your hands.

-08:-41:-34  **10**  Thank you very much.   We'll see you next Wednesday morning.

04:14:27  **11**  (Jury out.)

04:14:40  **12**  MR. IVEY:  Your Honor, at the right time, my team

04:14:43  **13**  jumped on me.  I wanted to make a clarification so there's no

04:14:46  **14**  misunderstanding.   I'd like to do that on the record.

-08:-41:-34  **15**  Mr. Sofer brought up it was clear to him that if

04:15:00  **16**  there's an argument that somehow Mr. Amawi knew Mr. Griffin was

04:15:03  **17**  an FBI agent, they should be able to reopen their case --

04:15:07  **18**  THE COURT:  They should be able to?

04:15:09  **19**  MR. IVEY:  Reopen their case.

04:15:11  **20**  THE COURT:  That evidence is already in the record.

04:15:14  **21**  It's already in the record.

04:15:17  **22**  MR. IVEY:  Pardon me?

04:15:18  **23**  THE COURT:  The evidence that I did not permit them

-08:-41:-34  **24**  to replay is already in the record and it can be used, so it's

04:15:25  **25**  not necessary to, quote, reopen the case.

6265

-08:-41:-34 **1**          MR. IVEY:  Thank you.

04:15:31 **2**          THE COURT:  With regard to your exhibit, when do

-08:-41:-34 **3** you think you'll be -- where is that list?

04:15:37 **4**          MR. WITMER-RICH:  We will give the government all

-08:-41:-34 **5** of the clips that we're going to introduce before we leave

04:15:44 **6** today, so that if they have any objections they can lodge those.

-08:-41:-34 **7** And the remaining exhibits, we'll try to make sure they have a

-08:-41:-34 **8** list of those as well.

04:16:08 **9**          THE COURT:  Now, in terms of -- when will you be

04:16:17 **10** providing jury instructions?   The way I operate is that each

04:16:23 **11** side prepares its proposed instructions and then they're

-08:-41:-34 **12** exchanged.   I expect the parties, and I hope the parties, will

04:16:34 **13** try to work out any disagreements.   And then we sit down

04:16:38 **14** together and I resolve whatever needs to be resolved.   I'd like

-08:-41:-34 **15** to do that tomorrow if at all possible.   As I say, Friday I'm

-08:-41:-34 **16** not here.  Tuesday gets to be a little -- I think those of you

-08:-41:-34 **17** who are presenting closing arguments are going to be amidst in

04:17:02 **18** that.  The jury instructions can make a difference to some

04:17:09 **19** extent.

04:17:10 **20**          MR. WITMER-RICH:  We're not quite done.   I think

04:17:13 **21** we can provide the government with at least a draft copy by late

-08:-41:-34 **22** this afternoon.   Assuming the government can provide what they

-08:-41:-34 **23** have at that point as well.

04:17:22 **24**          MR. TERESINSKI:  We think we'll be done this

-08:-41:-34 **25** evening with ours.   To be clear, this will be the joint defense

-08:-41:-34 **1** jury instructions for all three?

-08:-41:-34 **2**          MR. WITMER-RICH:  Correct.

-08:-41:-34 **3**          MR. SOFER:  We hope to be done with ours either

-08:-41:-34 **4** this afternoon or sometime this evening, certainly by tomorrow

04:17:40 **5** morning.

-08:-41:-34 **6**          THE COURT:  Should we plan to try to get together

-08:-41:-34 **7** sometime tomorrow afternoon?

-08:-41:-34 **8**          MR. SOFER:  That would be fine with the government.

04:17:46 **9**          MR. WITMER-RICH:  I think that makes sense, Your

04:18:03 **10** Honor.

04:18:03 **11**          THE COURT:  How about maybe 1:00 tomorrow

04:18:06 **12** afternoon?

04:18:08 **13**          MR. SOFER:  That's fine with us, Judge.

04:18:26 **14**          THE COURT:  Are the defendants able and willing to

-08:-41:-34 **15** indicate to the government whether any of you anticipate seeking

-08:-41:-34 **16** an entrapment instruction?

-08:-41:-34 **17**          MR. HARTMAN:  On behalf of Mr. El-Hindi we do not

-08:-41:-34 **18** seek an entrapment instruction.

-08:-41:-34 **19**          MR. HELMICK:  On behalf of Mr. Mazloum we will not

04:18:46 **20** be seeking an entrapment instruction.

04:18:48 **21**          MR. WITMER-RICH:  On behalf of Mr. Amawi we will

-08:-41:-34 **22** not be seeking an entrapment instruction.

04:18:54 **23**          MR. SOFER:  We have an application with respect to

-08:-41:-34 **24** Mr. Mazloum, and I'll let Mr. Herdman make it if it's acceptable

-08:-41:-34 **25** to Your Honor.  We can make it without other counsel here.

-08:-41:-34  **1**  It's up to Your Honor.

04:19:07  **2**       MR. HERDMAN:  I'll be brief.   The government would

-08:-41:-34  **3**  move at this time for the Court to review the release order with

-08:-41:-34  **4**  respect to Mr. Mazloum.   This is the conclusion of the evidence

-08:-41:-34  **5**  in case.   Your Honor, when you originally issued the order

-08:-41:-34  **6**  releasing Mr. Mazloum in August, you took into account in

04:19:30  **7**  weighing the evidence against Mr. Mazloum.   The government's

-08:-41:-34  **8**  position is at the completion of the evidence in this case

-08:-41:-34  **9**  there's a substantial likelihood of conviction of Mr. Mazloum.

-08:-41:-34  **10**  The weight of the evidence is substantial.

04:19:41  **11**       Moreover, Your Honor, I would point out during the

-08:-41:-34  **12**  defense case there was evidence elicited from the defense's own

-08:-41:-34  **13**  witnesses with respect to Mr. Mazloum's intent and capability he

-08:-41:-34  **14**  has with respect to returning to Lebanon.   And the government

-08:-41:-34  **15**  at this point in time, Your Honor, based on all the evidence

-08:-41:-34  **16**  that's been presented at trial thus far, formally moves the

-08:-41:-34  **17**  Court to review that release order and to detain Mr. Mazloum.

04:20:07  **18**       MR. HELMICK:  Your Honor, if I may briefly, a few

-08:-41:-34  **19**  things.  First just to respond directly to what the government

-08:-41:-34  **20**  said.  I believe that that evidence with regard to Mr. Mazloum's

04:20:19  **21**  intent is fairly dated.   And the later evidence that was

-08:-41:-34  **22**  brought before Your Honor from September 29, 2005 and January

04:20:28  **23**  30, 2006 indicates that plans were off and that he would be

-08:-41:-34  **24**  seeking -- trying to seek citizenship and that that's the

-08:-41:-34  **25**  evidence that's been presented for the record.

-08:-41:-34  **1**　　　　　　In addition, Your Honor, I'd simply note since his

-08:-41:-34  **2**  release on August 31 of last year there have been no problems

04:20:47  **3**  whatsoever.　I see Mark Miller is here from Pretrial Services

04:20:51  **4**  should the Court have any questions, as I alerted him that the

-08:-41:-34  **5**  government might be making this request today.　He has secured,

-08:-41:-34  **6**  as the Court is aware, an electronic monitor.　He is under

04:21:02  **7**  supervision as a result that.　He has court-appointed

04:21:05  **8**  custodians on his behalf.　There is family and property and

-08:-41:-34  **9**  close family members that have posted on his behalf.　His

-08:-41:-34  **10**  passport and those of his immediate family members has been

04:21:18  **11**  secured.　His passport has been expired, which creates another

04:21:23  **12**  problem as a renewal as a foreign national.

04:21:27  **13**　　　　　　The Court heard arguments last August.　The Court

04:21:30  **14**  devoted two days to hearing on bond on this case on August 30

-08:-41:-34  **15**  and 31 of last year.　You received a mountain of government-

-08:-41:-34  **16**  provided transcripts with regard to their best shot for a case,

04:21:41  **17**  if you will, with regard to evidence that was presented.　The

04:21:44  **18**  Court indicated you had reviewed those transcripts.　You said

-08:-41:-34  **19**  that you were very familiar with the evidence and arguments were

-08:-41:-34  **20**  made by counsel at that time.　There is no mandatory life

04:21:55  **21**  sentence or anything of that kind in this case, Your Honor,

04:21:58  **22**  should the defendant be convicted of either of the two counts or

-08:-41:-34  **23**  both of two counts.

04:22:05  **24**　　　　　　Also I note, Your Honor, this is a particularly

-08:-41:-34  **25**  critical time.　I don't know where the defendant would be

04:22:10 **1** housed if the Court were to revoke his bond. The marshals made

04:22:15 **2** Herculean efforts with Your Honor's assistance to get the other

04:22:19 **3** two defendants placed at the Lucas County jail. If he were

-08:-41:-34 **4** taken now, taken to Milan, it would cause hardship to him and to

04:22:26 **5** us with regard to the preparation of this important closing

04:22:30 **6** argument in this important case. I suggest to the Court that

-08:-41:-34 **7** now is not the time, nor is it warranted, for his bond to be

-08:-41:-34 **8** revoked. Thank you.

04:22:38 **9** THE COURT: I don't think that the risk of flight

04:22:41 **10** has increased to any substantial significant extent than it has

04:22:49 **11** existed pretty much all along or certainly during the course of

-08:-41:-34 **12** the trial as the evidence has come in. And so I will deny that

-08:-41:-34 **13** request.

-08:-41:-34 **14** I'll also note, quite candidly, despite, as firmly

-08:-41:-34 **15** as I am confident in the integrity of this jury and its

04:23:07 **16** commitment to doing the right thing and refraining, I'm as

04:23:14 **17** confident as I've ever been the jury is following the

04:23:18 **18** instructions I've given to it, refraining from exposure to

04:23:23 **19** anything in the media, not talking about the case, I really feel

04:23:28 **20** sort of a bedrock certainty that if ever there was a jury that

04:23:33 **21** has taken its duty and considered only what it should consider,

04:23:36 **22** it's this jury. On the other hand, were I to revoke Mr.

-08:-41:-34 **23** Mazloum's release order today, that no doubt would be published

-08:-41:-34 **24** in the media and draw media attention, and that clearly would

04:23:56 **25** communicate, it seems to me, the possibility that it would

-08:-41:-34 **1** create -- the possibility that the media and anyone exposed to

-08:-41:-34 **2** the media might somehow draw a conclusion about my view of the

-08:-41:-34 **3** weight of the evidence, and that I felt the jury --

04:24:18 **4**              I don't have a view as to the weight of the

-08:-41:-34 **5** evidence.   I've refrained deliberately from developing that

-08:-41:-34 **6** kind of view.  I made clear in my instructions to the jury they

-08:-41:-34 **7** shouldn't try to read my mind and take some direction from me.

-08:-41:-34 **8** Although I think the risk is quite slight that any of the

04:24:37 **9** jurors, A, might be exposed to that or would draw that

-08:-41:-34 **10** inference.  Nonetheless, that is a concern of mine as well.   So

04:24:47 **11** I think that the impediments that would confront Mr. Mazloum in

-08:-41:-34 **12** seeking to flee and accomplishing flight successfully are very

04:24:59 **13** great.  They're not watertight necessarily, but such things

04:25:04 **14** never are.   But I have very little doubt that Pretrial Services

04:25:09 **15** would alert the authorities and the government and counsel

-08:-41:-34 **16** immediately if there were a break in the alarm from the monitor,

-08:-41:-34 **17** and given the security that we all face going through the

-08:-41:-34 **18** airports and so forth, the likelihood that flight could be

04:25:31 **19** accomplished through flight, I think, is very slight.   Under

-08:-41:-34 **20** all the circumstances I don't think it's appropriate to revoke

04:25:45 **21** the bond.

-08:-41:-34 **22**              Anything else?

-08:-41:-34 **23**              MR. SOFER:  That's all, Judge.   Thank you.

04:25:48 **24**              THE COURT:  Thank you.

04:25:49 **25**              MR. DOUGHTEN:  Just a final Rule 29.

04:25:53 **1**          THE COURT:  Pardon me?

04:25:54 **2**          MR. DOUGHTEN:  Just the final Rule 29.

04:25:56 **3**          THE COURT:  Once again, I deem the Rule 29 motions

-08:-41:-34 **4** to be renewed.   And, once again, I will take the arguments

04:26:07 **5** previously made to have been repeated.   And the motion also be

-08:-41:-34 **6** taken under advisement.

04:26:17 **7**          MR. BOSS:  Thank you on behalf of Defendant

04:26:23 **8** El-Hindi.

04:26:23 **9**          THE COURT:  I'll see you tomorrow for the

-08:-41:-34 **10** instructions.   Can you please favor me with copies of whatever

04:26:32 **11** instructions you put together?   Thank you.

**12**                          - - -

**13**

**14**                 C E R T I F I C A T E

**15**

**16**   I certify that the foregoing is a correct transcript from the

**17** record of proceedings in the above-entitled matter.

**18**

**19** /s Tracy L. Spore_____          _____

**20** Tracy L. Spore, RMR, CRR              Date

**21**

**22**

**23**

**24**

**25**

6272

1          I N D E X

2

3

4   ZAKI AMAWI, REDIRECT EXAMINATION                    6196

5   BY MS. CLEARY:

6   ZAKI AMAWI, RECROSS-EXAMINATION                     6199

7   BY MR. SOFER:

8   AHMAD KAMEL MOHAMMAD IBRAHIM, DIRECT EXAMINATION 6200

9   BY MS. CLEARY:

10  MOSUL SULTAN AL-RAWASHDEH, DIRECT EXAMINATION       6210

11  BY MS. CLEARY:

12  MOSUL SULTAN AL-RAWASHDEH, CROSS-EXAMINATION        6220

13  BY MR. TERESINSKI:

14

15

16

17

18

19

20

21

22

23

24

25