6273

1                 UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF OHIO
2                    WESTERN DIVISION

3   UNITED STATES OF AMERICA      Case No. 3:06CR719
                        Cleveland, Ohio
4            Plaintiff,     Thursday, May 29, 2008
                        1:00 p.m.
5      -vs-

6   MOHAMMAD ZAKI AMAWI, et al.,      VOLUME 59
                        Pages 6273-6354
7         Defendants.

8          TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE JAMES G. CARR
9         UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Government:     Thomas E. Getz
                     Justin E. Hardman
12                 Assistant U.S. Attorney
                     801 West Superior Avenue
13                 Cleveland, Ohio  44114
                     (216) 622-3600
14

                     Gregg N. Sofer
15                 U.S. Department of Justice
                     816 Congress Avenue
16                 Austin, Texas  78701
                     (512)  916-5858
17

                     David I. Miller
18                 Jerome J. Teresinski
                     U.S. Department of Justice
19                 10th and Constitution Avenues
                     Washington, D.C.  20530
20                 (202) 514-8714

21  For the Defendant      Timothy Ivey
   Mohammad Z. Amawi:     Jonathan Witmer-Rich
22                 Amy B. Cleary
                     1660 West Second Street
23                 Cleveland, Ohio  44113
                     (216)  522-4856
24

25

6274

1    APPEARANCES:   (Continued)

2

3    For the Defendant          Alek H. El-Kamhawy
     Marwan El-Hindi:           Raslan, El-Kamhawy & Pla
4                               1700 East 13th Street
                                Cleveland, Ohio   44114
5                               (216) 928-1500

6                               Charles M. Boss
                                Boss & Vitou
7                               111 West Dudley Street
                                Maumee, Ohio   43537
8                               (419) 893-2797

9    For the Defendant          Jeffrey J. Helmick
     Wassim Mazloum:            Helmick & Hoolahan
10                              1119 Adams Street
                                Toledo, Ohio   43604
11                              (419) 243-3800

12                              Mohammed Abdrabboh
                                1620 Ford Avenue
13                              Wyandotte, Michigan   48192
                                (734) 283-8405

14

15

16

17

18   Court Reporter:           Judith A. Gage, RMR-CRR
                                7-189 U.S. Court House
19                              801 West Superior Avenue
                                Cleveland, Ohio   44113
20                              (216)  357-7238

21

22

23

24
     Proceedings recorded by mechanical stenography.
25   Transcript produced by computer-aided transcription.

1                   P R O C E E D I N G S

2

3              THE COURT:  You can be seated.  Let's go to

4      work.

5              How are we doing?

6              MR. SOFER:  I'm pleased to report, Your

7      Honor, that we've made much progress.  There are a few

8      issues which we are seeking the Court's guidance and

9      ruling on.  I'm sure counsel will promptly bring to my

10     attention anything that I accidentally skip, but there

11     are a few issues which the Government and/or the

12     defense are still going to look at ourselves, and we

13     may be able to resolve a number of them.  I will try

14     not to bring those to the Court's attention if it is

15     acceptable to counsel, and instead stick to the ones we

16     have a problem with.

17              The first and foremost is probably the First

18     Amendment charge.  Your Honor, the defense is seeking a

19     First Amendment charge in this case.  The Government

20     believes that would be inappropriate for a number of

21     different reasons.

22              THE COURT:  Which -- hold on one minute.  I'm

23     trying to get into my instructions.

24              What instruction number is that on the

25     defense?

1          MS. CLEARY:  Your Honor, it is Instruction

2     Number 31 on Page 47 of our draft.

3          THE COURT:  Okay.  My computer is not

4     cooperating.  Number 31?

5          MS. CLEARY:  Yes, Your Honor.

6          THE COURT:  And you include some citations.

7     The footnote twelve, *Mufid*, it is an '04 case.  Does

8     anyone know anything about that case?  Was there

9     anything reported about that?

10          MR. WITMER-RICH:  Unfortunately, Your

11     Honor --

12          THE COURT:  Was this charge used, or a

13     variant?

14          MR. WITMER-RICH:  My understanding is that

15     this charge -- I'll just quickly -- Dave Doughten was

16     entirely responsible for this charge.  He is now at his

17     daughter's high school graduation, and the rest of us

18     don't know a whole lot about it.

19          My understanding is this charge was used, I

20     don't know if it's the exact, but I'm sure exact parts

21     of this he copied from this case, from the Northern

22     District of Texas.

23          THE COURT:  Well, give me half a second,

24     please.

25          I can't find -- I find his name in Westlaw in

1    the Holy Name Relief Foundation case in Texas.  I

2    assume that is also Northern District.  I have no idea

3    whether that -- do you know whether there was a

4    separate prosecution of him, or do you have any idea?

5              MR. SOFER:  I don't know, Judge.

6              THE COURT:  I mean, I have no idea.  Well, do

7    you know of any cases in which this was, this kind of

8    instruction was requested and not --

9              MR. SOFER:  I know that there are a number of

10   cases where courts have found that a First Amendment

11   instruction such as this is inappropriate, and I can

12   cite the Court to a number of cases.

13             There are two sort of veins to the

14   Government's argument.  There are a series of cases

15   that talk about the fact that a constitutional

16   principle such as this is actually appropriately

17   directed to the Court and not to the jury, and to

18   instruct the jury on constitutional law in effect

19   invites the jury to nullify, to slight the existence of

20   evidence supporting the indictment.

21             Cases that support that concept, Your Honor,

22   would include the *Brochu* --

23             THE COURT:  I tell you what.  I probably am

24   not going to be able to get you an answer to this until

25   sometime Tuesday, so if you will both make -- there may

1    be other issues that I'm going to ask you to do this,

2    but if you both send me any case citations you find

3    between now and, you know, close of business on Monday,

4    because I'm out of -- say 3:00 Monday afternoon.

5            MR. SOFER:  Not a problem, Judge.  We'll do

6    that.  If I may just say --

7            THE COURT:  Go ahead.

8            MR. SOFER:  That one vein is important.  The

9    second vein, which I think is even more germane here,

10   is many of the cases where this kind of instruction is

11   given are cases in which the defendant published or

12   distributed to the public or in a public forum or in a

13   semi-public forum certain materials --

14           THE COURT:  In other words, he entered the

15   marketplace of ideas, and criminal charges resulted.

16           MR. SOFER:  Exactly.  And it was the speech

17   itself that is in the marketplace of ideas, or some

18   sort of speech inciting some sort of action in

19   particular that was the subject of the prosecution.

20           THE COURT:  In other words, excuse me, but

21   had these defendants, for example, gone out to the mall

22   and passed out flyers, "sign up for jihad"?

23           MR. SOFER:  Indeed, or posted things on the

24   Internet, perhaps, which was not the subject of this

25   particular prosecution.

1              To term a Latin phrase, I believe, Your

2      Honor, a *fortiori*, the conspiracy charge in this case,

3      because of what it requires the Government to prove,

4      because there must be an overt act, because there must

5      be an agreement, because the elements of conspiracy

6      must be met, would necessarily then preclude the jury

7      from convicting the defendants for something that was

8      First Amendment protected speech.

9              And on top of that, Judge, given the fact

10     that there's an 842(p)(2)(A) charge here, which is the

11     distribution of a particular kind of information, and

12     the fact that you have a conspiracy here, which is,

13     again, a particular type of interaction, the Government

14     believes this would be -- this would radically confuse

15     the jury.

16             One interesting point along the same line,

17     the 842(p)(2)(A) charge, which there was much debate

18     about in the Senate when it was passed, where people

19     thought it could infringe on the First Amendment, the

20     statute has written into it the fact that you must

21     transfer or distribute this information with the intent

22     that it further a Federal crime of violence.  This was

23     debated at length, I believe, in the creation of the

24     legislation, and the same concept applies to the

25     conspiracy charge in this case.

1            We will provide the Court with either a brief

2     or some cases --

3            THE COURT:  Well, I think nothing more

4     elaborate than a brief memo.  Candidly, the shorter the

5     better.  I'm not going to have much time -- I don't

6     have time to read a 20-page brief and you don't have

7     time to write a 20-page brief.

8            MR. SOFER:  Yes, Judge.  But it is really

9     important to the Government.  We think this is fraught

10    with danger in terms of confusion to the jury.

11           MR. WITMER-RICH:  Just very briefly, I would

12    submit that there are very important concepts in this

13    that are really critical to the defense, and for the

14    jury to understand, without regard to pure element or

15    not, that, you know, that association with particular

16    individuals themselves is not, you know, and so forth,

17    and that advocacy of certain ideas alone is not a

18    crime, and we also seek to provide Your Honor with case

19    citations --

20           THE COURT:  I think I told the jurors that

21    certainly watching these videos was not criminal, and I

22    think -- I think at least some of them espousing

23    unpopular views is not criminal, and to the extent that

24    I might be inclined to grant this kind of -- that sort

25    of instruction, I'm not sure I would dress it up with a

 1    lot of First Amendment reference.  I would simply say

 2    "Ladies and gentlemen, in order to convict, you have to

 3    meet all" -- you know, "the Government has to persuade

 4    you beyond a reasonable doubt of each and every single

 5    element, and the mere advocacy of unpopular ideas or

 6    even conduct that you might find to be offensive or

 7    undesirable in discussing such conduct with others is

 8    not criminal unless the Government proves that the

 9    crime as defined in this or these instructions

10    occurred."

11            MR. WITMER-RICH:  Understood, Your Honor.

12            THE COURT:  Something like that.

13            MR. SOFER:  And I would just note, Judge,

14    we'll go through some of this.  Some of what counsel

15    wants is already in the conspiracy instruction.

16            THE COURT:  All right.

17            MR. SOFER:  So including just mere

18    association or presence with --

19            THE COURT:  That is standard conspiracy law.

20            MR. SOFER:  So we'll do that, Judge.

21            If we can, Judge, I would like to try to go

22    through these as quickly as possible.  We will again,

23    and I ask defense counsel, please tell me if I skipped

24    over something that we need to bring to Your Honor's

25    attention.

1          The first issue that I have that we wanted to

2     notify the Court was on Page 7 of the Government's

3     submitted proposed jury instructions, which is Jury

4     Instruction Number 6.  It deals with recordings and

5     transcripts of recordings.

6               THE COURT:  Give me half a second, please.

7               Page?  Whose set of instructions?

8               MR. SOFER:  By the way, I think we've agreed,

9     and again, counsel will stop me, but because we agreed

10    more often than not that the Government's instructions

11    were acceptable, so we don't end up creating some new

12    multi-colored document for Your Honor, we'll go with

13    the Government's set of instructions.  We'll modify

14    them in accordance with whatever changes we agree to,

15    or whatever Your Honor tells us to.

16               This is again instruction number six.  It

17    deals with recordings and transcripts, and we're

18    talking specifically about the second sentence and

19    third sentence, which state "the use of these

20    procedures to gather evidence is lawful, and the

21    Government is entitled to use these conversations in

22    this case.  Accordingly, these recordings are a proper

23    form of evidence that may be considered by you, just as

24    any other evidence."

25               The defense, I believe, objects to the

1    inclusion of this language.

2          THE COURT:  What if I were to do this?  In

3    the first sentence "during this trial, you heard

4    lawfully-obtained audio and video recordings."

5          MR. SOFER:  That would be fine with the

6    Government, Judge.

7          THE COURT:  And I can see deleting the two

8    sentences.

9          MR. WITMER-RICH:  We would object to the

10   "lawfully obtained."  It simply emphasizes -- all of

11   the evidence presented to the jury in this case has

12   been determined by Your Honor to be legally admissible,

13   and it gives emphasis to one --

14         THE COURT:  Yes.  Why not?

15         MR. SOFER:  The reason for this instruction,

16   the reason this kind of language is often included in

17   this instruction is that the jury, the jury doesn't

18   really know that.  The jury doesn't know whether there

19   is something untoward about recordings and the way they

20   are recorded.  So in some way, and again, we're not

21   asking for a lot of language about this, but I do think

22   it is appropriate to tell the jury that this was not

23   done illegally, this was not Darren Griffin violating

24   the law in some way.  Counsel has beat up on Darren

25   Griffin quite a bit in this case.  You take that plus

1   the notion of a secretly recorded conversation, and I

2   think you end up with an inference that's unfavorable

3   to the Government.  Again, we're not asking for much of

4   a retort to that, but something from the Court that

5   indicates that this technique is very common, perfectly

6   appropriate, and lawfully conducted.

7           The jury doesn't know -- I mean, when you

8   read about Linda Tripp going to jail or something for

9   having violated a state statute, for instance, even

10  though it is a professional recording, the jury is not

11  going to be able to parse that out.

12          MR. WITMER-RICH:  I would argue omitting the

13  two sentences we objected to.  We still want an

14  instruction that tells the jury a little bit about the

15  recording that says they were done with the knowledge

16  and consent of Mr. Griffin --

17          THE COURT:  Where is that?  Point me to that.

18          MR. WITMER-RICH:  The first sentence --

19          THE COURT:  Where?

20          MR. WITMER-RICH:  Government's instruction --

21          THE COURT:  The same instruction?

22          MR. SOFER:  Same instruction.

23          MR. WITMER-RICH:  Correct.

24          THE COURT:  First paragraph, second

25  paragraph?

1              MR. WITMER-RICH:  In the first paragraph,

2     which starts with "during this trial."

3              THE COURT:  Okay.

4              MR. WITMER-RICH:  And we want to delete the

5     second and third sentences only, and if we were to do

6     so, we would still be left with an instruction that

7     talks about the recordings and says a few things about

8     how the jury may consider them.

9              I would argue that that pretty much negates

10    the fear that Mr. Sofer expressed that the jury somehow

11    will think these are improper or illegal, because the

12    Court specifically, while not drawing specific

13    attention to the fact --

14             THE COURT:  Where do you think this is sort

15    of alluded to?

16             MR. WITMER-RICH:  First it says they were

17    done with the knowledge and consent of one of the

18    parties, Mr. Griffin --

19             THE COURT:  Where?  Again, where are you

20    reading?

21             MR. WITMER-RICH:  First sentence, Your Honor.

22             THE COURT:  Okay.

23             MR. SOFER:  And Your Honor, if the defense

24    thinks the two sentences are too much, then to

25    compromise with Your Honor's suggestion, just putting

1    the one word at the top and omitting the two

2    sentences --

3             THE COURT:  For now, I'm going to do that.

4    If you want me to revisit that, if you have some

5    authority that says that that is -- the other thing I

6    would suggest to you, if you want to suggest as perhaps

7    an alternative, I assume that somewhere in here there

8    is a "what is evidence" kind of instruction, and if you

9    want, perhaps, to have me say something in there, you

10   know -- I do tell them, I'm sure, if you use the

11   boilerplate, that you are entitled to consider all the

12   evidence or you should consider all the evidence, and

13   perhaps something to the effect that it has been

14   presented to you, it should be taken by you as an

15   indication that it has been lawfully obtained and

16   acquired and presented for your consideration.

17           If you want to think about something like

18   that, that diminishes the kind of highlighting on this

19   that I think is of concern to you, and I -- I don't

20   think it is such a bad idea to tell the jury, you know,

21   as a matter of law, this stuff was always -- this is

22   all properly in front of you.  There are times, I'm

23   sure, when jurors kind of wonder, even with an ordinary

24   search and seizure, they see these cop shows with

25   people being shoved down face first on the ground, and

 1    I think -- I agree with Mr. Sofer that I think there is

 2    a lot of -- I think on the part of some jurors, and it

 3    wasn't something we really questioned them about, I

 4    think there is kind of this, "Oh, that is kind of

 5    nasty".

 6              I don't think it is entirely inappropriate to

 7    say, but it is okay.  So why don't you fuss with that,

 8    if you want to propose that as kind of an alternative

 9    to this.

10              For now, delete those two sentences in your

11    working drafts, and in the first line, between the word

12    "conversations" and "recorded," insert "lawful."

13    That's tentative, but I think you see where I'm headed.

14    I think that would fit better in that sort of general

15    "what is evidence," and add a sentence there that says

16    "the evidence presented to you by the parties is

17    lawfully before you."  Maybe even something as simple

18    as that.

19              In fact, I would suggest that as an

20    alternative.  I think I would prefer that.  Because

21    that also indicates that regardless of any wrangles

22    that preceded it, any objections, it is a little less

23    emphatic in what it is talking about.  And that would

24    be an agreeable alternative to inserting "lawfully"

25    here to the Government.  Let them know after you think

1    about it.

2            MR. SOFER:  We'll take a look and talk.

3    We're going to end up talking anyway.

4            THE COURT:  Next?

5            MR. SOFER:  We had a disagreement on Jury

6    Instruction Number 7, which is on Page 9 of the

7    Government's proposed instructions.  Similar concept,

8    Your Honor.   This had been actually discussed I think

9    at side bar.  There were various objections raised,

10   some of it sort of implied.

11           THE COURT:  You know, candidly, I think that

12   is probably something you can mention in argument.  It

13   seems to me it is more argument.  Anything we didn't do

14   is not evidence, and that we didn't do something is so

15   what, ladies and gentlemen?

16           MR. SOFER:  Understood.  The defense wants

17   part of this charge, as does the Government, but they

18   want it dissected in a way that would lead the

19   Government to say exactly what Your Honor just did.  So

20   our position is if they win on the "take this line

21   out," we want the whole thing withdrawn.

22           MR. WITMER-RICH:  And I would be content with

23   the whole thing in.  I'm content with this instruction

24   as it is.

25           THE COURT:  Somebody tell me what is going on

```
1    then.  The Government is proposing it be withdrawn and
2    he likes it the way it is.
3               MR. EL-KAMHAWY:  If you look at Government's
4    Exhibit 7, on Page 8 --
5               THE COURT:  Number 7?
6               MR. EL-KAMHAWY:  Correct.  Government 7.
7               THE COURT:  I have it on Page 10, actually.
8               MR. EL-KAMHAWY:  If you march three lines up
9    from the bottom, the beginning of the sentence "in that
10   respect, law enforcement techniques are not your
11   concern."
12              THE COURT:  Is that -- you want that out or
13   in or what?
14              MR. EL-KAMHAWY:  We would like this out, Your
15   Honor, because it basically takes out of the providence
16   of the jury attributing certain weight to certain
17   Government techniques, how to extract information or
18   how to gather information.  I think it is within the
19   providence of the jury to decide what if any weight or
20   what if any credibility to attach to the evidence
21   presented by the Government as it relates to the
22   technique that was used in obtaining this information,
23   to instruct the jury they should not worry about how
24   this information came into the light.  I think it is
25   violation of the Fourth Amendment, you know.
```

 1          MR. SOFER:  And Judge, I think that's a

 2   misstatement of the law, but our position is simply if

 3   that sentence is out, we would ask that the Court not

 4   give this instruction, because what it ends up doing is

 5   slanting it so much that it ends up being more

 6   prejudicial than helpful in any way.  Let me look at

 7   it, now that I at least understand what the fuss is

 8   about.

 9          What if I were to substitute something along

10   the lines, instead of that sentence, to substitute for

11   it "whatever the Government might not have done, and

12   what evidence it might have developed is not to be

13   considered by you."  Does that fix the problem?  I

14   don't understand the problem, so I'm not sure.

15          MR. WITMER-RICH:  That's precisely the reason

16   we like the instruction at least in its entirety.  The

17   first sentence says, "You have heard reference to the

18   fact that certain investigative techniques were used.

19   You may consider these facts in deciding whether the

20   Government has met its burden of proof."

21          Certainly, our office has argued in many

22   cases the Government's failure to do X, Y and Z is

23   something you should consider in determining whether

24   they have met their burden, and the Government is not

25   legally required to do X, Y and Z.  The instruction

1   tells them not, but the Government's failure to use

2   investigative techniques they could have used is

3   relevant and the jury may consider that.

4           Again, the instruction says they are not

5   legally required to do so, it makes that very clear,

6   but for us -- it is important that we're permitted to

7   argue that the Government could have done X and they

8   didn't do X, and you may consider that in deciding

9   whether this evidence, the Government has carried its

10  burden.

11          MR. SOFER:  And I think, Judge, that is

12  not --

13          THE COURT:  Are you sure?  That is not

14  evidence.  It leads them to speculate well, you know,

15  if they had, you know -- I don't know, put a bug in the

16  dining room table at the social club in Little Italy, I

17  mean, it leads the jury to kind of speculate, and

18  distracts them from considering the evidence.

19          MR. WITMER-RICH:  I think it is like a case

20  where --

21          MR. EL-KAMHAWY:  Your Honor, we withdraw the

22  objection.

23          MR. WITMER-RICH:  Defense lawyers often argue

24  they didn't take fingerprints off the gun, and I think

25  that's a common argument.

1          THE COURT:  Okay.  I understand.  I mean,

2     there is a difference, I think, between that and --

3     well, whatever.  I think the objection was just

4     withdrawn, in which case there is no fuss.

5          MR. SOFER:  Well, there will be a fuss if

6     that argument certainly is advanced and they point to

7     this jury instruction as some sort of justification for

8     making that argument for the very reason Your Honor

9     just stated.

10         THE COURT:  But I think the sentence that you

11    wanted in is still in.

12         MR. SOFER:  I understand, Judge.  All I'm

13    saying is --

14         MR. WITMER-RICH:  He is anticipating an

15    objection in closing argument.

16         MR. SOFER:  I object to them making that

17    argument if that's what they are trying to do to the

18    jury.

19         MR. WITMER-RICH:  And I'm saying I'm here

20    trying to represent an instruction we want without

21    knowledge of how the closing argument is going to be

22    phrased.

23         THE COURT:  I will deal with any objection in

24    the argument when it is raised.  That is next week.

25    This is today.

```
 1              MR. SOFER:  I understand.  I think we killed

 2     this bird, Your Honor, so to speak.

 3              THE COURT:  No.  He is still in full flight.

 4     Next?

 5              MR. SOFER:  The next place --

 6              THE COURT:  I don't think I have ever had a

 7     lawyer shoot at his own instruction, but that's okay.

 8     Lots of firsts in this case, including one when it ends

 9     earlier than advertised.

10              MR. BOSS:  It is not over yet.

11              THE COURT:  I know that.  You are not going

12     to argue for six weeks, though.  Go ahead, Mr. Sofer.

13              MR. SOFER:  The next instruction is Jury

14     Instruction Number 13 on Page 16 of the Government's

15     proposed jury instructions.

16              THE COURT:  Number 13?  Okay.

17              MR. SOFER:  It is "testimony of a cooperating

18     witness."  We agreed to change it to "testimony of a

19     paid cooperating witness."

20              The defense has asked for the removal of a

21     number of different sentences here, and the Government

22     disagrees strongly with the removal of these particular

23     provisions.

24              Firstly, again, I'm sure counsel will correct

25     me if I am missing something, in the second paragraph,
```

1   the third sentence, the line is "in assessing this

2   testimony, however, you should consider whether, and

3   the extent to which the witness' testimony may have

4   been influenced by what benefits he may have received."

5   I won't read the rest of it.

6           THE COURT:  Hold on.  I'm sorry.  I just got

7   an E-Mail I have to respond to.  Give me half a minute.

8           MR. SOFER:  Okay.

9           THE COURT:  Sorry.

10          MR. SOFER:  That's quite all right, Your

11  Honor.

12          THE COURT:  Okay.  I apologize.

13          MR. SOFER:  This is Page 16, Your Honor, Jury

14  Instruction Number 13.

15          MR. BOSS:  Mr. Sofer's edition is not the

16  same.  Maybe you can just follow the instruction.

17          MR. SOFER:  I think, Your Honor, I don't know

18  whether it is working for Your Honor or not --

19          THE COURT:  Page what?

20          MR. SOFER:  16, Jury Instruction Number 13.

21          THE COURT:  Okay.  I have it.  For some

22  reason, there is a peculiar page break.  Okay.

23  Cooperating witness.  Gotcha.  Okay.

24          MR. SOFER:  Now, we agreed, again, to change

25  this to "paid cooperating witness."

1          THE COURT:  Okay.

2          MR. SOFER:  The sentence in question, or one

3    of the sentences in question is "in assessing this

4    testimony, however, you should consider whether and the

5    extent to which the witness' testimony may have been

6    influenced by what benefits he may have received," and

7    it goes on.

8          The defense had objected to the word

9    "however" and the words "and the extent to which."

10   They want all that out, and just that sentence they

11   would like to read "in assessing this testimony, you

12   should consider whether the witness' testimony may have

13   been influenced."

14         This is, I understand, a relatively minor

15   point, but the Government does believe that this

16   qualifying language is important, and I think the

17   general issue we have here is -- and this will apply to

18   the other two objections that the defense has -- the

19   defense believes that there is -- we think that this

20   instruction talks about sort of things that are

21   different about a paid witness, but should also include

22   some of the things that are the same about a paid

23   witness.

24         For instance, the fact that "you should

25   consider his testimony in light of all the evidence

1  presented in the case," the defense also thinks that

2  should be removed, and the last sentence, which says --

3  THE COURT:  I don't think that should be

4  removed.

5  MR. SOFER:  I'm sorry, Judge?

6  THE COURT:  I don't think that should be

7  removed, because that is "consider all the evidence in

8  light of all the other evidence."

9  MR. SOFER:  Again, I think that's the --

10  again, they will correct me if I'm wrong -- the

11  ideological difference we have is that this should be

12  an even instruction.  It does say that specifically,

13  that you should consider this testimony with more

14  caution than the testimony of a witness --

15  THE COURT:  And that's standard.

16  MR. SOFER:  But it should also, the

17  Government believes, include the things about a

18  cooperating witness' testimony that are the same as

19  other witnesses.  Specifically, this may be the most

20  important disagreement, is the last sentence, that says

21  "just as with any other witness, you cannot find the

22  defendant guilty beyond a reasonable doubt solely on

23  unsupported testimony of such a witness standing alone,

24  unless you believe the witness' testimony beyond a

25  reasonable doubt."

1            Same concept.  We think it should be in

2    there, because it shows what is similar about it.

3            THE COURT:  Has this come from any standard,

4    *Devitt & Blackmar*, *Sand*, or anybody like this?

5            MR. SOFER:  This was adapted from the Sixth

6    Circuit pattern jury instruction as well as Your

7    Honor's instruction, I think it was Your Honor's

8    instruction in *United States versus Michael Baker* from

9    November 30, 2007.  We did add some small snippets of

10   language to this, but it was an attempt at what we

11   thought would make it an even handed instruction.

12           THE COURT:  They made you take out the brave,

13   loyal, devout Darren Griffin.

14           MR. TERESKINSKI:  May I add, Your Honor, the

15   reason we went to the other case, the instruction in

16   November of '07, the case of the *United States versus*

17   *Michael Baker* is because the actual pattern instruction

18   doesn't really kind of contemplate sort of

19   Mr. Griffin's situation.  He is not necessarily just

20   a -- he is not a paid informant, he is a cooperating

21   witness that happens to be paid.  So we looked to Your

22   Honor's language in *Baker* for cooperating, and that's

23   why we put the other language in.

24           MR. WITMER-RICH:  I mean --

25           THE COURT:  What does the pattern say?

1           MR. WITMER-RICH:  The pattern for the -- the

2  Sixth Circuit pattern for testimony of a paid informant

3  in relevant part says --

4           THE COURT:  I would much prefer to abide by

5  the pattern.

6           MR. WITMER-RICH:  That would be great with

7  us.

8           THE COURT:  It is risky.  Even if I gave it

9  before, I probably didn't have, you know, argument

10  about it.  I may have just thrown it in there and

11  invented it, I don't know, but --

12           MR. WITMER-RICH:  We would submit the pattern

13  would be perfect for us.

14           THE COURT:  Talk between the two of you.  I

15  will -- my strong inclination is to simply insert the

16  pattern, especially if it relates to paid payments to a

17  witness.

18           MR. WITMER-RICH:  Thank you, Your Honor.

19           THE COURT:  Okay?  When in doubt, go with

20  what they tell you to use.  Not even when in doubt.

21  Okay.

22           So you guys talk to each other, and if there

23  is a fuss about it, let me know.  Would you send me --

24  if you are still fussing about this, send me, with

25  whatever you send me, send me the pattern, because I

1    don't have it at home, which is where I will be.

2            MR. WITMER-RICH:  Yes, Your Honor.

3            MR. SOFER:  The next section, Your Honor,

4    where there is a series of issues relates to the -- and

5    again, I believe this was debated the first time, in

6    the preliminary jury instructions, the name of the

7    statute, 2339(a), which is conspiracy to provide

8    material support or resources to terrorists.  We've

9    referenced that in every place where we've discussed

10   the statute.

11           MR. WITMER-RICH:  Which I think is twice.

12           MR. SOFER:  Which is at least twice, maybe

13   more than that.  I'm not going to go through it all.

14   We've identified two instructions.  The first one --

15   and Your Honor, the point I think I would make here,

16   Your Honor, is first of all, Your Honor has already

17   given this instruction to the jury.  That was the

18   preliminary instruction on the charge to conspiracy to

19   provide material support or resources to terrorists,

20   and we thought it was correct then and we still think

21   it is correct.  The jury has already heard it.  It has

22   been given, I believe, in a number of other cases

23   around the country, and I don't believe that the

24   defense would have objection to it.

25           MR. WITMER-RICH:  The objection is to the

1    word "terrorists," which appears in the title of the

2    statute but does not appear in the elements of the

3    offense in any of the crimes.  There is no definition

4    of what terrorists are, so it simply kind of casts a

5    pall over the case that is unrelated to the legal

6    elements of the case at all.  The case is about

7    providing material support and resources in furtherance

8    of specified crimes, and that's specified in the

9    instruction --

10              THE COURT:  What did I do before?

11              MR. WITMER-RICH:  I do not recall what you

12   did in the preliminary instructions, Your Honor.

13              The Government represents that it was -- that

14   it was described as conspiracy to provide material

15   support or resources to terrorists.

16              MR. SOFER:  It was, Your Honor.

17              THE COURT:  Excuse me.  I believe the caption

18   is part of the statute as a matter of law.

19              MR. SOFER:  That's what I wrote in here.

20   Blame Congress is what I wrote.

21              THE COURT:  If you want to say that in front

22   of the Sixth Circuit, that's fine.

23              I'm going to abide by what I did before, and

24   I'm going to -- I can't recall whether you objected at

25   the time.  Even if you didn't, I don't consider that to

1    be a waiver of your right to object now and for me to

2    think about it again, but for two reasons I'm going to

3    overrule the objection.  Three reasons.  Number one,

4    that is what I did before.  The first reason really is

5    because it is my understanding that the title is part

6    of the statute.  It is an enactment by Congress.  It is

7    not some commentary, it is not like the Mann Act is the

8    shorthand or whatever for that statute.  This is in the

9    statute itself.

10           Secondly, it is what I did before, and

11   thirdly, I think, quite candidly, I tried to emphasize,

12   and over the Government's objection, that this is not a

13   case involving foreign-based terrorism or whatever, so

14   I think there is a counterweight to that concern.  And

15   I think that you are and you will be able to argue, if

16   you want, ladies and gentlemen, you know, you have

17   heard the statute referred to as providing material

18   support to terrorism; terrorism has nothing to do with

19   the elements of the statute.  You have to decide the

20   case, as the Court told you, solely on the basis of the

21   elements and the law.

22           MR. WITMER-RICH:  And respectfully, that is

23   an argument I would make to Your Honor.  I don't think

24   it is a particularly effective argument for a jury.

25   And again, I just would lodge a strong objection to

1    this.  It is the title of the statute, which I think

2    the case law, you know, consistently acknowledges is

3    not -- you know, it does not modify the element of the

4    statute, does not give meaning to the element of the

5    statute.  It is simply to be ignored when construing a

6    statute --

7              THE COURT:  If you want to propose some

8    moderating language to go in there, you can do so.  In

9    other words, that would say something to the effect --

10   let me --

11             MR. WITMER-RICH:  The statute doesn't specify

12   who is receiving the material support, and in that

13   sense it is slightly awkward.  So you don't have to

14   prove who is receiving the material support.

15             THE COURT:  I understand.

16             MR. WITMER-RICH:  You just have to prove what

17   the material support is in furtherance of.  The

18   conduct.

19             THE COURT:  What number are we talking about?

20             MR. WITMER-RICH:  We're talking about

21   Government Jury Instruction Number 16.

22             MR. SOFER:  If I could just --

23             THE COURT:  Let me take a look at that.

24   Well, 16.  Yes.  Okay.

25             (Discussion off the record.)

1          THE COURT:  I'm sorry.  Let me take a quick

2     look at that.

3          MR. SOFER:  I'm sorry.  Your Honor is looking

4     at 2339(a)?

5          THE COURT:  Let me look at the instruction.

6     What's the other instruction?

7          MR. SOFER:  It is found also in 17, which is

8     multiple -- every time you list a charge --

9          THE COURT:  Let me suggest that it is --

10     perhaps 16, perhaps the second sentence read "the

11     caption to the statute under which the defendants --

12     the criminal conduct -- "the statute under which the

13     criminal conduct charged against the defendants, the

14     caption reads," or something like that.  Would that --

15          MR. WITMER-RICH:  I would propose you simply

16     delete the word "to terrorists" and it adequately

17     describes the charge.  It is conspiracy to provide

18     material support or resources.

19          MR. SOFER:  And Judge, that sort of takes the

20     whole meaning out of it.  Again --

21          THE COURT:  I understand.

22          MR. SOFER:  The Court has, over the

23     Government's objection, made numerous --

24          THE COURT:  Time out.  I'm going to let you,

25     if you have some legal basis for me to change my mind,

 1    but I'm going to leave it.  I'm inclined to.  Or if you
 2    want to provide something, some kind of alternative
 3    formulation for me to consider along the lines that I
 4    was trying to before I, Any and I were talking for a --
 5    moment --
 6             MR. SOFER:  Judge, the point is --
 7             THE COURT:  I understand.
 8             MR. SOFER:  I'm sorry.
 9             THE COURT:  I understand.  I'm saying I'm
10    leaving this the way it is.
11             MR. SOFER:  I understand.
12             THE COURT:  For now.  I think we ought to
13    probably envision perhaps a phone conference Tuesday
14    afternoon, maybe around 4:00.
15             MR. SOFER:  Fine, Judge.  Again, I would note
16    for the record, Your Honor, given this instruction, you
17    have given multiple instructions, which I think --
18             THE COURT:  And that's exactly why I'm
19    disinclined, and certainly, though, if you have case
20    law that says it is error to incorporate a caption, A
21    or B, to incorporate the caption where the caption,
22    there is some disconnect between the caption and the
23    content of the statute, then fine.  But for the three
24    reasons I indicated, consistency, my understanding is
25    that the caption is part of the statute, and also, I

1   think the counterbalancing statements that I have made

2   to the jury, which I think you are entitled to remind

3   the jury of, "The Judge has told you, ladies and

4   gentlemen, this is not a case about Al-Qaeda coming

5   into northwest Ohio and recruiting."  I think the jury

6   understands that.  I think, you know, there is nothing

7   in the case about any particular group or organization.

8   They tried, even anticipated being affiliated.  I mean,

9   the most I think the Government has shown is a desire

10  to go overseas and hook up with somebody and do some

11  things that the Government considers criminal.

12          MR. SOFER:  Again, Judge, we disagree with

13  that statement by the Court.

14          THE COURT:  I know you do.

15          MR. SOFER:  I don't want to go through that

16  again.  I ask that you not repeat that instruction,

17  certainly, before we get to sum up the evidence --

18          THE COURT:  I intend to read what's here, and

19  that's it.

20          MR. SOFER:  But nevertheless, at the very

21  least, the weight of those repeated statements to the

22  jury I think pummels this.  Just mentioning the name of

23  the statute into something that is far from harmful --

24          THE COURT:  I agree with you.  Okay.

25          MR. SOFER:  The next issue, Your Honor --

```
 1              THE COURT:  The one point that might cause me
 2    to change my mind, and I will not do so with finality
 3    until we talk, is if they say, Judge, here is the
 4    United States versus Smith, a 2007 Sixth Circuit case,
 5    that said there is a syntactical disconnect between the
 6    elements of the crime and the caption of the statute
 7    where after a three month trial, the Judge got
 8    reversed.  Then I might change my mind.
 9              MR. SOFER:  We might, too, Judge.
10              THE COURT:  Anyway, go ahead.  Next?
11              MR. SOFER:  The next jury instruction is Jury
12    Instruction Number 18.  It was on Page 22.  It is on
13    Page 22 of the document I have, which means it is
14    certainly close to that.
15              THE COURT:  I've got it.  I'm going by jury
16    number.  How many more do we have?  I'm just curious.
17              MR. SOFER:  We don't have that many more.
18    We're going to have -- the biggest issue relates to the
19    conspiracy under two specific conspiracy charges.
20    That's where the rubber will meet the road.  These are
21    relatively minor issues, I think.  But I think we
22    certainly can get through them in the next half hour or
23    hour, if we can move quickly.
24              THE COURT:  Okay.
25              MR. SOFER:  Here, Judge.  This is a jury
```

1    instruction which relates to the general concept of

2    conspiracy law, and the first objection that the

3    defense has lodged relates to the third sentence in the

4    first paragraph, which says "common sense tells you

5    that when people agree to enter into a criminal

6    conspiracy, much is left to unexpressed understanding."

7    Every conspiracy charge I have ever heard has something

8    like that.

9              THE COURT:  What does the pattern say?  Here

10   again, there is a Sixth Circuit pattern instruction.

11   Even though there might be some difference, even if it

12   would only be syntax and diction rather than substance

13   between what I gave before, what the pattern says --

14             MR. WITMER-RICH:  Part of -- I don't believe

15   this is in the pattern, but I'm not positive.  I would

16   say that part of the difficulty here, which I'm sure

17   Mr. Sofer will elaborate on soon, is there are two

18   conspiracy charges and they have different elements.

19   The one does not have an overt act element and the one

20   does.  They are different.  So part of what the

21   Government has done, and we are trying to kind of work

22   to see how we can work with that, is to see how to

23   structure the charge in a certain way that does not

24   fall exactly within the Sixth Circuit patterns, which

25   is why we're -- why we have the deviation at this

1   point.

2           MR. SOFER:  Judge, if I may -- I'm sorry.  To

3   explain the structure concept, in an attempt to do this

4   efficiently, what we did was we tried to capture in

5   this first section -- and it probably does go beyond

6   what the Sixth Circuit says, but it includes points

7   that I think are directly related to the case, so to

8   just take a bold, simplistic conspiracy charge I think

9   would be problematic for a whole lot of different

10  reasons.  Specifically, in light of the two statutes

11  that then follow.

12          What we tried to do is have a general section

13  on conspiracy law which would apply to both statutes,

14  and then because the two statutes have different

15  elements and because one requires an overt act and one

16  does not, because one says, I think, "willful" and the

17  other says "knowing," there is a slightly different

18  mens rea requirement.  If we tried to do that in one

19  generic section, we would have defeated the specifics

20  of each of the statute.  What we tried to do is have

21  the first section, which there is, I would say,

22  relatively little disagreement on the substance of

23  this, it is sort of -- where it is emphasized, I think

24  that the bigger problem is if counsel would agree, and

25  so we think -- we think that this is the -- we tried to

1    do this. We tried to figure out the easiest way of

2    doing this. The alternative to having a general

3    section and then two statutory sections that are

4    specific to the statutes that are being charged would

5    be to repeat the general section twice, and it will add

6    almost two pages, Judge.

7         We think it will overly complicate all this

8    and it would be far too repetitious. Again, we tried

9    to find some common ground between the statutes and

10   articulate the sections of the conspiracy law that are

11   applicable in this case, and then tried to break down

12   the statutes with respect to their unique elements.

13   I'm sorry for interrupting.

14        THE COURT: I'm reluctant to repeat something

15   twice.

16        MR. WITMER-RICH: I understand, Your Honor.

17        As to the narrow point that we first raised,

18   the line "common sense tells you that when people

19   agree," there is language in this which is I think

20   somewhat standard language, about the agreement does

21   not have to be explicit and what have you.

22        THE COURT: Right. Does that come from the

23   pattern? To that extent, I would just as soon abide by

24   the pattern.

25        MR. SOFER: I don't know that we have the

1    pattern here.

2              THE COURT:  If not, I would rather not

3    include it, then.

4              MR. SOFER:  I'm told that the common sense

5    language is not in the pattern.

6              THE COURT:  I prefer to take it out.  Again,

7    I think that's also argued.  Common sense, you know.

8              MR. SOFER:  Understood, Judge.  We'll do it

9    that way.

10             We altered -- by the way, we'll send Your

11   Honor the things that -- after we've gone back and

12   forth with counsel one more time, we'll send you the

13   modified version of this, because we've agreed that 80

14   percent of the changes here we've agreed to, and we'll

15   make and send that to Your Honor.

16             The next section, other than this broader

17   issue, is on page -- the next page.  It is in the third

18   paragraph.

19             THE COURT:  What's the first word of the

20   paragraph?

21             MR. SOFER:  "Rather, what is required is that

22   the defendants willfully entered into an illegal

23   agreement with a general understanding of the unlawful

24   purpose of the agreement."

25             THE COURT:  Now, wait a minute.  I'm sorry.

1    The same instruction?

2            MR. SOFER:  Same instruction.

3            MR. WITMER-RICH:  It is not a paragraph, I

4    don't think.

5            MR. SOFER:  The third paragraph.  It is the

6    end of the third paragraph.

7            THE COURT:  I see.  Okay.

8            MR. SOFER:  Okay.  And I'll let counsel say

9    what it is.  They prefer that language be replaced by

10   some other language.  I'm not sure either one is the

11   pattern instruction.

12           THE COURT:  Well, if the pattern has language

13   that is equivalent, I want to do the pattern.

14           MR. WITMER-RICH:  Here is what we think the

15   relevant language is.  Rather than the language of

16   "willfully entered into an illegal agreement with a

17   general" --

18           THE COURT:  Slower.  Wait a minute.  Go

19   ahead.

20           MR. WITMER-RICH:  Rather than "willfully

21   entered into an illegal agreement with a general

22   understanding of the unlawful purpose," that's really

23   the heart of what we're not crazy about, "general

24   understanding of the unlawful purpose" --

25           THE COURT:  Right.

1          MR. WITMER-RICH:  The pattern reads "to

2     convict any defendant, the Government must prove that

3     he knew the conspiracy's main purpose, and that he

4     voluntarily joined it intending to help advance or

5     achieve its goals."

6          MR. SOFER:  And, Judge, here is where we ran

7     into a problem in doing this.  Again, unfortunately, I

8     don't recall standing here which of these two statutes

9     has a "willful" and which has a "knowing" element to

10    it, so here the "willful" statement talks only about

11    entering into an illegal -- willfully entering into an

12    illegal agreement --

13          THE COURT:  Is there a pattern, is there a

14    distinctive pattern depending upon willful, and what is

15    intentional?

16          MR. WITMER-RICH:  I'm not aware of one.

17          MR. SOFER:  I believe "knowingly" is the

18    other.

19          THE COURT:  That's right.

20          MR. SOFER:  But again, the reason we did

21    this, Judge, and it's been -- we've gone back and forth

22    with our headquarters on this also.  At least from our

23    perspective, we believe that this instruction has been

24    approved before as it relates to the statutes in

25    question here, and we were very cognizant of not trying

1    by -- by manipulating this, the danger is that you

2    somehow alter the mens rea requirement in one or both

3    of the other statutes.  That's our concern.  There may

4    be a way for us to address what counsel is saying

5    without doing that --

6              THE COURT:  Let me suggest this, perhaps.  In

7    the charge relating to the statute that uses

8    "willfully," in addition to defining that term with the

9    pattern, that has to be the pattern, say "you will

10   note" or "I note that to prove the conspiracy alleged

11   under this statute, you will note that this statute

12   uses 'willfully' to describe the mental state, and the

13   other conspiracy charge, whatever it is, used the term

14   'knowingly.'  These are distinct terms, and they are

15   defined separately in these instructions, and you shall

16   apply these accordingly."  Does that work?

17             MR. SOFER:  It may, Judge.  I think -- I

18   think what counsel is objecting to is the last --

19             MR. WITMER-RICH:  Yes.

20             MR. SOFER:  What we have a disagreement about

21   here is the very last clause of this.  We added the

22   words "general understanding of the unlawful purpose of

23   the agreement," and the language, they think that it is

24   too broad and too open ended.

25             THE COURT:  Why don't you say "willfully

 1    entered into an illegal agreement, understanding the

 2    agreement's unlawful purpose"?

 3              MR. WITMER-RICH:  I think that would be

 4    acceptable to the defense.

 5              MR. SOFER:  And I think the reason that this

 6    is --

 7              THE COURT:  I'm very concerned with the word

 8    "general."  That's --

 9              MR. SOFER:  I think that's the defense's

10    concern as well.

11              THE COURT:  I would be willing to bet we'd

12    get the question, "What do you mean by general

13    understanding?"  I would much prefer to say "entered

14    into an illegal agreement, understanding the unlawful

15    purpose of the agreement."

16              MR. WITMER-RICH:  And I would agree with

17    that, and the briefest way I would put my objection is

18    that the pattern for knowingly joining a conspiracy is

19    that -- is what I read earlier.  To prove that he knew

20    the conspiracy's main purpose and voluntarily joined

21    it.  And I would say the addition of a willful

22    requirement, which this statute includes, shouldn't

23    result in some kind of dilution of that.  It would only

24    increase the --

25              THE COURT:  I would agree with that, but that

1    seems to me to be a more intense mental state.

2          MR. WITMER-RICH:  Right.  So that would be --

3    that would provide, I guess, the floor of --

4          THE COURT:  If the general understanding is

5    not enough for knowingly, then it should not be enough

6    for willfully.

7          MR. SOFER:  I guess the point that is

8    important for the Government here is that for a person

9    to be found guilty of conspiracy, they don't have to

10   know all of --

11         THE COURT:  Right.

12         MR. SOFER:  -- the illegal or unlawful

13   purposes, and that is where this general understanding

14   comes from.  You need to know the general concept of

15   the unlawful agreement.  You don't need to know the

16   specifics, nor do you need to know every aspect of it.

17   That may be addressed further in the charge.  If it is

18   acceptable to the Court, we'll go back and see.

19         THE COURT:  Let's take a two minute break.

20         (Recess had.)

21         THE COURT:  Okay.  I apologize for the

22   interruption.  Go ahead.

23         MR. SOFER:  I think we might be able to come

24   to some agreement with counsel regarding that in this

25   particular language, I do notice that Your Honor gave

1     the following instruction to the jury already, that the

2     Government must prove beyond a reasonable doubt that

3     the defendant voluntarily joined in the agreement and

4     was aware, one, of at least some of the basic aims and

5     purposes of the agreement.  That was given, I think

6     that came from another charge that Your Honor had given

7     previously.  We would change that language, we

8     considered changing it to the unlawful, knew to be

9     unlawful --

10              THE COURT:  Understood.

11              MR. SOFER:  "Unlawful purpose," and take out

12     the "general understanding."

13              THE COURT:  That's the least of the problem

14     that I have with these two.  It is too much of a

15     sliding scale.

16              MR. SOFER:  What I think counsel is going to

17     ask for and what we object to strongly would be to try

18     to put the entire pattern here, because that is going

19     to cause problems on the other two counts and --

20              THE COURT:  I'm sorry.  Go ahead.  The

21     pattern would be a problem?

22              MR. SOFER:  Just the pattern would be a

23     problem.  Your Honor had already gone beyond the

24     pattern, I believe, in the preliminary instruction, and

25     frankly, there are enough specific concepts that relate

1   to the particular facts in this case that the

2   Government's proposed instructions that relate to other

3   things that are not in the pattern, just because not

4   every fact pattern is the same, and we think this is

5   appropriate.

6          MS. CLEARY:  Thank you.  Your Honor, we

7   appreciate the Government has tried to put into its

8   general discovery, general conspiracy law description

9   everything it hopes to explain for the elements, but

10  the difficulty is everything is kind of getting muddled

11  together.

12         What we would prefer is to use the pattern

13  conspiracy instructions for Count 1; where they differ

14  for Count 2, do as Your Honor suggested, put notes, how

15  it is different than the conspiracy elements in

16  Count 1, so that it is clearly set out for the jury, so

17  that there is no question, they don't have to go back

18  and parse through that general description to find out

19  exactly what the elements are.

20         THE COURT:  Structurally, I would much prefer

21  that.

22         MR. SOFER:  And Judge, again, the problem is

23  there are certain general --

24         THE COURT:  Let me take a look at the

25  particular construction, okay?  Which one are we

1    talking about?

2           MR. SOFER:  Page 22, Instruction 18.  It is

3    approximately two pages long.

4           THE COURT:  Let me read it.

5           MR. SOFER:  Again, I don't believe there is

6    anything particularly controversial about the substance

7    of what's here, although counsel may correct me.

8           THE COURT:  So I read Number 18.  What's the

9    problem?

10          MS. CLEARY:  For comparison purposes, Your

11   Honor, I direct you to Instruction Number 25 on Page 30

12   of our proposed draft.

13          THE COURT:  Okay.  Give me half a second.  It

14   looks like what I gave before.

15          MS. CLEARY:  It could very well be, and it

16   was pulled from the pattern.  One of the points of

17   contention we have is when you look at the Government's

18   first element, which is agreement, they refer you back

19   to their general description of conspiracy law, whereas

20   we propose the element that is drawn from the pattern

21   instruction, so that the jury clearly understands what

22   they need to consider to determine if there is an

23   agreement.

24          MR. SOFER:  And Your Honor, I guess the

25   Government's position would be if -- first of all, we

1    feel strongly that jury instructions, if you compare

2    the volume of guidance that is given to the jury, the

3    pattern instruction to Jury Instruction Number 18 that

4    the Government has proposed, it is -- it is stripped

5    down in a way that causes all kind of potential

6    confusion.

7           There are a number of concepts in the

8    criminal conspiracy generally section that are laid out

9    in much greater detail, explaining concepts that are

10   beyond that which the pattern instruction would

11   explain.

12          If what counsel -- and we talked about this.

13   What counsel is -- I think if counsel wants this

14   general, the language about agreement to be associated

15   with the particular charges, that is fine.  The

16   Government thought about doing that, but then we would

17   ask that you repeat Number 18, not the pattern

18   instruction, within the two substantive counts.

19          If you don't do that, you strip it down to

20   just the pattern instructions, which by the way I

21   believe also could cause a problem with the mens rea

22   elements in both of those two counts.  Then what you do

23   is you lose -- you both potentially tamper with the

24   mens rea, but you also then lose this more detailed

25   analysis of conspiracy law, which we believe is more

1   accurate, and again, I don't think there is anything --
2   and counsel has objected, in the back they objected to
3   specific portions, both of which have been brought to
4   Your Honor's attention, there is another issue coming
5   up, but we would ask, then, that for the agreement
6   portion, that is, the agreement element, that we --
7   that we twice read 18, or twice include the
8   Government's proposed jury instruction, because all of
9   that language pertains to an agreement.
10          THE COURT:  Well, you probably didn't move
11  the ball very far down the field, but why don't you say
12  "criminal conspiracy-agreement" rather than in general?
13  If all the language refers to agreement, does that help
14  resolve some of the problems?
15          MR. SOFER:  I think this section includes
16  language that applies beyond agreement, to other
17  aspects of the conspiracy law, including duration of
18  when someone might be able to come in or leave a
19  conspiracy --
20          THE COURT:  I can break that out --
21          MR. SOFER:  We could break it out.
22          THE COURT:  -- and subsection it with
23  separate instructions.  I tend to have -- it tends to
24  be my preference to have separate instructions for
25  separate concepts.

1            MR. SOFER:  The Government certainly wouldn't

2    disagree with trying to put subheadings in here.

3    Again, the concept here is give the jury an idea, like

4    Your Honor did in the preliminary instructions but with

5    much more detail, and I think we discussed -- as I

6    remember, when we discussed the preliminary charge,

7    that it would not be a good idea at that juncture to

8    add a whole -- we had a much more comprehensive

9    suggestion on conspiracy law at the beginning of the

10   preliminary charge as well.

11           Now, to not include these other concepts I

12   think would be a serious mistake.  We can try to break

13   it down so that it is done generally, and then

14   agreement.  I don't know whether that would satisfy

15   counsel.  I think they want the agreement language to

16   be embedded in each of the substantive counts.

17           THE COURT:  I would prefer not.  Not if it is

18   the same language.

19           MR. SOFER:  That's exactly what we thought,

20   and that's why we tried to do it this way.  We thought

21   it would make things go faster, not slower.

22           So if it is acceptable to Your Honor, what

23   we'll -- and counsel, I don't know whether you agree or

24   disagree with this, but we certainly can break down 18

25   into at least two instructions, one that relates to

1   conspiracy law in general and then one that relates to

2   the conspiracy law as it relates to agreement, and then

3   we would ask that Your Honor reference that when you

4   are going through the specifics.

5          THE COURT:  Yes, because I previously

6   instructed you in instruction number whatever.  The

7   Government must prove the existence of an agreement, as

8   defined in that instruction.

9          MR. BOSS:  Your Honor, on behalf of the

10  defendant El-Hindi, we certainly agree that brevity is

11  appropriate.  We agree that there is no need to repeat

12  whole sections of instructions in the two conspiracy

13  charges, but we do request that the Court adhere to the

14  pattern instruction whenever possible.  Thank you.

15         THE COURT:  Again, that is my instinct and

16  intention and desire.

17         MR. BOSS:  Well, that is our request.  Thank

18  you.

19         MR. SOFER:  And again, we don't necessarily

20  disagree with that on most of these things, but I think

21  if you take a look at what we've suggested and compare

22  it --

23         THE COURT:  It's fair to say I think a way to

24  do this is to probably put conspiracy hyphen generally,

25  or conspiracy hyphen agreement, either before the

1    two -- probably after the two elements charges.  Count

2    whatever it is -- count one charges this, and if you

3    prove that, the Government must prove this, these

4    elements; the next count charges that to prove that,

5    the Government has to prove these elements, and then

6    perhaps say with regard to agreement, to find the

7    defendant guilty of either Count 1 or Count 2, the

8    Government must prove the existence of an unlawful --

9    of a conspiratorial agreement, and then I instruct you

10    that a conspiratorial agreement, to prove that, the

11    Government has to prove the following.

12          MR. SOFER:  I would respectfully say, Your

13    Honor, I think the better course would be to put the

14    general language first, only because I think that's

15    generally the way it is done, but also if you go from

16    the general to the specific as opposed to from the

17    specific to the general, I think that is more difficult

18    in terms of the retention.

19          THE COURT:  That's not a big deal.

20          MR. WITMER-RICH:  If I could just briefly try

21    to illustrate for Your Honor what we're trying to

22    accomplish here, if you look at Jury Instruction

23    Number 20 on the Government's proposed instructions,

24    that's the charge for the first count.  If you look at

25    the second page of Jury Instruction Number 20 --

1          THE COURT:  Yes.  I mean, I would suggest

2    taking this out.  I mean, it is a conspiracy.  You can

3    say something, you know, in this -- to find the

4    defendants guilty of this count, the Government must

5    prove that the defendants conspired or agreed to do X,

6    and then there is a cross reference.  I remind you of

7    my earlier definition of what the Government must prove

8    in order to prove a conspiratorial agreement.

9          MR. SOFER:  I think that's exactly what's

10   there, Judge.

11         MR. WITMER-RICH:  The puzzling part to me --

12         MR. SOFER:  The first element, agreement to

13   murder or maim outside the United States, it says that

14   we must prove the defendants entered into an agreement,

15   and then a very brief description of that, as opposed

16   to this lengthy kind of description that's in the

17   general charge.  The elements regarding conspiracy law

18   that I have just instructed you about in Instructions

19   18 and 19 apply to this criminal count.

20         MR. WITMER-RICH:  The puzzling thing about

21   this instruction to me is that Jury Instruction 21, the

22   first element, conspiracy, goes on for about a page and

23   a half, and includes a lot of kind of language -- I'm

24   not actually sure if it is repeated from the earlier

25   stuff or -- again, it is explaining what that means in

1    that context and not explaining what it means in the

2    first count, even though I think in most respects, not

3    entirely, but in essence, it is the same.

4            THE COURT:  It looks like -- I see what you

5    are saying.

6            MR. SOFER:  But that again, Judge, is not

7    because of the peculiarities of this particular

8    statute.  The litigation that has taken place around

9    the country before this case --

10           THE COURT:  I'm looking at Instruction 21,

11   the second paragraph after the caption "first element,

12   conspiracy."

13           MR. SOFER:  I'm sorry?  Direct us again to

14   where you are.

15           THE COURT:  Instruction 21.  There is a

16   caption, a centered caption, "First element, colon,

17   conspiracy," and then the second paragraph after that,

18   which begins "the Government need not prove."

19           MR. SOFER:  That's right, Judge.  And this

20   is, again, a recapitulation.  I think this is repeated

21   twice.  That is, the portions that don't relate to

22   general conspiracy I believe are repeated twice in the

23   substantive charges --

24           THE COURT:  Looks to me like the second

25   paragraph replicates if not duplicates what they were

1  told in 18.

2          MR. WITMER-RICH:  I think it actually

3  replicates the second element, willful participation,

4  or replicates parts of it, the second element from the

5  first charge.

6          THE COURT:  I mean, "presence at the scene"

7  -- I'm skimming.  "Mere acquiescence" -- I mean, all

8  that stuff seems to me ought to be, and I assume

9  probably is contained in 18.

10          MR. WITMER-RICH:  It is not, actually.

11          MR. SOFER:  It is not, Judge, again, because

12  it more specifically goes to this particular charge,

13  and had we put it in 18, since it doesn't apply

14  necessarily in the same way to both the conspiracy

15  charges, we were concerned that if we had put all of

16  this language into the general conspiracy instruction

17  that we would somehow be tweaking and potentially

18  influencing the differences between the two statutes.

19          I would just note that, again, what we tried

20  to do here is also -- there are a number of cautions in

21  this, in this section as well.

22          THE COURT:  Well, I tell you, I don't think

23  we can resolve this today.  By mid afternoon on Monday,

24  state your reasons for me for your different versions.

25  I'm just going to have to sit down and spread them out

1    in front of me.

2             MR. WITMER-RICH:  We will try to come up with

3    a version that fits within the Government's structure,

4    I believe.  I mean, the more overall structure.  We'll

5    try to fit them within this version.  But it will be --

6             THE COURT:  There are common attributes that

7    are universally applicable attributes of an unlawful

8    conspiracy that I think I should tell the jury, and I

9    think Mr. Sofer is probably right.  Do it at the

10   outset, and then where there is a distinction,

11   knowingly, willfully, then fine.  And if there is

12   something about the killing or maiming conspiracy that

13   differs from the material support conspiracy, then to

14   prove a defendant guilty of this charge, you must find

15   that the conspiracy involved related to -- whatever the

16   very discrete distinction is.

17            MR. SOFER:  The classic example would be one

18   requires an overt act and the other doesn't, and that's

19   why we couldn't get it all in the first instruction

20            THE COURT:  There is a lot in here that looks

21   kind of redundant, or ought to have been in the

22   general.

23            MR. WITMER-RICH:  We'll work on a version

24   that we think accomplishes what we're trying to do, and

25   perhaps the Government will do the same.

1           MR. SOFER:  We'll send them back and forth.

2           THE COURT:  And if you send me a blank E-Mail

3     on this, that would be just fine.

4           MR. SOFER:  Let me, Your Honor, go on to the

5     other specific points that maybe we can resolve in the

6     time that we have left.

7           At the bottom of the Government's general

8     conspiracy instruction, there is a sentence that says

9     "Finally, the defendants cannot conspire" --

10          THE COURT:  Wait, wait.

11          MR. BOSS:  Which one is that?

12          MR. SOFER:  This is Number 18.  I apologize.

13          THE COURT:  Wait a minute, please.  It is the

14    last paragraph?  Okay.

15          MR. SOFER:  The sentence and paragraph that

16    starts "Finally, the defendants cannot conspire with

17    only a Government agent.  A Government agent thus

18    cannot be the only other member along with a single

19    defendant in a conspiracy."  The defense counsel would

20    like to insert Darren Griffin's name here, and our

21    position is that is glaringly obvious from the

22    evidence, and not necessary in the charge.

23          THE COURT:  I agree.

24          MR. SOFER:  And is sort of overkill.

25          THE COURT:  I agree.  I agree.

1          MR. SOFER:  Jury Instruction Number 19 has to

2     do with something we've discussed numerous times at the

3     bench, which is why we did break this out on -- maybe

4     this will be ultimately the best way to do it, to try

5     to break these particular concepts out, but this is the

6     notion -- and again, I think it is something that could

7     be, without some sort of illustration here, incredibly

8     confusing to a jury if it is not laid out clearly, and

9     this talks about when a conspirator is responsible for

10    the actions of another conspirator, and the only thing

11    I think we have an objection on here is the last

12    sentence in the first paragraph, which starts with the

13    words "this is true."  It says, "This is true because a

14    conspiracy is a kind of partnership, so that under the

15    law each member is an agent or partner of every other

16    member and each member is bound by a" --

17          THE COURT:  Slow.  It is late in the

18    afternoon.  Judy is good, but --

19          MR. SOFER:  I'm sorry, Judge.  "This is true

20    because a conspiracy is kind of partnership, so that

21    under the law each member is an agent or partner of

22    every other member and each member is bound by and

23    responsible for the acts and statements of every other

24    member made in pursuance of that unlawful scheme."

25          The defense would like that removed.  We

 1    found this, we believe, in the Eighth Circuit pattern

 2    instructions, and believe that it is a true statement

 3    of the law.

 4              THE COURT:  West of the Mississippi.

 5              MR. WITMER-RICH:  I believe the first

 6    sentence --

 7              THE COURT:  Do we have a pattern in our

 8    Circuit on this?

 9              MR. SOFER:  The Sixth Circuit manual on

10    conspiracy, pattern instructions, Judge, are what I

11    would describe as -- "fairly lean" is the word that was

12    given by one of my colleagues.  And again, were it not

13    for the complexity of this case, were we talking about

14    a simple, easy drug conspiracy, I would say that it

15    might suffice here.  Here, given the factual

16    complexities of the case, we think we're going to end

17    up with the jury being very confused without some

18    further guidance from the Court.

19              MR. WITMER-RICH:  I think our basic point

20    here, and we're trying to -- there is a Sixth Circuit

21    instruction regarding *Pinkerton* liability --

22              THE COURT:  *Pinkerton*?

23              MR. WITMER-RICH:  *Pinkerton*, but we've not

24    had a chance to examine how that relates to this

25    specifically.

1        THE COURT:  Which is what this is?

2        MR. SOFER:  No, Judge.  *Pinkerton* liability

3   is that we conspire to do something and it is

4   reasonably foreseeable that one of us, would say, kill

5   a bank guard, and I would end up being charged

6   substantively with the shooting of the --

7        THE COURT:  Shooting of the bank teller.

8        MR. SOFER:  And here we're talking about the

9   agency relationship that exists between

10  co-conspirators.

11       THE COURT:  Let me take a look.

12            I don't think we need that explanatory

13  language.  I would prefer -- I mean, that is something

14  you can point out in argument, like an agent or a

15  partner with each other.  The statement of the law

16  seems to me to be complete and adequate.  When we just

17  tell them, look, if two people are members of a

18  conspiracy and it has been proven beyond a reasonable

19  doubt, what one says or does in furtherance of the

20  conspiracy is charged to indeed the act or statement of

21  the other.

22       MR. WITMER-RICH:  Your Honor, the first

23  sentence completely encompasses it, and the second

24  sentence really is not a requirement.

25       THE COURT:  So I'm not sure there is anything

1    unique about this case that requires any elaboration.

2         MR. SOFER:  I think it explains the concept

3    in sort of more laymen-like terms to the jury.  I don't

4    believe I could argue this, by the way, to the jury.

5    That would be to some extent, I mean, I certainly --

6         THE COURT:  I really would rather not.  I

7    prefer to give a somewhat sparser, though hopefully

8    entirely accurate statement of the law and proposition,

9    and it is just my thinking that long instructions like

10   this, complicated, the more you get in there, the

11   harder it is for the jury to understand.

12        MR. SOFER:  Very well.  We'll concede that on

13   this particular point.

14        THE COURT:  Next?

15        MR. SOFER:  Although, again, I would caution

16   the Court against too sparse an instruction on the

17   conspiracy law.  I think what you will end up with

18   instead, Your Honor, are lots of questions from the

19   jury.  This is sort of an aberration of something that

20   was laid out in the charge.  There are other portions

21   of our conspiracy charge which, if they are not in

22   there, the jury will never hear anything about them,

23   and I think that would be a more significant error.

24        The next portion, Your Honor, that counsel

25   objects to, this is a pervasive issue, we had a debate

```
 1    about, and I'm referring to Jury Instruction Number 20,
 2    but it will apply to much of what follows here.
 3         The statute itself, which is 18 U.S.C. 956,
 4    conspiracy to kill, kidnap, maim or injure persons in a
 5    foreign country, I don't think that -- I'm not sure
 6    whether counsel disagrees with the word "kill" there,
 7    but that is -- once again, that is the title of the
 8    statute.  They would like us, however, throughout the
 9    rest of -- I guess, I don't know, I don't want to
10    engage in colloquy with counsel.  They may object to
11    the word "kill" even in the statute, but they would
12    like the word "kill" from then on to instead be
13    replaced by the word "murder" or "manslaughter" and
14    then have a definition of murder or manslaughter which
15    is contained in our definition because, as a matter of
16    fact, if you look at the first element, it says two or
17    more persons --
18              THE COURT:  Slower.
19              MR. SOFER:  The first element in our proposed
20    instruction is that two or more persons conspired to
21    murder or maim a person or persons at someplace outside
22    the United States, and then our instruction includes
23    the definition of murder and maim.
24         Our disagreement with counsel is that they
25    want one step of specificity too much in terms of,
```

1 | again, confusing the jury.

2 | Kill is defined as murder, manslaughter,

3 | voluntarily manslaughter or involuntarily manslaughter

4 | under the statute.  I think counsel may want to argue,

5 | or at least leave the door open that what the

6 | defendants were preparing for or conspiring to do, to

7 | the extent that they are doing any of that, per the

8 | defense argument, is to perhaps kill, but perform

9 | killing that would not under U.S. law equal a murder,

10 | and that would be something, for instance, that would

11 | be self defense.

12 | So someone who is training to go to a

13 | shooting range and is training for an interloper

14 | perhaps to come in their home and kill that person,

15 | that might not be murder.  It might be murder anyway

16 | under a whole variety of different scenarios, and our

17 | whole argument is that kill, the statute is entitled

18 | kill, that this charge, again, this charge has been

19 | given in the past, it has been approved of in the past

20 | by courts --

21 | THE COURT:  Let me hear what their problem

22 | is.

23 | MR. WITMER-RICH:  The statute, the statute

24 | again has the word "kill" in the title, but the word

25 | "kill" is not in the text of the statute.  The statute

1    prohibits conspiracy to do an act that would constitute

2    the offense of murder or maiming if committed in the

3    United States, basically.

4            The elements here, down below, correctly

5    state two or more people conspire to murder or maim,

6    and then it defines murder or maim later, so the

7    problem, the small problem that is presented right here

8    is in the first sentence, where we are stating what the

9    charge is, and I want to say here "conspiring to murder

10   or maim" which is what the first element of the statute

11   states, rather than "conspire to kill or maim."

12           THE COURT:  It would be my understanding,

13   even though the title as far as the caption, as far as

14   statute, what the statute prohibits is found in the

15   text of the statute.  In other words, I think it should

16   refer to murder rather than kill, because that is what

17   they have to prove.  So I tend to agree with the

18   defendant.  We should say in this third line, "conspire

19   to murder or maim," and we have murder later.  So what

20   other objections do you have to this instruction?

21           MR. WITMER-RICH:  That's kind of the

22   recurring one.

23           MR. SOFER:  I apologize.

24           THE COURT:  I asked what other objections.

25   He said that is a recurring objection.

 1           MR. SOFER:  It is a recurring objection.

 2     Again, I would like an opportunity to at least on this

 3     one to go back to our headquarters and see why it is

 4     that the "kill" was something that they --

 5           THE COURT:  And you can tell them what I just

 6     said.  While I agree with you so far, until they tell

 7     me otherwise, with regard to the other issue, that the

 8     caption is part of the statute, it is my understanding

 9     that when it comes time to define what an element is,

10     what the Government has approved, you look to the text

11     of the statute, and candidly, I would be very troubled

12     if I used the word "kill" instead.  That could well be

13     reversible error.  It could be one of those kinds of

14     structural errors that relieves the Government of an

15     element of its proof.

16           MR. SOFER:  Again, Judge, we'll take a look

17     at it and come back --

18           THE COURT:  And if you are still at

19     loggerheads, I trust that Mr. Witmer-Rich will remind

20     me what I said.

21           MR. WITMER-RICH:  I think I will.

22           MR. SOFER:  I'm certain he will, Judge.

23           We have, I guess, a rehash, then, of the

24     other language that is contained in willful

25     participation in the agreement, which is found as part

1    of the first element, the agreement to murder or maim

2    outside the United States, and here again, Judge, I

3    guess we'll try to work this out because this sort of

4    goes back to this general conspiracy language.

5              THE COURT:  Okay.

6              MR. SOFER:  There is a whole lot of this.

7    Jury Instruction Number 21 is the 2339(a) charge, which

8    is conspiracy to provide material support or resources

9    to terrorists.  Again, this is the caption of the

10   statute.  Counsel is --

11             THE COURT:  We'll bicker --

12             MR. SOFER:  Understood.

13             THE COURT:  Bring that back to me.

14             MR. SOFER:  Now, here we have another

15   objection to the word "killing," but here the statute

16   talks about providing material support that is alleged

17   to have been in furtherance of a violation of another

18   statute, which is the killing of a United States

19   national, and that refers to 2332, which specifically

20   discusses United States nationals --

21             THE COURT:  And in that, I would be inclined

22   to agree with the Government.  That is a different,

23   candidly, lesser environment.

24             MR. WITMER-RICH:  And the statute is actually

25   structured in a slightly odd way, but what it says is

1    whoever kills a national of the United States while

2    such national is outside of the United States shall, if

3    the killing is murder, be punished in one way; if the

4    killing is a voluntary manslaughter be punished in

5    another way, if the killing is an involuntary

6    manslaughter be punished in another way, so that if it

7    does not constitute murder or manslaughter, it is not a

8    violation of the statute.

9              MR. SOFER:  Or involuntary manslaughter.

10             MR. WITMER-RICH:  So I ask for the same

11   distinction.  I think the words "murder" or

12   "manslaughter" accomplishes --

13             MR. SOFER:  But the notion that you are going

14   to break down for the jury the difference between

15   murder, voluntary manslaughter and involuntary

16   manslaughter in this regard again I think is one step

17   removed from what the statute --

18             THE COURT:  I readily admit I don't know what

19   I'm talking about, but is there an *Apprendi* issue

20   lurking in all that?

21             MR. SOFER:  No.  The penalty of 2339(a),

22   which the statute instructs on, is not in any way

23   affected by each of these three theories --

24             THE COURT:  I'm going to accept the

25   Government's proposition, that I do not charge the

1    separate levels.

2              MR. WITMER-RICH:  And again, I'm not

3    requesting a charge for three separate levels or

4    anything like that.  I'm requesting that the word

5    "kill" be replaced with the words "murder" or

6    "manslaughter".  I think "manslaughter," the words

7    there would encompass both meanings of it.  As defined

8    in another statute, that would be a one sentence

9    definition of manslaughter from the manslaughter

10   statute.  We already defined what murder is and that's

11   what the statute covers.  I'm not asking for, as Mr.

12   Sofer said --

13             THE COURT:  What's the problem with having --

14             MR. SOFER:  It is incredibly confusing and

15   completely unnecessary.  The fact of the matter is,

16   if you kill a U.S -- kill a U.S -- that's the language

17   of the statute.  Whether it is manslaughter, whether it

18   is involuntary manslaughter versus voluntary

19   manslaughter versus murder, it is completely inapposite

20   here in the sense that this is the sort of predicate

21   crime, if you will, that the 2339(a) conspiracy, which

22   is the charge that is being leveled against the

23   defendants, it counts -- the only thing that would be

24   cut out that is left from this would be -- then why not

25   give the jury an instruction on self defense, then?

 1    How does a jury know what manslaughter is versus

 2    involuntary manslaughter versus murder, or whether or

 3    not a particular act is self defense or whether or not

 4    there is a mistake or coercion or any number of these

 5    other things?  We've moved down so far into the weeds;

 6    you start with 2339(a), which says you are providing

 7    material support for another statute.  That statute in

 8    this case is the murder or maiming or killing of a U.S.

 9    national overseas, and now you are going to tell the

10    jury that the Government killing has to be murder or

11    manslaughter, and --

12            THE COURT:  Okay.  He made his objection and

13    I'm going to do as you ask, and if we're back here in

14    two years --

15            MR. SOFER:  I will be very sorry, Judge.

16            THE COURT:  He can say I told you so.  Okay?

17            MR. SOFER:  Again, one of the --

18            THE COURT:  Without getting him in any

19    trouble.  Go ahead.

20            MR. SOFER:  I think that's it in terms of --

21            MR. WITMER-RICH:  Let me -- I would briefly

22    bring up the terrorist issue again, which is -- apart

23    from the caption now on this one, on Jury Instruction

24    Number 21 --

25            THE COURT:  Whereabouts?  Read the first,

1    under what subheading --

2              MR. WITMER-RICH:  Right at the beginning.

3    First sentence, the third line.

4              THE COURT:  Wait a minute.  I'm sorry.  I

5    scrolled too far.  Wait a minute, please.

6              Okay.  Does it say "terrorist or terrorist

7    activity"?

8              MR. WITMER-RICH:  Correct.

9              THE COURT:  It does?  Does not?

10             MR. WITMER-RICH:  It is not in the statute,

11   Your Honor.

12             THE COURT:  Then take it out.

13             MR. SOFER:  The problem with doing that is

14   what -- if you just take it out, it says "conspire to

15   provide material support or resources in violation

16   of" --

17             THE COURT:  It says "to terrorists."  Again,

18   I have no problem with repeating the statutory caption.

19             MR. SOFER:  So again, our concern is that you

20   risk confusing the jury.  You have to say something.

21   Resources to whom?

22             THE COURT:  No.  That's what I'm saying.  I

23   think it is consistent for me to say that you can, say

24   in the third line, Mazloum, close bracket, conspired to

25   provide material support or resources to terrorists, in

```
 1    violation, and delete "or terrorist activity."

 2              MR. SOFER:  I'm sorry, Judge.  The way the

 3    precise words are used, the way the statute is written,

 4    it refers to a litany of other criminal activity that

 5    could be the basis for this particular charge.

 6              We gave the resources in order for one of

 7    these other crimes.  The vast majority of these crimes

 8    fall under the U.S. Code heading of terrorism.  That

 9    is, there is a whole litany of crimes which are in the

10    chapter, the Title 18 chapter that deals with

11    terrorism.

12              MR. TERESKINSKI:  Chapter 113(b), for the

13    record.

14              MR. SOFER:  Some of those crimes, though,

15    relate back to crimes that are farther back in the

16    code, like Section 32, which I think has to do with

17    aircraft piracy or something like that, which have been

18    characterized, because they don't fall under that

19    chapter as terrorism, they are characterized as

20    terrorist activity.  All this is an attempt to do is

21    qualify all the different statutory predicates for the

22    conspiracy, so unlike 2339(b), which is a statute which

23    says if you give money to Al-Qaeda, which is a

24    designated terrorist group, there is almost sort of a

25    strict liability about that to some extent.  Here you
```

1    have to know that the support you are giving is going

2    towards forwarding one of these other crimes, and they

3    fall into two categories.  They either fall under the

4    title, the chapter of the code that is terrorism, or

5    one of these other activities which have been loosely

6    defined as terrorist activity.  That's where the

7    language comes from, and why it is used this way

8    before, and the high courts have accepted it because

9    those statutes in fact are either terrorism under the

10   U.S. Code, or defined activity which is terrorist

11   activity, like hijacking airplanes, blowing up ships,

12   et cetera, et cetera.

13           THE COURT:  But the point is, none of that is

14   at issue here, because you point specifically to

15   2332(a), killing a national, rather than committing air

16   piracy or whatever.  Or am I missing something?

17           MR. SOFER:  I would say there it is more --

18   if you had to pick one of them, it is more terrorist

19   activity than it is aiding a terrorist, because you are

20   talking about murdering a United States national

21   overseas, and by the way, 2332 has a provision in it,

22   which we discussed --

23           THE COURT:  This is what I was trying to

24   grope for before.  Wouldn't it make better sense to

25   restructure this entirely, beginning with the caption,

1    and call this a conspiracy to provide material support

2    or resources to, either to persons engaged in the Iraq

3    insurgency, or to those engaged in activities directed

4    or with a purpose to kill or maim Americans?  In other

5    words, conflate the two and make it -- and take the

6    terrorism out of it, and focus on the killing or

7    maiming.  In other words, link the two more

8    specifically, both in the title of the instruction, but

9    then how we refer to it.

10                And I'm not doing this because of their

11   concern about waving the red flag of terrorism.  It is

12   more just the finesse of this whole issue.  You have

13   the terms out there, and bingo, you are talking about

14   killing and maiming Americans, and rather than

15   referring to them in the generic or general sense,

16   conspire to provide material support or resources to

17   persons outside the United States.  Is that part of it?

18                MR. SOFER:  No, Your Honor.

19                MR. WITMER-RICH:  In furtherance.  The

20   killing of a United States national outside the United

21   States.

22                THE COURT:  That's what I meant.

23                MR. SOFER:  Again, this is no different than

24   any other -- first of all, Congress called this statute

25   what it called it.  It refers to activities within the

1    Code that are either -- the fact of the matter is they

2    are either terrorism or terrorist activity.  I don't

3    think there is any debate about that.  Aircraft

4    piracy --

5              THE COURT:  I believe at times I referred to

6    terroristic acts.

7              MR. SOFER:  Perhaps, Your Honor.

8              THE COURT:  I prefer that to terrorist

9    activities, terroristic acts.  Whether Congress used it

10   or not, I understand that.  I'm just trying to be as

11   precise as possible with regard to what the defendants

12   are actually charged with in this case.

13             MR. SOFER:  I understand, Judge.

14             THE COURT:  And I think we're getting hung up

15   on the label rather than on the actual elements, what

16   it is they are charged with doing.

17             MR. SOFER:  I could not agree more with the

18   Court, and the fact of the matter is this is an

19   instruction that goes on for a total of about six or

20   seven pages, which very concisely describes --

21   "concisely" may be the wrong word -- precisely

22   describes all of what you are saying.  There is no

23   question that ultimately the jury is being told exactly

24   what we have.  The elements are all described in

25   detail, exactly what they have to find.

1          What we're debating about here is this title,

2     and the notion counsel is concerned about, it is about

3     raising the red flag of terrorism, and again, what I

4     would say is the same thing I said before, which is

5     this is what the statute says.  This is what the

6     statute refers to.  I don't necessarily -- while I

7     understand why the Court and counsel are understandably

8     concerned about so-called, so-called red flag of

9     terrorism --

10          THE COURT:  It is simply focusing the jury on

11     what it is precisely.  The statute that is the

12     consequence of the objective of the conspiracy.  That's

13     all.

14          MR. SOFER:  And Your Honor, in this

15     particular charge, the terms that we're talking about

16     are used a grand total of two or three times.  There is

17     no -- at no time does this -- if you read it all

18     together, Judge, I would submit to you that that

19     concern is not something that the Court should be

20     concerned about.  We're talking about a label here.  It

21     is the label the drafter of the statute came up with.

22     It is an accurate label, I believe, under the law.  The

23     notion that you could kill a national overseas --

24          THE COURT:  I understand.  I agree.  It is a

25     temporary activity.

1          MR. WITMER-RICH:  No, Your Honor, it is not.

2    Respectfully -- I'm sorry.  The fundamental point here

3    is that a conspiracy to provide material support, let's

4    think of a, you know, members of the Russian Mafia in

5    the United States who are conspiring to provide

6    material support to groups overseas, who are going to

7    kill a group of American businessmen for, you know,

8    purposes related to their Mafia activities.  There is

9    no legal definition, certainly not in this statute, of

10   what is terrorism and what is not terrorism.  It is not

11   defined under any commonly-understood definition of the

12   term.  What I just described is not terrorism.  It is a

13   serious Federal crime.  It is not terrorism.  It has

14   nothing to do with a political goal.  It is not

15   targeting civilians for some political purpose.

16          There is a wide variety of definitions of

17   terrorism, none of which exist in the statute, and many

18   acts which would fall under this statute are not under

19   any reasonable sense of the word terrorist acts.  If

20   the word "terrorist acts" had some meaning in this

21   statute, it would be limiting what was there, in which

22   case I would be happy for it, because it would limit

23   what the defendants could be guilty of, but it doesn't.

24          MR. SOFER:  Actually, it does, with all due

25   respect.  2332, which is the killing of a United States

1    national, is not so narrowly defined.  It is a

2    terrorist statute.  It cannot be charged unless there

3    is a certification by the Attorney General of the

4    United States that in fact -- "No prosecution for any

5    offense described in this section shall be undertaken

6    by the United States except on written certification of

7    the Attorney General or the highest ranking subordinate

8    of the Attorney General with responsibility for

9    criminal prosecution that in the judgment of that

10   certifying official, such offense was intended to

11   coerce, intimidate, or retaliate against a government

12   or civilian population."  That certification and the

13   definition therein has regularly been used by the

14   United States Government as one of the definitions of

15   terrorism, to commit an act of violence with that

16   intent.

17            Now, this has always been litigated at

18   length, in fact been litigated in this case, Your

19   Honor.  The fact that the Attorney General did not

20   certify that in this case is not germane.  Even if we

21   charged 2332, the defense does not get to litigate the

22   certification anyway.  But the statute is not as broad

23   as counsel has implied.  It is related to terrorism by

24   the application of that certification by the Attorney

25   General.

```
 1           So again, we are not suggesting putting the
 2    word "terrorist" and "terrorist activity" in the
 3    elements of this charge.  You won't find them in the
 4    specific elements.  It is only a label to attach to the
 5    type of activity that has to be forwarded and the
 6    statute itself, and those things I think are, are clear
 7    as day.  The statute says it itself, and it refers to
 8    all these other statutes which fall into one of these
 9    other categories, either helping terrorists or helping
10    terrorism activities or terroristic activities.  Either
11    way, I just don't think that is a controversial
12    concept.  In the end, I believe what counsel is most
13    worried about is this red flag of terrorism, and I
14    think the Court has bent over backwards in this case to
15    insure that this jury does not inappropriately taint
16    the mention of the word "terrorism" to mean the
17    defendants should be found guilty of anything, or
18    inflame the passion in any way.  The Government has
19    been careful of that as well.  We're not trying to
20    incite passion.  We're simply referring a statute the
21    way it has been referred to in every criminal
22    prosecution I'm aware that the United States has
23    undertaken under this statute, and again, our charge
24    here is derived from charges given in case after case
25    after case, where again Courts have found this to be an
```

1    ordinary exercise of jury instructions.

2              MR. WITMER-RICH:  Your Honor, it is striking

3    to me that counsel used a part of the statute that

4    provides for a certification that was not done in this

5    case as an example of why the word "terrorism" should

6    appear in this charge.  He also made much of the fact

7    that it appears only a couple times, very early on,

8    which makes me wonder, why does the Government so

9    vehemently want that language in the front of this

10   charge?  It goes on to define the elements of the

11   charge.  The elements do not contain the word

12   "terrorism."  It is not part of the legal definition of

13   what is going on here.  They are fighting very hard to

14   get the words terrorist, terrorist activity,

15   terroristic or specified terrorist activity in the

16   first two paragraphs.  They are free to argue in front

17   of the jury, and they did in opening argument, this is

18   a terrorism case --

19             THE COURT:  I gather you would prefer that

20   the caption be "conspiracy to provide material support

21   to persons engaged in certain activities"?

22             MR. WITMER-RICH:  Yes, Your Honor.  And the

23   same in the text of the instruction.

24             MR. SOFER:  And again, I guess my

25   objection -- we're not fighting to get the word

1    "terrorism" into the case.  I guess we're fighting for

2    what seems obvious to us, Judge, and to the Government,

3    which is -- I know you don't -- the Court has been very

4    careful about limiting this, but this is a terrorism

5    case.  Like it or not, that's what we have here.  Those

6    are the -- Congress has passed these statutes --

7              THE COURT:  I understand that, but, you

8    know --

9              MR. SOFER:  It just seems like we are so, we

10   bent over backwards so much to avoid it that we're

11   ignoring reality at some point, and I don't think

12   that's fair.

13             THE COURT:  I don't think you are.  This case

14   has got plenty of evidence, much of it graphic, all of

15   it I think properly admitted to the jury, of the kinds

16   of activities that are killing and maiming American

17   soldiers.  We've witnessed that.

18             Give me half a second.  Well, I need to leave

19   because I'm going to be late for a meeting.  I'm going

20   to leave you with -- in thinking about this, I think it

21   would be much better to caption this "conspiracy to

22   provide material support or resources to persons

23   engaged in certain violent activities," and then to

24   read "Count 2 alleges the defendants conspired to

25   provide material support or resources to persons

1    engaged in certain violent activities, in violation of

2    2339(a)."  The statute reads "material support need not

3    be to a particular specified person or persons engaged

4    in the violent activities encompassed by Section

5    2339(a)" -- I'm going to just E-Mail this to you, and

6    then you can respond to this with revised wording, with

7    your objections.   It does what I think should be done.

8    It links the killing or maiming, what is going on, what

9    they are alleged ultimately to have been involved in

10   trying to do, and obviously, I've lost the -- I

11   apologize.  I'm going to be -- there is somebody I must

12   meet, and I'm going to send this to you.  I apologize.

13   I really have to go.

14           Rather than wait until -- can somebody be

15   available Tuesday morning?  Tuesday, maybe at 11:00 or

16   whatever?

17           MR. WITMER-RICH:  Yes, Your Honor.

18           MR. SOFER:  Your Honor, is there any chance

19   we could do it before then?

20           THE COURT:  I can't.  I'm leaving tomorrow

21   afternoon and performing a wedding Sunday and coming

22   home and headed up to Cleveland.  We have a Judges'

23   meeting.  Well, maybe 4:00 or so Monday afternoon, I

24   can be available.

25           MR. SOFER:  Certainly the Government can.

 1          THE COURT:  I won't look at anything, but
 2     I'll basically come here from there.
 3          MR. WITMER-RICH:  We can be available, Your
 4     Honor.
 5          THE COURT:  Let me give you my number.  You
 6     can try to track me down.
 7          MR. SOFER:  If not, Your Honor, we would do
 8     this here in Court on Tuesday morning.
 9          THE COURT:  Yes, but let me tell this to my
10     secretary.
11          MR. SOFER:  The thing that I wanted to
12     mention, Your Honor, it may or may not influence the
13     Court at all, is the fact that you have already given
14     this jury a preliminary charge on this particular
15     item --
16          THE COURT:  I'm sorry.  Okay.  I told both my
17     secretary and the Clerk that we'll be with you Monday
18     afternoon.  I will be here at 4:00, and we'll go from
19     there.  Okay?
20          MR. SOFER:  Very well, Your Honor.
21          MR. WITMER-RICH:  Thank you, Your Honor.
22          MR. BOSS:  Thank you, Judge.
23          (Proceedings adjourned at 6:14 p.m.)
24                    -   -   -   -
25

6354

1                          C E R T I F I C A T E

2


3              I, Judith A. Gage, Federal Official Court
   Reporter, certify that the foregoing is a correct
4  transcript from the record of proceedings in the above
   entitled matter.

5

6

7

8  September 2, 2008

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25