IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                         Case No. 3:06CR719

          Plaintiff

    v.                                                                              ORDER

Mohammed Zaki Amawi,

          Defendant

This is a criminal case in which the defendant was convicted of conspiring to provide material support to overseas terrorism, conspiring to kill and maim Americans overseas, unlawful distribution of information relating to making a "bomb vest" and also unlawfully distributing an Arabic language "Explosives Cookbook."

Pending his is motion under Fed. R. Crim. P. 29 for judgment of acquittal. [Doc. 919]. For the reasons that follow, the motion shall be denied.

**Background**

The government charged that the defendant agreed with Marwan El-Hindi and Wassim Mazloum to provide material support for terrorism and kill and maim Americans overseas. Much of the government's evidence – especially evidence of the conspiratorial agreement and certain acts undertaken in furtherance of that agreement – was obtained by an undercover informant, Darren Griffin.

The F.B.I. hired Griffin, a former D.E.A. undercover informant, to go into the Toledo community to try to uncover terroristic plots and activities. He became active in a Toledo, Ohio,

mosque attended by the defendants. Prior to Griffin's activities, the defendants were not acquainted with one another, though they may have been aware that they were members of the mosque.

Griffin, a former U.S. Army Special Forces soldier, held himself out to be a radical convert to Islam. He talked about the need for *jihad* and to resist the American campaign in Iraq and American policies elsewhere. He promoted himself as being able to provide *jihadist* training.

The defendants succumbed to his efforts to encourage them to agree to obtain training with the prospect of either going to Iraq to fight with the insurgents against American forces or themselves become trainers of others for the same purpose. To some extent, some training was given to those who went to a firing range and shot pistols.

In addition, the government proved other actions directly related to the desire to become trained *jihadists*. Among these were watching and discussing *jihadist* videos showing, *inter alia*, snipers shooting soldiers, installation and detonation of improvised explosive devices and suicide bombings. Other videos promoted Islamic *jihad* against America.

During the trial, I overruled the defendants' oral Rule 29 motion. The defendant's instant motion renews, in effect, the contentions he made in his original oral Rule 29 motion.

I find nothing in the defendant's instant motion to change my mind about the sufficiency of the government's proof vis-a-vis the Rule 29 standard. In other words, "after viewing the evidence in the light most favorable to the prosecution" and giving the government the benefit of all reasonable inferences, I am persuaded that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**Discussion**

**1. Counts One and Two:**

**Conspiracy to Kill or Maim Americans Overseas
and Provide Material Support to Terrorism**

Amawi argues that there is insufficient evidence to sustain his conviction for violating the "kill and maim Americans overseas" statute, 18 U.S.C. § 956(a)(1), because the government failed to prove a specific agreement to do so between the three defendants. He makes the same argument with regard to the "material support" statute, 18 U.S.C. § 2339A.

The government did not have to prove a formal agreement, whether written or spoken.

The defendant acknowledges his own interest in, and discussion with his codefendants about combat training, security, and defense tactics. Those discussions, he contends, did not encompass a "plan or agreement with them to acquire or implement any such training in a particular location, at a particular time or to kill and maim anyone in particular.

That doesn't matter. Ultimate actions and targets – if the government establishes the basic illegal agreement and purpose beyond a reasonable doubt – can be un- or ill-defined and inchoate.

What matters is that the government's evidence sufficed to enable the jury to find beyond a reasonable doubt that the defendant intended to acquire and use martial training to engage in *jihad* in Iraq against American forces, and, ultimately, to kill, or try to kill American military personnel.

An example of this intent comes from evidence of the defendant's efforts, *via*, apparently, contact with someone in Syria, to obtain the explosive Astrolite. He specified that material in writing to Griffin and discussed with Griffin and Mazloum undertaking to make arrangements for providing the Astrolite to the contact overseas.

The government's evidence also showed that the defendant:

3

- suggested copying *jihadist* training materials onto a laptop computer he was to take to Jordan;

- discussed whether *Mujahidin* most needed money, weapons, or manpower with El-Hindi and Mazloum;

- was quite security conscious, suggesting using a fake IP address to post a self-made training video on the internet, and would go off-line when viewing *jihadist* materials;

- was interested in sniper attacks and IED attacks from an observation booth;

- acquired and made available a video showing how to make a "bomb vest" for suicide attack;

- mentioned making videos of training and making those materials available to others via the internet;

- anticipated creating cells and training others;

- suggested possible recruits to join in the anticipated activities;

- anticipated going to Iraq to participate in violent *jihad* against American military forces;

- was interested in learning *Mujahidin* and U.S. military tactics and possibly dying overseas as a *Mujahid*.

The government's proof showed, in other words, that the defendant's interest in being trained was not limited to defending himself from possible acts of violence. It also showed that he was doing more than simply getting together with like-minded individuals to talk about common interests, such as political views or religious beliefs.

A keystone in the evidentiary construct was Griffin's video of a meeting between the defendant, El-Hindi and Mazloum on February 16, 2005. The film secretly created by Griffin showed that the defendants agreed with objectives and actions being discussed between the three of them and Griffin. Those objectives included recruiting others, maintaining security, initially acquiring small arms training, creating a "cell," the need for money, manpower and weapons in Iraq,

4

and the need according specifically to Amawi, "to know explosives these days" as the best way for "making damage."

To be sure, as the defendant points out, this was the only occasion when all three codefendants met with one another. A single encounter suffices to create a conspiracy.

In any event, the record showed numerous contacts by Amawi separately with El-Hindi and Mazloum. Between July, 2004, and February, 2006, Amawi spoke by telephone with El-Hindi twenty-two times and Mazloum twenty-one times. In addition, he met separately with each on several occasions.

In sum, there was enough evidence to enable the jury to find beyond a reasonable doubt that the defendant conspired with the other defendants to provide material support to terrorism and kill and maim Americans overseas.

## 2. Count Three

### Distribution of Bomb Vest Video

The defendant found and downloaded the bomb vest video from the internet. Accompanied by Arabic commentary, the video showed how to place ball bearings, or ball bearing-type objects, into an explosive compound, install a detonator, and enfold everything into a vest to be worn by a suicide bomber. The video also showed the effects of detonating the bomb vest. It was, in essence, similar to a "how to" demonstration that one might see on a cooking channel or a home improvement show. As the demonstration was proceeding, Amawi translated the Arabic commentary for Griffin.

Count Three charged the defendant with having unlawfully distributed the bomb vest video by showing it to Griffin. Showing the video sufficed to establish distribution.

The government also had to prove the defendant intended that the information be used for an activity that constituted a federal crime of violence. The jury could reasonably conclude beyond a reasonable doubt that Amawi showed the video to Griffin intending that Griffin, the former Special Forces solider, would use the information from the video either to make similar bombs or teach others how to do so.

### 3. Count Four

### Distribution of the "Explosives Cookbook"

The government charged the defendant with also having unlawfully distributed materials relating to explosives intending that it be used to commit a federal crime when he transferred anan Arabic-language manual on explosives to Griffin.

Amawi copied the manual onto a compact disc along with other materials and give the CD to Griffin. This sufficed to prove distribution of the manual.

Following oral argument on the defendant's post-trial motions, I granted leave to the parties to submit supplemental memoranda as to the element of intent. The defendant contends, *inter alia*, that there is no evidence that Griffin, whose knowledge of Arabic is rudimentary, could or did undertake to read the manual, or that he was even aware that it was included on the disc and what it contained. Thus, according to Amawi, he could not have intended for Griffin to use the information in the manual to commit a federal crime of violence – a crucial element in this charge.

Griffin's ability on his own to understand the material doesn't matter. Nor does the fact that he and Amawi did not discuss the manual and its contents. I am persuaded that, under all the circumstances, as presented by the totality of the evidence in the case, Amawi gave the manual to

Griffin intending and expecting that at some point it would be used and useful in the commission of a crime of violence.

Amawi sought to be trained in *jihadist* tactics to prepare him to go to Iraq to fight with the insurgents. He was of the view that attacking long distance was more sensible than attacking up close. He also expressed an interest in learning about improvised explosive devices. He had downloaded videos showing the making, installation and detonation of such devices. That he would want to learn more about explosives – and to have Griffin help him do so – is evident in the record, when viewed most favorably vis-a-vis the government.

The jury could reasonably conclude beyond a reasonable doubt that Amawi, himself fluent in Arabic, gave the explosives manual to Griffin in anticipation that Griffin would use the manual during his training of Amawi and the other defendants. Whether ultimately translated for Griffin by Amawi or someone else, the manual, the jury reasonably could find, had been given to Griffin to enable him to make its information available to Amawi and others, and thereby facilitate their actions against Americans in Iraq.

Corroboration of the defendant's intent in providing Griffin with the manual [and, as well, with the bomb vest video] exists in his efforts to obtain the explosive Astrolite. Taken together, evidence of the manual's contents, plus Amawi's express interest in explosives and explosive devices, could persuade a rational trier of fact that he gave the manual to Griffin in anticipation of committing one or more crimes of violence.

Whether Griffin could, acting solely on his own, have used the manual for those purposes doesn't matter. Thanks to Amawi, he had the material in his possession, and would have been able, had he been so inclined, to put it to the uses to which Amawi – by its transfer, if nothing else –

7

wanted it to be put. Griffin had held himself out to be able and willing to train Amawi and others in terrorist tactics. There would have been no reason to give Griffin the manual – or showing him the bomb vest video for that matter – except to facilitate the training that Amawi and his codefendants anticipated receiving and enabling them, in due course, to create, deploy and detonate explosive devices.

## Conclusion

The government's proof sufficed to enable a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the four crimes with which he had been charged, and for which he was convicted.

It is, therefore,

ORDERED THAT the defendant's motion for judgment of acquittal under Fed. R. Crim. P. 29 [Doc. 919] be, and the same hereby is denied.

So ordered.

>                               s/James G. Carr
>                               James G. Carr
>                               Chief Judge