IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,      Case No. 3:06CR719

    Plaintiff

v.      ORDER

Marwan Othan El-Hindi,

    Defendant

This is a criminal case in which the defendant, following his conviction on charges of conspiring to provide material support to terroristic acts overseas and related offenses, has filed motion for a new trial. [Doc. 926]. The government opposes the motion, which shall, for the reasons that follow, be denied.

**Background**

The government contends, and the jury found that the defendant conspired with Mohammed Zaki Amawi and Wassim Mazloum to provide material support to terroristic acts overseas. The gravamen of the government's contentions and proof was that the three defendants, at the urging of an undercover operative, Darren Griffin, agreed to be trained in guerilla-style skills and tactics for the purpose of either going to the Middle East – probably Iraq – to engage in hostile acts against American forces. A subsidiary purpose, according to the government, was that the defendants would themselves use what they anticipated learning from Griffin, a former Special Forces soldier, to train others to go overseas to engage in hostilities against American forces.

In addition, the government also alleged, and the jury found, that the defendant had distributed two types of materials relating to the making and deployment of, on the one hand, a "bomb vest," and, on the other, improvised explosive devices.[1]

## Discussion

The defendant seeks a new trial under Fed. R. Crim. P. 33(a), which permits granting such motion "if the interest of justice so requires." To grant the defendant's motion, I must conclude, *inter alia*, that the verdict "was against the manifest weight of the evidence." *U.S. v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007), which has been held to mean that the evidence preponderates heavily against the verdict. *Id.* (citing *U.S. v. Turner*, 490 F.Supp. 583, 593 (E.D.Mich.1979), *aff'd*, 633 F.2d 219 (6th Cir. 1980).

### 1. Insufficient Evidence

The defendant cross-references his motion under Rule 29 for judgment of acquittal, contending that the evidence did not suffice for conviction of any of the charges. He suggests that the verdict reflected innate bias on the jurors' part.

There is no basis for that contention. *Voir dire* in this case was extensive, and if any effort to ensure a lack of bias on the part of the jurors was not attempted, it is only because it was not called to my attention.

As importantly, every challenge for cause – including those initially overruled – was granted on concurrence of the parties at the conclusion of *voir dire*. Having more than enough jurors who had been passed for cause to seat, following exercise of peremptory challenges, the desired eighteen

---

[1] In an opinion filed concurrently herewith, I deny the defendant's motion for judgment of acquittal under Fed. R. Crim. P. 29.

jurors, I offered to deem as granted all challenges for cause that had been overruled. The parties accepted my suggestion.

As a result, the defendant was not required to exercise a single peremptory to exclude a juror whom he had unsuccessfully challenged for cause.

There is no merit whatsoever to defendant's contention that his conviction was tainted by juror bias.

## 2. Evidentiary Issues

### A. Inflammatory and Irrelevant Videos

The jury saw several videos that primarily the codefendant Amawi had downloaded from various *jihadist* and other websites. These showed acts of violence and death, including the deaths, or likely deaths of American soldiers in Iraq. There were beheadings, sniper shootings, roadside bombs, suicide bombings at checkpoints and similarly violent events.

Both before and during trial I considered the relevance of each of the video exhibits. The record sets forth my rulings in that regard, and I will not repeat them here. Suffice to say, I am confident that admission of that evidence – despite its nature and potential for prejudice – was not erroneous.

Most simply put, the videos were relevant and material, most fundamentally, on the issues of intent and conspiratorial agreement to engage in the actions contemplated by the defendants.[2]

---

[2] The government's opposition to the defendant's motion [Doc. 935] sets forth its views on the relevance of the challenged videos. The videos, the government states, showed ownership; corroborated Griffin's testimony; proved the existence and objectives of the conspiracy; refuted any suggestion of a lack of predisposition on the defendants' part; clarified the meaning of recurrent terms, such as *jihad* and "training" used by the defendants; showed intent, motive and knowledge; and rounded out the context of some of the conversations and events recorded by Griffin.

With regard to the bomb vest video and IED materials, that video and those materials were essential to the government's case against the defendant on Counts 5 and 6.

What mattered most, in my view, was whether the danger of unfair prejudice substantially outweighed the probative value of these materials. Avoiding prejudice from their presence was a recurrent theme throughout the trial. Each prospective juror, all of whom were *voir dired* individually, was told about the nature and content of the videos. If there were a doubt as to whether a juror would be influenced improperly by the videos, that juror was excused.

Limiting instructions as to the videos were given during the trial. Perhaps most importantly, I restricted substantially the proposed testimony by the government's witness Evan Kohlmann. While a portion of his testimony proved to be relevant – to the extent that it explained the origin of some of the videos – much of what the government wanted him to tell the jury was kept from it.[3]

Of the thirty-four videos exhibited to the jury during the trial, the defendant claims that eight were irrelevant and impermissibly prejudicial. Two of those were not, in fact, shown to the jury. Of the remaining six videos, none was played more than once in its entirety, though excerpts of some were replayed at various times during the trial.

The defendant seeks to find support for his claim of excessive prejudice in the Second Circuit's decision in *U.S. v. Al-Moayad*, 545 F.3d 139 (2nd Cir. 2008). I agree with the government that this case is distinguishable on several grounds. That case, unlike this case, did not involve

---

I concur in the government's assessment of the probative value of these materials.

[3] Kohlmann has devoted more than a decade to collecting *jihadist* and similar materials from the internet. He believes he has the world's largest collection of such materials. According to him, in testimony that the jury did not hear, only his own collection exceeded in its size the size of Amawi's downloaded collection of videos and related *jihadist* materials.

charges of conspiracy and distributing of materials relating to bomb making and use. The videos were admissible as to such charges in this case.

The materials found improperly admitted in that case were introduced to establish a fact that was not in dispute. Here, there were no undisputed material facts. Certainly the defendants' not guilty pleas put their knowledge, intent and motive in issue, along with the significance of what they talked about, viewed and said they wanted to gain from Griffin. The videos countered suggestions of ambiguity and lack of predisposition. They also responded to suggestions that the defendants simply shared radical, but innocent religious views.  In that case, unlike this, there was an absence of limiting instructions and similar efforts to deflect potential undue prejudice.

Admission of the challenged videos was not error. In any event, even if it were, its consequences were not so egregious in the context of the entire trial as to justify granting the defendant's motion for a new trial.

### B. Testimony About Terrorists and Terrorist Organizations

The defendant claims the "government paraded in front of the jury a long list of terrorists and terrorist organizations which it knew had no contact with [the defendants]." [Doc. 926, at 9].

Among these organizations is the Islamic Army of Iraq. The defendant was on an internet mailing list for the organization, which the defendant stipulated was "a group formed in or around 2003 that focuses on committing terrorist attacks in Iraq's western province of Anbar."

Otherwise, the individuals and organizations that the defendant claims the government improperly told the jury about were tied to specific pieces of evidence, such as a consensual recording or evidence obtained from a defendant's computer, such as a "cookie."

Kohlmann's testimony about Muntada Al Ansar; the Mujahadeen website; the Al Ansar

5

forum; Ansar al Islam; the Ansarnet/vb website; the Al Firdaws forum; www.al-quayla.com; and oblcrew.net. was relevant to show the defendant's knowledge of the origin, nature and purpose of the materials to which he had access. That knowledge, in turn, was relevant to his intent and objectives, and those of the other defendants. This was sunlight, not fog.

### C. Translations From Arabic

The defendant complains about translations from Arabic to English as to those twenty-two videos that were in Arabic. Such testimony was necessary for the relevance of the videos to be established and become apparent to the jurors. There is no merit to this contention.

### D. Overall Prejudice

I disagree that, either in part or *in toto* the evidence challenged in the defendant's new trial motion was excessively, unfairly or unduly prejudicial.

### 2. Imbalance in Expert Testimony

Prior to trial, I granted the government's motions *in limine* to exclude three defense experts.[4] In addition, I granted the defendants' motion to exclude testimony by the government's expert, Evan Kohlmann. As noted, I ultimately allowed Kohlmann to testify about websites discussed by the defendants and visited by their computers. This was far less than the government wanted him to tell the jury about terrorist organizations and their use of the internet. It was also narrowly tailored to assist the jury in understanding other evidence.

In addition, I permitted the government to offer expert testimony on other subjects.

---

[4] The proffered experts and the subject of their testimony were: Dr. Roger Shuy [forensic linguistics], Jonathan Alterman [Middle Eastern views] and Reza Aslan [Islam and global geopolitical movements]. I held, for the reasons stated in my pretrial ruling, that the testimony that the defendants wanted to present through their three experts was not relevant to any issue in the case. *U.S. v. Amawi*, 552 F.Supp.2d 669 (N.D.Ohio 2008).

The defendant claims that my rulings created an imbalance between him and the government with regard to expert testimony.[5] As the government notes in its opposition to the defendant's new trial motion, nothing that the three excluded defense experts might have stated would have been a rejoinder to the testimony from the government's experts.

The defendant's argument comes down to a complaint that because the government was able to call experts, he should have had the same opportunity – regardless of the relevance of their testimony.

To the extent that the defendant wants me to revisit and reconsider my rulings, I decline to do so. Each was preceded by a full and fair opportunity to be heard, and each was accompanied by a delineation of my reasons. That is all in the record, and available for appellate review: nothing I could say further here would add anything.

In sum: I believe my rulings were correct and caused no prejudice to the defendant. There is always some possibility that the Court of Appeals may disagree – I acknowledge the risk of reversal whenever a trial court excludes a defense expert in a criminal case. But that risk is not, and never can be a consideration in an evidentiary ruling.

### 3. Jury Instructions

### A. Defendant's Requested
### First Amendment Instruction

The defendant claims that I erred when I declined to give a "First Amendment" instruction, which would have informed the jury that the defendant had constitutional rights to freedom of speech, association and exercise of religion.

---

[5] There being no merit to defendant's argument, I disregard the government's contention that he does not have standing to challenge my rulings with regard to two of the experts.

The First Amendment is not a barrier to criminal prosecution and conviction, provided the government otherwise proves the elements of its charge beyond a reasonable doubt. Conspiracies usually involve speech; they always involve association. But that does place them within the penumbra of the First Amendment, which is not applicable to statements made and associations created in furtherance of a crime. *See U.S. v. Freeman*, 761 F.2d 549, 966 n.4 (9th Cir. 1985); *see also U.S v. Mendelsohn*, 896 F.2d 1183, 1185 (9th Cir. 1990).

There was, moreover, no evidence that the government undertook its investigation to chill or penalize the exercise of the defendant's First Amendment rights. Speculation by the defendant to the contrary is not a substitute for an evidentiary basis for an instruction. See *U.S. v. James*, 819 F. 2d 674, 675 (6th Cir. 1987) (finding a jury instruction "should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation.").

Not having presented evidence to implicate the First Amendment in the government's actions, and not being able to point to anything in the evidence presented by the government at trial that does so, the defendant has no basis for complaining about the rejection of his demand for a First Amendment instruction.

### B. Intent

The defendant claims that I improperly gave a limiting instruction on the issue of intent during the testimony of Robert Antoon, the government's Arabic linguist. (Motion, at 22-24). In essence, I told the jury that materials obtained from codefendant Amawi's computer could be considered with respect to Amawi's intent.

No one asked me then or later [as the defendant now claims I should have done] to instruct the jury with "regard to the extent to which any of the evidence can be considered . . . with regard to the charge of conspiracy."

The lack of an instruction on this subject hardly prejudiced the defendant. On the subject of the materials from Amawi's computer, the jury had been told it could consider those materials as to Amawi. I did not tell the jurors they could also consider them – provided a conspiracy otherwise had been proven, and that they also found the materials relevant to the scope and purpose of the conspiracy – with regard to the other defendants. Had I done so, the defendant, no doubt, would be claiming that giving such instruction had been prejudicially erroneous.

## Conclusion

I find no merit in any of the defendant's claims of error on my part. He has not shown that he is entitled to a new trial.

It is, therefore,

ORDERED THAT the defendant's motion for a new trial [Doc. 926] be, and the same hereby is overruled.

So ordered.

s/James G. Carr  
James G. Carr  
Chief Judge