IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                    Case No. 3:06CR719

        Plaintiff

        v.                                                        ORDER

Mohammed Zaki Amawi,

        Defendant

       The defendant in this case, convicted of terrorism-related offenses, has filed (while his direct appeal is pending) a motion for a new trial and disclosure of evidence. (Doc. 1117/Under Seal). The government opposes the motion.

       The gravamen of the defendant's motion is that he is entitled to obtain evidence from the government about contacts between the defendant and an individual known as "the Syrian." The defendant claims to have developed newly discovered evidence, unavailable to him or his attorneys prior to or during trial, that shows that his contact with the Syrian was not related to terrorism. Instead, his lawyers contend, his purpose was to obtain monies from the government's undercover informant, Darren Griffin. They also want to show that the defendant knew Griffin was a government agent.

The defendant seeks disclosure of all evidence in the government's possession relating to the Syrian and contacts between that individual and the defendant. That evidence, the defendant's attorneys argue, will entitle him to a new trial.

For the reasons that follow, I deny the motion.

**Background**

On being introduced to one another by Griffin, the defendant and his two co-defendants responded positively to Griffin's statements about *jihad*. He told them he was a former Special Forces soldier (one of the few true statements Griffin made to the defendants during his employment by the government in this case). He initially alleged he was in the business of training individuals to engage in defensive measures for personal protection.

Part of his pitch to the defendants was that Muslims needed to protect themselves. This morphed into suggestions and then offers that he could provide training to the defendants in jihadist methods. This, in turn, he told them, would prepare them either to engage in combat against American forces in Iraq and/or provide training to do so for others.

The defendants fell for his spurious blandishments. The jury found, and the record supported its finding, that the defendants had agreed to obtain such training for the purpose of engaging, or causing others to engage in acts in furtherance of the Iraqi insurgency.

The defendants themselves provided much of the evidence against them – in the form of audio and videorecordings of their conversations and interactions with Griffin. In these recordings the defendants individually showed a predisposition and a willingness to obtain what Griffin was offering (*i.e.,* training in guerilla tactics). As to the defendant Amawi, the government produced several exemplars of jihadist videos that he had downloaded from the internet.

Among these videos was a depiction of how to construct and suicide bomb vest, killings of American soldiers by sniper shot and roadside bombs, and beheading of a collaborator by insurgents.

In addition, Griffin had recorded a conversation, conducted *via* the internet, between the defendant and the Syrian. The defendant told Griffin that the Syrian wanted astrolite (an explosive) to provide to others in the Middle East.

This was the only direct evidence of the defendant's contacts with the Syrian. The defendant now claims that his contact with the Syrian, as recorded in one instance by Griffin and otherwise as related by the defendant to Griffin, was the "linchpin" of the government's case. Contrary to the defendant's contention, the defendant's relationship with the Syrian was not the fulcrum on which the prosecution turned. While this evidence confirmed the defendant's intent, it was far from the only indicia of what he wanted to do, and what he wanted Griffin to do for him and the other defendants.[1]

Following the trial and shortly before sentencing, the office of the defendant's attorney made contact with a person in Syria who, they believe, was the Syrian's mother. She told them her son was in prison for an internet-related crime. Further efforts to learn more from that individual and others were not successful.

The pending motion seeks to compel the government to disclose what information it has from whatever source, including classified information, about the Syrian and the defendant's contacts with that individual. This information, according to the defendant, will entitle him to a new trial

---

[1] *See* the Superceding Indictment's listing of overt acts. (Doc. 186, ¶¶ 13-44, 49-58). The government proved the commission of all, or nearly all these acts beyond a reasonable doubt at trial. Among them, but hardly of *sine qua non* significance *vis-a-vis* the government's case, was the defendant's contacts and resulting request to Griffin about astrolite. (*Id*., ¶¶ 49, 51-54).

because it will show he knew Griffin was a government agent and his motive was to trick Griffin into providing monies to him.

On initial review of the pleadings relating to the pending motion, I held a telephone pretrial conference with counsel for the parties. I noted the fact that the defendant was not supporting his motion with his own affidavit. In my view, the defendant, before I proceeded to adjudicate his motion, should at least lay a predicate foundation establishing the fact that he had, indeed, had other contacts with the Syrian and how those contacts generated exculpatory information. Without that support, the pending motion contains nothing more but speculative assertions composed by his attorneys.

I ordered the defendant to "to supplement said motion by submission of affidavit or other evidence by September 1, 2011." (Doc. 1121).

Instead of complying with that order, his lawyers have declined to do so. Their basis for their refusal is a concern that, in the event the defendant's conviction is reversed on appeal, the government might to use the defendant's statements against him in a retrial. (Doc. 1127).

I find that unsupported supposition unpersuasive. At the very least, counsel, before disobeying a direct order, should show a legal basis for that refusal. Instead, they simply aver that whatever the government might have is better evidence than the defendant's recollection of what he did. "Counsel shudders," they assert as well, "at what government prosecutors would do with an affidavit attempting to describe what exactly was said during conversations that occurred over six years ago." (Doc. 1127, at 4).

Defendant's attorneys say that their refusal to comply with my order should not result in overruling of their motion. I disagree: at the *very least*, they should have provided some legal basis for their refusal to do as I told them to do. They should and could have begun with showing why the

doctrine of *Simmons v. U.S.*, 390 U.S. 377, 394 (1968), would not have protected him against the government's use of his affidavit in a subsequent trial.[2]

The defendant's motion rests on his supposition that the government has evidence about the defendant's contacts with the Syrian which it has not, but should, produce. That evidence, in the defendant's view, is exculpatory, and would show that his intent in his dealings with Griffin was larcenous, rather than potentially more harmful. If so, that evidence goes directly to his guilt or innocence.

Thus, the defendant's motion is bottomed on the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963). The right to due process that *Brady* protects is every bit as fundamental as the Fourth Amendment rights which the *Simmons* doctrine protects. I see, accordingly, no risk to the defendant's Fifth Amendment rights were he to have complied with my order to submit an affidavit supportive of his attorneys' allegations in their motion.

In any event, in refusing to submit the ordered affidavit, it was incumbent on the defendant's attorneys to address the *Simmons* issue and argue its inapplicability.

Alternatively, or in addition, the defendant's attorneys could and should have sought leave to submit the affidavit under seal. Or they could have asked government counsel to agree not to use the affidavit in further proceedings, if any. Or they could have asked for a ruling from me precluding such use.

Counsel having disregarded a direct order without legally supported (and thus legally insufficient) cause to do so, I overrule the pending motion for their failure to have done as they were told.

---

[2] In *Simmons* the Court held that the government's use at trial of a defendant's testimony at a Fourth Amendment suppression hearing would violate his Fifth Amendment protection against compelled self-incrimination.

In any event, as presently submitted, the motion is without merit.

A defendant is entitled to a new trial only if he shows: 1) he discovered the alleged newly discovered evidence after trial; 2) he could not discovered such evidence earlier with due diligence; 3) the evidence is material and not merely cumulative or impeaching; and 4) such evidence would likely produce an acquittal. *See*, *e.g.*, *U.S. v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982).

The newly discovered evidence to which the defendant points is the information he has learned about the Syrian since his trial (though before sentencing). In sum, and viewed most favorably toward the defendant, that evidence is that the Syrian with whom he spoke has since been convicted and confined due to something related to the internet.

The defendant has not shown, and cannot show that the Syrian's offense had something to do with his contacts with the Syrian. The defendant also cannot show that the Syrian was in cahoots with the defendant to obtain monies from Griffin under the false pretense of getting explosives from Griffin. But that is what he now claims: that he and the Syrian were engaged in a scheme to profit, rather than aiding Middle Eastern terrorists.

The defendant has produced no newly discovered evidence that has any bearing on the issues at his trial. Not having stepped across this threshold, he can go no further.

Viewed most accurately, this is, as I have already alluded, a *Brady* motion. The defendant believes the government acquired information about his contacts with the Syrian that would show his larcenous, rather than a more violent intent on his part. The government has not produced any such evidence.

To be sure, the government and I had several CIPA hearings before and during the trial. A reviewing court will conclude, as I did, that the government was diligent and forthcoming in its presentations. There is simply no basis for believing that the government would have withheld

information, if it had any, of any pertinence to the defendant's contacts with the Syrian. Had it done so, it would have deviated markedly, and without apparent cause, from its manifest commitment, as apparent in each CIPA conference, to ensuring, *via* the CIPA process, that I became aware of whatever of possible pertinence it had. The government was clearly aware of the rules and playing by them. That it would jeopardize its case by sitting on something useful to the defendant is simply not likely.

Had there been any CIPA information, much less evidence of the slightest possible use to the defense on this or any other topic, I would have required its production.

To establish that a *Brady* violation undermines a conviction, a convicted defendant must show: 1) the evidence at issue is "favorable to the accused, either because it is exculpatory, or because it is impeaching"; 2) the prosecution, either willfully or inadvertently, suppressed the evidence; and 3) resultant prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–282 (1999).

In the usual *Brady* situation, something has come to light after a trial that shows, or gives rise to the likelihood that the government withheld something material from the defense.

The defendant can point to nothing of that sort. This is so for two reasons. First, the government took an "open file" approach, except with regard to classified information.

To the extent it had such information, I am confident, as noted above, that it took a similarly open file approach in its CIPA hearings. Thus, while the defendant himself cannot gain access directly to that information, I have acted as his surrogate. That is what a judge is supposed to do in a CIPA hearing.

While the defendant and his attorneys are frustrated at this process, it is the process that is in place. But what matters is that I have no doubt that the government dealt with me honestly and

opened its file, to the extent it contained any classified information of any possible pertinence, to me.

Every time it did so, I concluded that it was under no obligation, whether under CIPA, *Brady* or otherwise, to disclose anything to the defendants.

I abide by those decisions. Given how the government conducted itself under CIPA and my contemporaneous findings – all of which are of record for review – I decline to revisit the records of those hearings. I have no doubt that there was nothing of the sort which the defendant's motion seeks in the classified information the government acquired *vis-a-vis* the defendant.

Finally, even if there were something of the sort the defendant, without basis for doing so, hopes to find, there is no likelihood that it would result in an acquittal. Even if the jury learned that he and the Syrian had something other in mind, and wanted simply to fool and cheat Griffin, that would not have been enough to outweigh the very substantial evidence against the defendant.

I concur, moreover, with the government's contention that the defendant is not actually seeking a new trial based on "newly discovered evidence" under Fed. R. Crim. P. 33(b)(1), despite his contentions to the contrary. Instead, and in actuality, the defendant seeks a new trial grounded on "any other reason" (i.e. disclosure of evidence) under Fed. R. Crim. P. 33(b)(2). A defendant must have filed his motion under this rule by June 20, 2008.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT the defendant's motion for a new trial, etc. (Doc. 1117) be, and the same hereby is denied.

So ordered.

/s/ James G. Carr
Sr. United States District Judge