**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

United States of America,                                    Case No. 3:06CR719

       Plaintiff-Respondent,

       v.                                                             **ORDER**

Mohammed Zaki Amawi,

       Defendant-Petitioner.

The defendant, Mohammed Zaki Amawi, convicted of terrorism-related conspiracy and other charges, has filed a *pro se* motion under 28 U.S.C. § 2255 to vacate or set aside his sentence.

For the reasons that follow, I deny the motion.

Following his conviction, the defendant appealed. The Sixth Circuit affirmed his conviction. *U.S. v. Amawi*, 695 F.3d 457 (6th Cir. 2012).[1] The Supreme Court denied certiorari on February 25, 2013. *Amawi v. U.S.*, 133 S. Ct. 1474 (2013). A year and a day later, the Clerk of Court received Amawi's § 2255 petition.[2]

---

[1] I decline to reprise the factual underpinnings of Amawi's conviction. The Court of Appeals' decision describes the factual background in adequate detail. 695 F.3d at 465-68.

[2] The government argues the motion is untimely because Amawi filed it on February 26, 2014, one day after the one-year limitations period expired. I disagree: the law deems an inmate's § 2255 motion filed on the date it is mailed, *see* Rule 3(d), Rules Governing Section 2255 Cases in the United States District Courts, which in the case appears to have been between February 18 (when Amawi signed the motion) and February 21 (the date Amawi completed his *in forma pauperis* application, *see* Docs. 1147-1 & 1147-2).

The government contends, and I agree, that Amawi's claims fall into three categories: 1) ineffective assistance of counsel; 2) issues Amawi raised and the Circuit adjudicated on direct appeal; and 3) claims Amawi could have raised, but failed to raise, on direct appeal.

## 1. Ineffective Assistance of Counsel

The first of the five grounds Amawi asserts is that his attorneys were ineffective because, as three of the lawyers have stated in affidavits attached to the motion, they did not have sufficient time to prepare for trial, so that they were unable to review the government's evidence and the material the government provided during discovery, present evidence of innocence, and object to improperly admitted evidence. He also faults his lawyers understanding of the rules of evidence. (Doc. 1146, pg. 5, ¶ A, pp. 7-11; attached affidavits of Assistant Federal Public Defenders Amy Cleary, Edward Bryan, and Timothy Ivey).

The well-spring of Amawi's claim of ineffective assistance of counsel is his contention, which the affidavits of his former counsel seek to support, that the eight weeks they had between appointment and voir dire was insufficient to prepare to meet the government's case and present a defense.

To prevail on this claim, Amawi must show his counsel performed deficiently (in this instance, due to my failure to grant continuance motions) and consequent prejudice. To meet the second part of his burden – resultant prejudice – Amawi must show that, but for the deficient performance, there is a reasonable probability the result of trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Ross v. U.S.*, 339 F.3d 483, 491-92 (6th Cir. 2003).

Although the Sixth Circuit heard essentially the same contention on appeal, and found I had

not abused my discretion in denying motions for continuances,[3] I will, solely for purposes of this

---

[3] I first appointed the Federal Public Defender shortly after return of the indictment. Eight months later – on the legally insufficient grounds that Amawi did not trust the Public Defender because they were employees of the government – granted leave to substitute counsel. Amawi was not happy with successor counsel, so I again appointed additional counsel. When he was unhappy with *that* appointment, I re-appointed, at his express request, the Public Defender whom he had not wanted at the outset. When I did so, the trial, already oft postponed (due, in part to Amawi's revolving door with his lawyers), was set for eight weeks later. I denied the Defender's motion for a ninety-day continuance. On the basis of this record, the Court of Appeals stated:

> [I]t was not an abuse of discretion for the district court to deny the motion for a continuance. First, Amawi created the circumstances giving rise to his need for continuances with his repeated requests for new counsel. Second, although the Federal Public Defender was only brought back onto the case two months prior to trial, in 2006 the Defender's office had been on the case for eight months and had had significant time to review the materials in the case. In 2008, upon its reappointment, the Defender was not starting from scratch. Second, the district court also had to consider [codefendant] El–Hindi's concerns. At the time of the trial, El–Hindi had been incarcerated for more than two years and adamantly opposed further continuances. If the trial were delayed any further, El–Hindi would have moved to sever his trial. The district court properly credited the need to try all of the defendants together as a reason for denying the continuance.

> In any event, Amawi fails to demonstrate that "the denial resulted in actual prejudice to his defense." "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense." Amawi argues that if his defense counsel had had more time to review the video evidence, they could have identified "irrelevant, prejudicial" evidence and sought its exclusion in limine. Amawi points to nothing specific that would have been prejudicial but rather relies on the fact that there could have been something prejudicial that could have been excluded. This is not enough. Despite the "mountains of discovery dumped at [his] feet," it was not prejudicial to deny Amawi the chance "to excavate in a mine that contained no ore."

695 F.3d at 481-82 (internal citations omitted).

opinion, assume that my refusal to grant more time to the Public Defender's trial team of four attorneys (assisted by, *inter alia*, an investigator) caused counsel to perform deficiently.

What matters, then, is whether Amawi, even with the affidavits of three of his former attorneys, has a plausible claim of prejudice from my refusal to give his lawyers more time to prepare.

Although Amawi recites several ways in which he believes the lack of time prejudiced him, he points to no evidence that his lawyers could have either introduced or sought to exclude. His contentions about the effect of not having more time to prepare are conclusory, and lack the essential factual underpinning necessary to show prejudice.

The same is true with regard to his former attorneys' affidavits.

Assistant Federal Public Defender Amy Cleary's affidavit states, in essence, that due to insufficient time to prepare for trial, she only learned what the government's evidence was as the trial unfolded. She does not contend that the government disregarded its commitment, at my urging, to provide nearly complete pretrial disclosure. Nor does she assert that Amawi did not have, or could not have been provided with access to, the same or substantially the same quantity of evidence as the attorneys who were defending him. Indeed, she affirms that he was "very engaged in his own defense and eager to share information" with defense counsel. (Doc. 1146-2, ¶ 17).

Cleary's principal objection appears to be that because she and her colleagues had only eight weeks to prepare for trial before voir dire (which lasted three weeks), she and they were unable to review the 300 hours of video and audio recordings the government had obtained. She complains

4

as well that no "defense transcript" (which, I assume, means a transcript of all recorded conversations) has ever been prepared.[4]

The Cleary affidavit also points out that portions of the recorded conversations were in Arabic. That simply could not have been an impediment to the lawyers' learning what those conversations concerned: *Amawi was the speaker in many, if not most of the conversations and he is fluent in Arabic and English.* Nevertheless, Amawi has never pointed with any specificity to any conversation that included him or others speaking in Arabic that contains evidence of any sort that in any way could have affected the outcome of the case. He does not explain why before, during, or after his trial he did not call his attorneys' attention to any such specific conversations.

Like Amawi's handwritten elaboration of his ineffectiveness claim, the Cleary affidavit fails to point to any *evidence* of any sort that, had the attorneys had more time to uncover, review, and present, could have had any affect on the outcome of trial.

That is not enough to meet the prejudice prong of *Strickland*.

Assistant Federal Public Defender Edward Bryan also submitted an affidavit. The first four pages of his nine-page affidavit are substantially duplicative of the first four pages of the Cleary affidavit. Most of the remainder of his affidavit recounts his belief that the government withheld *Brady* information, either by "hiding" behind the "screen" of the Classified Information Procedures Act or otherwise. Pointing to the possibility that Amawi had conversations with an individual in Syria, Bryan speculates that the government recorded but did not disclose those conversations. He also renews his speculation, made earlier in these proceedings, that somehow "the Syrian" would have been a source of exculpatory evidence.

---

[4] The affidavit does not explain *why* a "defense transcript" was or is necessary.

5

Neither he nor Amawi has submitted anything to support this speculation. If Amawi was, in fact, a participant in any such conversations, he is the best source of who else participated in those conversations and what was discussed. In other words, Amawi and his former counsel have at hand a source – Amawi himself – for the information Bryan claims the government had, but improperly did not disclose.[5]

There is, as Getrude Stein once remarked, quite simply put, "no there there."[6]

I have previously confirmed that the government disclosed nothing – *absolutely nothing* – during CIPA hearings that in any way whatsoever would have been of any use whatsoever to the defendants generally or Amawi individually. *Amawi, supra*, 2009 WL 1373154, *6, *aff'd,* 695 F.3d at 493. Here again, "there is no there there."

Assistant Federal Public Defender Timothy Ivey submitted an affidavit that is *in toto* duplicative of the Bryan affidavit. Like Bryan's and Cleary's submissions, Ivey's affidavit fails to point to *evidence* that, had it been known, comprehended, and used (or excluded), would have created a reasonable probability of a different result at trial.

In sum: all three affiants complain that they did not have enough time to acquaint themselves with the full scope of the government's evidence. None acknowledges the fact that I gave the defense a week's recess to prepare for cross-examination of the government's principal witness, the defendants' false friend and F.B.I. informant Darrin Griffin.

---

[5] Both I and the Sixth Circuit rejected the same assertions about the Syrian. *U.S. v. Amawi*, 2009 WL 1373154, *8 (N.D.Ohio) (overruling motion for new trial), *aff'd*, 695 F.3d at 490.

[6] Stein, Gertrude, EVERYBODY'S AUTOBIOGRAPHY 289 (New York: Random House, 1937).

More importantly, there is neither an allegation nor, more importantly, any evidence in any of the affidavits that in any way supports Amawi's own conclusory contention that the outcome of his trial would somehow have been different had his lawyers had the additional ninety days they requested to prepare for trial.

Amawi's petition fails utterly to satisfy the second prong of his ineffective assistance of counsel claim.

## 2. Claims Adjudicated on Appeal

Section 2255 provides no opportunity to relitigate contentions that a defendant has unsuccessfully raised on direct appeal. *E.g., DuPont v. U.S., 7*6 F.3d 108, 110 (6th Cir. 1996).

The claims that Amawi previously made and the Sixth Circuit laid to rest include:

- He asked for counsel during interrogation *en route* from Jordan to the United States. I found, as a matter of fact, he did not invoke his right to counsel. The Sixth Circuit upheld that finding. 695 F.3d at 485.

- As noted above, the Sixth Circuit held on direct appeal that I did not abuse my discretion when I denied motions for continuance. *Id.* at 480-82.

- The Circuit Court upheld my handling of CIPA and related proceedings, especially as they related to "the Syrian." *Id.* at 490.

- The same is true with regard to my application of the *Brady* doctrine. *Id.* at 471.

## 3. Claims Not Raised at Trial or on Direct Appeal

Failure to raise an argument at trial or on direct appeal works a procedural default on collateral review under § 2255, absent a showing of both cause and prejudice or actual innocence. *Murr v. U.S*, 200 F.3d 895, 900 (6th Cir. 2000). The claims that Amawi seeks for the first time to raise here, and as to which there is no basis for excusing his defaults, are:

- "[O]n the Air plain [*sic*], they threatened to beat me up if I do [sic] not respond";

- Unlawful search and seizure: Amawi points to neither the evidence allegedly unlawfully obtained nor the lack of a full and fair opportunity to challenge its lawfulness in a timely manner;

- Alleged unlawful acquisition of jurisdiction by brining him from Jordan to the United States; though he raised this issue before me, he did not assert it on direct appeal;[7]

- F.B.I. agents drugged him during his flight to the United States;

- Evidence unlawfully obtained by Jordanian officials contributed to his conviction.[8]

**Conclusion**

There is no merit to Amawi's motion for § 2255 relief.

With regard to his claim of ineffective assistance of counsel, his motion, including the affidavits from three of his former attorneys, fails to establish any basis, much less a plausible basis, for a finding of prejudice. His other claims are either precluded by *res judicata*, having been denied on direct appeal, or by his failure to have raised them when the law required him to do so.

It is, accordingly,

ORDERED THAT the motion to vacate (Doc. 1146) be, and the same hereby is, denied.

---

[7] There is, in any event, no merit whatsoever to this claim. *See, e.g., Frisbie v. Collins*, 342 U.S. 519, 522 (1952).

[8] Amawi points to no such evidence. In any event, absent involvement by American authorities in the acquisition of evidence abroad, any violation of either internal domestic or American constitutional doctrines does not affect the admissibility of evidence that foreign officers have obtained and provided to American authorities. *E.g., U.S. v. Emanuel*, 565 F.3d 1324, 1330 (11th Cir. 2009) ("The general rule is that evidence obtained from searches carried out by foreign officials in their own countries is admissible in United States courts, even if the search would not otherwise comply with United States law or the law of the foreign country.").

Furthermore, no certificate of appealability will issue because Amawi has failed to make a substantial showing of the denial of a constitutional right.

An appeal from this decision could not be taken in good faith, and shall not be allowed without prepayment of the requisite filing fee.

So ordered.


/s/ James G. Carr
Sr. U.S. District Judge