IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| MOHAMMAD ZAKI AMAWI, | ) | CASE NO.:  3:06CR719 |
| | ) | 3:16CV02279 |
| Defendant-Petitioner, | ) | |
| | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | GOVERNMENT'S BRIEF ON THE |
| | ) | IMPACT OF *SESSIONS v. DIMAYA* |
| Plaintiff-Respondent. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Matthew W. Shepherd, Assistant United States Attorney, and respectfully submits this brief on the impact of the Supreme Court's decision in Sessions v. Dimaya, 138 S.Ct. 1204 (2018), on Defendant Mohammad Zaki Amawi's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.  As explained below, the Dimaya decision does not change the conclusion that Amawi's petition is a second or successive petition that should be transferred to the Sixth Circuit.  Further, although this Court lacks jurisdiction over the petition because it is second or successive, Amawi still cannot prevail because Dimaya does not invalidate the convictions in his case.

## I.    <u>PROCEDURAL HISTORY</u>

Defendant Mohammad Zaki Amawi ("Amawi") and co-defendants Marwan El-Hindi ("El-Hindi") and Wassim Mazloum ("Mazloum") were indicted in February 2006.  Amawi, El-Hindi and Mazloum were charged in Count 1 with Conspiracy to Kill and Maim Persons Outside the United States, in violation of 18 U.S.C. § 956(a)(1), and in Count 2 with Conspiracy to Provide Material Support to Terrorists in Furtherance of the Killing of U.S. Nationals, in violation of 18 U.S.C. § 2339(A).  Amawi in Counts 3 and 4 and El-Hindi in Counts 5 and 6 were also charged with Distributing Information Regarding the Manufacture of Explosives, Destructive Devices and Weapons of Mass Destruction, in violation of 18 U.S.C. § 842(p)(2)(A).  On June 13, 2008, following a jury trial, Amawi was convicted of the charges in Counts 1 through 4.  (R.802: Jury Verdict as to Def. Amawi).

On October 21, 2009, Amawi was sentenced to 240 months imprisonment and a lifetime term of supervised release.[1]  (R.993: Minutes (Amawi); R.998: Amended Judgment (Amawi)).  Both Amawi and the government filed timely notices of appeal.  (R.999: Amawi Notice of Appeal; R.1004: Government Notice of Appeal).  The Sixth Circuit Court of Appeals affirmed all judgments of the District Court on August 23, 2012.  <u>See</u> <u>United States v. Amawi</u>, 695 F.3d 457 (6th Cir. 2012).  On February 25, 2013, the Supreme Court denied Amawi's petition for a writ of certiorari.  (R.1143, PageID 15744).  On February 26, 2014, Amawi filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (R.1146, Motion, PageID 17538).  That Motion was denied on November 6, 2014.  (R.1159: Order, PageID 17689).

---

[1] The sentence consisted of 240 months imprisonment on Count 1, 180 months on Count 2, 240 months on Count 3, and 240 months on Count 4, all to run concurrently.

On September 13, 2016, Amawi filed a second Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 challenging only his convictions for Counts 3 and 4.  (R.1161: Motion, PageID 17693).  In his motion, Amawi argued that his convictions for Counts 3 and 4 must be vacated as a result of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015).  The government filed a response on November 22, 2016. (R.1164, Response, PageID 17706).  On December 20, 2016, Amawi filed a reply to the government's response. (R.1165, Reply, PageID 17719).  Relevant to Amawi's argument was the decision issued by the 9th Circuit Court of Appeals in Dimaya v. Lynch, 803 F.3d 1110 (9th Cir. 2015), which invalidated the residual clause in the definition of crime of violence contained at 18 U.S.C. § 16(b).  At the time of Amawi's motion, review of this decision was pending before the United States Supreme Court.  The Court issued an order holding Amawi's petition in abeyance pending a ruling in Dimaya from the Supreme Court.  (R.1166, Order, PageID 17733).  On April 17, 2018, the Supreme Court issued a decision in the Dimaya case, affirming the decision of the Ninth Circuit and holding that the residual clause of 18 U.S.C. § 16(b) was unconstitutionally vague.  Sessions v. Dimaya, 138 S.Ct. 1204 (2018).

## II.    THE DIMAYA DECISION

18 U.S.C. § 16 defines "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."   This definition is used in multiple federal statutes, including the Immigration and Nationality Act, which was at issue in Dimaya, and 18 U.S.C. § 842(p), the statute at issue in Amawi's case.  See Leocal v. Ashcroft, 543 U.S. 1, n. 4 (2004) (citing § 842(p) as one of "a

number of statutes criminaliz[ing] conduct that has as an element the commission of a crime of violence under § 16").

In <u>Sessions v. Dimaya</u>, 138 S.Ct. 1204 (2018), the Supreme Court considered the constitutionality of the definition of crime of violence at Section 16(b), which is commonly referred to as the "residual" clause.  The Supreme Court held that the definition of a "crime of violence" in 18 U.S.C. § 16(b) is unconstitutionally vague as incorporated into the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(43)(F).  <u>Dimaya</u>, 138 S. Ct. at 1212, 1223.  The Supreme Court determined that "[t]wo features" on which it had previously relied to invalidate the "residual clause" of the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii),[2] were likewise present in Section 16(b) as incorporated into the INA. <u>Dimaya</u>, 138 S. Ct. at 1213 (quoting <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2557 (2015)). The Court explained that Section 16(b), like the ACCA's residual clause, "calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and creates "uncertainty about the level of risk that makes a crime 'violent.'" <u>Id.</u> at 1215.

<u>Dimaya</u> did not invalidate, or even address, the definition of crime of violence at Section 16(a), which is commonly known as the "elements" or "force" clause.

## III.  ARGUMENT

As explained below, despite the <u>Dimaya</u> decision, Amawi's petition is still a second or successive Section 2255 petition that must be transferred to the Sixth Circuit for authorization to

---

[2]The ACCA's residual clause defined a "violent felony" to include a felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

proceed.  Although after <u>Dimaya</u> Amawi's petition is not untimely, it still fails on the merits because <u>Dimaya</u> did not invalidate the definition of crime of violence at 18 U.S.C. § 16(a).

**A.      Amawi's motion is a second or successive petition under Section 2255 and must be transferred to the Sixth Circuit Court of Appeals.**

The <u>Dimaya</u> decision does not change the conclusion that Amawi's instant petition is a second or successive petition under Section 2255, for which Amawi must first obtain authorization from the Sixth Circuit Court of Appeals.  Absent such authorization, this Court lacks jurisdiction to consider Amawi's pending motion.

A convicted defendant may collaterally challenge his conviction and sentence through the procedures set forth in 28 U.S.C. § 2255, which provides strict rules governing the number and timeliness of filing such claims.  Relevant here, 28 U.S.C § 2255(h) requires:

> (h) A second or successive motion must be certified as provided in Section 2244 by a panel of the appropriate court of appeals to contain—
>> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

18 U.S.C. § 844(b)(3)(A) further makes clear that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." The statutory scheme thus makes the applicable court of appeals the gatekeeper to determine if second or successive petitions meet the criteria at Section 2255(h) in order to proceed in the district court.

When a petitioner files a second or successive motion under Section 2255 in the district court without first obtaining this certification from the court of appeals, the district court is required to transfer the motion to the Sixth Circuit Court of Appeals under binding Sixth Circuit precedent.  In re: Sims, 111 F.3d 45, 47 (6th Cir. 1997) ("Thus, we hold that when … a second or successive … § 2255 motion is filed in the district court without § 2244(b)(3) authorization from this court, the district court shall transfer the document to this court pursuant to 28 U.S.C. § 1631."); In re: Hanserd, 123 F.3rd 922, 934 (6th Cir. 1997) ("If either a motion requesting permission or a second or successive motion to vacate sentence is erroneously filed in district court, that court should transfer that motion to this court under 28 U.S.C. § 1631").

Amawi previously filed, and this court denied, a petition pursuant to Section 2255 challenging his convictions.  The instant petition appears to clearly be a second or successive petition for which Amawi requires the authorization of the Sixth Circuit Court of Appeals. Amawi attempts to avoid this requirement by arguing that the instant petition is not actually a second or successive petition subject to the requirements of 18 U.S.C. § 2255(h) because it is based on the holding of the Supreme Court's decision in United States v. Johnson, 125 S.Ct. 2551 (2015), which he argues is a new rule of constitutional law made retroactive to cases on collateral review that was not available to him when he filed his initial Section 2255 petition. (R.1165, Reply, at PageID 17720-21).   Amawi thus argues that his Johnson claim was unripe at the time of his initial petition.  Presumably, he would make the same claim regarding the Dimaya decision.

As this and other courts have made clear, not all second-in-time Section 2255 petitions are considered "second or successive." See United States v. Petaway, 104 F.Supp.3d 855, 857 (N.D.Oh. 2015); Panetti v. Quarterman, 551 U.S. 930, 944 (2007) (explaining that not all

petitions filed second in time are considered to be second or successive petitions); In re Jones, 652 F.3d 603, 605 (6th Cir. 2010) (explaining that "not every numerically second habeas petition is subject to … gatekeeping procedures" that apply to second or successive petitions).  Second-in-time petitions are not second or successive when based on claims that were unripe at the time of the initial petition.  However, what makes a claim "unripe" is that *facts* were not fully developed at the time of the initial petition, not that the law subsequently changed.  Pettaway, 104 F.Supp.3d at 857; see also United States v. Claycomb, 577 F.App'x. 804, 805 (10th Cir. 2014) ("But what makes a claim unripe is that the factual predicate has not matured not that the law was unsettled."); United States v. Obeid, 707 F.3d 898, 902 (7th Cir. 2013) (noting that "genuinely unripe claims" are those "where the factual predicate that gives rise to the claim has not yet occurred"); In re: Tibbetts, 869 F.3d 403, 406 (6th Cir. 2017) (noting that "[a] claim is unripe when 'the events giving rise to the claim had not yet occurred") (quoting In re: Jones, 652 F.3d 603, 605 (6th Cir. 2010)).  Amawi's new claim is based on the Supreme Court decisions in Johnson and Dimaya, purely legal circumstances.  Factually, his claim was as ripe at the time of his initial petition as it is now.  Although Amawi did not have the benefit of the legal decisions in Johnson and Dimaya at the time of his first petition, the factual record was fully developed to allow him to make the same arguments later addressed in those cases.  There have been no new *facts* developed that affect in any way whether the offenses of killing a federal officer or employee or killing a U.S. national abroad are crimes of violence.  Thus, Amawi's new Section 2255 petition is based solely on legal developments.

The Sixth Circuit recently made clear that a second-in-time petition based on case law announcing a new constitutional rule not available at the time of the first petition is still a second or successive petition.  In In re: Coley, 871 F.3d 455 (6th Cir. 2017), the Sixth Circuit considered

whether a second-in-time petition by a state prisoner under 28 U.S.C. § 2254 was a second or successive petition.[3]  Coley had previously filed a petition that was denied.  After the denial, the Supreme Court issued the decision in Hurst v. Florida, 136 S.Ct. 616 (2016), which required juries to make certain findings about mitigating evidence during a capital sentencing.  Coley then filed a new petition based on Hurst.  Coley argued that his second petition was not second or successive because it was based on a Supreme Court ruling that did not exist at the time of his first petition.  Although acknowledging that there was an exception to the definition of second or successive petitions for claims that were not ripe at the time of the first petition, the Sixth Circuit rejected the argument that a new legal rule made a claim unripe:  "What the exception *cannot* mean is what Coley claims it means: that a petition is not second or successive whenever it relies on a rule that did not exist when the petitioner filed his first petition."  Coley, 871 F.3d at 457; see also Leal Garcia v. Quarterman, 573 F.3d 214, 221 (5th Cir. 2009) (explaining that "[n]ewly available claims based on new rules of constitutional law made retroactive by the Supreme Court are *successive*"); Claycomb, 577 F.App'x at 804-05 (finding that second-in-time 2255 petition based on new Supreme Court decision in United States v. Alleyne, 133 S.Ct. 2151 (2013) was a second or successive petition).[4]

---

[3] Although considered in the context of a state collateral review petition filed under Section 2254, "there is no material difference between motions under Section 2255 and petitions under Section 2254" on the question of whether a petition is truly a second or successive petition. United States v. Obeid, 707 F.3d 898, 901 (7th Cir. 2013).

[4] At least one other district court has found that claims based on the Johnson decision were not second or successive petitions because the claim based on Johnson was not ripe prior to the Johnson decision.  See United States v. Waagner, No. 1:02-cr-007, 1:16-cv-538, 2016 WL 2853563 (S.D.Oh. May 16, 2016) (unpublished); United States v. Harden, No. 3:03-cr-017, 2016 WL 3475511 (S.D.Oh. June 24, 2016) (unpublished); United States v. Letner, No. 3:05-cr-068, 2016 WL 3475086 (S.D.Oh. June 27, 2016) (unpublished).  However, these unpublished opinions were issued prior to the Sixth Circuit's opinion in Coley described above.

Finding that Amawi's new petition is not a second or successive petition would be contrary to the statutory scheme put in place by Congress that makes the court of appeals the gatekeeper for authorizing second-in-time petitions. In Coley, the Sixth Circuit explained that the statute permitting the court of appeals to authorize a second or successive petition in cases where the Supreme Court had announced a new rule of constitutional law would become "superfluous," if a petition based on such a new constitutional law was not even considered to be a second or successive petition. Coley, 871 F.3d at 457-58. See also Leal Garcia, 573 F.3d at 221 (explaining that statutory requirement of prior approval for successive petition based on new constitutional rule would be "rendered surplusage" if claims based on new constitutional rules were considered to be non-successive petitions that did not require prior approval). The same reasoning applies here. Amawi's argument would make 28 U.S.C. § 2255(h)(2) moot and effectively transfer the gatekeeping authority from the court of appeals to the district court. Congress specifically granted to the court of appeals the authority to determine if a second or successive petition could proceed when it was based on a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. Because it is up to the district court to determine if a petition filed in its court is a second or successive petition, In Re Smith, 690 F.3d 809 (6th Cir. 2012), Amawi's argument that claims based on new constitutional rules are not second or successive petitions would effectively take that gatekeeper function away from the court of appeals and give it to the district court, contrary to the dictates of the statute.

Thus, Amawi's instant petition is a second or successive petition. Amawi has not obtained the necessary authorization from the Sixth Circuit Court of Appeals for the petition. Even if Amawi believes it is likely that he will be granted authorization for a second or successive petition because his claim is based on a new rule of constitutional law made

retroactive on collateral review, he is not relieved of the statutory obligation to obtain that authorization prior to filing his petition in the district court.  Without that authorization from the court of appeals, this Court lacks jurisdiction over Amawi's petition, and it must be transferred to the Sixth Circuit for consideration of whether a second or successive petition should be authorized.

**B.      Amawi's claims based on Dimaya are not time-barred.**

As explained above, Amawi must obtain authorization from the Sixth Circuit for his petition to proceed.  Because Dimaya announced a new, substantive rule that applies retroactively on collateral review, the government will likely concede before the Sixth Circuit that the petition is timely on its face because the limitations period for filing a collateral review claim based on Dimaya is one year from the date of the Dimaya decision.  See 28 U.S.C. § 2255(f)(3).  However, Amawi's claim will ultimately fail because he does not make a valid Dimaya claim since the statutes at issue in this case are crimes of violence under 18 U.S.C. § 16(a), which was not invalidated by Dimaya.

**C.      Amawi's claim fails on the merits.**

Although this Court does not have jurisdiction to address Amawi's successive petition without the Sixth Circuit's Section 2244(b)(3) authorization, substantively, the Dimaya decision ultimately will not affect Amawi's convictions for Counts 3 and 4 because it did not invalidate the definition of a "crime of violence" contained at 18 U.S.C. § 16(a).  In Counts 3 and 4, Amawi was charged with two separate violations of 18 U.S.C. § 842(p)(2)(A).[5]  Section 16 defines the

---

[5] The text of 18 U.S.C. § 842(p)(2)(A) states:

It shall be unlawful for any person to teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means information

term "crime of violence" under Title 18 of the U.S. Code, for purposes of § 842(p)(2)(A).  <u>See</u>

<u>Leocal v. Ashcroft</u>, 543 U.S. 1, n. 4 (2004) (citing § 842(p) as one of "a number of statutes

criminaliz[ing] conduct that has as an element the commission of a crime of violence under

§ 16").  <u>See</u> <u>also</u> <u>United States v. Hull</u>, 456 F.3d 133, 138 (3d Cir. 2006).  Hence, the term

"crime of violence" for purposes of 18 U.S.C. § 842(p) means "(a) an offense that has as an

element the use, attempted use, or threatened use of physical force against the person or property

of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial

risk that physical force against the person or property of another may be used in the course of

committing the offense."  18 U.S.C. § 16.  <u>Dimaya</u> only invalidated subsection 16(b), not

subsection 16(a).

        Amawi was charged with two violations of 18 U.S.C. § 842(p).  Count 3 charged that

Amawi:

> accessed a secure mujahideen web site and opened, viewed, and discussed with the
> Trainer certain instructional materials and videos, including a video entitled
> "Martyrdom Operation Vest Preparation," which depicted the step-by-step
> construction and use of a suicide bomb vest . . . and which suicide bomb vest video
> [Amawi] displayed and translated for the Trainer, with the intent that the Trainer
> use said instructional materials for training individuals in the construction and use
> of such bomb vests to commit and further a Federal crime of violence, as defined
> in Title 18, United States Code, Section 16, **including but not limited to the killing
> of a national of the United States outside of the United States, a violation of
> Title 18, United States Code, Section 2332(a), and the killing of any officer or
> employee of the United States, a violation of Title 18, United States Code,
> Section 1114**.

Count 4 charged that Amawi:

> distributed to the Trainer a digital copy of a six-page written guide describing the
> step-by-step process for manufacturing chemical explosive compounds . . . and

---

pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or
weapon of mass destruction, with the intent that the teaching, demonstration, or information be
used for, or in furtherance of, an activity that constitutes a Federal crime of violence.

which information [Amawi] provided to the Trainer, with the intent that the Trainer use said information for training individuals in the manufacture of explosives to commit and further a Federal crime of violence, as defined in Title 18, United States Code, Section 16, **including but not limited to the killing of a national of the United States, outside of the United States, a violation of Title 18, United States Code, Section 2332(a), and the killing of any officer or employee of the United States, a violation of Title 18, United States Code, Section 1114.**

(R.186: Superseding Indictment).  (Emphasis added).

In the instructions provided to the jury, the Court instructed the jury on the definition of crime of violence using the definition at 18 U.S.C. §§ 16(a) and (b), identified the applicable predicate offenses, and instructed the jury that the predicate offenses were crimes of violence:

A "Federal crime of violence" is either (1) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony, and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. . . . **In this case, the government alleges that the federal crime of violence that the defendant intended his information to be used for, or in furtherance of, was either Title 18 U.S.C. § 2332(a), Killing of U.S. Nationals Outside the United States, or Title 18 U.S.C. § 1114, the Killing of Any Officer or Employee of the United States.  Those offenses constitute Federal crimes of violence under the definition that I have just given you.**

(R.806: Final Jury Instructions as Read to the Jury).  (Emphasis added).

Although the Court defined "crime of violence" for the jury using the definitions at both Section 16(a) and the now invalidated Section 16(b), the Court properly instructed the jury that the predicate offenses were crimes of violence because determination of whether an offense is a crime of violence is a legal determination that is made by the presiding judge, not the jury.[6]  See United States v. Harris, 676 F.App'x. 558, 562 (6th

---

[6] In his Reply, Amawi argued that "[t]he jury, in returning a guilty verdict, did not indicate which subsection [of 18 U.S.C. § 16] the convicted counts fell under." (R.1165, Reply, PageID 17725).

Cir. 2017) (noting that "whether an offense is a 'crime of violence' is a legal question for the court, not the jury).  See also United States v. Credit, 95 F.3d 362, 364 (5th Cir. 1996); United States v. Morgan, 748 F.3d 1024, 1034-35 (10th Cir. 2014); United States v. Tsarnaev, 157 F.Supp.3d 57, 75, n. 22 (D.Mass. 2016).   Here, the Court correctly determined that the killing of a national of the United States outside the United States and the killing of an officer or employee of the United States were crimes of violence.  This determination remains correct after Dimaya under the still valid definition of crime of violence at Section 16(a) because these offenses have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).

Case law considering similar definitions involving the use of physical force supports this determination.  The Supreme Court has defined "physical force" in the similar statutory definition of violent felony used in the Armed Career Criminal Act to mean "violent force—that is, force capable of causing physical pain or injury to another person."  Curtis Johnson v. United States, 559 U.S. 133, 140 (2010).  Further, "physical force" can include the indirect application of force, for example through using poison.  United States v. Castleman, 134 S.Ct. 1405, 1414-15 (2014) (explaining meaning of "force" for purposes of definition of "misdemeanor crime of domestic violence" in 18 U.S.C. § 922(g)(9)).  See also United States v. Evans, 699 F.3d 858, 864 (6th Cir. 2012)

---

Amawi confuses the role of the jury with that of the judge.  The jury did not determine whether the predicate offenses were crimes of violence, the Court made that determination because that is a legal question reserved for the Court.  Thus, there would be no cause for the jury to indicate which subsection of 18 U.S.C. §16 applied and no concern that the jury may have relied on a now invalidated definition.

(in case evaluating physical force definition in the Career Offender sentencing guideline, holding that "[a] defendant uses physical force … when a defendant knowingly sets in motion a series of events that the defendant knows will result in the application of 'a force capable of causing physical pain or injury to another person'") (quoting <u>Curtis Johnson</u>, 559 U.S. at 140).  One can also use force through reckless conduct.  <u>Voisine v. United States</u>, 136 S.Ct. 2272, 2279-80 (2016) (holding that reckless domestic assault qualified as a misdemeanor crime of domestic violence); <u>United States v. Verwiebe</u>, 874 F.3d 258, 262, 265 (6th Cir. 2017) (holding that reckless conduct can involve "the use, attempted use, or threatened use of physical force" for purposes of the Career Offender guideline).  Conduct that causes serious physical harm to someone necessarily involves the use of physical force.  <u>See United States v. Anderson</u>, 695 F.3d 390, 401 (6th Cir. 2012) (finding that Ohio's aggravated assault statute included as an element the use of force because "proof of serious physical injury or pain under the statute necessarily requires proof of violent physical force").

Here, the offenses at issue are the killing of U.S. nationals abroad or the killing of an officer or employee of the United States.  Because causing serious physical harm to someone necessarily involves the use of force, then unlawfully killing someone, an extreme form of harm, does too.  <u>See United States v. Jackson</u>, 655 F.App'x 290, 293 (6th Cir. 2016) (finding that Georgia's voluntary manslaughter statute contained as an element the use of force); <u>In re: Irby</u>, 858 F.3d 231, 234-38 (4th Cir. 2017) (finding that conviction for second degree retaliatory murder was a crime of violence); <u>United States v. Sarracino</u>, __ F.App'x __, 2018 WL 1252095 at *2 (10th Cir. 2018) (rejecting claim that second-degree murder was not a crime of violence); <u>United States v. Checora</u>, 155

14

F.Supp.3d 1192, 1200-01 (D.Ut. 2015); United States v. Moreno-Aguilar, 198 F.Supp.3d 548, 554 (D.Md. 2016) (finding that murder was a crime of violence).  These cases recognize that "one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another." Irby, 858 F.3d at 238. See also Moreno-Aguilar, 198 F.Supp.3d at 554 (recognizing that " 'unlawful killing' … necessarily involve[s] the use of physical force against another"); Checora, 155 F.Supp.3d at 1197 ("It is hard to imagine conduct that can cause another to die that does not involve physical force against the body of the person killed.").  Any other conclusion would "strain[] common sense," id., and would absurdly result in less serious crimes such as bank robbery being classified as crimes of violence, while killing someone would not be.  See Irby, 858 F.3d at 237.

Common sense, logic, and the law dictate that unlawfully killing someone necessarily involves the use of physical force against the person of another.  Therefore, the offenses of killing a national of the United States abroad and killing an officer or employee of the United States still qualify as crimes of violence under the elements clause definition of crime of violence at 18 U.S.C. § 16(a), even after Dimaya invalidated the residual clause definition at 18 U.S.C. § 16(b).  As a result, Amawi's claim fails on the merits.

## IV.  CONCLUSION

In sum, the Dimaya decision does not relieve Amawi of the requirement to first obtain authorization from the Sixth Circuit Court of Appeals before filing a second or successive Section 2255 petition. Because he has not obtained this authorization, the Court lacks jurisdiction

and his petition should be transferred to the Sixth Circuit Court of Appeals for consideration of approval to file a second or successive Section 2255 petition.

Alternatively, if this Court determines that Amawi's petition is not a second or successive Section 2255 petition, the Court should deny his motion on the merits.  Although his claims based on <u>Dimaya</u> may be timely, Amawi's claims still fail because <u>Dimaya</u> did not invalidate the definition of crime of violence at 18 U.S.C. § 16(a).  Based on this still valid definition, the predicate offenses underlying his convictions for violating 18 U.S.C. § 842(p) are crimes of violence because they have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 16(a).  Therefore, Amawi's claims still fail on the merits, even after <u>Dimaya</u>.

<div style="margin-left:40%">

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   <u>/s/ Matthew W. Shepherd</u>
        Matthew W. Shepherd (OH: 0074056)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3859
        (216) 522-7358 (facsimile)
        Matthew.Shepherd@usdoj.gov

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of June, 2018, a copy of the foregoing document

was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may

access this filing through the Court's system.

/s/ Matthew W. Shepherd
Matthew W. Shepherd
Assistant U.S. Attorney