**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:06-CR-719 |
| | : | |
| Plaintiff-Respondent, | : | |
| | : | JUDGE JAMES G. CARR |
| | : | |
| vs. | : | **SUPPLEMENT TO PETITIONER'S** |
| | : | **MOTION TO VACATE PURSUANT** |
| MOHAMMED ZAKI AMAWI, | : | **TO 28 U.S.C. § 2255** |
| | : | |
| Defendant-Petitioner. | : | |

Now comes the Petitioner, Mohammed Amawi, and files the instant supplement to his pending motion to vacate his conviction in Counts Three and Four as well as his sentence under 28 U.S.C. § 2255. A memorandum in support is attached.

        Respectfully submitted,

        */s/ Jeffrey B. Lazarus*
        JEFFREY B. LAZARUS
        Assistant Federal Public Defender
        1660 W. 2nd Street, Suite 750
        Cleveland, Ohio 44113
        Telephone: (216) 522-4856
        Facsimile: (216) 522-4321
        jeffrey_lazarus@fd.org

        Attorney for Mohammed Zaki Amawi

**MEMORANDUM**

**I.     Introduction**

In 2009, Defendant Mohammed Amawi was found guilty, after trial by jury, of all four counts of the superseding indictment, which included: Count One, violation of 18 U.S.C. § 956(a)(1); Count Two, violation of 18 U.S.C. § 2339(A); and Counts Three and Four, violation of 18 U.S.C. § 842(p)(2)(A). Dkt. 802, Verdict, PageID 5374-78; Dkt. 996, Judgment, PageID 13748. This Court found Mr. Amawi's sentencing guideline range to be life, based on a total offense level 43, Criminal History Category VI. This Court imposed a sentence of 240 months for Counts One, Three, and Four, and 180 months for Count Two, all to be served concurrently. Dkt. 996, Judgment, PageID 13749. Mr. Amawi has been in federal custody continuously since February 19, 2006, and has served over twelve actual years of his sentence.

On June 26, 2015, the Supreme Court issued *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual clause of the Armed Career Criminal Act to be unconstitutionally vague because it "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 135 S. Ct. at 2557. As a result, imposing an increased sentence under the residual clause violates the guarantee of due process. *Id.* at 2563. More recently, in April 2016, the Supreme Court held that *Johnson*'s holding is retroactive to other defendants sentenced under the Armed Career Criminal Act. *Welch v. United States*, 136 S. Ct. 1257 (2016).

On April 17, 2018, the Supreme Court issued *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and held that § 16(b)'s definition of "crime of violence" is unconstitutionally vague in

2

light of its reasoning in *Johnson*. As a result, the residual clause of 18 U.S.C. § 16(b) was also found to violate due process.

Following *Dimaya*, Mr. Amawi requests this Court vacate his convictions in Counts Three and Four and vacate his sentence. Counts Three and Four, violation of 18 U.S.C. § 842(p)(2)(A) require as an element the defendant be engaged in a "crime of violence" as defined by 18 U.S.C. § 16(b). Because the term "crime of violence" is unconstitutionally vague, Mr. Amawi's convictions in Count Three and Count Four violate his right to due process.

**II.     Mr. Amawi's motion is not a second or successive petition and does not need to be transferred to the Sixth Circuit**

The government claims Mr. Amawi's motion must be transferred to the Sixth Circuit as a second or successive § 2255 petition. Dkt. 1172, PageID 17756-61. The government is incorrect, and this Court has jurisdiction to rule on the instant motion without certification from the Sixth Circuit. It cannot be denied that Mr. Amawi previously filed a petition under 28 U.S.C. § 2255. Dkt. 1146. Said petition raised claims of: 1) ineffective assistance of counsel; 2) failure to disclose evidence; 3) evidence obtained through an unlawful arrest; 4) evidence obtained through an illegal search and seizure; and 5) violations of the privilege against self-incrimination. Dkt. 1146. This Court denied the petition on November 6, 2014. Dkt. 1158.

Generally, a defendant seeking to file a second § 2255 petition must receive permission from the Sixth Circuit Court of Appeals. 28 U.S.C. § 2244(b)(3). Statutorily, there are two exceptions to this rule: 1) newly discovered evidence; and 2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. § 2255(h). Mr. Amawi's instant petition centers directly around the Supreme Court's holdings in *Johnson* and *Dimaya*, which nullified the residual clauses of the

Armed Career Criminal Act and the definition of crime of violence, respectively. Under the holdings of *Dimaya* and *Johnson*, Mr. Amawi's convictions under 18 U.S.C. § 842(p)(2)(A) are unconstitutional. Therefore, Mr. Amawi is claiming that *Dimaya* and *Johnson* are new rules of constitutional law, which were previously unavailable to him. The Supreme Court has held that *Johnson*'s holding is retroactive to other defendants sentenced under the Armed Career Criminal Act. *Welch v. United States*, 136 S. Ct. 1257 (2016). Therefore, Mr. Amawi does not need permission from the Sixth Circuit to file a second or successive petition for relief under 28 U.S.C. § 2255.

Mr. Amawi also notes this Court's holding in *United States v. Petaway*, Case No. 93-CR-746, 2015 WL 2365456 (N.D.Ohio May 18, 2015). In *Petaway*, this Court explained "not all numerically second motions are 'second or successive.'" *Petaway*, 2015 WL 2365456 at *1 (quoting *In re Smith*, 690 F.3d 809, 810 (6th Cir. 2012)). This Court held "a prisoner may file a second § 2255 motion without the court of appeals's permission where 'an event transpired after the initial petition was filed . . . which caused a previously unripe claim to mature factually." *Id.* (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 642 (1998); *In re Salem*, 631 F.3d 809, 813-15 (6th Cir. 2011)). Following *Petaway*, Mr. Amawi's instant petition is not a second or successive petition under 28 U.S.C. § 2244 as his petition is based on the Supreme Court's holding in *Johnson* and *Dimaya*. Therefore, certification from the Sixth Circuit is not required.

**III. Counts Three and Four contain the element "crime of violence," as set forth in 18 U.S.C. § 16**

Counts Three and Four of the indictment both allege violation of 18 U.S.C. § 842(p)(2)(A). Dkt. 186, Superseding Indictment, PageID 702-04. The statutory definition of this crime states:

4

> It shall be unlawful for any person (A) to teach or demonstrate the making or use of an explosive, a destructive device, or a weapon of mass destruction, or to distribute by any means information pertaining to, in whole or in part, the manufacture or use of an explosive, destructive device, or weapon of mass destruction, with the intent that the teaching, demonstration, or information be used for, or in furtherance of, an activity that constitutes a Federal <u>crime of violence</u>.

18 U.S.C. § 842(p)(2)(A) (emphasis added). This statute does not define the term "crime of violence," but the Supreme Court has instructed courts to look at 18 U.S.C. § 16's definition of "crime of violence" for the purposes of 18 U.S.C. § 842(p). *See Leocal v. Ashcroft*, 543 U.S. 1, 7 n. 4 (2004). Title 18 U.S.C. § 16 defines "crime of violence" as:

> (a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In *Leocal*, the Supreme Court held that Florida's driving under the influence statute was not a "crime of violence" under 18 U.S.C. § 16(b). In conducting a statutory interpretation of 18 U.S.C. § 16, the Court declared that §16's definition "has since been incorporated into a variety of statutory provisions, both criminal and noncriminal." *Leocal*, 543 U.S. at 7. In a footnote, the Supreme Court stated, "[f]or instance, a number of statutes criminalize conduct that has as an element the commission of a crime of violence under § 16. *See, e.g.*, 18 U.S.C. § 842(p)." *Id.* at 7 n. 4. Therefore, the term "crime of violence" in 18 U.S.C. § 842(p)(2)(A) has the same definition as 18 U.S.C. § 16. *See also United States v. Hull*, 456 F.3d 133 (3d Cir. 2006) (finding *Leocal*'s holding requires that "crime of violence" in 18 U.S.C. § 16 and § 842(p)(2)(A) have the same meaning).

5

In the instant case, both the superseding indictment and the jury instructions are in accord and specifically tie the definition of crime of violence to 18 U.S.C. § 16. The superseding indictment states:

**COUNT THREE:**

Between on or about January 10 and on or about January 30, 2005, in the Northern District of Ohio, Western Division, the defendant, Mohammed Zaki Amawi, did knowingly distribute to another person, that is the Trainer, information pertaining to, in whole or in part, the manufacture or use of an explosive or destructive device, with the intent that such information be used for, or in furtherance of, an activity that constitutes a Federal crime of violence, in that the defendant accessed a secure mujahideen web site and opened, viewed, and discussed with the Trainer certain instructional materials and videos, including a video entitled 'Martyrdom Operation Vest Preparation,' which depicted the step-by-step construction and use of a suicide bomb vest, an 'explosive' as defined in Title 18, United States Code, Section 844(I), and a 'destructive device' as defined in Title 18, United States Code. Section 92l(a)(4), and which suicide bomb vest video the defendant displayed and translated for the Trainer, with the intent that the Trainer use said instructional materials for training individuals in the construction and use of such bomb vests to commit and further a <u>Federal crime of violence, as defined in Title 18, United States Code, Section 16</u>, including but not limited to the killing of a national of the United States outside of the United States, a violation of Title 18, United States Code, Section 2332(a), and the killing of any officer or employee of the United States, a violation of Title 18, United States Code, Section 1114. In violation of Title 18, United States Code, Section 842(p)(2)(A).

**COUNT FOUR:**

On or about February 6, 2005, in the No11hern District of Ohio, Western Division, the defendant, Mohammed Zaki Amawi, did knowingly distribute to another person, that is the Trainer, information pertaining to, in whole or in part, the manufacture or use of an explosive or destructive device, with the intent that such information be used for, or in furtherance of, an activity that constitutes a <u>Federal crime of violence</u> in that the defendant distributed to the Trainer a digital copy of a six-page written guide describing the step-by-step process for manufacturing chemical explosive compounds, said compounds constituting an 'explosive' as defined in Title 18, United States Code, Section 844(I), and which information the defendant provided to the Trainer, with the intent that the Trainer use said information for training individuals in the manufacture of explosives to commit and further a <u>Federal crime of violence, as defined in Title 18, United States Code, Section 16</u>, including but not limited to the killing of a national of

>the United States, outside of the United States, a violation of Title 18, United States Code, Section 2332(a), and the killing of any officer or employee of the United States, a violation of Title 18, United States Code, Section 1114. In violation of Title 18, United States Code, Section 842(p)(2)(A).

Dkt. 186, Superseding Indictment, PageID 702-04 (emphasis added). Of particular note is that Count Three and Count Four both utilize the definition "crime of violence" under § 16, not specifying either § 16(a) or § 16(b). Furthermore, the jury instructions given by this Court, in setting forth the elements of the offense, define "federal crime of violence" to mirror 18 U.S.C. § 16, stating:

>A 'Federal crime of violence' is either: (a) an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony, and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Dkt. 806, Jury Instruction, PageID 5438.

Therefore, there can be no dispute that Mr. Amawi's convictions in Count Three and Count Four contained as an element "crime of violence" as defined by 18 U.S.C. § 16.

**IV.    The residual clause of § 842(p)(2)(A) is unconstitutionally void for the same reasons that § 16(b) is unconstitutionally void.**

In *Sessions v. Dimaya,* __ U.S.__, 138 S. Ct. 1204 (2018), the Supreme Court held that § 16(b)'s definition of "crime of violence" is unconstitutionally vague in light of its reasoning in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the definition of "violent felony" in the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii) (requiring that an offense "otherwise involve[s] conduct that presents a serious potential risk of physical injury to another").

7

The *Dimaya* Court found that "a straightforward application of *Johnson*" effectively "resolve[d]" the case. *Dimaya*, 138 S. Ct. at 1213, 1223.  In *Johnson,* the Court singled out two features of ACCA's residual clause that "conspire[d] to make it unconstitutionally vague."  135 S. Ct at 2557.

First, in order to determine the risk posed by the statute, the ACCA residual clause "require[d] a court to [apply the categorical approach] and picture the kind of conduct that the crime involves 'in the ordinary case'" rather than looking at the "real-world" facts in the individual case at hand to determine the risk of injury. *Johnson*, 135 S. Ct. at 2557 (citation omitted).  The clause left "grave uncertainty" about how to estimate the risk posed by a crime by asking judges "to imagine how <u>the idealized ordinary case</u> of the crime" occurs. *Id.* at 2557-58 (emphasis added). To illustrate its point, the Court asked rhetorically, "how does one go about deciding what the 'ordinary case' of a crime involves? A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?" *Id.* at 2257-58 (internal citation omitted). None of these methods offer any "reliable way" of determining how a crime is ordinarily committed. *Id.* at 2558. Hence, the Supreme Court found that the process of identifying the "ordinary case" creates "grave uncertainty about how to estimate the risk posed by a crime." *Id.* at 2257.

Second, compounding that uncertainty, the ACCA's residual clause layered an imprecise "serious potential risk" threshold on top of the requisite "ordinary case" inquiry. The combination of "indeterminacy" created by the ordinary case inquiry and an ill-defined risk threshold resulted in "more unpredictability and arbitrariness than Due Process tolerates." *Id.* at 2558.

The *Dimaya* Court found that § 16(b) suffers from those same two flaws. Like the ACCA's residual clause, § 16(b) requires the court to identify a crime's "ordinary case" in order to measure the crime's risk, but "[n]othing in § 16(b) helps courts to perform that task." *Dimaya*, 138 S. Ct. at 1215. The Court found that § 16(b)'s "substantial risk" threshold is no more determinate than the ACCA's "serious potential risk" threshold. *Id.* Thus, the same "[t]wo features" that "conspire[d] to make" the ACCA's residual clause unconstitutionally vague – "the ordinary case requirement and an ill-defined risk threshold" – also conspired to make § 16(b) unconstitutionally void. *Id.* at 1216, 1223 (citing *Johnson*, 135 S. Ct. at 2557).

Likewise, because § 842(p)(2)(A) is identical to § 16(b) – requiring the same categorical ordinary case approach and risk threshold – *Dimaya* dictates that § 842(p)(2)(A) is also unconstitutionally vague. Other federal courts have applied *Dimaya*'s holding to other federal statutes that incorporate the language of §16(b). *See In re Hubbard*, 825 F.3d 225, 230 n. 3 (4th Cir. 2016) ("[T]he language of § 16(b) is identical to that in § 924(c)(3)(B), and we have previously treated precedent respecting one as controlling analysis of the other."). Indeed, immediately after the Supreme Court issued its decision in *Dimaya*, the Tenth Circuit, in *United States v. Salas*, __ F.3d__, 2018 WL 2074547 (10th Cir. 2018) found exactly that and struck § 924(c)(3)(B) as unconstitutionally vague.[1] The Seventh Circuit did the same before *Dimaya*. *See United States v. Cardena,* 842 F.3d 959, 996 (7th Cir. 2015) (§ 924(c)(3)(B) is unconstitutionally vague because it "is the same residual clause contained in [§16(b)]").

---

[1]  Likewise, several district courts, post-*Dimaya,* have already held that § 924(c)(3)(B) is unconstitutionally vague. *See United States v. Meza,* 2018 WL 2048899 (D. Mont. May 2, 2018); Order*, United States v. Morrison*, Case No. BLG-SPW-04-CR-126 (D. Mont. May 7, 2018); Order, *United States v. Johnson*, Case No. BLG-SPW-11-CR-140 (D. Mont. May 7, 2018); Order, *Toussaint v. United States*, Case No. 12-CR-00407-CW-1 (N.D. Cal. May 11, 2018); Order, *Evey v. United States*, Case No. SVW-97-CR-00468 (C. D. Cal. May 10, 2018).

### V.  *Dimaya*'s holding requires this Court to vacate Mr. Amawi's conviction in Count Three and Count Four

As detailed above, *Dimaya*'s holding thus renders the residual clause of § 16(b) unconstitutional in the same way *Johnson* renders the residual clause of the ACCA unconstitutional. The government does not dispute this, but claims Mr. Amawi does not deserve relief because his convictions center on § 16(a), which was left undisturbed by *Dimaya*. Dkt. 1172, PageID 17763-66. The government is wrong as they make presumptions supported neither by fact nor by law. The government tries to get this Court to conclude that Mr. Amawi's convictions under § 842(p)(2)(A) utilized only the definition of "crime of violence" set forth in 18 U.S.C. § 16(a), and not the now-defunct § 16(b). To demonstrate the government's claim is wrong, we need look no further than the indictment and the jury instructions.

The superseding indictment for Count Three and Count Four state that Mr. Amawi's violation of 18 U.S.C. § 842(p)(2)(A) was done "to commit and further a Federal crime of violence, as defined in Title 18, United States Code, Section 16." Dkt. 186, Superseding Indictment, PageID 702-04. The government did not allege Mr. Amawi committed a crime of violence in violation of § 16(a), but specifically incorporated the entire section, § 16(a) and (b). Then, the parties submitted proposed jury instructions to this Court, which specifically set forth the elements of each offense, including the specific elements and definitions for Count Three and Count Four. Dkt. 806, Jury Instruction, PageID 5437-38. In providing the jury with a definition of "federal crime of violence," the exact language of 18 U.S.C. § 16 – both sections (a) and (b) – was used:

> A 'Federal crime of violence' is either: (a) an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony, and that, by its nature,

> involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Dkt. 806, Jury Instruction, PageID 5438. These jury instructions were provided to the jury, which resulted in his conviction for Count Three and Count Four.

In looking at these documents from the trial, it is clear Mr. Amawi's conviction in Count Three and Four relied on the definition of "crime of violence" as defined by both § 16(a) and (b). Nothing in the record delineates whether these counts of conviction fell under (a) or (b). Therefore, the record does not demonstrate that Mr. Amawi's conviction rests entirely on § 16(a). Stated another way, the record is unclear as to whether Mr. Amawi's conviction relies on the residual clause of §16(b), and thus it is unclear whether his conviction is on a constitutionally valid basis or an invalid basis. In such a situation, in which there is no definitive record as to whether a conviction rested upon an unconstitutional basis, a court is supposed to invoke what has been referred to as "the *Stromberg* principle." This maxim comes from *Stromberg v. California*, 283 U.S. 359 (1931), which set forth the rule that "where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin v. United States*, 502 U.S. 46, 53 (1991) (emphasis added).

In *Stromberg*, the defendant was a nineteen-year-old who was working a summer job as a camp counselor. The camp displayed a reproduction of the Soviet Russian flag, and those who attended the camp made a pledge of allegiance to said flag. *Stromberg*, 283 U.S. at 362. The camp also possessed literary works related to Communist theory, and other "propaganda." *Id.* The defendant was charged and convicted of a State of California offense the "wilfully, unlawfully and feloniously display a red flag and banner in a public place and in a meeting place

as a sign, symbol and emblem of opposition to organized government and as an invitation and stimulus to anarchistic action and as an aid to propaganda that is and was of a seditious character." *Id*. at 361. While the statute at issue was "laid conjunctively, uniting the three purposes which the statute condemned," the jury instructions given by the court treated the statute "disjunctively, holding that the appellant should be convicted if the flag was displayed for any one of the three purposes named." *Id.* at 363. The defendant challenged the instructions and also challenged the constitutionality of the statute under the Fourteenth Amendment as a violation of free speech.

The state court evaluated the constitutionality of the "three purposes" set forth in the statute, finding that the first purpose was unconstitutional. *Stromberg*, 283 U.S. at 367. The state court, however, found because the "remaining" two clauses of the statute continued to be constitutional, that the defendant's conviction stands, and that eliminating the first purposes did not materially change the purpose of the criminal statute. *Id.*

The Supreme Court reversed, finding the verdict against the defendant was a general one, as it did not specify which of the three grounds of the statute the jury's conviction rested. *Stromberg*, 283 U.S. at 367-68. The Supreme Court stated:

> As there were three purposes set forth in the statute, and the jury was instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause.
>
> * * *
>
> It follows that instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the

12

>jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.

*Stromberg*, 283 U.S. at 368. The Supreme Court went on to say that while the second and third clauses of the statute remained constitutional, because the first clause is invalid, the conviction must be set aside. *Id.* at 369-70.

The principle set forth in *Stromberg* has gained attention recently following *Johnson* and the unconstitutionality of the residual clause in the ACCA. In the wake of *Johnson* and *Welch*, countless defendants have filed § 2255 petitions seeking to challenge their ACCA sentences as a violation of due process. Much like the government in the instant case, the government has opposed many of these petitions, stating, in essence, that the petitioner's ACCA-predicate offenses are not residual clause crimes, but were instead ACCA-predicates under another clause of the ACCA. For example, when a defendant says their prior conviction for Ohio's felonious assault statute could no longer be used to maintain their ACCA sentence, the government responds by saying the conviction did not fall under the ACCA's residual clause, but instead contained an element of force; and since the "force clause" of the ACCA remains constitutional, the defendant does not deserve relief. This debate is currently going on in nearly all of the federal circuit courts. In fact, on June 13, 2018, the Sixth Circuit, sitting en banc, heard oral arguments on this exact issue in *United States v. Williams*, Sixth Circuit Case No. 17-3211. A decision is expected in the near future.

The *Stromberg* principle has guided several of the circuit courts on this issue. *See United States v. Geozos*, 870 F.3d 890, 895-96 (9th Cir. 2017); *United States v. Taylor*, 873 F.3d 476, 480 (5th Cir. 2017). The Armed Career Criminal Act, a sentencing statute for recidivists, has three separate clauses upon which a prior conviction could qualify. *See* 18 U.S.C. §

13

924(e)(2)(A). These three clauses have been referred to as the "the force clause," "the enumerated offense clause," and "the residual clause." *See id.* Before *Johnson*, it did not matter which of these three clauses a prior conviction fell, because "[n]othing in the law require[d] a [court] to specify which clause . . . it relied upon in imposing a sentence." *In re Chance*, 831 F.3d 1335, 1340 (11th Cir. 2016), overruled by *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017). With the issuance of *Johnson*, however, determining which of the three clauses a prior conviction fell is key to determining whether the petitioner can earn relief in their § 2255 petition. Hence, the *Stromberg* principle became a focus of these *Johnson* claims.

The Ninth Circuit, in *Geozos*, explicitly applied the *Stromberg* principle to determining whether the petitioner's *Johnson* claim was valid in a § 2255 petition. *Geozos*, 870 F.3d at 895-96. The *Geozos* Court specifically applied *Stromberg* to the sentencing context, stating, "it does not follow that, when a judge makes a finding that a defendant qualifies for an enhanced sentence, and that finding may rest on an unconstitutional ground, the finding should be treated any differently than a finding made by a jury for the purpose of conviction." *Id.* at 896. *Geozos* therefore held "when it is unclear whether a sentencing court relied on the residual clause in finding that a defendant qualified as an armed career criminal, but it may have, the defendant's § 2255 claim 'relies on' the constitutional rule announced in *Johnson*." *Id.* In *Taylor*, the Fifth Circuit explicitly adopted the holding and reasoning of *Geozos* and applied the *Stromberg* principle to a similar *Johnson* claim in a § 2255 petition. *Taylor*, 873 F.3d at 480.

While *Stromberg* has not been universally applied in this context to all *Johnson* claims in § 2255 petitions, Mr. Amawi points these cases out to show some courts have applied *Stromberg* to the sentencing context. In fact, Mr. Amawi's § 2255 petition presents an even stronger case

14

for the application of *Stromberg* because his case concerns application of *Stromberg* to his conviction and not merely to a sentencing proceeding. The parallels between *Stromberg* and Mr. Amawi's conviction in Counts Three and Four are extremely similar.

Mr. Amawi's conviction under 18 U.S.C. § 842(p)(2)(A) required the government to prove, as an element, that he committed a crime of violence. "Crime of violence," as set forth in the jury instructions, is defined by 18 U.S.C. § 16, and includes multiple definitions for a crime of violence as set forth in §16 (a) and (b). Following *Dimaya*, part of §16 – specifically the residual clause set forth in § 16(b) – has been deemed unconstitutional. *Dimaya*, 138 S. Ct. at 1210. Neither the indictment, the jury instructions, or the verdict provide any insight as to which of these clauses the jury's verdict rested. While the jury may have found the crime of violence involved "an offense that has as an element the use, attempted use, or threatened use of physical force," *see* 18 U.S.C. § 16(a), the jury may just as likely have found the crime of violence "a substantial risk that physical force against the person or property," *see* 18 U.S.C. § 16(b).

In *Stromberg*, the Supreme Court was clear that in such a situation, where the record does not specify which of the grounds of the statute the jury's conviction rested, the conviction cannot stand. *Stromberg*, 283 U.S. at 367-68 ("the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld."). In Mr. Amawi's case, as the residual clause has been deemed unconstitutional, the conviction can no longer stand.

The government tries to convince this Court that, despite the record, that Mr. Amawi's crime of violence could only have been a crime of violence under the force clause, § 16(a). The government states the "killing of a national of the United States outside the United States and the

15

killing of an office or employee of the United States" could not be residual clause offenses. Dkt. 1172, PageID 17764. First, the government's unsupported conclusion contravenes the jury's role in imposing a verdict. The jury returned a verdict of guilty on Count Three and Count Four, which required the jury to find proof beyond a reasonable doubt that Mr. Amawi committed a crime of violence. In doing so, the jury instructions provided the jury with a definition of "crime of violence," which included both § 16(a) and § 16(b). Thus, it cannot be said which portion of § 16 the jury's verdict rested for Counts Three and Four.

Additionally, it cannot be conclusively determined that Mr. Amawi's crime of violence fell under the "force clause" of § 16(a). The indictment alleges Count Three and Four contained a crime of violence "including but not limited to the killing of a national of the United States outside of the United States, a violation of Title 18, United States Code, Section 2332(a), and the killing of any officer or employee of the United States, a violation of Title 18, United States Code, Section 1114. In violation of Title 18, United States Code, Section 842(p)(2)(A)." Dkt. 186, Superseding Indictment, PageID 702-04. This broad language "including but not limited to" indicates that while there are two examples of possible crimes of violence, these two examples are not the exclusive means in which a crime of violence occurred.

The government takes the extremely broad position that violation of 18 U.S.C. § 1114 can only be a crime of violence under § 16(a). Dkt. 1172, PageID 17765-66. However, a look into the statute and the case law interpreting the statute does not support the government's claim. Title 18 U.S.C. § 1114 criminalizes the killing of any officer or employee of the United States while such officer is engaged in the performance of their official duties. The statute then indicates that there are three separate ways to commit such an offense: murder, manslaughter,

16

and attempted murder or manslaughter. 18 U.S.C. § 1114(1), (2), (3). Manslaughter, *see* § 1114(2), is specifically defined by 18 U.S.C. § 1112 as "the unlawful killing of a human being with malice" and can be either voluntary or involuntary. Several federal courts have held that involuntary manslaughter is <u>not</u> a crime of violence. *United States v. Mann*, 786 F.3d 1244, 1248 n. 4 (10th Cir. 2015) (involuntary manslaughter was found not to be a crime of violence under 18 U.S.C. § 924(c)(3), which has the same definition as § 16); *United States v. Benally*, 843 F.3d 350 (9th Cir. 2016) (applying the categorical approach the Ninth Circuit held that defendant's conviction for manslaughter under § 1112 was not a crime of violence for the purposes of § 924(c)(3), thus reversing his § 924(c)(3) conviction). As manslaughter is not categorically a crime of violence, it cannot be said that the killing of any officer or employee of the United States, 18 U.S.C. § 1114, is categorically a crime of violence. Thus, the case law surrounding the killing of a federal officer or employee does not categorically and conclusively show that violation of the statute constitutes a crime of violence under 18 U.S.C. § 16(a). Applying the *Stromberg* principle, Mr. Amawi's conviction in Count Three and Count Four must be vacated.

## VI. Conclusion

Following the Supreme Court's holding in *Dimaya*, Mr. Amawi's convictions in Count Three and Four must be vacated for violation of due process. In these two counts, Mr. Amawi was convicted under 18 U.S.C. § 842(p)(2)(A), which requires that he committed or furthered a crime of violence, as defined in 18 U.S.C. § 16. Because § 16's definition of crime of violence has been found to be unconstitutional by the Supreme Court in *Dimaya*, these convictions must be vacated. As a result, Mr. Amawi's sentence must be vacated and he must be re-sentenced on Count One and Count Two.

Respectfully submitted,

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
1Assistant Federal Public Defender
1660 W. 2nd Street, Suite 750
Cleveland, Ohio 44113
Telephone: (216) 522-4856
Facsimile: (216) 522-4321
jeffrey_lazarus@fd.org

Attorney for Mohammed Zaki Amawi

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender